UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM HAAS AND AKHLAQUR RAHMAN on behalf of themselves and all others similarly situated, <br><br> PLAINTIFF, <br><br> -against- <br><br> VERIZON NEW YORK, INC. <br><br> DEFENDANT. | Docket No.: <br><br> **VERIFIED COMPLAINT** <br><br> Jury Trial Demanded |

WILLIAM HAAS AND AKHLAQUR RAHMAN ("PLAINTIFFS"), on behalf of themselves and all others similarly situated, by and through their attorneys, BORRELLI AND ASSOCIATES, P.L.L.C., as and for their Complaint against DEFENDANT VERIZON NEW YORK INC. ("VERIZON"), allege upon knowledge as to their own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1.       This is a civil action based upon flagrant and willful violations committed by the DEFENDANT of PLAINTIFFS' rights guaranteed to them and all others similarly situated by: (i) the overtime provisions of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii) the minimum wage provisions of the FLSA; (iii) the overtime provisions of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 160; N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit. 12, (iv) the minimum wage provisions of the NYLL; (v) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each pay day, N.Y. Lab. Law § 195(3); and (vi) any other claim(s) that can be inferred from the facts set forth.

**JURISDICTION AND VENUE**

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq*.  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

3.     Venue is appropriate in this court pursuant to 28 U.S.C. § 1391(b)(ii), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b)(i), as the DEFENDANT operates its business within this judicial district.

**PARTIES**

4.     At all relevant times herein, PLAINTIFF, WILLIAM HAAS, an employee at VERIZON, was and is a citizen of New York and resides in Nassau County.  PLAINTIFF, at all relevant times herein, was and is an "employee" entitled to protection as defined by the FLSA and NYLL.

5.     At all relevant times herein, PLAINTIFF, AKHLAQUR RAHMAN, an employee at VERIZON, was and is a citizen of New York and resides in Queens County.  PLAINTIFF, at all relevant times herein, was and is an "employee" entitled to protection as defined by the FLSA and NYLL.

6.     At all relevant times herein, DEFENDANT VERIZON was and is a New York company with its principal place of business located at 140 West Street in New York County.

7.     VERIZON provides domestic wireline telecommunication services to residential and business consumers located within New York State.   VERIZON offers exchange telecommunication services for the transmission of telecommunications among customers located within a local calling area. VERIZON also offers alternatives forms of phone

services, including local and long distance, using traditional fiber optic cables. Such cables can also carry internet signals which allow VERIZON to offer broadband service as well. VERIZON also operates VERIZON FIOS ("FIOS") which is a telecom service offered over fiber-optic lines exclusively by VERIZON.

8.    At all relevant times herein, DEFENDANT qualified as PLAINTIFFS' "employer" within the meaning of the FLSA and NYLL.

9.    DEFENDANT'S qualifying annual business exceeded and exceeds $500,000, and the DEFENDANT is engaged in communication, business and transmission between states and is therefore engaged in interstate commerce within the meaning of 29 U.S.C. Section 203(b).

## PRELIMINARY STATEMENT AND BACKGROUND FACTS

10.    This action stems from DEFENDANT'S intentional and willful failure to pay PLAINTIFFS overtime pursuant to an illegal scheme in which DEFENDANT improperly instituted a blanket classification policy wherein DEFENDANT classified Local Managers in Defendant's Installation and Maintenance Division (commonly referred to as "I&M"), such as PLAINTIFFS, as exempt from overtime compensation.

11.    DEFENDANT knowingly and intentionally failed to pay the PLAINTIFFS any wages for hours worked in excess of forty hours per week violating both the minimum wage provisions and overtime provisions of the FLSA, NYLL and NYCCRR.

12.    PLAINTIFFS are just two individuals in a large class of DEFENDANT'S victims and, accordingly, bring this action on their own behalf and on behalf of those similarly situated to them for the legal and equitable relief set forth below.

13.   Upon information and belief, VERIZON currently employs approximately 300 Local Managers in New York in the I&M Division with duties and responsibilities the same as the PLAINTIFFS. In addition, VERIZON formerly employed additional Local Managers within the relevant statute of limitations period.

