UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 13-cv-8130 (RA) (JLC)

WILLIAM HAAS AND AKHLAQUR RAHMAN on
behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

VERIZON NEW YORK, INC.

Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE
PURSUANT TO 29 U.S.C. § 216(b)**

Kelly A. Magnuson, Esq.
Michael J. Palitz, Esq.
Michael J. Borrelli, Esq.
Alexander T. Coleman, Esq.
BORRELLI & ASSOCIATES, P.L.L.C
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
(516) 248-5550
(516) 248-6027

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

I.   PROCEDURAL HISTORY AND PERTINENT FACTS .................................................. 1

    A. The Nature of Plaintiffs' Legal Claims .................................................... 1

    B. Statement of Facts .................................................................................. 2

    C. The Deposition Testimony of Defendant's Corporate Representatives, the
       Plaintiffs, and the Documentary Evidence Demonstrate that Installation and
       Maintenance Local Managers in New York are Similarly Situated .......................... 3

        *1) The Duties and Responsibilities Are the Same for All LMs* .............................. 3

        *2) Verizon Creates a Uniform Set of Training Materials for LMs* ........................ 6

        *3) Verizon Operates Pursuant to the Same Corporately Derived Policies* ............ 7

        *4) The Compensation Method and Exempt Classification Are the Same
           for All LMs* ................................................................................ 10

II.   ARGUMENT ......................................................................................... 10

    A. Conditional Certification Under the FLSA ............................................. 10

    B. Plaintiffs' Burden is "Minimal" at the Notice Stage ................................ 12

    C. Plaintiffs' Claims Should Be Conditionally Certified............................... 16

        *1) The Local Managers Are Similarly Situated for Notice to Issue* ...................... 16

        *2) Courts Do Not Make Factual Determinations or Weigh Evidence at the
           Conditional Certification Stage* ........................................................ 18

    D. The Court Should Compel Verizon to Produce LMs' Contact Information........... 19

    E. The Court Should Order Verizon to Post Notice at LMs' Work Locations……....20

CONCLUSION…………………………………………………………………………………….21

# TABLE OF AUTHORITIES

## Cases

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
648 F. Supp. 2d 484 (S.D.N.Y. 2009)........................................................................ 18

*Aros v. United Rentals, Inc.*,
269 F.R.D. 176 (D. Conn. 2010)……………………………………………………...13

*Braunstein v. Eastern Photographic Laboratories, Inc.*,
600 F.2d 335 (2d Cir. 1978)........................................................................................ 11

*Costello v. Kohl's Illinois, Inc.*,
2014 WL 4377931 (S.D.N.Y. Sept. 4, 2014) .............................................................. 17

*Craig v. Rite Aid Corp.*,
2009 WL 4723286 (M.D. Pa. Dec. 9, 2009) ......................................................... 17, 19

*Cruz v. Hook-Superx, LLC*,
2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) .............................................................. 18

*Cunningham v. Elec. Data Sys. Corp.*,
754 F. Supp. 2d 638 (S.D.N.Y. 2010)..................................................................... 12, 15

*Damassia v. Duane Reade, Inc.*,
2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) ........................................................ *passim*

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) .................................................................................. 7

*Doucoure v. Matlyn Food, Inc.*,
554 F. Supp. 2d 369 (E.D.N.Y. 2008)……………………………………………...13

*Fang v. Zhuang*,
2010 WL 5261197 (E.D.N.Y. Dec. 11, 2010)……………………...………………...13

*Fasanelli v. Heartland Brewery, Inc.*,
516 F. Supp. 2d 317 (S.D.N.Y. 2007)......................................................................... 13

*Ferreira v. Modell's Sporting Goods, Inc.*,
2012 WL 2952922 (S.D.N.Y. July 16, 2012) ........................................................ 16, 17

*Francis v. A & E Stores, Inc.*,
2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) ............................................................. 18

*Goodman v. Burlington Coat Factory*,
2012 WL 5944000 (D.N.J. Nov. 20, 2012) .................................................................................... 17

*Gortat v. Capala Bros., Inc.*,
2010 WL 1423018, (E.D.N.Y. Apr. 9, 2010) ......................................................................... 12, 15

*Gjurovich v. Emmanuel's Marketplace, Inc.*,
282 F. Supp. 2d 101 (S.D.N.Y. 2003)................................................................................13, 15

*Guttentag v. Ruby Tuesday Inc.*,
2013 WL 2602521 (S.D.N.Y. June 11, 2013) .......................................................................... 12

*Harhash v. Infinity West Shoes, Inc.*,
2011 WL 4001072 (S.D.N.Y. Aug. 24, 2011) ........................................................................... 20

*Harper v. GEICO*,
826 F. Supp. 2d 454 (E.D.N.Y. 2011) ....................................................................................... 17

*Heitzenrater v. Officemax, Inc.*,
2014 WL 448502 (W.D.N.Y. Feb. 4, 2014) .............................................................................. 17

*Hernandez v. Merrill Lynch & Co., Inc.*,
2012 WL 1193836 (S.D.N.Y. Apr. 6, 2012)............................................................................. 20

*Hoffman v. Sbarro, Inc.*,
982 F. Supp. 249 (S.D.N.Y. 1997) ............................................................................................ 11

*Hoffman-La Roche v. Sperling*,
493 U.S. 165 (1989)................................................................................................................ *passim*

*Holbrook v. Smith & Hawken, Ltd.*,
246 F.R.D. 103 (D. Conn. 2007)................................................................................................ 14

*Ibea v. Rite Aid Corp.*,
2012 WL 75426, (S.D.N.Y. Jan. 09, 2012) .............................................................................. 17

*In re Penthouse Executive Club Comp. Litig.*,
2010 WL 4340255 (S.D.N.Y. Oct. 27, 2010) ........................................................................... 18

*Indergit v. Rite Aid Corp.*,
2010 WL 2465488 (S.D.N.Y. June 15, 2010) ..................................................................... 15, 18

*Iriarte v. Redwood Deli & Catering, Inc.*,
2008 WL 2622929 (E.D.N.Y. June 30, 2008) .......................................................................... 13

*Jacob v. Duane Reade, Inc.*,
2012 WL 260230 (S.D.N.Y. Jan. 27, 2012) ........................................................... 15, 18, 20

*Khalil v. Original Homestead Rest.*,
2007 WL 7142139 (S.D.N.Y. Aug. 9, 2007) ........................................................... 13

*Laroque v. Domino's Pizza, LLC*,
557 F. Supp. 2d 346 (E.D.N.Y. 2008) ........................................................... 14

*Marcus v. Am. Contract Bridge League*,
254 F.R.D. 44 (D. Conn. 2008) ........................................................... 13

*Masson v. Ecolab, Inc.*,
2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ........................................................... 14

*McEarchen v. Urban Outfitters, Inc.*,
2014 WL 2506251 (E.D.N.Y. June 3, 2014) ........................................................... 16, 19

*Morgan v. Family Dollar Stores, Inc.*,
551 F.3d 1233 (11th Cir. 2008) ........................................................... 12, 13

*Myers v. The Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ........................................................... *passim*

*Pippins v. KPMG LLP*,
2012 WL 19379 (S.D.N.Y. Jan 3, 2012) ........................................................... 14, 20

*Puglisi v. TD Bank, N.A.*,
998 F. Supp. 2d 95 (E.D.N.Y. 2014) ........................................................... 17