## COLLECTIVE ACTION ALLEGATIONS

14.   PLAINTIFFS seek to bring this suit pursuant to 29 U.S.C. § 216(b) on their own behalf as well as on behalf of those in the following class:

> Current and former employees of DEFENDANT who perform or performed work in any of DEFENDANT'S locations under the title Local Manager within the I&M Division of Defendant's company during the statutory period, who give consent to file a cause of action to recover the difference between the amount of wages actually paid to them and the statutory amount due as well as to recover overtime compensation which is legally due to them for time worked in excess of forty hours per week ("FLSA PLAINTIFFS").

15.   PLAINTIFFS are similarly situated to all such individuals because, while employed by DEFENDANT, they and all FLSA PLAINTIFFS: performed similar tasks; were subject to the same laws and regulations; were paid in the same or similar manner; were paid the same or similar rate; were paid below minimum wage for all hours worked beyond the first forty hours, were required to work in excess of forty hours per work-week; and were not paid one and one-half times their respective regular rates of pay for overtime hours worked.

16.   FLSA PLAINTIFFS are all victims of DEFENDANT'S pervasive practice of willfully refusing to pay their employees minimum wage and overtime compensation for hours worked in excess of forty hours per work-week.

17.     DEFENDANT is and has been aware that they are or were required to pay PLAINTIFFS and FLSA PLAINTIFFS minimum wage and overtime compensation for hours worked in excess of forty hours per work-week.

### RULE 23 CLASS ALLEGATIONS

18.     PLAINTIFFS additionally seek to maintain this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3), on their own behalf as well as on behalf of those who are similarly situated who, during the applicable statutes of limitations, were subjected to violations of the New York Labor Law and the NYCRR ("Class Action PLAINTIFFS").

19.     Under F.R.C.P. 23(b)(3), PLAINTIFF must plead that:

   a)     The class is so numerous that joinder is impracticable;

   b)     There are questions of law or fact common to the class which predominate any individual questions of law or fact;

   c)     Claims or defenses of the representative are typical of the class;

   d)     The representative will fairly and adequately protect the class; and

   e)     A class action is superior to other methods of adjudication.

20.     The Class which PLAINTIFF seek to define includes:

   Current and former employees of DEFENDANT who perform or performed work during the statutory period under the title Local Manager in the I&M Division of Defendant's company within the State of New York, who: (i) worked in excess of forty hours per week and were not paid minimum wage or over-time compensation for any hours worked beyond forty each week; and (ii) were issued inaccurate pay stubs/wage statements.

### NUMEROSITY

21.     During the previous six years, DEFENDANT has, in total, employed at least 300 Local Managers in the I&M Division that are putative members of this class.

## COMMON QUESTIONS OF LAW AND/OR FACT

22.     There are questions of law/fact that govern the claims which are available to each and every Class Action PLAINTIFF, including but not limited to the following:

a)      Whether Class Action PLAINTIFFS worked in excess of forty hours per week,;

b)      Whether DEFENDANT failed to pay Class Action PLAINTIFFS minimum wage for hours worked in excess of forty hours in a week;

c)      Whether DEFENDANT failed to pay Class Action PLAINTIFFS proper overtime compensation for hours worked in excess of forty hours in a week;

d)      Whether DEFENDANT issued proper pay stubs/wage statements to Class Action PLAINTIFFS in accordance with Labor Law §195;

e)      Whether DEFENDANT kept accurate records of hours worked by Class Action PLAINTIFFS; and

f)      Whether DEFENDANT have any affirmative defenses for any of these claims.

## TYPICALITY OF CLAIMS AND/OR DEFENSES

23.     DEFENDANT employs the PLAINTIFFS as "Local Managers." Their duties, pay rate and pay structure were substantially similar to those of Class Action PLAINTIFFS.

24.     Throughout PLAINTIFFS' employment, DEFENDANT failed to pay them: (i) minimum wage for each hour worked in excess of forty hours in a week; and (ii) overtime compensation for each hour worked in excess of forty hours in a week; (iii) DEFENDANT also failed to issue proper paystubs/ wage statements to PLAINTIFFS and Class Action PLAINTIFFS. This was the same or similar for all Class Action PLAINTIFFS. Thus, there

are common questions of law and fact that are applicable to PLAINTIFFS and Class Action PLAINTIFFS.