*Raimundi v. Astellas US LLC*,
2011 WL 5117030 (S.D.N.Y. Oct. 27, 2011) ........................................................... 18

*Raniere v. Citigroup, Inc.*,
827 F. Supp. 2d 294 (S.D.N.Y. 2011) ........................................................... 10, 15

*Ravenell v. Avis Budget Car Rental, LLC*,
2010 WL 2921508 (E.D.N.Y. July 19, 2010) ........................................................... 12, 17, 18

*Reyes v. Altamarea Group, LLC*,
2010 WL 5508296 (S.D.N.Y. Dec. 22, 2010) ........................................................... 16

*Rubery v. Buth-Na-Bodhaige, Inc.*,
569 F. Supp. 2d 334 (W.D.N.Y. 2008) ........................................................... 14, 19

*Sanchez v. El Rancho Sports Bar Corp.*,
2014 WL 1998236 (S.D.N.Y. 2014) ................................................................................ *passim*

*Scholtisek v. Eldre Corp.*,
 229 F.R.D. 381 (W.D.N.Y. 2005) …….………………………………………………………...15

*Stevens v. HMSHost Corp.*,
2012 WL 4801784 (E.D.N.Y. Oct. 10, 2012) .............................................................. 17

*Trawinski v. KPMG LLP*,
2012 WL 6758059 (S.D.N.Y. Mar. 19, 2012) ............................................................ 17

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
767 F. Supp. 2d 445 (S.D.N.Y. 2011) ........................................................................ 20

*Winfield v. Citibank, N.A.*,
843 F. Supp. 2d 397 (S.D.N.Y. 2012) ........................................................................ 18

*Youngblood v. Family Dollar Stores, Inc.*,
2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ................................................................ 7

*Zaniewski v. PRRC Inc.*,
848 F. Supp. 2d 213 (D. Conn. 2012) ........................................................................ 18

*Zivali v. AT&T Mobility LLC*,
646 F. Supp. 2d 658 (S.D.N.Y. 2009) ........................................................................ 12

## **Statutes**

29 U.S.C. § 216(b) ................................................................................................ *passim*

29 U.S.C. § 256(b) ...................................................................................................... 11

## **Rules**

FED. R. CIV. P. 23 .................................................................................................. *passim*

FED. R. CIV. P. 30(b)(6) ......................................................................................... *passim*

## **Other Authorities**

ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE
§ 1807 (3d ed. 2005) .................................................................................................. 10

Plaintiffs William Haas and Akhlaqur Rahman, along with forty-four other Installation and Maintenance Local Managers ("LMs") who have joined this case from throughout New York state as "Opt-ins" (all, collectively, as "Plaintiffs"), submit this memorandum in support of their Motion for Conditional Certification and Notice pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA"), on behalf of all LMs employed by Defendant Verizon New York, Inc. ("Verizon") in the state of New York who were classified as exempt employees at any time from November 17, 2011, to the present (the "Collective Action Period").[1]

This Court should grant Plaintiffs' motion for this archetypical FLSA collective action so that additional current and former LMs can be notified of their right to participate in this lawsuit. Such an Order would be in line with the overwhelming precedent in this Court, this District, and this Circuit granting conditional certification motions, including in misclassification cases, after a plaintiff has made a "modest factual showing" to satisfy his or her "lenient burden." *Myers v. The Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) ("*Hertz*"); *Sanchez v. El Rancho Sports Bar Corp.*, 2014 WL 1998236, at *1 (S.D.N.Y. 2014) (Abrams, *J.*) ("Plaintiffs' burden [for conditional certification] at this stage is minimal.").

## I.   PROCEDURAL HISTORY AND PERTINENT FACTS

### A.   The Nature of Plaintiffs' Legal Claims

On November 14, 2013, Plaintiffs Haas and Rahman filed a Complaint against Verizon alleging violations of the FLSA and the New York Labor Law on behalf of themselves and similarly situated employees pursuant to 29 U.S.C. § 216(b) and FED. R. CIV. P. 23. Complaint (Dkt. 1).  Verizon answered the Complaint on January 21, 2014. Answer (Dkt. 11).  Since then,

---

[1] This case is related to a similar action pending in this court for the Defendant's misclassification of Construction Local Managers. *Brancato v. Verizon New York, Inc*., 14-cv-3793 (RA) (JLC).  The parties have just started discovery in *Brancato*.

Plaintiffs and forty-four more individuals – who worked for Verizon as LMs throughout New York state[2] – have filed consents to join this litigation pursuant to 29 U.S.C. § 216(b).  Pursuant to the Court's May 6, 2014 Scheduling Order (Dkt. 22), conditional certification discovery followed, which consisted of a limited Rule 30(b)(6) deposition, the depositions of the Plaintiffs, two of the Plaintiffs' supervisors, and a non-party, along with first-stage written discovery and document production.

### B.      Statement of Facts

Verizon "provides domestic wireline telecommunications services to residential and business customers located in New York." Amended Answer (Dkt. 92) at ¶ 7.  The executives at Verizon's corporate headquarters direct the administrative and business functions for the entire company, including, as specifically relevant to this motion, the classification of employees at Verizon.[3] Sorrentino (Ex. 5) at 41-43, 77-78, 136; Lashley (Ex. 6) at 24-25, 36-37, 93, 154-55, 212-13.

The forty-six Plaintiffs are among the current and former employees who were employed by Verizon as Installation and Maintenance LMs.  Plaintiffs allege that Verizon violated the FLSA and NYLL by willfully failing to pay them and other similarly situated New York LMs overtime pay for all hours worked in excess of 40 hours in a workweek. Complaint (Dkt. 1) at ¶¶ 1, 10-13.  Verizon admits that it did not pay Plaintiffs and all LMs in New York overtime, but

---

[2] The forty-six Plaintiffs presently before the Court worked as LMs in Auburn, Babylon, Bellmore, Bohemia, Buffalo, Carmel, Commack, Elmsford, Farmingdale, Freeport, Garden City, Geneva, Greenvale, Hempstead, Herkemer, Hewlett, Hicksville, Holbrook, Hornell Horseheads, Lockport, Millersport, Mount Kisco, New Hyde Park, Newark, Peekskill, Port Chester, Potsdam, Roslyn, Utica, Vestal, Wantagh, White Plains, and Yaphank, as well as at several locations throughout the Bronx, Brooklyn, Manhattan, and Queens and in various parts of Alleghany, Broome, Cortland, Dutchess, Jefferson, Lewis, Onondaga, Oswego, Schemung, Schuyler, Steuben, Tioga, Tompkins, and Yates counties.

[3] Magnuson Declaration deposition and declaration exhibits throughout this motion will be cited by last name, exhibit number, and relevant page number (*e.g.*, "Sorrentino (Ex. 5) at ___"). For document citations, leading zeroes are omitted from bates-stamp numbers.

claims that it is not required to do so because LMs were properly classified as exempt from the FLSA and NYLL. Sorrentino (Ex. 5) at 131-33; Amended Answer (Dkt. 92) at ¶ 10.