## ADEQUACY

25.     PLAINTIFFS kept substantial records from their employment with DEFENDANT and would properly and adequately represent the current and former employees who have been subjected to the treatment alleged herein.

26.     PLAINTIFFS fully anticipate the ability to testify under oath as to the services worked and time spent thereof for DEFENDANT.

27.     Additionally, PLAINTIFFS' attorneys have substantial experience in this field of law.

## SUPERIORITY

28.     PLAINTIFFS have no facts relating to the class claims that are atypical of those of the class.   Indeed, at all relevant times herein, DEFENDANT treated PLAINTIFFS identically to Class Action PLAINTIFFS.

29.     Any lawsuit brought by an I&M Local Manager of DEFENDANT would be identical to a suit brought by any other employee for the same violations and separate litigation would risk inconsistent results.

30.     Accordingly, this means of protecting Class Action PLAINTIFFS' rights is superior to any other method.

## FACTS

31.     DEFENDANT hired PLAINTIFF HAAS or about November 30, 1998. PLAINTIFF HAAS continues to work for DEFENDANT.

32.    DEFENDANT hired PLAINTIFF RAHMAN on or about December 4, 1989.
PLAINTIFF RAHMAN continues to work for DEFENDANT.

33.    PLAINTIFFS were initially designated as a Field Forman and held that title for
several years during the mid-late 90s.  During the early years of while they held this title
PLAINTIFFS received overtime compensation for hours worked in excess of 40 during any
given week.  Beginning in 1998, with no change in job duties whatsoever, Defendant started
to compensate Plaintiff with straight time pay for over-time hours instead of time and a half
pay.

34.    PLAINTIFFS were next given the title of "Team Leader" and held that title from
approximately 2000 to 2001. Although there was no change in PLAINTIFFS' duties when
DEFENDANT changed their title from Field Foreman to "Team Leader," PLAINTIFFS no
longer received overtime compensation in the form of straight pay or time and a half as
Human Resources told PLAINTIFFS that they were "exempt" because they were "salaried."

35.    From approximately 2001-2005, DEFENDANT labeled PLAINTIFFS with the
title "Turf Team Leader."  There were no changes in PLAINTIFFS job duties from their time
as Field Foreman as a result of the title change.   DEFENDANT did not pay PLAINTIFFS
any wage for overtime hours worked while labeled with this title.

36.    Commencing in approximately 2005, DEFENDANT labeled PLAINTIFFS as
"Local Manager."  There were no changes in PLAINTIFFS job duties as a Field Foreman as
a result of the 2005 title change.    "Local Manager" is the current title that PLAINTIFFS
hold. DEFENDANT has not paid PLAINTIFFS any wage for overtime hours worked during
the entire time they have held this title.

37.     As part of VERIZON's business, DEFENDANT employs a fleet of employees within the I&M Division with the "Local Manager" job title whose primary job duty is, in reality, relaying information back and forth between technicians and management.  Local Managers, such as the PLAINTIFFS, are primarily engaged in core, day-to-day business activity of VERIZON to relay information back and forth between the technicians and the management, acting as information liaisons between the parties.   In addition, these employees also engage in clerical tasks such as paperwork, and performing safety and quality inspections (spot checks) with a detailed checklist provided by the DEFENDANT.

38.     PLAINTIFFS and other Local Managers spend a large portion of their day driving a Verizon vehicle from location to location throughout a large area of territory spot checking that technicians are at their scheduled location and performing their jobs.  On most days, PLAINTIFFS drive throughout Queens for approximately six hours a day.

39.     DEFENDANT tracks the whereabouts of PLAINTIFFS and other Local Managers by the use of a GPS tracking device in the company vehicles that they drive on a daily basis.  PLAINTIFFS are controlled and monitored by DEFENDANT throughout the business day.

40.     To perform their job duties, the PLAINTIFFS and other Local Managers do not engage in a supervisory role given the constraints placed upon them by company policy. Local Managers do not determine what work was or is to be done by the technicians or in what timeframe.  Work assignments are generated by computer and given directly to the technicians.