C.     **The Deposition Testimony of Defendant's Corporate Representatives, the Plaintiffs, and the Documentary Evidence Demonstrate that Installation and Maintenance Local Managers in New York are Similarly Situated**

Verizon maintains a tightly-controlled, multitier reporting structure with multiple levels of managers above the Plaintiffs' position.  Not surprisingly for a large corporation, the reporting structure for LMs is the same across New York.  LMs report to Area Managers who are responsible for a particular geographic area in New York. Sorrentino (Ex. 5) at 16-17.  Area Managers supervise LMs and "oversee all functions within the work center -- within a higher level, generally than the local managers do." Sorrentino (Ex. 5) at 18-19.  Directors supervise Area Managers and are responsible for field operations in a particular division of the company. Sorrentino (Ex. 5) at 17, 24-25; Quadrino (Ex. 7) at 39-40.  Directors have "higher level financial objectives or targets" than Area Managers. Sorrentino (Ex. 5) at 24-25.  "And the director reports either to an executive director, VP, vice-president or president." Sorrentino (Ex. 5) at 17.

*1)     The Duties and Responsibilities Are the Same for All LMs*

During the FED. R. CIV. P. 30(b)(6) deposition, Verizon's witness, Guy Sorrentino, confirmed that New York LMs have the same primary job duties regardless of the garages in which they worked,  who their supervisors are/were, and their hours of work. Sorrentino (Ex. 5) at 83-89.  Given the similarities in job duties, Verizon evaluates LMs using the same corporately derived criteria, regardless of location. Sorrentino (Ex. 5) at 90-93; Lashley (Ex. 6) at 206 (discussing Verizon's metrics and evaluation of productivity criteria).  According to Verizon, "[a]ll evaluation criteria used in the performance review process must be consistent for similar or identical jobs . . . and must directly support the corporate category definition." Verizon

3

Performance Management Plan (Ex. 8) at VZ19799.  LMs' duties are so alike that they can move from location to location throughout New York without receiving any location-specific training. Lashley (Ex. 6) at 218-21; Sorrentino (Ex. 5) at 74-80.  Indeed, LMs' duties are so similar that Verizon maintains a blanket policy not to pay overtime to all New York LMs, because in its view, Verizon deems them all to be exempt. Sorrentino (Ex. 5) at 131-33; Quadrino (Ex. 7) at 57-59.  Verizon is not aware of any individualized factor (*i.e.*, duties performed, location, tenure as a manager, or the LMs' supervisors' managerial styles) considered in classifying all LMs as exempt. Sorrentino (Ex. 5) at 133-40.

The deposition testimony of the two named Plaintiffs and the declarations of thirty-four Opt-in Plaintiffs confirm the similarities of the LMs' duties.  The primary work to which they testified performing included:

- Inspections using Verizon's corporately-created checklists and strict mandates;[4]

- Traveling to customer locations and performing customer service;[5]

---

[4] W. Haas (Ex. 19) at ¶¶ 2-10; A. Rahman (Ex. 20) at ¶¶ 2-8; J. Allette (Ex. 21) at ¶ 8; T. Barnes-Washington (Ex. 47) at ¶ 3; S. Bower (Ex. 22) at ¶ 7-8; J. Caleca (Ex.43) at ¶ 10; D. Connelly (Ex. 23) at ¶ 3; T. Cosom (Ex. 44) at ¶ 3; G. I. Dickens (Ex. 24) at ¶ 16; B. Donnelly (Ex. 25) at ¶ 4; R. Dorah (Ex. 53) at ¶ 6; R. Dossantos (Ex. 26) at ¶ 7; P. Estro (Ex. 27) at ¶ 10; R. Fernez (Ex. 55) at ¶ 10; T. Flood (Ex. 28) at ¶ 3; R. Francis (Ex. 29) at ¶ 10; B. Horowitz (Ex. 30) at ¶ 7; D. Hounsell (Ex. 49) at ¶ 8; S. Hunte (Ex. 31) at ¶ 15; L. Jeffries (Ex. 32) at ¶ 15; C. Jones (Ex. 33) at ¶ 6; J. Kaye (Ex. 34) at ¶ 3; G. Kulikowski (Ex. 35) at ¶ 3; R. Manoyrine (Ex. 45) at ¶ 4; L. Marquino (Ex. 54) at ¶ 7; J. Melchione (Ex. 36) at ¶ 5; C. Moe (Ex. 37) at ¶ 4; J. Petrie (Ex. 46) at ¶ 4; M. Roche (Ex. 38) at ¶ 3; J. Schneider (Ex. 39) at ¶ 14; D. Schrader (Ex. 56) at ¶ 5; M.L. Smith (Ex. 48) at ¶5; J. Tableman (Ex. 40) at ¶ 5; M.Tellis (Ex. 41) at ¶ 3; F. Volpe (Ex. 42) at ¶ 7; K. Wade (Ex. 50) at ¶ 7.

[5] W. Haas (Ex. 19) at ¶ 11; A Rahman (Ex. 20) at ¶10; J. Allette (Ex. 21) at ¶ 8-9; T. Barnes-Washington (Ex. 47) at ¶ 3; S. Bower (Ex. 22) at ¶ 11; J. Caleca (Ex.43) at ¶ 7, 19; D. Connelly (Ex. 23) at ¶ 3-4; T. Cosom (Ex. 44) at ¶ 4; G. I. Dickens (Ex. 24) at ¶ 9; B. Donnelly (Ex. 25) at ¶ 5; R. Dorah (Ex. 53) at ¶ 8; R. Dossantos (Ex. 26) at ¶ 6; P. Estro (Ex. 27) at ¶ 12; R. Fernez (Ex. 55) at ¶ 6; T. Flood (Ex. 28) at ¶ 3; R. Francis (Ex. 29) at ¶9; B. Horowitz (Ex. 30) at ¶ 6; D. Hounsell (Ex. 49) at ¶ 10; S. Hunte (Ex. 31) at ¶ 13; L. Jeffries (Ex. 32) at ¶ 8; C. Jones (Ex. 33) at ¶ 8; J. Kaye (Ex. 34) at ¶ 3; G. Kulikowski (Ex. 35) at ¶ 3; R. Manoyrine (Ex. 45) at ¶ 7; L. Marquino (Ex. 54) at ¶ 8; J. Melchione (Ex. 36) at ¶ 7; C. Moe (Ex. 37) at ¶ 4, 6; J. Petrie (Ex. 46) at ¶ 5; M. Roche (Ex. 38) at ¶ 1; J. Schneider (Ex. 39) at ¶ 10; D. Schrader (Ex. 56) at ¶ 5; M.L. Smith (Ex. 48) at ¶6; J. Tableman (Ex. 40) at ¶ 5; M.Tellis (Ex. 41) at ¶ 3; F. Volpe (Ex. 42) at ¶ 7; K. Wade (Ex. 50) at ¶7.