41.     Instead, the PLAINTIFFS and other Local Managers may only readjust work assignments in accordance with DEFENDANT'S strict, uniform corporate guidelines.

42.      PLAINTIFFS and other Local Managers arrive at work between approximately 6:00 - 6:45 a.m.

43.      They oversee a crew of technicians who go out into the field and perform installation and maintenance for DEFENDANT'S customers.

44.      Each morning PLAINTIFFS and other Local Managers obtain computer printed schedules created by DEFENDANTS via electronic delivery regarding each of the approximate 20-25 field technicians that they oversee.

45.      PLAINTIFFS and other Local Managers hand out the schedules to the technicians and take attendance.

46.      After the technicians leave the premises to begin their scheduled appointments, PLAINTIFFS and other Local Managers then visit the individual technicians at their job sites to assure that each technician is on site and performing his/her job.

47.      PLAINTIFFS and other Local Managers are required to physically maintain a specific area of the garage they work out of in a clean and organized manner.  This portion of their job requirements involves cleaning, throwing out trash, and physically moving items in the garage.

48.      PLAINTIFFS and other Local Managers are required to clean trucks that are utilized by technicians if technicians fail to properly do so.  Additionally, PLAINTIFFS and other Local Managers routinely are required to clean the fleet of trucks for inspection by their superiors.

49.      PLAINTIFFS and other Local Managers job duties continue until every technician they are assigned has finished their work for the day.

50.     Technicians that work under the PLAINTIFFS and other Local Managers work until all hours of the evening often as late as midnight.

51.     PLAINTIFFS and other Local Managers are mandated to remain on the job and not permitted to sign off for the eveninguntil the last technician has finished his scheduled jobs.  PLAINTIFFS are responsible for the technicians in their crews until the last technician has safely returned to the garage.

52.     PLAINTIFFS and other Local Managers are required to email their Director at the time the last job is finished by the last technician and acknowledge that all technicians are clocked out.

53.     Furthermore, the PLAINTIFFS and other Local Managers may only perform required safety and quality inspections of the technicians in the field using a pre-written checklist.  These inspections do not involve subjective assignments, but only discrete yes-or-no answers and the Local Managers are not involved in writing or altering the checklists.

54.     In addition, the circumstances of these job duties require that the PLAINTIFFS and other Local Managers regularly remain on-call during off hours in the evenings and on weekends.

55.     PLAINTIFFS and other Local Managers also did not and do not have a distinct role in training the technicians or determining what training they are to receive. Technicians receive their primary training from DEFENDANT'S training center as well as online computer programs.

56.     PLAINTIFFS and other Local Managers also do not determine the tools and equipment to be used on the job. Materials are either provided directly by DEFENDANT or

PLAINTIFFS and other the Local Managers are instructed from upper management what items to order from suppliers subject to DEFENDANT'S approval.

57.     Lastly, PLAINTIFFS have not hired or fired any employee of DEFENDANTS nor do they have the authority to hire, fire, or promote technicians, determine their pay rates or benefits, or give raises - they are unable to make employment-related, personnel decisions or provide any real input into those decisions.

58.     Consequently, PLAINTIFFS and other Local Managers do not have the authority to decide whether or not a technician will be disciplined for an infraction.   Disciplinary decisions are made by the Human Resources department, PLAINTIFFS' Director, or dictated by company policies, including the technicians' collective bargaining agreement.    If the PLAINTIFFS or other Local Managers observe a technician in the field violating a company policy, Local Managers have no authority to take any meaningful action on behalf of DEFENDANT. Rather, the PLAINTIFFS and other Local Managers interview the technician and fill in a pre-printed report which they then deliver to their Director.   The Director ultimately addresses any violation.

59.     Overall, the PLAINTIFFS and other Local Managers' recommendations are given little, if any, weight on all the above issues.  As a result, the PLAINTIFFS and other Local Managers are engaged in a type of work that requires no exercise of independent judgment or discretion as to any matter of significance and they have been told explicitly by their superiors that they are managers in title only.

60.     DEFENDANT sets the work schedule for PLAINTIFFS and other Local Managers.   Generally, the PLAINTIFFS and Class Members work twelve (12) to fourteen (14) hours each workday.