- Performing physical work such as cleaning garages and trucks, throwing away trash, and moving debris, boxes, and other items;[6]

- Delivering supplies to technicians;[7]

- Gathering work orders that dispatchers created and handing them to technicians;[8] and

- Taking attendance.[9]

---

[6] W. Haas (Ex. 19) at ¶ 13; A Rahman (Ex. 20) at ¶ 11-13; J. Allette (Ex. 21) at ¶ 10; T. Barnes-Washington (Ex. 47) at ¶ 3; S. Bower (Ex. 22) at ¶12; J. Caleca (Ex.43) at ¶ 7; D. Connelly (Ex. 23) at ¶ 4; T. Cosom (Ex. 44) at ¶ 6; G. I. Dickens (Ex. 24) at ¶ 11; B. Donnelly (Ex. 25) at ¶ 5; R. Dorah (Ex. 53) at ¶ 9; R. Dossantos (Ex. 26) at ¶ 11; P. Estro (Ex. 27) at ¶ 9; R. Fernez (Ex. 55) at ¶ 7; T. Flood (Ex. 28) at ¶ 3; R. Francis (Ex. 29) at ¶ 11; B. Horowitz (Ex. 30) at ¶ 8; D. Hounsell (Ex. 49) at ¶ 11; S. Hunte (Ex. 31) at ¶ 11-12; L. Jeffries (Ex. 32) at ¶ 9; C. Jones (Ex. 33) at ¶ 9; J. Kaye (Ex. 34) at ¶ 4; G. Kulikowski (Ex. 35) at ¶ 3; R. Manoyrine (Ex. 45) at ¶ 8; L. Marquino (Ex. 54) at ¶ 9; J. Melchione (Ex. 36) at ¶ 8; C. Moe (Ex. 37) at ¶ 5; J. Petrie (Ex. 46) at ¶ 6; M. Roche (Ex. 38) at ¶ 1; J. Schneider (Ex. 39) at ¶ 11; D. Schrader (Ex. 56) at ¶ 4; M.L. Smith (Ex. 48) at ¶ 5;J. Tableman (Ex. 40) at ¶ 6; M.Tellis (Ex. 41) at ¶ 3; F. Volpe (Ex. 42) at ¶ 8; K. Wade (Ex. 50) at ¶ 6.

[7] W. Haas (Ex. 19) at ¶ 12; A Rahman (Ex. 20) at ¶ 9; J. Allette (Ex. 21) at ¶ 9; T. Barnes-Washington (Ex. 47) at ¶ 3; S. Bower (Ex. 22) at ¶ 10; J. Caleca (Ex.43) at ¶ 7; D. Connelly (Ex. 23) at ¶ 4; T. Cosom (Ex. 44) at ¶ 5; G. I. Dickens (Ex. 24) at ¶ 12; B. Donnelly (Ex. 25) at ¶ 4; R. Dorah (Ex. 53) at ¶ 7; P. Estro (Ex. 27) at ¶ 11; R. Fernez (Ex. 55) at ¶ 6; T. Flood (Ex. 28) at ¶ 3; R. Francis (Ex. 29) at ¶ 9; B. Horowitz (Ex. 30) at ¶ 7; D. Hounsell (Ex. 49) at ¶ 9; S. Hunte (Ex. 31) at ¶ 13; L. Jeffries (Ex. 32) at ¶ 8; C. Jones (Ex. 33) at ¶ 7; J. Kaye (Ex. 34) at ¶ 3; G. Kulikowski (Ex. 35) at ¶ 3; R. Manoyrine (Ex. 45) at ¶ 7; L. Marquino (Ex. 54) at ¶ 7; J. Melchione (Ex. 36) at ¶ 6; C. Moe (Ex. 37) at ¶ 4; J. Petrie (Ex. 46) at ¶ 4; M. Roche (Ex. 38) at ¶ 1; J. Schneider (Ex. 39) at ¶ 10; D. Schrader (Ex. 56) at ¶ 6; M.L. Smith (Ex. 48) at ¶ 5; J. Tableman (Ex. 40) at ¶ 5; M.Tellis (Ex. 41) at ¶ 3; F. Volpe (Ex. 42) at ¶ 7; K. Wade (Ex. 50) at ¶ 7.

[8] W. Haas (Ex. 19) at ¶ 15; A Rahman (Ex. 20) at ¶ 15; J. Allette (Ex. 21) at ¶ 7; T. Barnes-Washington (Ex. 47) at ¶ 3;S. Bower (Ex. 22) at ¶ 7; J. Caleca (Ex.43) at ¶ 6; D. Connelly (Ex. 23) at ¶ 3; G. T. Cosom (Ex. 44) at ¶ 2; I. Dickens (Ex. 24) at ¶ 10; B. Donnelly (Ex. 25) at ¶ 4; R. Dorah (Ex. 53) at ¶ 4; R. Dossantos (Ex. 26) at ¶ 11; P. Estro (Ex. 27) at ¶ 8; R. Fernez (Ex. 55) at ¶ 6; T. Flood (Ex. 28) at ¶ 3; R. Francis (Ex. 29) at ¶ 8; B. Horowitz (Ex. 30) at ¶ 6; D. Hounsell (Ex. 49) at ¶7; S. Hunte (Ex. 31) at ¶ 10; L. Jeffries (Ex. 32) at ¶ 7; J. Kaye (Ex. 34) at ¶ 3; G. Kulikowski (Ex. 35) at ¶ 3; R. Manoyrine (Ex. 45) at ¶ 6; L. Marquino (Ex. 54) at ¶ 3; J. Melchione (Ex. 36) at ¶ 4; C. Moe (Ex. 37) at ¶ 3; J. Petrie (Ex. 46) at ¶ 3; M. Roche (Ex. 38) at ¶ 1; J. Schneider (Ex. 39) at ¶ 9; D. Schrader (Ex. 56) at ¶ 3; M.L. Smith (Ex. 48) at ¶ 5; J. Tableman (Ex. 40) at ¶ 4; M. Tellis (Ex. 41) at ¶ 3; F. Volpe (Ex. 42) at ¶ 7; K. Wade (Ex. 50) at ¶ 6.

[9] Haas (Ex. 1) at 173; Rahman (Ex. 3) at 32; J. Allette (Ex. 21) at ¶ 7; T. Barnes-Washington (Ex. 47) at ¶ 3; S. Bower (Ex. 22) at ¶ 7; J. Caleca (Ex.43) at ¶ 6; D. Connelly (Ex. 23) at ¶ 3; T. Cosom (Ex. 44) at ¶ 2; G. I. Dickens (Ex. 24) at ¶ 10; B. Donnelly (Ex. 25) at ¶ 4; R. Dorah (Ex. 53) at ¶ 4; R. Dossantos (Ex. 26) at ¶ 11; P. Estro (Ex. 27) at ¶ 8; R. Fernez (Ex. 55) at ¶ 6; T. Flood (Ex. 28) at ¶ 3; B. Horowitz (Ex. 30) at ¶ 6; D. Hounsell (Ex. 49) at ¶ 7; S. Hunte (Ex. 31) at ¶ 10; L. Jeffries (Ex. 32) at ¶ 7; J. Kaye (Ex. 34) at ¶ 3; G. Kulikowski (Ex. 35) at ¶ 3; R. Manoyrine (Ex. 45) at ¶ 6; L. Marquino (Ex. 54) at ¶ 3; J. Melchione (Ex. 36) at ¶ 4; C. Moe (Ex. 37) at ¶ 3; J. Petrie (Ex. 46) at ¶ 3; M. Roche (Ex. 38) at ¶ 1; J.