61.     Contrary to DEFENDANT'S contention that PLAINTIFFS are an "exempt" & "salaried" employees, DEFENDANT has a policy which may result in deductions of wages from PLAINTIFFS for partial days of personal or sick leave.

62.     DEFENDANT AKHLAQUR has been told to take unpaid time off when he did not have banked time available.

63.     DEFENDANT requires that PLAINTIFFS and Class Action PLAINTIFFS begin work at 6:30 a.m. daily and require them to stay until whatever time the last work crews' finish for the day.  DEFENDANT mandates that PLAINTIFFS cannot leave before 5 p.m.

64.     PLAINTIFFS work until at least 7 p.m. every evening and very often work as late as midnight.

65.     The PLAINTIFFS and Class Members additionally work at least three weekend days every month.. Often, they work as many as five weekend days per month.  On those weekend days they work approximately twelve (12) hours per day.

66.     Over the last six years the PLAINTIFFS have consistently worked at least 100 hours of overtime every month.

67.     The technicians in the crews overseen by PLAINTIFFS are paid overtime and their daily hours are tracked electronically every day.  By use of a hand-held device the technicians "punch" in and out.    Time records will prove that the technicians in PLAINTIFFS' crews work greater than 100 hours of over-time every month.  It is clear that PLAINTIFFS start work prior to the first technician arriving and end their day after the last technician.  This is DEFENDANTS policy.  Thus, it is possible to calculate very accurately the amount of hours PLAINTIFFS have worked without pay.

68.    In addition, PLAINTIFFS have records that document their hours worked for many of the weeks during the time period the PLAINTIFFS were unpaid.  DEFENDANTS require PLAINTIFF to file documentation of their hours so DEFENDANTS should be able to produce all of these records. As just one example of the amount of over-time worked and documented by PLAINTIFFS, during the week ending November 16, 2012, Plaintiff RAHMAN worked the following hours on the following days:

Sunday, 13 hours;

Monday,  13 hours;

Tuesday, 13 hours;

Wednesday, 13 hours;

Thursday, 14.5 hours;

Friday, 13 hours;

Saturday, 13 hours.

69.    Thus, PLAINTIFF RAHMAN worked 92.5 hours that week, 52.5 of which were above the 40 hour work week that DEFENDANTS required of all employees.  PLAINTIFF RAHMAN waspaid no hourly wage whatsoever for the 52.5 hours of over-time. PLAINTIFF  RAHMAN's  hours  that  week  are  documented  on  DEFENDANT'S "NORTHEAST Management Overtime Approval and Calculation Worksheet" Form.

70.    As an example of the hours worked by PLAINTIFF HAAS and unpaid by VERIZON, PLAINTIFF HAAS' wage statement from Defendant for the wage statement dated September 27, 2013 documents PLAINTIFF HAAS worked 8 hours over-time which is listed as "unpaid overtime" on the wage record. DEFENDANT acknowledged only a 6th day of work for PLAINTIFF HAAS that week and did not record the hours above 8 for that day

14

or for any other day that week. PLAINTIFF HAAS worked 12 hours per day every day that week and an additional 12 hours on the 6th day of work. Thus, during that week PLAINTIFF HAAS worked 32 hours of over-time for which he was paid no wage whatsoever.

71.  The PLAINTIFFS' pay rate is designated as hourly on their wage statements. PLAINTIFF HAAS'S hourly rate is $51.24 – per the DEFENDANT. Thus, PLAINTIFF'S overtime compensation rate is $76.86.

72.  Thus, PLAINTIFF HAAS is owed back wages for overtime pay at the rate of approximately $92,232.00 per year for last six years.

73.  PLAINTIFF AKHLAQUR'S hourly rate is $49.84per the DEFENDANT.

74.  Thus, PLAINTIFF AKHLAQUR is owed back wages for overtime pay at the rate of approximately $74.76 per year for last six years.

## THE CONDUCT

75.  The primary duty required of the Local Managers is executed by the Local Managers through the performance of non-exempt labor within a defined skill set.