Verizon's witnesses confirmed that all LMs perform these same duties. Lashley (Ex. 6) at 189-90, 220-22, 226; Sorrentino (Ex. 5) at 60-61.  Indeed, Area Manager Colin Lashley testified that LMs' job duties were the same in all garages in which he worked. Lashley (Ex. 6) at 220-22. Lashley's supervisor, Director John Quadrino, endorsed Lashley's very specific testimony as to the LMs' job duties without qualification.  Indeed, Quadrino clearly stated that Colin Lashley, not himself, would be the best source of information about the day-to-day job duties of Local Managers: "As to what they do day-to-day, yeah, [Colin Lashley] has the most interaction with them." Quadrino (Ex. 7) at 27.

In sum, and although this will be a merits matter, Plaintiff Haas captured the essence of what this case is about when he testified that he is basically a robot who follows Verizon's checklists and is micromanaged by his supervisors and Verizon: "it is totally frowned upon if you go outside of what [Verizon's] proscriptions are." Haas (Ex. 1) at 121-22, 209.  Plaintiff Haas's statement comes directly from Director Michael Johnson's words that LMs are "foot soldiers" who must do "exactly what [they are] told." *Id*. at 121.

### 2)      *Verizon Creates a Uniform Set of Training Materials for LMs*

Verizon's Rule 30(b)(6) representative testified that Verizon generates one set of training materials for all LMs in New York, again regardless of location. Sorrentino (Ex. 5) at 74-80. Verizon also trains all LMs in New York using the same corporately derived "E-web" training courses, which are accessible to all LMs. Sorrentino (Ex. 5) at 75-76, 78; Lashley (Ex. 6) at 36-37 (discussing training for safety observations).

---

Schneider (Ex. 39) at ¶ 9; D. Schrader (Ex. 56) at ¶ 3; M.L. Smith (Ex. 48) at ¶ 5; J. Tableman (Ex. 40) at ¶ 4; M.Tellis (Ex. 41) at ¶ 3; F. Volpe (Ex. 42) at ¶ 7; K. Wade (Ex. 50) at ¶ 6.

### 3)   *Verizon Operates Pursuant to the Same Corporately Derived Policies*

Verizon's corporate documents further show how LMs are subject to (what then District Court Judge (now Circuit Judge) Lynch termed) "comprehensive corporate procedures and policies" as to which "the duties of the job are largely defined," *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 159 (S.D.N.Y. 2008), an analysis that the Second Circuit approvingly cited in *Hertz,* 624 F.3d at 549.[10]  Indeed, Verizon strives for consistency.

Verizon created its "Code of Conduct" as one set of corporate rules and procedures that apply to all LMs at Verizon. Sorrentino (Ex. 5) at 43-44.  Employees "may never violate this Code or any company policy even if a supervisor directs you to do so." Code of Conduct (Ex. 9) at VZ433.  Verizon also has "New York Region Work Rules" that "apply across New York to establish Associate standards" and direct the operations of the locations in which New York LMs work. Sorrentino (Ex. 5) at 47; New York Region Work Rules (Ex. 10) at VZ23332-23335.

Verizon also dictates precisely how LMs need to perform their duties with checklists that routinize their job across all locations.  "Work Observation" checklists "are to be part of each supervisor's normal routine and must be documented." Work Observation (Ex. 11) at VZ31188-31202, VZ25784.  LMs make basic observations of whether or not technicians "perform all work procedures in a safe and professional manner." Work Observation (Ex. 11) at VZ31188.  The checklists address just two categories: performance and knowledge. Work Observation (Ex. 11)

---

[10] Judge Lynch's observation in *Damassia* was made in the context of a Rule 23 motion for allegedly misclassified "managers."  Beyond the point that the standard for granting a conditional certification motion under Section 216(b) is far lower than that of a Rule 23 motion, it is not insignificant to note the many ways Verizon has the same set of "comprehensive corporate procedures and policies" that supported the Rule 23 class of managers against Duane Reade, and which are likewise present here. Inasmuch as this kind of evidence would support a Rule 23 motion (in fact, this was the very kind of evidence that courts in this Circuit rely upon in certifying Rule 23 New York Labor Law misclassification cases; *see, Damassia,* 250 F.R.D. at 160; *Youngblood v. Family Dollar Stores, Inc*., 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) (certifying class of store managers)), it necessarily supports granting a first-stage conditional certification motion here, under the undoubtedly more lenient standard.

at VZ31189.   For performance, all LMs simply select "Safe," "At Risk," or "NA."   For knowledge, all LMs select "Yes," "No," or "NA." Work Observation (Ex. 11) at VZ31189.  The criteria assessed are truly elementary such as whether the technician uses knee pads and headlamps, "lifts load primarily with leg muscles," "keeps load close to body," "removes and retains vehicle ignition key when notifying garage mechanic [that the] vehicle is ready for servicing," "wears seatbelt properly," and "uses hand  rails to safely ascend or descend stairs." Work Observation (Ex. 11) at VZ31190, 31194, 31196, 31199.

Similarly, Verizon has "National Operations Quality Inspection" checklists that standardize quality inspections.   All Plaintiffs simply select whether the quality criteria are "OK," "N/A," or a deviation from Verizon's policy. Inspection Checklists (Ex. 13) at Haas418-421.  The criteria are as simplistic as the "Work Observation" categories and include whether the technician has configured customers' remote controls, whether the technician reported that the job is completed on the tablet, and whether the technician's vehicle is clean and organized. (Ex. 13) at Haas419-424.   Verizon's other inspection checklists are just as straightforward.   The vehicle inspection form asks the LMs to check if the "vehicle is clear of any unauthorized stickers" and if the "windshield wipers and washers operated correctly." (Ex. 13) at Haas427-430.

Verizon likewise created other documents that demonstrate the top-down corporate control of the LM job.  Verizon has a "Verizon Incident Prevention Plan" that directs precisely how every LM must handle safety matters and inspect vehicles. Sorrentino (Ex. 5) at 41-42; Verizon Incident Prevention Plan (Ex. 14) at VZ010257.   Verizon has an "Absence Control Policy" that sets forth an absence policy for all employees. Absence Control Policy (Ex. 15) at VZ30746-30753. Verizon's policies demand a "consistent approach to the development of

8

Associate Performance Objectives" and have a one-size-fits-all method with corporately derived rules for reviewing performance. Associate Performance Objectives, (Ex. 16) at VZ23446 to 23454; Tip Sheet (Ex. 17) at VZ7876.

Highlighting the common corporate control, Verizon entered into a collective bargaining agreement with the technicians whom Verizon claims the LMs supervise. This agreement exemplifies how limited all LMs' roles are throughout New York. And, while this is again a merits matter, the collective bargaining agreement is so restrictive that even the LMs' boss, the Area Manager, and his boss, the Director, need to consult Verizon's labor department before implementing discipline decisions. Lashley (Ex. 6) at 92-99, 169-70 (Technicians are "governed by a contract. It's a process that has to be followed prior to you just terminating someone.").