76.  Although the PLAINTIFFS and the other Local Managers primarily performed non-exempt labor, DEFENDANT instituted a blanket classification policy, practice and procedure by which all of these Local Managers were classified as exempt from overtime compensation. By reason of this uniform exemption practice, policy and procedure applicable to the PLAINTIFFS and the other Local Managers who performed this non-exempt labor, DEFENDANT committed violations of the FLSA and NYLL by engaging in a company-wide policy, practice and procedure which thereby caused PLAINTIFFS to be wrongfully deemed exempt from overtime.

77. Other than the initial classification of the PLAINTIFFS and the other Local Managers as exempt from being paid overtime based on job title alone, DEFENDANT had no business policy, practice, or procedure to ensure that the PLAINTIFFS and the other Local Managers were properly classified as exempt, and in fact, as a matter of corporate policy erroneously and unilaterally classified all the Class Members as exempt based on job title alone.

78. During their employment with DEFENDANT, the PLAINTIFFS and the other Local Managers, primarily performed non-exempt job duties, but were nevertheless classified by DEFENDANT as exempt from overtime pay and worked more than eight hours a day, forty hours a week, and/or on the seventh consecutive day of a workweek.

79. PLAINTIFFS and the other Local Managers employed by DEFENDANT were not primarily engaged in work of a type that was or now is directly related to the management or general business operations of the employer's customers, when giving these words a fair but narrow construction. Thus, PLAINTIFFS are not exempt under the Executive or Administrative Exemptions.

80. PLAINTIFFS and the other Local Managers employed by DEFENDANT were also not primarily engaged in work requiring knowledge of an advanced type in a field or science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, but rather their work primarily involves the performance of routine mental, manual, and/or physical processes. Thus, PLAINTIFFS are not exempt under the Professional Exemption.

81. PLAINTIFFS and the other Local Managers employed by DEFENDANT were also not primarily engaged in work that is predominantly intellectual and varied in character,

but rather is routine mental, manual, mechanical, and/or physical work that is of such character that the output produced or the result accomplished can be standardized in relation to a given period of time.

82. Although PLAINTIFFS were compensated above $100,000.00 in 2012 & 2013 when taking into account all compensation, including bonuses, paid to PLAINTIFFS, Plaintiffs do not qualify as exempt under the Highly Compensated Worker Exemption. PLAINTIFFS primary duty includes performing manual work which would negate a claim of exemption under the Highly Compensated Worker Exemption.

83. The work of a Local Manager of DEFENDANT was work wherein the PLAINTIFS and the other Local Managers were primarily engaged in the day-to-day business of VERIZON to relay information back and forth between the technicians and management acting as information liaisons between the parties in strict accordance with the protocols, policies and operations established by DEFENDANT.

84. The fact that the work of these employees may have involved work using a specialized skill set or technical abilities in a defined technical area does not mean that the PLAINTIFFS or the other Local Managers employed by DEFENDANT are exempt from overtime wages. Indeed, the exercise of discretion and independent judgment must be more than the use of a highly technical skill set described in a manual or other sources.

85. The work that the PLAINTIFFS and the other Local Managers employed by DEFENDANT was and are primarily engaged in is performing day-to-day communication and clerical activities is the work that is required to be performed as part of the day-to-day-business activity of DEFENDANT. As a result, the PLAINTIFFS and the other Local Managers employed by DEFENDANT were primarily engaged in work that falls on the production

17

side of the administrative/production worker dichotomy and they should have been properly classified as non-exempt employees.

86. The primary job duty of the PLAINTIFFS and the other Local Managers employed by DEFENDANT was and is relaying information back and forth between the technicians and management.  Local Managers are classified as exempt from overtime and related laws by DEFENDANT, however, these employees do not have managerial duties or authority and are therefore managers in name only.  Local Managers perform these ongoing day-to-day communication and clerical activities because they have a minimal role in supervising their technicians and have not authority to make employment-related decisions.  Furthermore, the Local Managers are tightly controlled by company policy and by their supervisors, do no exercise discretion or independent judgment as to matters of significance, and their job duties are not directly related to DEFENDANT'S management policies or general business operation.

87. DEFENDANT also failed to provide and still fails to provide the PLAINTIFFS and the other Local Managers with a wage statement in writing that accurately sets forth gross wages earned, all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the PLAINTIFFS and the other Local Managers.  This conduct violates the FLSA and NYLL.  The wage statement also does not accurately display anywhere the PLAINTIFFS and the other Local Managers' overtime hours and applicable rates of overtime pay for the pay period.