Verizon even controls minor details such as dress code and workplace attire for all locations, providing the technicians and all LMs with specific rules from which all LMs have no authority to alter. Workplace Attire Guidelines (Ex. 18) at VZ22566-22577; Lashley (Ex. 6) at 38-41 (testifying about Verizon's common rules for dress and safety). In the event of a technician discipline issue, Verizon directs LMs to "consult with their Local Labor Relations Manager to determine the appropriate action to be taken." Workplace Attire Guidelines (Ex. 18) at VZ22570. Plaintiffs are required to follow Verizon's policies and are not asked to provide any input into those policies.[11]

---

[11] W. Haas (Ex. 19) at ¶ 30; A Rahman (Ex. 20) at ¶ 20; J. Allette (Ex. 21) at ¶ 8; T. Barnes-Washington (Ex. 47) at ¶ 4; S. Bower (Ex. 22) at ¶ 9; J. Caleca (Ex.43) at ¶ 8; D. Connelly (Ex. 23) at ¶ 7; G. I. Dickens (Ex. 24) at ¶ 19; B. Donnelly (Ex. 25) at ¶ 6; R. Dorah (Ex. 53) at ¶ 10; R. Dossantos (Ex. 26) at ¶ 12; P. Estro (Ex. 27) at ¶ 13; R. Fernez (Ex. 55) at ¶ 9; T. Flood (Ex. 28) at ¶ 4; R. Francis (Ex. 29) at ¶ 13; B. Horowitz (Ex. 30) at ¶ 7; D. Hounsell (Ex. 49) at ¶ 13; S. Hunte (Ex. 31) at ¶ 18; L. Jeffries (Ex. 32) at ¶ 14; C. Jones (Ex. 33) at ¶ 12; J. Kaye (Ex. 34) at ¶ 5; G. Kulikowski (Ex. 35) at ¶ 3; R. Manoyrine (Ex. 45) at ¶ 10; L. Marquino (Ex. 54) at ¶ 10; J. Melchione (Ex. 36) at ¶ 9; C. Moe (Ex. 37) at ¶ 8; J. Petrie (Ex. 46) at ¶ 8, 10; M. Roche (Ex. 38) at ¶ 4; J. Schneider (Ex. 39) at ¶ 18; D. Schrader (Ex. 56) at ¶ 7-8; M.L. Smith (Ex. 48) at ¶ 8; J. Tableman (Ex. 40) at ¶ 7; M.Tellis (Ex. 41) at ¶ 4; F. Volpe (Ex. 42) at ¶ 6; K. Wade (Ex. 50) at ¶ 9.

### 4) *The Compensation Method and Exempt Classification Are the Same for All LMs*

Finally, and no less importantly, all Verizon LMs in New York are paid on a salary basis without overtime, are eligible for the same 401(k) plans, and are subject to the same holiday and vacation policies. Sorrentino (Ex. 5) at 99-101, 140; Amended Answer (Dkt. 92) at ¶ 10. Verizon maintains a common corporate policy not to pay overtime to all New York Installation and Maintenance LMs for the hours they work in excess of forty in a workweek. Sorrentino (Ex. 5) at 142-43, 148-49.  Instead, Verizon classifies all LMs as exempt from the FLSA's overtime provisions without considering any individualized factor, and while expecting all LMs to work scores of overtime hours without any additional compensation. Sorrentino (Ex. 5) at 142-43, 148-49.

## II.  <u>ARGUMENT</u>

### A.  Conditional Certification Under the FLSA

Plaintiffs bring this collective action on behalf of themselves and other LMs pursuant to 29 U.S.C. § 216(b), which allows private civil actions to be maintained "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.*  "FLSA actions are, consequently, not true representative actions as under Rule 23, but instead those actions brought about by individual employees who affirmatively join a single suit." *Raniere v. Citigroup, Inc.*, 827 F. Supp. 2d 294, 313 (S.D.N.Y. 2011), *rev'd on other grounds*, 533 Fed. Appx. 11 (2d Cir. 2013).  Thus, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b); ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1807, 468-69 (3d ed. 2005).

10

As observed by the Supreme Court, the benefits of a Section 216(b) collective action provide plaintiffs with "the advantage of lower individual costs to vindicate rights by the pooling of resources," *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989), and further the FLSA's "broad remedial purpose." *Braunstein v. Eastern Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978); *accord Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262-63 (S.D.N.Y. 1997) (Sotomayor, *J.*).  District Courts have "a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-La Roche*, 493 U.S. at 170-71.  Consistent with this managerial responsibility, District Courts often facilitate the notice and joinder process by "conditionally certifying" the lawsuit, thereby enabling other current and former employees to be notified of its existence. *See, e.g.*, *Hertz*, 624 F.3d at 554; *Sanchez*, 2014 WL 1998236, at *1.

Unlike Rule 23 class actions, the commencement of a FLSA collective action under Section 216(b) does not toll the running of the applicable statute of limitations period for the putative class members. *See* 29 U.S.C. § 256(b).  As such, time is of the essence for the potential opt-ins.  As explained by the United States Supreme Court:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some time later. [. . .]

> The court is not limited to waiting passively for objections about the manner in which the consents were obtained.  By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.  Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed.

11

*Hoffman-La Roche*, 493 U.S. at 171-72 (internal citations omitted); *see Gortat v. Capala Bros., Inc.,* 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010) ("early certification and notice are favored in order to protect plaintiffs' rights").

In *Myers v. Hertz Corp.*, the Second Circuit adopted a two-staged process for FLSA collective actions. 624 F.3d at 554-55; *accord, e.g., Sanchez*, 2014 WL 1998236, at *1-2. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Hertz*, 624 F.3d at 555 (citing *Morgan v. Family Dollar Stores, Inc*., 551 F.3d 1233, 1258-62 (11th Cir. 2008)).

### B.    Plaintiffs' Burden is "Minimal" at the Notice Stage

As this Court has held, the evidentiary standard for the first step of deciding whether to authorize notice under 29 U.S.C. § 216(b) is "minimal." *Sanchez*, 2014 WL 1998236, at *1.  The plaintiffs need only "mak[e] a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id*. (quoting *Sbarro*, 982 F. Supp. at 261).  The first stage is not the appropriate time to undertake the more detailed second-stage analysis of determining whether the lawsuit ultimately will proceed as a Section 216(b) collective action, and at this preliminary stage, courts in this Circuit typically grant conditional certification. *Guttentag v. Ruby Tuesday Inc*., 2013 WL 2602521, at *2 (S.D.N.Y. June 11, 2013) (collecting cases); *Cunningham v. Elec. Data Sys. Corp*., 754 F. Supp. 2d 638, 643-44 (S.D.N.Y. 2010); *Ravenell v. Avis Budget Car Rental, LLC*, 2010 WL 2921508, at *2 (E.D.N.Y. July 19, 2010); *Zivali v. AT&T Mobility LLC*, 646 F. Supp. 2d 658, 661-62 (S.D.N.Y. 2009); "At the second stage, the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who

12

have opted in are in fact similarly situated to the named plaintiffs." *Hertz*, 624 F.3d at 555;

*Sanchez*, 2014 WL 1998236, at *2.

At the first stage, "[t]he burden on plaintiff is not a stringent one, and the Court need only

reach a preliminary determination that plaintiffs are similarly situated." *Sbarro*, 982 F. Supp. at

261. The determination is typically made "based on pleadings and affidavits." *Fasanelli v.*

*Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007). "Similarly situated" at the

first stage does not mean (as defendants often try to argue and this defendant no doubt will here)

effective identicality as to the merits of the alleged FLSA violation, but rather only that plaintiff

need to show a "uniform business practice." *Damassia v. Duane Reade, Inc.,* 2006 WL 2853971,

at *5 (S.D.N.Y. Oct. 5, 2006) (same). The Second Circuit explained in *Myers v. Hertz*:

> In a FLSA exemption case, plaintiffs accomplish [showing a
> common policy or plan that violated the law] by making some
> showing that "there are other employees . . . who are similarly
> situated with respect to their job requirements and with regard to
> their pay provisions," on which the criteria for many FLSA
> exemptions are based, who are classified as exempt pursuant to a
> common policy or scheme.