## FIRST CLAIM AGAINST DEFENDANT
## ON BEHALF OF PLAINTIFF AND ALL FLSA PLAINTIFFS
*(Overtime Violations of the FLSA)*

88.     PLAINTIFFS and FLSA PLAINTIFFS repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

89.     At all relevant times, DEFENDANT are or were "employers" within the meaning of the FLSA.

90.     At all relevant times, PLAINTIFFS and FLSA PLAINTIFFS are or were "employees" within the meaning of the FLSA.

91.     At all relevant times, PLAINTIFFS and FLSA PLAINTIFFS are or were "employed" by DEFENDANT within the meaning of the FLSA.

92.     At all relevant times, DEFENDANT are or were an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA during each workweek of PLAINTIFFS and FLSA PLAINTIFFS' employment.

93.     At all relevant times, PLAINTIFFS and FLSA PLAINTIFFS are not or were not exempt from the provisions of the FLSA.

94.     DEFENDANT failed to compensate PLAINTIFFS and FLSA PLAINTIFFS for hours worked in excess of forty hours per week at the statutorily required rate of one-and-a-half times their regular rate of pay.

95.     These practices were willful and lasted for the duration of all relevant time periods.  These practices are in violation of FLSA 29 U.S.C. § 207(a) &29 U.S.C. § 206(a).

## SECOND CLAIM AGAINST DEFENDANT
## ON BEHALF OF PLAINTIFFS AND ALL FLSA AND CLASS ACTION PLAINTIFFS
*(For Violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219)*
*Federal Minimum Wage Violations*

96.     PLAINTIFFS, FLSA PLAINTIFFS, and Class Action PLAINTIFFS repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

97.     PLAINTIFFS, FLSA PLAINTIFFS, and Class Action PLAINTIFFS were required to work without being compensated at the minimum hourly rate of pay for all hours PLAINTIFFS and Class Action PLAINTIFFS worked in excess of forty hours per week

98.     DEFENDANT failed to pay the PLAINTIFFS and Class Action PLAINTIFFS any wage whatsoever for the hours that PLAINTIFFS and Class Action PLAINTIFFS worked in excess of forty hours per week.

99.     This practice was willful and lasted for the duration of all relevant time periods.

100.    This practice is in violation of the FLSA.

## THIRD CLAIM AGAINST DEFENDANT
## ON BEHALF OF PLAINTIFF AND ALL CLASS ACTION PLAINTIFFS
*(Unpaid Overtime under the NYLL and NYCCRR)*

101.    PLAINTIFFS and Class Action PLAINTIFFS repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

102.    N.Y. Lab. Law § 160 and NYCCRR tit. 12, § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rate for any hours worked exceeding forty in a workweek.

103. At all relevant times, all DEFENDANT are or were "employers" within the meaning of NYLL.

104. At all relevant times, PLAINTIFFS and Class Action PLAINTIFFS are or were "employees" within the meaning of the NYLL.

105. At all relevant times, PLAINTIFFS and Class Action PLAINTIFFS are not or were not exempt from the provisions of the NYLL.

106. DEFENDANT failed to compensate PLAINTIFFS and Class Action PLAINTIFFS for hours worked in excess of (40) forty hours per week at the statutorily required rate of one-and-a-half (1.5) times their regular rate of pay.

107. These practices were willful and lasted for the duration of all relevant time periods. These practices are in violation of Labor Law §§ 650 *et. seq.* PLAINTIFF and Class Action PLAINTIFFS are entitled to liquidated damages, interest, and attorney's fees for the DEFENDANT'S violation of the NYLL's and NYCCRR's overtime provisions.

## FOURTH CLAIM AGAINST DEFENDANT
## ON BEHALF OF PLAINTIFFS AND ALL FLSA AND CLASS ACTION PLAINTIFFS
*(For Violation of NYLL §§ 650 et seq.)*
*New York State Minimum Wage Violations*

108. PLAINTIFFS and Class Action PLAINTIFFS repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

109. PLAINTIFFS and Class Action PLAINTIFFS were required to work without being compensated any minimum hourly rate of pay for any hours worked in excess of forty hours.