624 F.3d at 556 (citing *Morgan*, 551 F.3d at 1259).

Plaintiffs need not present a substantial record at this initial stage. Indeed courts in the

Second Circuit regularly grant conditional certification on such evidence as the complaint, the

complaint and one or two affidavits, or very little more. *See, e.g.*, *Khalil v. Original Homestead*

*Rest.*, 2007 WL 7142139 (S.D.N.Y. Aug. 9, 2007); *Gjurovich v. Emmanuel's Marketplace, Inc*.,

282 F. Supp. 2d 101, 107 (S.D.N.Y. 2003); *Fang v. Zhuang*, 2010 WL 5261197, at *2-3

(E.D.N.Y. Dec. 11, 2010); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 374 (E.D.N.Y.

2008); *Iriarte v. Redwood Deli & Catering, Inc.*, 2008 WL 2622929, at *1-3 (E.D.N.Y. June 30,

2008); *Aros v. United Rentals, Inc*., 269 F.R.D. 176 (D. Conn. 2010); *Marcus v. Am. Contract*

13

*Bridge League*, 254 F.R.D. 44 (D. Conn. 2008); *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103 (D. Conn. 2007).

"In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims." *Pippins v. KPMG LLP*, 2012 WL 19379, at *6 (S.D.N.Y. Jan. 3, 2012); *Masson v. Ecolab, Inc.,* 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005) ("the merits of plaintiffs' claims need not be evaluated nor discovery be completed in order for such a notice to be approved and disseminated."). At this stage, "the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations . . . ." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008). "Courts typically authorize dissemination of Section 216(b) notice upon a simple showing that other employees may also have been subjected to the employers' practice of 'misclassifying' employees as exempt." *Pippins*, 2012 WL 19379, at *6. As one court explained:

> While there will undoubtedly prove to be variances among the putative class members concerning their duration of employment, the extent to which they performed non-managerial functions, and the percentage of time, if any, that they supervised fewer than eighty subordinate hours per week, plaintiff's fundamental allegation is that defendant denied overtime wages to a number of Shop Managers, by classifying them as exempt even though their duties and supervisory responsibilities fell short of the requirements of the FLSA's executive exemption. As such, the class members are 'similarly situated with respect to their allegations that the law has been violated,' and preliminary certification is appropriate.

*Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 337 (W.D.N.Y. 2008); *accord Damassia*, 2006 WL 2853971, at *5 (writing, in misclassification case, "[i]n opposing court-authorized notice, defendant dedicates a substantial portion of its briefs to the misplaced argument that plaintiffs' claims fail on the merits. . . . [C]ourts need not resolve the merits in

order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of authorizing notice."); *Sbarro*, 982 F. Supp. at 262 (same); *Indergit v. Rite Aid Corp.*, 2010 WL 2465488, at *25-26 (S.D.N.Y. June 16, 2010) (same); *Jacob v. Duane Reade, Inc.*, 2012 WL 260230, at *8 (S.D.N.Y. Jan. 27, 2012) (writing, in conditionally certifying a manager misclassification case, "before the Court is not whether Plaintiffs and other [managers] were identical in all respects, but rather whether they were subjected to a common policy to deprive them of overtime pay when they worked more than 40 hours per week.") (quotation omitted).

Judge Glasser has trenchantly explained why the standard at the first stage is low:

> Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in, *see* 29 U.S.C. § 216(b), early certification and notice are favored in order to protect plaintiffs' rights. Thus, only a minimal evidentiary burden is imposed in order to satisfy the 'similarly situated' requirement . . . . The heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated. It would not sensibly serve the purposes of a two-step scheme to impose on plaintiffs a heightened burden of proving that as-yet-unknown plaintiffs are similarly situated.

*Gortat*, 2010 WL 1423018, at *9-10; *accord, e.g.*, *Cunningham*, 754 F. Supp. 2d at 645; *Raniere*, 827 F. Supp. 2d at 320-21; *Gjurovich*, 282 F. Supp. 2d at 105 ("Should it become clear later that the parties who have opted-in are not similarly situated to the Plaintiff here, I will make any rulings that are necessary and appropriate to ensure that the case is properly formed.").

Once the court determines that potential class members are similarly situated, it "conditionally certifies" the collective action and authorizes notice to potential collective action members, who may "opt-in" under Section 216(b) by filing written consents. *See Sanchez*, 2014 WL 1998236, at *3. The action then "proceeds as a representative action throughout [merits] discovery." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y 2005).

### C.      Plaintiffs' Claims Should Be Conditionally Certified

#### *1)      The Local Managers Are Similarly Situated for Notice to Issue*

Plaintiffs have presented substantial evidence showing that LMs are similarly situated based upon Verizon's "uniform business practice." *Damassia*, 2006 WL 2853971, at *5.  Such evidence consists of: (1) Verizon's admission that it maintains a common business practice not to pay overtime to New York LMs; (2) the testimony and declarations from thirty-three Installation and Maintenance LMs throughout New York demonstrating that they work more than forty hours without receiving overtime pay and perform common job duties; (3) Verizon's corporate admissions from a Rule 30(b)(6) witness, Area Manager, and Director, demonstrating the similarities of the LM position and the common corporate control; and (4) the documentary evidence further showing the core commonality of the LM job, including the same training and operational policies defining and delimiting the LMs' duties. *Supra* at pp. 3-9.  Each of the forms and quantum of evidence present here *alone* would support the relief sought and suffice to meet Plaintiffs' "minimal" burden of some evidence. *Sanchez*, 2014 WL 1998236, at *1.  Taken together, there can be no reasonable argument to the contrary.

This evidence undoubtedly satisfies Plaintiffs' "very low" burden for this New York state-specific collective action. *Reyes v. Altamarea Group, LLC*, 2010 WL 5508296, at *2 (S.D.N.Y. Dec. 22, 2010).  Indeed, courts grant *nationwide* conditional certification motions based on far less evidence. *E.g.*, *Ferreira v. Modell's Sporting Goods, Inc*., 2012 WL 2952922 (S.D.N.Y. July 16, 2012) (granting conditional certification motion in nationwide manager misclassification case with deposition testimony from one plaintiff and a corporate witness, and documentary evidence of uniform exemption policies); *McEarchen v. Urban Outfitters, Inc.*, 2014 WL 2506251 (E.D.N.Y. June 3, 2014) (same, based upon pleadings and defendants'

admissions made on the record during court conference); *Stevens v. HMSHost Corp.*, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (same, based on evidence from less than "two-tenths of one-percent" of putative collective action members); *Ravenell*, 2010 WL 2921508 (same, based on evidence from seven individuals and corporate admissions and documents); *see Harper v. GEICO*, 826 F. Supp. 2d 454 (E.D.N.Y. 2011) (nationwide conditional certification based on testimony of one plaintiff and corporate representative and some documents); *see also, e.g.*, *Goodman v. Burlington Coat Factory*, 2012 WL 5944000 (D.N.J. Nov. 20, 2012) (granting conditional certification motion in nationwide manager misclassification case based upon a single Rule 30(b)(6) deposition, three plaintiff and opt-in depositions, two declarations, and corporate documents akin to those presented here); *Craig v. Rite Aid Corp.*, 2009 WL 4723286 (M.D. Pa. Dec. 9, 2009) (same, for more than 8,000 managers based on plaintiff's pleadings, some corporate documents, and the affidavits from managers).