110. This practice was willful and lasted for the duration of all relevant time periods.

111. This practice is in violation of NYLL §§ 650 *et seq.*

## SIXTH CLAIM AGAINST DEFENDANT
## ON BEHALF OF PLAINTIFFS AND CLASS ACTION PLAINTIFFS
*(Failure to Furnish Proper Wage Statements in Violation of NYLL)*

112.   PLAINTIFFS and Class Action PLAINTIFFS repeat, reiterate and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

113.   N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

114.   At all relevant times, all DEFENDANT are or were "employers" within the meaning of the Labor Law.

115.   At all relevant times, PLAINTIFFS and Class Action PLAINTIFFS are or were "employees" within the meaning of the Labor Law.

116.   DEFENDANT recorded PLAINTIFFS' work hours as (40) Forty hours per week regardless of the amount of hours PLAINTIFFS worked.

117.   As described above, the DEFENDANT willfully failed to furnish PLAINTIFFS with accurate wage statements containing all of the criteria required under the NYLL.

118.   Pursuant to N.Y. Lab. Law § 198(1-d), the DEFENDANT are liable to PLAINTIFFS in the amount of $100 for each failure of this sort.

119.   For their failures, besides the statutory penalties, the DEFENDANT are also liable to PLAINTIFFS for liquidated damages and attorneys' fees.

## SEVENTH CLAIM AGAINST DEFENDANT
## ON BEHALF OF PLAINTIFFS AND CLASS ACTION PLAINTIFFS
Violation of THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974
(ERISA)

120.   PLAINTIFFS and Class Action PLAINTIFFS repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

121.   At all relevant times PLAINTIFFS and Class Action PLAINTIFFS have been participants in DEFENDANT'S Retirement Plan.

122.   As a consequence of DEFENDANT'S failure to pay PLAINTIFFS and Class Action PLAINTIFFS the proper wages and overtime compensation to which they are and were entitled, PLAINTIFFS and Class Action PLAINTIFFS have lost valuable benefits in connection with the company retirement plan.

123.   PLAINTIFFS and other Local Managers were cut-off from future Pension increases as of 2010 due to a decision by the DEFENDANT to not include the exempt, managerial staff in the Pension growth beyond a certain date in 2010.

124.   In addition, a policy was instituted that Local Managers who did not have (15) years of service as of the date of cut-off in 2010 would receive no pension whatsoever. This was not the case for non-exempt, non-managerial employees of DEFENDANT who continue to accrue pension benefits and who were not cut-off from a pension if they did not have (15) years of service by the cut-off date in 2010.

125.   As a consequence of DEFENDANT'S incorrect classification of PLAINTIFFS and Class Action PLAINTIFFS as "exempt", PLAINTIFF and Class Action PLAINTIFFS have lost valuable benefits in connection with the company retirement plan.

## DEMAND FOR A JURY TRIAL

126.   PLAINTIFFS, FLSA PLAINTIFFS and Class Action PLAINTIFFS demand a trial by jury on all issues and claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS demand judgment against the DEFENDANT as follows:

g) A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States and New York State laws.

h) An order restraining DEFENDANT from any retaliation against PLAINTIFF for participation in any form in this litigation;

i) All damages that PLAINTIFF has sustained as a result of the DEFENDANT'S conduct, including all unpaid wages and any short fall between wages paid and those due under the law that PLAINTIFF would have received but for the DEFENDANT'S unlawful payment practices;

j) Liquidated damages and any other statutory penalties as recoverable under the FLSA and New York Labor Law;

k) Awarding PLAINTIFF costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

l) Pre-judgment and post-judgment interest, as provided by law; and

m) Granting PLAINTIFF other and further relief as this Court finds necessary and

proper.

Dated: November 12, 2013
Great Neck, New York

Respectfully submitted,
**THE LAW OFFICE OF**
**BORRELLI & ASSOCIATES, PLLC**
*Attorneys for PLAINTIFF*
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
(516) 248-5550

KELLY A. MAGNUSON, ESQ. (KC0234)
MICHAEL J. BORRELLI, ESQ. (MB8533)

25