When an employer uniformly classifies a group of employees without considering any individualized factor, that action "militates strongly in favor of granting certification under the FLSA" because it "cuts against" an employer's argument that there are material differences in the position. *Trawinski v. KPMG LLP*, 2012 WL 6758059, at *4 (S.D.N.Y. Mar. 19, 2012). Accordingly, cases in this Circuit where courts have granted nationwide conditional certification motions involving allegedly misclassified "managers" are legion. *E.g.*, *Costello v. Kohl's Illinois, Inc.*, 2014 WL 4377931 (S.D.N.Y. Sept. 4, 2014) (nationwide conditional certification for allegedly misclassified managers); *McEarchen*, 2014 WL 4701164 (same); *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95 (E.D.N.Y. 2014) (same); *Heitzenrater v. Officemax, Inc.*, 2014 WL 448502 (W.D.N.Y. Feb. 4, 2014) (same); *Ibea v. Rite Aid Corp.*, 2012 WL 75426 (S.D.N.Y. Jan. 09, 2012) (same); *Stevens*, 2012 WL 4801784 (same); *Ferreira*, 2012 WL 2952922 (same);

*Zaniewski v. PRRC Inc.*, 848 F. Supp. 2d 213, 228 (D. Conn. 2012) (same); *Cruz v. Hook-Superx, LLC*, 2010 WL 3069558 (S.D.N.Y. Aug. 5, 2010) (same); *Indergit*, 2010 WL 2465488 (same); *Ravenell*, 2010 WL 2921508 (same); *Francis v. A & E Stores, Inc*., 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) (same).

2)     *Courts Do Not Make Factual Determinations or Weigh Evidence at the Conditional Certification Stage*

As here, once a plaintiff has met his burden, courts have refused to consider a defendant's argument that differences exist among the class of employees. *See Marin v. Apple-Metro, Inc*., No. 12-cv-5274 (E.D.N.Y.) (Dkt. No. 75 at 17) ("defendants may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits" at the conditional certification stage; citation omitted); *Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484, 488 (S.D.N.Y. 2009) (defendants' contradictory affidavits were insufficient "to prevent Plaintiffs from meeting their 'minimal' burden of a 'modest factual showing' on its motion for conditional certification under FLSA."); *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 407 n.6 (S.D.N.Y. 2012) ("courts in this Circuit regularly conclude that [defendant's] declarations do not undermine the plaintiffs' showing in the first stage of the conditional certification process."); *Jacob*, 2012 WL 260230, at *7 ("In an attempt to demonstrate the diversity of [managers'] job functions, Defendants have submitted deposition testimony and declarations from current employees. The Court, however, declines to weigh Plaintiffs' and Defendants' competing testimony at this phase of the litigation.") (citation omitted); *see also*, *e.g.*, *Raimundi v. Astellas US LLC*, 2011 WL 5117030, at *1 (S.D.N.Y. Oct. 27, 2011) ("Variations in sales representatives' workdays and expertise does not establish as a matter of law that they are not similarly situated."); *In re Penthouse Executive Club Comp. Litig.*, 2010 WL 4340255, at *4 (S.D.N.Y. Oct. 27, 2010) (defendants' submission of competing affidavits

18

"amounts to a premature request to make credibility determinations and factual findings, something that is inappropriate at the notice stage.").

In short, Plaintiffs have plainly met the *Hertz* requirements of showing "some" evidence of similar job requirements and pay provisions for a misclassification claim – indeed, far from showing "some" evidence, there is substantial such evidence presented and in several different forms. *Supra* at pp. 3-9.  Verizon governs its New York LMs by the same set of designated job duties and responsibilities, compensates them in the same manner, classifies them as exempt from the FLSA's overtime provisions, and subjects them to the same corporate policies and work rules.  Verizon has a "uniform business practice" of treating New York LMs similarly. *See supra* at pp. 3-9; *Damassia,* 2006 WL 2853971, at *5.  Just as in the *Duane Reade* cases (those decided by both Judges Lynch and Oetken), the *Rite Aid* cases (both the two within this Court as well as the *Craig* case in Pennsylvania), the *Rubery* case, the *Modell's* case, the *PRRC* (Price Rite) case, the *Urban Outfitters* case, the *Avis* case, etc., cited above, Section 216(b) certification and notice for this manager misclassification claim is proper here.

Based on the foregoing, this Court should authorize court-supervised notice because the evidence adduced demonstrates that Verizon has a uniform policy and practice not to pay their New York LMs an overtime premium for hours worked over forty in a workweek.  Accordingly, a collective action, at least for notice purposes, is the most appropriate way to address the legality of Verizon's common policy not to pay overtime to New York LMs.

### D.    The Court Should Compel Verizon to Produce LMs' Contact Information

Should the Court grant Plaintiffs' Motion, Plaintiffs will undertake to meet and confer with Verizon on the form of notice to be sent and how it is to be disseminated.  In order for Plaintiffs to provide similarly situated LMs with notice of the action as contemplated by the law

and as routinely done by courts, Plaintiffs request that Verizon be ordered to produce the following within fourteen days of its Order:

> A list, in electronic format, of all persons employed by Verizon as Local Managers assigned to Installation and Maintenance technicians in New York at any time from three years prior to the date of the Court's Order to the present including: names, addresses, telephone numbers, dates of employment, locations of employment, and work and personal e-mail addresses.

*See e.g., Hoffman-La Roche*, 493 U.S. at 170; *Hertz*, 624 F.3d at 555; *Hernandez v. Merrill Lynch & Co., Inc*., 2012 WL 1193836, at *7 (S.D.N.Y. Apr. 6, 2012) ("in this day of electronic communication, courts have authorized defendants to provide email address[es] as well."); *accord Pippins*, 2012 WL 19379, at *14; *Jacob*, 2012 WL 260230, at *9-10.

### E.    The Court Should Order Verizon to Post Notice at LMs' Work Locations

Plaintiffs also request that the Court order Verizon to post the notice and consent forms in a conspicuous place at all work locations of potential collective action members. *See, e.g., Harhash v. Infinity West Shoes, Inc.*, 2011 WL 4001072, at *5 (S.D.N.Y. Aug. 24, 2011) ("Courts in this District routinely order that Notice be posted in common areas or employee bulletin boards, even when notice is also provided via first-class mail."); *Whitehorn v. Wolfgang's Steakhouse, Inc*., 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (Sand, *J*.) (same; collecting cases).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully submit that the Court should grant this Motion, pursuant to 29 U.S.C. § 216(b), so that additional New York Installation and Maintenance Local Managers can be promptly notified of their right to participate in this lawsuit.

Dated: Great Neck, New York
        November 17, 2014

Respectfully submitted,


BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiffs*
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Tel.    (516) 248–5550
Fax.    (516) 248–6027


By:___s/Kelly A. Magnuson_____
KELLY A. MAGNUSON, ESQ.
MICHAEL J. PALITZ, ESQ.
MICHAEL J. BORRELLI, ESQ.
ALEXANDER T. COLEMAN, ESQ.