**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WILLIAM HAAS AND AKHLAQUR RAHMAN on behalf of themselves and all others similarly situated,** | Case No. 13-cv-08130 (RA) |
| **PLAINTIFF,** | **ECF Case** |
| **v.** | |
| **VERIZON NEW YORK INC.,** | |
| **DEFENDANT.** | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VERIZON NEW YORK INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO NAMED PLAINTIFFS' INDIVIDUAL CLAIMS**</u>

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

SUMMARY OF UNDISPUTED MATERIAL FACTS.........................................2

    I.    Plaintiffs' Employment And Compensation History ................................2

    II.    Plaintiffs' Lawsuit.....................................................................................8

ARGUMENT AND CITATION OF AUTHORITY ..........................................8

    I.    Plaintiffs' FLSA Claims (First and Second Claims) Fail As A Matter of Law .............................................................................................................8

        A.    The FLSA Claim Period ................................................................9

        B.    Plaintiffs Are Exempt Under The Highly Compensated Employee Exemption Throughout The FLSA Claims Period ...................10

            1.    Plaintiffs Meet The Compensation Requirement Of The Highly Compensated Employee Exemption ................................11

            2.    Plaintiffs Meet The HCE Exemption's Threshold Duties Requirement Of Office Or Non-Manual Work............................14

            3.    Plaintiffs Meet the Requirement of Customarily and Regularly Performing Any One Of The Exempt Duties Addressed By The FLSA's White Collar Exemptions ................16

                i.    Plaintiffs Customarily and Regularly Direct the Work of Two Or More Technicians.................................16

                ii.    Plaintiffs Customarily and Regularly Perform Office Or Non-Manual Work Directly Related To The Management And/Or General Business Operations of Verizon.......................................................21

    II.    Plaintiffs' NYLL Overtime Claim (Third Claim) Likewise Fails As To Haas For The Years 2009 To Present and Rahman For The Years 2010 to Present........................................................................................................23

    III.    Plaintiffs' Cannot Prevail On Their NYLL Minimum Wage Claim (Fourth Claim) ....................................................................................................24

    IV.    Verizon Is Also Entitled to Summary Judgment On Plaintiffs' Derivative NYLL Wage Statement Claim (Sixth Claim).......................................24

CONCLUSION....................................................................................................25

## **TABLE OF AUTHORITIES**

**Page**

CASES

*Alonzo v. Maximus Inc.*,
  832 F. Supp. 2d 1122 (C.D. Cal. 2011) ................................................................12

*Amendola v. Bristol-Myers Squibb Co*,
  558 F. Supp. 2d 459 (S.D.N.Y. 2008)....................................................12, 21, 22

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..................................................................................................8

*Baldwin v. Trailer Inns., Inc.*,
  266 F.3d 1104 (9th Cir. 2001) ........................................................................17, 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..................................................................................................8

*El v. Potter*,
  01 Civ. 6125 (RWS), 2004 U.S. Dist. LEXIS 24447 (S.D.N.Y. Dec. 6, 2004) .......................9

*Frye v. Baptist Mem'l Hosp., Inc.*,
  495 Fed.Appx. 669 (6th Cir. 2012)........................................................................10

*Gonzalez v. El Acajutla Rest. Inc.*,
  CV 04-1513 (JO), 2007 U.S. Dist. LEXIS 19690 (E.D.N.Y. Mar. 20, 2007).....................9, 10

*Gonzalez v. McNeil Techs., Inc.*,
  No. 1:06cv204, 2007 U.S. Dist. LEXIS 27262 (E.D. Va. Apr. 11, 2007)...........................12

*Harkins v. Riverboat Servs., Inc.*,
  385 F.3d 1099 (7th Cir. 2004) ...............................................................................10

*Hicks v. Mercedes-Benz U.S. Int'l Inc.*,
  2012 U.S. Dist. LEXIS 60221 (N.D. Ala. Apr. 30, 2012)............................. passim

*Hicks v. Mercedes-Benz U.S. Int'l Inc.*,
  7:08-cv-0536-LSC, 2012 U.S. Dist. LEXIS 91253 (N.D. Ala. July 2, 2012) .................17, 18

*Hicks v. Mercedes-Benz United States Int'l, Inc.*,
  7:08-cv-0536-LSC, 2012 U.S. Dist. LEXIS 93708 (N.D. Ala. July 6, 2012) .........................21

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005)..................................................................................8

*Oram v. SoulCycle LLC*,
    979 F. Supp. 2d 498 (S.D.N.Y. 2013)...................................................................24

*Pieretti v. Dent Enters.*,
    No. 11-2179, 2013 U.S. Dist. LEXIS 27244 (E.D. Pa. Feb. 26, 2013) ...................22

*Puentes v. Siboney Contracting Co.*,
    No. 11-80964-CIV, 2012 WL 5193417 (S.D. Fla. Oct. 19, 2012) ..........................22

*Ramos v. Baldor Specialty Foods, Inc.*,
    10 Civ. 6271(RMB), 2011 WL 2565330 (S.D.N.Y. June 16, 2011) ................17, 18

*Royster v. Food Lion*,
    Nos. 94-2360, 94-2645, 97-1443, 95-1274, 97-1444, 1998 WL 322682 (4th
    Cir. June 4, 1998).............................................................................................10

*Savage v. Unite Here*,
    No. 05 Civ. 10812 (LTS)(DCF), 2008 U.S. Dist. LEXIS 32219 (S.D.N.Y.
    Apr. 17, 2008)..................................................................................................14

*Scott v. SSP America, Inc.*,
    No. 09–CV–4399 (RRM)(VVP), 2011 WL 1204406 (E.D.N.Y. Mar. 29,
    2011)................................................................................................................18

*U.S. v. Klinghoffer Brox. Realty Corp.*,
    285 F.2d 487 (2d Cir. 1960)..............................................................................23

*Wade v. Werner Trucking Co.*,
    No. 2:10-CV-270, 2014 WL 1091707 (S.D. Ohio March 18, 2014)......................22

*Zelenika v. Commonwealth Edison Co.*,
    No. 09 C 2946, 2012 WL 3005375 (N.D. Ill. July 23, 2012)................................12

**STATUTES**

29 U.S.C. § 207........................................................................................................12, 23

29 U.S.C. § 213............................................................................................................9, 23

29 U.S.C. § 216(b) ..........................................................................................................9

29 U.S.C. § 255(a) ........................................................................................................10

29 U.S.C. § 256 ................................................................................................................9

Labor Law--Wage Theft Prevention Act, 2010 N.Y. Sess. Law (S. 8380) ...................................25

New York Lab. Law § 195 .........................................................................................2, 24, 25

**RULES AND REGULATIONS**

29 C.F.R. § 541.200 .......................................................................................................21

29 C.F.R. § 541.201 .......................................................................................................21

29 C.F.R. § 541.601 ................................................................................................. passim

29 C.F.R. § 541.701 .......................................................................................................18

29 C.F.R. § 778.211 ...................................................................................................12, 13

FED. R. CIV. P. 56(c) .......................................................................................................8

N.Y. Comp. Codes R. & Regs. § 142-2.1 ..............................................................................24

N.Y. Comp. Codes R. & Regs. § 142-2.2 .........................................................................2, 23, 25

**OTHER AUTHORITIES**

WEBSTER'S II NEW RIVERSIDE DICTIONARY 490 (Revised Ed. 1996)...........................................20

## <u>INTRODUCTION</u>

William Haas ("Haas") and Akhlaqur Rahman ("Rahman") (collectively "Plaintiffs"),

current employees in the job title, Local Manager – I&M Construction ("Local Manager"),

oversee teams of between 15-23 unionized technicians who perform installation and maintenance

work.  Among other supervisory criteria, Plaintiffs' job performance is evaluated upon how their

teams of technicians perform in relation to productivity, quality, customer experience, and safety

objectives.  For the years 2010 to present, Plaintiffs have earned in excess of $100,000 annually.

In 2009, Hass also earned in excess of $100,000.

On November 14, 2013, Plaintiffs initiated the instant Fair Labor Standards Act

("FLSA") collective action and New York Labor Law ("NYLL") class action in which they

allege that Defendant Verizon New York Inc. ("Verizon") misclassified them, and others

similarly situated, as exempt from federal and state overtime requirements.  (Dkt. No. 1.)

Plaintiffs seek to recover overtime, and other damages, for the maximum FLSA three-year

statute of limitations, which here, based upon Plaintiffs filing their written consent forms on

March 11, 2014 is March 11, 2011 to present, and six-year period applicable to their NYLL

claims, as well as penalties and other relief based upon their NYLL wage statement claim.[1]

Pursuant to this Court's Orders (Dkt. Nos. 17 & 54), Verizon moves for partial summary

judgment as to Plaintiffs' individual claims.  Verizon is entitled to summary judgment as to

Plaintiffs' FLSA overtime and minimum wage claims (First and Second Claims) because

Plaintiffs satisfy the Highly Compensated Employee ("HCE") exemption, which applies to

employees with a total annual compensation of $100,000 or more who "customarily and

regularly perform[] *any one or more* of the exempt duties or responsibilities of an executive,

administrative, or professional employee. . . ."  29 C.F.R. § 541.601(a); (c) (emphasis added).

---

[1] Plaintiffs' Complaint does not contain a "Fifth Claim" (*see* Dkt. No. 1), and Plaintiffs voluntarily
dismissed their ERISA claim (Seventh Claim) (*see* Dkt No. 27).

Verizon likewise is entitled to summary judgment as to Plaintiffs' NYLL overtime claim (Third

Claim) in all years in which Plaintiffs earned in excess of $100,000 because the HCE exemption

is incorporated into the NYLL.  *See* 12 N.Y. Comp. Codes R. & Regs. § 142-2.2.  Verizon also

moves to dismiss Plaintiffs' NYLL minimum wage claim (Fourth Claim) because no genuine

dispute exists as to whether Plaintiffs have been paid minimum wage.  Finally, Verizon moves to

dismiss Plaintiffs' NYLL wage statement claim because, under Section 195(3), only employees

who are "not exempt from overtime compensation as established in the commissioner's

minimum wage orders or otherwise provided by New York state law or regulation" are required

to be provided wage statements that include number of hours worked and corresponding hourly

and overtime rates of pay for hours worked.  New York Lab. Law § 195(3).

## SUMMARY OF UNDISPUTED MATERIAL FACTS

**I.     Plaintiffs' Employment And Compensation History**

Verizon provides voice, internet and television services to residential and business

customers.  (Deposition of Akhlaqur Rahman ("Rahman Dep.") 11:11-12:13.)  Haas and

Rahman are currently employed by Verizon in the title of Local Manager I&M/Construction

("Local Manager").  (Deposition of Plaintiff William Haas ("Haas Dep.") 4:24-5:6; 9:10-10:11;

Rahman Dep. 9:6-22.)  They "oversee a crew of technicians who go out into the field and

perform installation and maintenance for [Verizon's] customers."  (Complaint ("Compl.") ¶ 43;

Dkt. 1.)[2]  The technicians are unionized employees represented by the Communication Workers

---

[2] Prior to filing the instant lawsuit, in seeking assistance from his sister-in-law in creating a resume, Haas provided "bullets" regarding his job, including one stating that he "supervise[s] a 25-man fiber optic installation and repair crew" (Haas Dep. 294:19-297:24; Haas Dep. Ex. 22) and another stating that he had "twelve years of experience in Verizon's operations department providing overall leadership and direction to [sic] 25-man telephone installation and repair crew" (Haas Dep. 303:2-12; Hass Dep. Ex. 22).  After Plaintiffs filed their Complaint, Rahman hired and paid an individual $300 "to develop" a "resume" for him.  (Rahman Dep. 76:15-77:12; 83:25-84:14; Rahman Exs. 1 & 2), and in email correspondence with her wrote that he "manage[s] . . . technicians on a daily basis" (Rahman Dep. 270:20-271:3; O'Brien Dep. Ex. 5).

of America.  (Haas Dep. 87:4-88:10; Rahman Dep. 25:14-26:15.)   As is typical of unionized work

environments, on a day-to-day basis, Local Managers do not perform the same work as the technicians who report to them.  (Haas Dep. 171:15-172:17; Rahman Dep. 26:23-27:5; 30:14-22.)

     Since 2007, Plaintiffs' crews have ranged from between 15 and 23 technicians.  (Haas Dep. 53:21-55:13; Rahman Dep. 30:14-31:8; 80:24-81:24.)  Plaintiffs are based out of Verizon's Hollis garage located in South Queens.  (Haas Dep. 46:22-47:7; 97:11-23; Rahman Dep. 37:16-25.)  Other Local Managers at that location also have approximately 23 technicians each assigned to them.  (Haas Dep. 128:8-13.)  Currently, Haas and Rahman report to Area Manager Colin Lashley ("Lashley"), who, in turn, reports to Director John Quadrino ("Quadrino").  (Haas Dep. 49:5-7; 126:24-128:24.)  A total of 131 technicians roll up through Local Managers to Area Manager Lashley.  (Haas Dep. 129:17-132:15; 153:16-154:5 Haas Dep. Ex. 2.)  Lashley and four other Area Managers report to Director Quadrino.  (*Id.*)  A total of 701 technicians roll up under Director Quadrino. (*Id.*)  Plaintiffs' Local Manager duties include observing and interacting with their technicians in the field.  (Haas Dep. 113:4-114:11; Rahman Dep. 32:8-33:19.)  Plaintiffs perform this work outside the presence of their Area Manager.  (Rahman Dep. 245:16-246:8.)  In fact, Area Manager Lashley spends "very little time" in the field with the technicians and has "never" addressed the technicians as a group.  (Haas Dep. 233:19-235:5.)  Rahman, or another Local Manager, sometimes "sit[s] in" for Area Manager Lashley when he is out for the day. (Rahman Dep. 130:15-132:3.)

     Technicians are evaluated upon a "scorecard" of objectives regarding "productivity, quality . . . customer experience and safety." (Rahman Dep. 86:13-87:3; 135:4-138:22). Technicians' scorecard results are then "transferred" to Local Managers' scorecards  (Rahman

Dep. 86:13-87:3), and Local Managers, in turn, are "graded on" those results (Rahman Dep. 135:4-138:22). According to Rahman, Local Managers' "primary duty is what's on the scorecard . . . that's where their function is first and foremost." (Rahman Dep. 138:8-22.) To accomplish their responsibilities for technicians' performance, Plaintiffs inform their technicians as to how they stand in relation to the scorecard metrics, let them know what will occur if they do not improve their results, and take steps to improve their technicians' performance according to company policies and practices, such as performing additional observations of their work. (Haas Dep. 119:19-121:3; Rahman Dep. 90:10-93:16.)

In addition to the scorecard objectives, Local Manages are evaluated based upon their supervisory responsibilities, listed in appraisal documents as: (1) "Sets and communicates objectives, manages the work directs, the employee, and conducts a year-end formal review to assess the contribution to the business;" (2) "Provides regular and ongoing performance feedback, training and development and takes appropriate action when employee does not meet performance standards;" and (3) "Places employee on performance improvement, recommends and administers discipline as appropriate." (Rahman Dep. 265:21-268:6; O'Brien Dep. Ex. 5 (Haas 000366); Haas Dep. 220:18-221:24; Haas Dep. Ex. 15) (similarly defining supervisor responsibilities for 2014 appraisal process)).

Each morning, Plaintiffs take attendance, ensure that each of their technicians has received a "full day's work," communicate with the dispatch center, as necessary, to have schedules adjusted, and see that their technicians leave the garage by 8 a.m. (Haas Dep. 173:19-176:13; 113:12-114:11; Rahman Dep. 32:8-33:7.) Throughout the day, Plaintiffs direct their technicians regarding the proper procedures to follow, such as what to do when they have completed their assigned work for the day (Haas Dep. 172:18-173:14) and respond to questions from their technicians as issues arise (Rahman Dep. 74:20-75:19; 159:21-160:4) such as how to

approach difficult customers and how to handle a situation they have not previously encountered. (Haas Dep. 259:24-262:8.)  In particular, technicians are required to report to Local Managers on matters such as whether they will be late or absent and the reason why, as well as instances in which they will be late reporting to a job or untimely in completing a job.  (Haas Dep. 304:23-306:14; Rahman Dep. 122:25-124:17.)  Additionally, Haas testified that his technicians are required to notify him, and Haas must approve, any deviations from a job.  (Haas Dep. 222:25-223:23.)  In such instances, Haas may decide to direct a technician to assist another technician in order to complete work in a timely manner.  (*Id.* at 309:22-310:13.)   Haas further monitors his technicians by reviewing whether they go straight to their first job and making sure that they take a hour-long lunch break.  (*Id.* 151:19-152:8.)

Plaintiffs "make sure the techs are performing" consistent with company standards. (Rahman Dep. 32:8-33:7; Haas Dep. 114:12-116:23; 106:12-110:3; 120:4-121:3.)  In part, Plaintiffs do this by completing the above-referenced observations of their technicians.  (Rahman Dep. 32:8-36:2.)  Local Managers complete safety compliance observations to ensure "the employees' health, [the] public's health, [the] customer's health, and ultimately the company's well-being as well."  (Rahman Dep. 58:6-59:19.)  Similarly, Local Managers perform quality observations to ensure that the company provides "good customer service" consistent with the company's quality standards.  (Rahman Dep. 67:10-68:10.)  These observations regarding safety and quality objectives  (Rahman Dep. 57:12-59:20; 67:10-68:25; Haas Dep. 114:12-25) are necessary for Verizon to meet its customer service commitments (Rahman Dep. 211:22-212:17) and keeps the business running smoothly (*id.* at 232:6-233:25).  Plaintiffs also complete mid-year and year-end appraisals for their technicians.  (Haas Dep. 106:12-107:9.)

In assessing his technicians' work, Haas reviews "WAFA" reports regarding jobs completed in a day (Haas Dep. 107:21-108:7) and "SABIT" reports to determine whether

technicians are leaving the garage on time as required (Haas Dep. 113:4-114:11); completes technician work observations (Haas Dep. 114:12-25); posts team results on a daily basis (Haas Dep. 115:2-22); and individually meets with technicians on a monthly basis to review their "scorecard" results (Haas Dep. 117:8-118:8).  Haas understands that it his responsibility, as a Local Manager, to determine how to move a technician who is not meeting scorecard objectives back on track.  (Haas Dep. 120:10-17.)

As for Rahman, to "get the technicians to work" and to create "accountability," he applies company "guidelines" and "checklists," which relate to safety, quality, and truck inspection standards, notes deviations, and relays them to his Area Manager.  (Rahman Dep. 31:19-33:24; 185:13-188:10; 273:19-280:9.)  If Rahman observes something unsafe in the field, or an issue with the quality of the service being provided, it is his responsibility to address it directly with the technician on the spot.  (Rahman Dep. 62:9-16; 69:24-71:23.)  Rahman reviews his team's metrics results daily to identify low performing technicians and picks a plan from existing practices and policies to improve their performance.  (Rahman Dep. 94:21-96:15; 165:12-171:20;178:23-179:5.)

As Local Managers, Plaintiffs also enforce various policies and procedures and initiate the disciplinary process by informing their Area Manager of technicians' infractions.  (Haas Dep. 213:3-214:2; Rahman Dep. 161:6-165:10; 199:16-202:7; 209:9-211:21.)  In fact, Haas has administered Verizon's Code of Conduct by sending technicians home without pay as a result of their behavior in the workplace.  (Haas Dep. 162:24-163:4; 154:15-158:11; 163:5-169:11.)  More often, Haas conducts "fact finding," provides a report of his findings, and "opines" whether the case is "strong."  (*Id.*; 185:19-188:14.)  Pursuant to the collective bargaining agreement that governs the technicians' terms and conditions of employment, Plaintiffs also have

responsibilities for "sitting" first step grievance proceedings as the company's representative. (Haas Dep. 193:6-15; Rahman Dep. 116:3-118:15.)

In the years 2007 to present, Haas' bi-weekly salary has ranged from $3,403.85 to $4,099.50, and Rahman's bi-weekly salary has ranged from $3,196.15 to $3,987.42. (Declaration of Paul Olson ("Olson Dec.") ¶¶ 7-8.)

Specifically, in the FLSA claim period (2011 – present), Plaintiffs have received a salary in excess of $455 per week on a biweekly basis regardless of how many hours they worked. (Rahman Dep. 149:20-156:9; Haas Dep. 60:3-12; 247:6-248:16; Olson Dec.  ¶¶ 7-8; Declaration of Arleen Preston ("Preston Dec.") ¶ 5.)

During this time, on top of salary, Plaintiffs received additional compensation, pursuant to company policy, in the form of overtime pay, holiday worked pay, and differentials.  (Olson Dec. ¶¶ 12-15, 18-20; Ex. A.)  Overtime pay and holiday worked pay is based upon hours worked (how many or when the work occurs)  (Preston Dec. ¶¶ 7-8), while differential pay is based upon the particular additional duties performed (Olson Dec. ¶ 12).

Plaintiffs also received incentive pay pursuant to criteria outlined in Verizon's short term incentive policy (Olson Dec. Ex. A; Preston Dec. ¶¶ 9-14) and Lead To Succeed Pay for successful sales referrals in amounts based upon products sold as set forth in the corresponding policy document (Olson Dec. ¶¶ 18-19; Preston Dec. ¶ 15).

For the years 2011 to present, based upon salary alone, or in combination with additional pay based upon hours worked and/or additional duties performed, Haas and Rahman earned in excess of $100,000.  (Olson Dec. ¶¶ 9-10, 13-15, 18-20.)

In the year 2010, Plaintiffs had total annual compensation in excess of $100,000.  (Olson Dec. ¶¶ 16, 21.)

In the year 2009, Haas additionally had total compensation in excess of $100,00 based. (Olson Dec. ¶ 17.)

## II.    Plaintiffs' Lawsuit

On November 14, 2013, Plaintiffs filed the instant lawsuit.  (Dkt. No. 1.)  On March 11, 2014, Plaintiffs filed their written consent forms "opting" into the action.  (Dkt. Nos. 18 & 19.)

## ARGUMENT AND CITATION OF AUTHORITY

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  Where the moving party has met its initial summary judgment burden, the nonmoving party may escape summary judgment only by demonstrating the existence of some factual issue requiring trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005).  Rather, the plaintiff must adduce "evidence on which the jury could *reasonably* find for the plaintiff."  *Id.* (quoting *Anderson*, 477 U.S. at 252) (emphasis in original).  In this case, Plaintiffs' First and Second claims, and Third claims, from 2009 to the present for Haas, and 2010 to the present for Rahman, as well as their Fourth and Sixth claims are deficient as a matter of law and should be dismissed with prejudice.

## I.    Plaintiffs' FLSA Claims (First and Second Claims) Fail As A Matter of Law.

In their First Claim against Verizon, Plaintiffs allege that they were unlawfully denied overtime pay because they have been misclassified as exempt under the FLSA.  (Compl. ¶¶ 88-95; Dkt. 1.)  In their Second Claim, Plaintiffs allege that Verizon violated the FLSA's minimum wage requirement because they were not compensated "for hours worked in excess of forty hours

per week." (Compl. ¶¶ 96-100, Dkt. 1.)  These claims fail, however, because Plaintiffs meet the

requirements of the HCE exemption throughout the relevant FLSA period.[3]

### A.        The FLSA Claim Period

Because Plaintiffs did not file consent forms until March 11, 2014, Plaintiffs' FLSA

claim period reaches back no earlier than March 11, 2011, *i.e.*, three years before their consent

form filing.  Under 29 U.S.C. § 216(b), "no employee shall be a party plaintiff to any such action

[under the FLSA] unless he gives his consent in writing to become such a party and such consent

is filed in the court in which such action is brought."  29 U.S.C. § 256 provides that a collective

action shall be considered "commenced" in the case of any individual, for statute of limitations

purposes:

> (a) on the date when the complaint is filed, if he is specifically
> named as a party plaintiff in the complaint ***and*** his written consent
> to become a party plaintiff is filed on such date in the court in
> which the action is brought; ***or***
>
> (b) ***if such written consent was not so filed*** or if his name did not
> so appear - on the subsequent date on which such written consent
> is filed in the court in which the action was commenced.

29 U.S.C. § 256 (emphasis added).

In other words, "the statute of limitations continues to run until the plaintiff files a written

consent opting into the suit," and this includes named plaintiffs as well.  *El v. Potter*, 01 Civ.

6125 (RWS), 2004 U.S. Dist. LEXIS 24447, at **24-25 (S.D.N.Y. Dec. 6, 2004) ("[A]ll

plaintiffs, including named plaintiffs, must file written consents in order to begin their

lawsuits."); *Gonzalez v. El Acajutla Rest. Inc.*, CV 04-1513 (JO), 2007 U.S. Dist. LEXIS 19690,

at **14-15 (E.D.N.Y. Mar. 20, 2007) (noting that named plaintiffs are required "to submit a

---

[3] An employee who meets the HCE exemption is "deemed exempt under section 13(a)(1) of the Act." 29
C.F.R. § 541.601(a).  The FLSA's overtime and minimum wage requirements do not apply to such employees.  29
U.S.C. § 213(a).

written consent to join in a collective action under the FLSA, . . . [which] is not satisfied by the filing of the complaint itself").

In this case, Plaintiffs filed their Complaint on November 14, 2013, but did not file their written consent forms until March 11, 2014. (*See* Docket Nos. 18 & 19). Accordingly, even assuming that Plaintiffs could establish a willful violation of the FLSA such that a three-year statute of limitations applies (*see* 29 U.S.C. § 255(a)), Plaintiffs' FLSA claims extend back, at most, to March 11, 2011, three years before they filed their written consent forms. *See Gonzalez*, 2007 U.S. Dist. LEXIS 19690, at *16 (E.D.N.Y. Mar. 20, 2007) (holding that named plaintiff who filed written consent form on November 15, 2005 could only "seek damages for FLSA violations occurring after November 14, 2002" assuming he could demonstrate willfulness); *see also Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004) (dismissing 18 plaintiffs who were named in the complaint but who failed to file written consents reasoning that "[i]t makes no difference that you are named in the complaint"—both named plaintiffs and opt-in plaintiffs must file a consent form to be a party in the case); *Frye v. Baptist Mem'l Hosp., Inc.*, 495 Fed.Appx. 669, 675 (6th Cir. 2012) ("[C]ourts construe . . . [the statute] to do what it says: require a named plaintiff in a collective action to file a written consent to join the collective action."); *Royster v. Food Lion*, Nos. 94-2360, 94-2645, 97-1443, 95-1274, 97-1444, 1998 WL 322682, at *13 (4th Cir. June 4, 1998) ("Until a plaintiff, even a named plaintiff, has filed a written consent, she has not joined the class action, at least for statute of limitations purposes" (internal quotation marks omitted)).

### B. Plaintiffs Are Exempt Under The Highly Compensated Employee Exemption Throughout The FLSA Claims Period.

At all times from March 11, 2011 to present, Plaintiffs have been exempt from overtime and minimum wage requirements under the HCE exemption. The HCE exemption is a short cut to exempt status for highly compensated employees. If the $100,000 compensation threshold

requirement is met, employees qualify for the exemption if they "perform[] *any one or more* of the exempt duties or responsibilities" outlined by the executive employee or administrative employee exemptions. *See* 29 C.F.R. § 541.601(a) (emphasis added). "The very purpose of the highly compensated employee exemption is to eliminate the need for a detailed analysis of the employee's job duties." *See Hicks v. Mercedes-Benz U.S. Int'l Inc.*, 2012 U.S. Dist. LEXIS 60221, *21 (N.D. Ala. Apr. 30, 2012) (citing 29 C.F.R. § 541.601(c) (internal quotations omitted)). The need to examine job duties thus is "considerably relaxed." *Id.* at *18. Given their high-level of compensation and duties with respect to their teams of technicians, Plaintiffs fit squarely within the HCE exemption.

        **1.**    **Plaintiffs Meet The Compensation Requirement Of The Highly Compensated Employee Exemption.**

To satisfy the HCE exemption compensation requirement, an employee's total compensation within a "52-week period" (such as a calendar year) must be at least $100,000. 29 C.F.R. §§ 541.601(a), (b)(1). Such total annual compensation "must include at least $455 per week paid on a salary or fee basis" and "may also include commissions, non-discretionary bonuses, and other non-discretionary compensation earned during [the] 52-week period." *Id.* at § 541.601(b)(1).

With respect to the salary aspect of compensation requirement, Plaintiffs admit that they are paid a salary and that they receive their salary regardless of the number of hours worked on a bi-weekly basis. (Rahman 149:20-156:9; Haas 60:3-12; 247:6-248:16.) For every year in the FLSA claim period, Plaintiffs have earned a salary in excess of $455 per week. (Olson Dec. ¶¶ 7-8; Haas Dep. Exs. 17-20; Rahman Dep Exs. 15-18.)

In addition to salary, other non-discretionary compensation counts toward the $100,000 HCE exemption requirement. 29 C.F.R. § 541.601(b)(1). For example, courts have found that payments based upon additional hours worked, such as overtime payments to exempt employees,

"plainly constitute[s] a form of non-discretionary compensation contemplated by [the HCE]." *Zelenika v. Commonwealth Edison Co.*, No. 09 C 2946, 2012 WL 3005375, at *11 (N.D. Ill. July 23, 2012). Furthermore, non-discretionary bonuses are specifically mentioned within the HCE exemption regulation.[4] *See* 29 C.F.R. § 541.601(b)(1).

Within the FLSA claim period (2011 to present), Plaintiffs' compensation has consisted of (1) salary (which includes the pay components of Regular Pay, Absence Time Paid Off, Excused Day Off, Holiday, Other Paid Absence, Personal Leave, Basic Wages Non Prod and Vacation) (Olson Dec. ¶ 11); (2) additional pay based upon hours worked and/or additional duties reflected in pay for Overtime, Holidays Worked, and Differentials (*See* Olson Dec. ¶ 12 and Ex. A; Preston Dec. ¶¶ 7-8); and (3) bonuses in terms of Incentive pay, Lead to Succeed payments, and nominal amounts of "Ovation" awards. (*See* Olson Dec. Ex. A; Preston Dec. ¶¶ 9, 15 .)

The Overtime and Holiday Worked pay is based upon hours worked and therefore non-discretionary. *See Zelenika*, 2012 WL 3005375 at *11. The Differential pay is pay pursuant to company policy for additional duties in a day's work when Plaintiffs "sat in" for their Area Manager (Olson Dec. ¶ 12.) and thus is non-discretionary as well. *See* 29 C.F.R. § 778.211(b). The Incentive pay is based upon a plan document published in advance and available to exempt

---

[4] Although not specific to the HCE exemption, the FLSA regulations distinguish between non-discretionary and discretionary bonuses. *See* 29 C.F.R. § 778.211(b). In this regard, the FLSA regulations provide that non-discretionary bonuses are the rule and discretionary bonuses are the exception because bonuses are deemed to be discretionary only if the employer "retain[s] discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." *Id.* (emphasis added). Importantly, "[i]f the employer promises in advance to pay a bonus" or there is any "prior agreement" regarding a bonus, the employer has "abandoned his discretion with regard to it." *Id.* Incentive bonuses "announced to employees to induce them to work more steadily or more rapidly or more efficiently" as well as bonuses for "quality" of work are all examples of "promised," non-discretionary bonuses. *See* 29 C.F.R. § 778.211(c); *Alonzo v. Maximus Inc.*, 832 F. Supp. 2d 1122, 1131 (C.D. Cal. 2011) (holding that an incentive bonus was non-discretionary because "both the fact that the monthly bonus would be paid when an employee met certain defined performance thresholds and the amount of the payment were established by written bonus policies"); *Gonzalez v. McNeil Techs., Inc.*, No. 1:06cv204, 2007 U.S. Dist. LEXIS 27262, at *13 (E.D. Va. Apr. 11, 2007) (concluding that "[t]he clear thrust of 29 U.S.C.S. § 207 is that once a bonus is promised to an employee as an inducement to achieve some business goal, even if that promise is not a guarantee of payment but contingent on other factors such as the financial state of the company" it is non-discretionary); *see also Amendola v. Bristol-Myers Squibb Co*, 558 F. Supp. 2d 459, 478 (S.D.N.Y. 2008) (stating that the employer established that certain positions within the proposed FLSA class met the HCE's compensation requirement because they earned more than $100,000 in "base salary plus incentive compensation").

employees that outlines the specific criteria (e.g., an employee's "band" status, an employee's business group performance, and the employee's individual performance) upon which the pay is based and provides sample calculations.  (Preston Dec. ¶¶ 9-14; Ex. C.)  As such, Incentive pay also is non-discretionary.  *See* 29 C.F.R. § 778.211(b).  The Lead to Succeed payments similarly were made pursuant to a plan document that outlines eligibility and conditions for payment based upon successful referral results.  (Preston Dec. ¶ 15; Ex. D.)   Accordingly, they too are non-discretionary.  *See* 29 C.F.R. § 778.211(b).

As the summary below demonstrates, Haas and Rahman surpass the $100,000 threshold in each of the calendar years at issue within the FLSA claim period based either upon salary alone in certain years or in combination with other non-discretionary income.  (*See* Olson Dec. ¶¶ 9-10, 13-15, 18-20; Plaintiffs' Responses and Objections To Defendant's Requests For Admissions (attached hereto as Ex. F of the Declaration of Tonya Braun ("Braun Dec.")))

**Haas' Compensation Based Upon Final Pay Stubs In The Calendar Year**

|  | 2011 | 2012 | 2013 | 2014[5] |
|---|---|---|---|---|
| **Total Compensation** | $126,926.74 | $123,429.03 | $117,352.10 | N/A |
| **Salary** | $97,525.83 | $101,710.72 | $105,643.35 | $106,587.00 |
| **Pay Based Upon Hours Worked /Additional Duties** | $19,410.91 | $10,796.31 | $1,213.75 | N/A |
| **Incentive Pay** | $9,990.00 | $10,922.00 | $9,995.00 | N/A |
| **Ovation Cash Award** | -- | -- | $500.00 | N/A |

**Rahman's Compensation Based Upon Final Pay Stubs In The Calendar Year**

|  | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| **Total Compensation** | $126,812.72 | $119,395.17 | $115,780.15 | N/A |
| **Salary** | $94,439.88 | $99,129.48 | $102,755.15 | $103,672.00 |
| **Pay Based Upon Hours Worked/Additional Duties** | $19,862.84 | $9,781.69 | $3,141.00 | N/A |

---

[5] Because the calendar year is not complete, only Plaintiffs' salaries in effect from January 1 through February 2014 are reflected within the table.  (In March 2014, Haas' salary increased to $109,797.00 and Rahman's salary increased to $108, 151.00.)  In any event, based upon Plaintiffs' salaries no further consideration of their compensation is necessary.

|  | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| **Incentive Pay** | $12,510.00 | $10,412.00 | $9,722.00 | N/A |
| **Lead To Succeed Cash** | -- | $72.00 | $112.00 | N/A |
| **Ovation Cash Award** | -- | -- | -- | N/A |

### 2. Plaintiffs Meet The HCE Exemption's Threshold Duties Requirement Of Office Or Non-Manual Work.

The HCE exemption "applies only to employees whose primary duty includes performing office or non-manual work." 29 C.F.R. § 541.601(d). It expressly does not apply to employees who perform manual work, "no matter how highly paid they may be." *Id.* In making this distinction, the HCE exemption defines manual work as that "involving repetitive operations with . . . [an employee's] hands, physical skill and energy." *Id.* In contrast, examples of manual work include work performed by "non-management production line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, [and] laborers." *Id.* Examples of non-manual work include communicating and motivating others. *See Savage v. Unite Here*, No. 05 Civ. 10812 (LTS)(DCF), 2008 U.S. Dist. LEXIS 32219, **16-17 (S.D.N.Y. Apr. 17, 2008) (holding that a union organizer qualified for the administrative exemption even though much of her job entailed fieldwork, not traditional office work, such as "communicat[ing] with, recruit[ing], and motivat[ing] workers" in organizing campaigns or in preparation for collective bargaining agreement negotiations because it was nonetheless work "of a very different type than the work that the regulations characterize as 'manual' in nature").

Here, Plaintiffs' primary duty plainly includes performing office or non-manual work. For example, Rahman described the "primary duty" of Local Managers as obtaining scorecard objectives related to productivity, quality, safety, and customer experience upon which their

technicians are assessed, and Local Managers, in turn, are evaluated upon.  (Rahman Dep. 135:13- 138:22.)  Haas similarly testified that he is responsible for assessing his technicians' performance (Haas Dep. 106:12-109:24).  They accomplish this by informing their teams of their objectives (Haas Dep. 105:18-106:22; 108:8-110:4); keeping their technicians on track to meet their objectives (Haas Dep. 106:12-22; 120:4-121:3; Rahman Dep. 90:10-93:16; 185:13-188:10); and making their technicians aware of  "procedures in place that come into action that are demanded of [Local Managers] if [their technicians] are below objective" (Haas Dep. 119:19-121:3; Rahman Dep. 185:13-188:10).  Both Plaintiffs additionally perform a host of administrative office duties, such as reviewing reports; communicating with the dispatch center regarding technicians' workloads and assignments; responding to questions from their technicians; approving deviations from jobs; conducting observations of technicians' work; enforcing policies; and representing the company at the first step in the collective bargaining grievance process.  (*See supra* pp. 4-6.)  Indeed, from the outset of this litigation, Plaintiffs have described themselves as "information liaisons" with the primary job duty of "relaying information back and forth between technicians and management." (*See* Compl. ¶ 37.)  Such duties align with the non-manual work in this Court's *Savage* decision and not the manual work described in the regulations.  Further confirming this point, Plaintiffs admit that they do not perform the same installation and repair work regarding internet, voice, and television services as the unionized technicians who report to them.  (Haas Dep. 171:15-172:17; Rahman Dep. 26:23-27:5.)

With this background, Plaintiffs' assertion that the HCE exemption is inapplicable because "Plaintiffs' primary duty includes performing manual work" (Compl. ¶ 82) is of no legal moment.  The test is not whether the primary duty includes manual work, as if any amount of manual work is disqualifying, but rather whether the primary duty "*includes* performing office or

*non-manual* work."  29 C.F.R.  § 541.601(d) (emphasis added).   As the regulations make clear,

even assuming that Plaintiffs perform *some* manual work, that does not preclude the exemption

from applying.  *See id.*

> **3.      Plaintiffs Meet the Requirement of Customarily and Regularly**
> **Performing Any One Of The Exempt Duties Addressed By The**
> **FLSA's White Collar Exemptions.**

As previously stated, what is typically a "fact-intensive inquiry is simplified

considerably" under the HCE exemption duties test with the analysis streamlined into

consideration of whether the employee "customarily and regularly" performs any one prong of

any of the exemptions addressed in the regulations.  *See Hicks*, 2012 U.S. Dist. LEXIS 60221, at

**7-9.

Here, at a minimum, Plaintiffs meet this final HCE exemption requirement on two

independent grounds because they (a) customarily and regularly direct the work of their teams –

approximately 23 technicians each – and/or (b) perform duties directly related to management or

general business operations.

> **i.      Plaintiffs Customarily and Regularly Direct the Work of Two Or**
> **More Technicians.**

The HCE exemption regulation specifically refers to directing the work or two or more

other employees as an example of how an employee who meets the compensation threshold can

qualify for the exemption *without performing any other exempt duties*:

> An employee may qualify as a highly compensated executive
> employee, for example, if the employee customarily and regularly
> directs the work of two or more other employees, even though the
> employee does not meet all of the other requirements for the
> executive exemption under § 541.100.

29 C.F.R. § 541.601(c).  An employee who directs the work of two or more employees need not,

for example, have "management" as his/her primary duty or have the "authority to hire or fire

other employees" or provide "suggestions and recommendations as to the hiring, firing,

advancement, promotion or any other change of status of other employee [that] are given particular weight." *See* 29 C.F.R. § 541.601(c)*; see also Hicks*, 2012 U.S. Dist. LEXIS 60221, at *8 (noting that "[t]here is a vast difference between fully determining an employee's 'primary duty' as part of the executive exemption analysis" and determining whether the HCE exemption applies).  Nor is there any requirement that the employee exercise discretion and independent judgment. *See Ramos v. Baldor Specialty Foods, Inc.*, 10 Civ. 6271(RMB), 2011 WL 2565330, at *6 n.5 (S.D.N.Y. June 16, 2011) (discussing the executive employee exemption in comparison to the administrative employee exemption and concluding that "there is no analogous requirement that ['executive' management] duties entail the exercise of . . . independent judgment" (quoting *Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp. 2d 1010, 1018  (E.D. Mich 2005)).

Courts have held that this "directing the work" prong of the executive exemption is met if employees have responsibility for matters such as "ensuring [employees'] compliance with policies and procedures" and evaluating employees.  *See Baldwin v. Trailer Inns., Inc.*, 266 F.3d 1104, 1116 (9th Cir. 2001); *see also Ramos*, 2011 WL 2565330, at *6 (concluding that plaintiff directed the work of other employees as part of his management duties, in part, because the "main part" of his job was to "mak[e] sure his [P]ickers [were] doing their job correctly"); *Hicks v. Mercedes-Benz U.S. Int'l Inc.*, 7:08-cv-0536-LSC, 2012 U.S. Dist. LEXIS 91253, *82 (N.D. Ala. July 2, 2012) (finding that various plaintiffs met the "directing work" requirement based upon evidence that plaintiffs were responsible for enforcing company policies and ensuring that goals were met by their teams).

For example, in *Baldwin*, the court found that the plaintiff managers met the "directing the work" prong because, among other duties, they "over[saw] the performance of the assistant managers;" there was "no indication that the assistant managers were regularly supervised by

[the employer's] headquarters or anyone else except the [plaintiffs];" they were "on-call to respond to problems;" and "made sure that the assistant managers completed their responsibilities and complied with management policy." *Baldwin*, 266 F.3d at 1117.   In *Ramos*, the court found the plaintiff's job duties to be "clearly managerial," including satisfaction of the "directing the work" prong, where he made sure the "pickers" who reported to him "arrive[d] to work on time" and made sure that pickers "[did] their job correctly" and "at an acceptable productivity level" by speaking to pickers on this team "who work[ed] too slowly or [made] too many mistakes to try to get them to do their jobs better." *Ramos*, 2011 WL 2565330, at *6. Similarly, in *Hicks*, the court individually assessed the plaintiffs' duties and concluded that they necessarily met the "directing work" prong, because, for instance, they "direct[ed]  [their] groups in meeting the Company objectives for safety, product quality, accuracy, productivity, cost reduction, timekeeping, efficiency, training, and team harmony," *Hicks*, 2012 U.S. Dist. LEXIS 91253, at *34, and had responsibility to "oversee the work and performance of [their] [teams] and to direct the [team's] work so that it complies with [the employer's] standards." *Id.* at *52. Indeed, courts have recognized that "[e]nsuring that company policies are carried out constitutes the very essence of supervisory work." *Baldwin*, 266 F.3d at 1117 (quoting *Dovovan v. Burger King Corp.,*  672 F.2d, 221, 226 (1st Cir. 1982); *see also Scott v. SSP America, Inc.*, No. 09–CV– 4399 (RRM)(VVP), 2011 WL 1204406, at *12 (E.D.N.Y. Mar. 29, 2011) (citing plaintiff's "responsibility as a supervisor to ensure that her staff complied with corporate policies and administrative regulations" as a "critical management duty").

On the undisputed facts on this case, Plaintiffs clearly customarily and regularly direct the work of two or more employees.[6]   Plaintiffs inform their teams of their objectives (Haas Dep. 105:18-106:22; 108:8-110:4); assess their technicians' performance for purposes of keeping

---

[6] Customarily and regularly is defined as "a frequency that must be greater than occasional but which, of course, may be less than constant."  29 C.F.R. § 541.701.

them on track to meet their objectives (Haas Dep. 106:12-22; 120:4-121:3 Rahman Dep. 90:10-93:16; 185:13-188:10); and make their technicians aware of "procedures in place that come into action that are demanded of [Local Managers] if [their technicians] are below objective" (Haas Dep. 119:19-121:3; Rahman Dep. 185:13-188:10).

       Further, relating specifically to Haas, he begins each day by ensuring that each of his technicians has received a "full day's work," requesting adjustments as necessary based upon problems he identifies in the work assigned by the dispatch center, and recommending who can take on additional work if other technicians "call off" on a given day. (Haas Dep. 173:19-176:13.) Haas monitors whether his technicians go straight to their first job and makes sure that they take an hour-long lunch break. (*Id.* at 151:19-152:8.) Throughout the day, Haas directs his technicians regarding the proper procedures to follow, such as what to do when they have completed their work for the day. (*Id.* at 172:18-173:14.) Haas' technicians are required to notify him, and Haas must approve, any deviations from a job. (*Id.*; 259:24-260:4; 223:16-23) Haas' technicians are required to report to him on matters such as whether they will be late or absent and the reason why, as well as instances in which they will be late reporting to a job or untimely in completing a job. (*Id.* at 304:23-306:14.) In such cases, Haas may decide to direct a technician to assist another technician in order to complete work in a timely manner. (*Id.* at 309:22-310:9.) Haas' technicians also call him to ask how to approach difficult customers and how to handle a situation they have not previously encountered. (*Id.* at 259:24-262:8.)

       As for Rahman, he too begins each day by taking attendance; making sure that his technicians have received a full day's worth of job assignments; communicating with "dispatch" regarding work assignments as necessary; and monitoring whether his technicians leave the garage by 8 a.m.. (Rahman Dep. 32:8-33:7.) Rahman goes out into the field to "make sure the techs are performing." (*Id.*) To "get the technicians to work," Rahman applies Company

"guidelines" and "checklists," which relate to safety, quality, and truck inspection standards, notes deviations, and relays them to his Area Manager.  (Rahman Dep. 31:19-34:16.)  Rahman is responsible for addressing with his technicians any issues with quality or safety that he observes.  (Rahman Dep. 62:9-16; 69:24-71:23.)  Rahman's technicians call him with questions and issues that arise in the course of their work.  (Rahman Dep. 73:12-75:19; 159:21-160:4)  For example, based upon the Company's customer service standards, technicians are required to notify their Local Manager "if they're going over two hours on a repair . . . or if they are not going to be done with a Triple Play within a certain period of time."  (Rahman Dep. 122:25-124:8.)  Rahman can then authorize incidental overtime for technicians to complete jobs, absent a directive that no overtime is allowed.  (Rahman Dep. 193:13-196:15.)

In addition, both Plaintiffs enforce company policy by initiating the disciplinary process in the event of technician infractions.  (Haas Dep. 213:3-214:2; Rahman Dep. 199:16-202:7.)  For example, Rahman is responsible for applying policies such as the "SCP" safety policy, which requires him to notify his Area Manager of technicians' safety violations that may result in discipline, including suspensions, pursuant to the policy.  (Rahman Dep. 161:6-165:10.)  Rahman is also responsible for reporting violations such as when a technician is found "to be off the job."  (Rahman Dep. 209:9-211:21.)  For his part, Haas has administered Verizon's Code of Conduct by sending technicians home without pay as a result of their behavior in the workplace.  (Haas Dep. 162:24-163:4; 154:15-158:11; 163:5-169:11.)

Therefore, similar to the plaintiffs in *Baldwin*, *Ramos*, and *Hicks*, Plaintiffs plainly "direct the work" of their technicians.  Indeed, Plaintiffs concede that they "oversee[7] a crew of technicians" (Complaint ¶ 43, Dkt. No. 1.)  And supervisory criteria in the Company's formal performance appraisal documents (*see* Rahman Dep. 265:21-268:6; O'Brien Dep. Ex. 5; Haas

---

[7] "Oversee" is defined as "to direct: supervise."  *See* WEBSTER'S II NEW RIVERSIDE DICTIONARY 490 (Revised Ed. 1996).

Dep. 220:18-221:24; Haas Dep. Ex. 15), as well as the information Plaintiffs compiled to

develop their resumes, further confirm that Plaintiffs customarily and regularly direct their teams

of technicians (*see* Haas  Dep. 294:19-297:24; 303:2-12; Haas Dep. Ex. 22 (stating that he

"superv[ises] [sic] 25 man Fiber Optic Installation and Repair crew" and has "[t]welve years

experience in Verizon's Operations Department providing overall leadership and direction to

twenty-five man telephone installation and repair crew"); Rahman Dep. 270:16-271:3

(describing his job duties, in part, as "managing 30-60 technicians on a daily basis")).

> ## ii.    Plaintiffs Customarily and Regularly Perform Office Or Non-Manual Work Directly Related To The Management And/Or General Business Operations of Verizon

Plaintiffs independently satisfy the HCE exemption's duties test because they satisfy the

first duties prong of the administrative exemption.  This prong requires an that an employee's

primary duty be "the performance of office or non-manual work directly related to the

management or general business operations of the employer (or the employer's customers)."  29

C.F.R. § 541.200(a)(2).  Work that is "directly related to the management or general business

operations of the employer" is work "directly related to assisting with the running or servicing of

the business, as distinguished, for example from working on a manufacturing production line or

selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a).  Work in various

"functional areas" such as "quality control" and "personnel management" constitutes work

directly related to management or general business operations.  29 C.F.R. § 541.201(b).  The

hallmark of administrative work is that it is "concerned with *how* [the] business is performed,

rather than simply performing it."  *Hicks v. Mercedes-Benz United States Int'l, Inc.*, 7:08-cv-

0536-LSC, 2012 U.S. Dist. LEXIS 93708, at **38-39 (N.D. Ala. July 6, 2012) (emphasis in

original).  Under the HCE exemption, an employee need not also meet the "exercise of discretion

and independent judgment" prong of the administrative exemption.  *See Amendola v. Bristol-*

*Myers Squibb Co.*, 558 F. Supp. 2d 459, 478 (S.D.N.Y. 2008) (considering HCE and concluding that "[a]mong other things, this exemption removes any requirement that an employer prove that an administrative employee exercised discretion in the performance of her duties").

Courts have concluded that plaintiffs meet the "management or general business operations" prong of the administrative exemption in a variety of circumstances. *See Wade v. Werner Trucking Co.*, No. 2:10-CV-270, 2014 WL 1091707, at *23 (S.D. Ohio March 18, 2014) (plaintiffs' work qualified as quality control or personnel management where plaintiffs acted as fleet coordinators overseeing truck drivers "to ensure that deliveries were completed safely and on time"); *Pieretti v. Dent Enters.*, No. 11-2179, 2013 U.S. Dist. LEXIS 27244, at*7 (E.D. Pa. Feb. 26, 2013) (plaintiff quality assurance manager satisfied the test because, as the plaintiff's "job title suggest[ed], his main duties consisted of ensuring that the services the [subcontracts] rendered to [Defendant's] customers were satisfactory"); *Puentes v. Siboney Contracting Co.*, No. 11-80964-CIV, 2012 WL 5193417, at *5 (S.D. Fla. Oct. 19, 2012) (concluding that dispatchers of a trucking services company satisfied the element where their responsibilities included taking "daily orders from the customers, coordinat[ing] and schedul[ing] the truckers, overs[eeing] the truckers, visit[ing] job sites daily, . . assur[ing] that the trucking work was done correctly to the satisfaction of the customers, and handl[ing] any problems or emergencies that arose in the field").

Here, Plaintiffs' work clearly satisfies the test as well.  By informing technicians of their objectives (Haas Dep. 105:18-106:22; 108:8-110:4), conducting work observations (Haas Dep. 114:12-25), and informing their technicians of how they stand in relation to the scorecard metrics in the areas of productivity, quality, safety, and customer satisfaction (Haas Dep. 115:-2-22; 117:8-118:8), Plaintiffs ensure that the work is done in line with the company's overall goals. As Rahman recognized, this work is necessary for the business to meet its customer service

commitments (Rahman Dep. 211:22-212-17) and helps the business run smoothly (Rahman Dep. 232:6-233:25).  Thus, like the plaintiffs in *Werner Trucking Co., Dent Enters., and Siboney Contracting Co.*, Plaintiffs meet the first prong of the administrative exemption, and as a result, clearly qualify for the HCE exemption.[8]

## II.   Plaintiffs' NYLL Overtime Claim (Third Claim) Likewise Fails As To Haas For The Years 2009 To Present and Rahman For The Years 2010 to Present.

As demonstrated above, Plaintiffs meet the HCE exemption for all years within the FLSA claim period, *i.e.*, 2011 to present.  Because the HCE exemption analysis applies equally to Plaintiffs' overtime claims under New York Labor Law (Compl. ¶¶ 101-107. Dkt. No. 1), Plaintiffs NYLL claims fails for those years as well.  *See* 12 N.Y. Comp. Codes R. & Regs. § 142-2.2 (expressly providing that New York's overtime requirement is "subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of 1938").

Plaintiffs additionally qualify for the HCE exemption in 2010 because they meet the $100,000 compensation threshold in that year as well.  (*See* Olson Dec. ¶ 16, 21; Haas Dep. Ex. 20; Rahman Dep. Ex. 18.)  Haas further qualifies for the HCE exemption in 2009 because he also meets the $100,000 compensation threshold in that year.  (Olson Dec. ¶ 17.)  Accordingly, Haas' NYLL claims for the additional years of 2010 and 2009 should be dismissed, and Rahman's NYLL claim for the additional year of 2010 should be dismissed.

---

[8] As to Plaintiffs' Second Claim alleging minimum wage violations under the FLSA, it independently fails because Plaintiffs were paid well above the applicable minimum wage during the FLSA claim period.  *See U.S. v. Klinghoffer Brox. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960) (stating that the "Congressional purpose [of the FLSA] is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement").  Here, Plaintiffs' unquestionably were paid in excess of New York and federal minimum wage requirements (*see infra* p. 24), and thus they met the FLSA's minimum wage requirements.

**III.    Plaintiffs' Cannot Prevail On Their NYLL Minimum Wage Claim (Fourth Claim)**

Plaintiffs' NYLL minimum wage claims (Compl. ¶ 108-111. Dkt. No. 1) similarly fail

because Plaintiffs at all relevant times were paid well above the applicable minimum wage rate.

The New York Labor Law requires "only that the total wages paid to the employee are equal or

greater to the total sum of the applicable minimum wage rate times the number of hours worked

by the employee." *See Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 506 (S.D.N.Y. 2013).

Even assuming that Plaintiffs' allegation that they worked 70 to 80 hours per workweek is

accurate (Haas Dep. 247:18-248:11; Rahman Dep. 227:2-18; *compare* Compl. ¶ 66, Dkt. No. 1),

based upon their bi-weekly salaries, they were paid well in excess of the applicable minimum

wage.  Specifically, when their bi-weekly salaries, considered on a weekly basis, are divided by

80 hours per workweek, they were paid in excess of the minimum wage[9] throughout the

limitation period applicable to their NYLL claims (November 14, 2007 to present) (*See* Olson

Dec. ¶¶ 7-8; 12 N.Y. Comp. Codes R. & Regs. § 142-2.1).

**IV.    Verizon Is Also Entitled to Summary Judgment On Plaintiffs' Derivative NYLL
         Wage Statement Claim (Sixth Claim).**

Because Plaintiffs' claims for violation of NYLL § 195(3) for failure to provide accurate

wage statements (Compl. ¶¶ 112-119) is tied to their baseless FLSA and NYLL overtime and

minimum wage claims, Verizon is entitled to summary judgment on this remaining claim as

well.  Specifically, Plaintiffs allege in their Complaint that their wage statements were

inadequate because they did not include the number of hours worked by Plaintiffs and the

corresponding hourly and overtime rates of pay for the hours they worked.  (Compl. ¶ 87, Dkt.

No. 1.)  But under Section 195(3), only employees who are "not exempt from overtime

compensation as established in the commissioner's minimum wage orders or otherwise provided

---

[9] Effective January 1, 2007, New York's minimum wage rate was $7.15 an hour; effective July 24, 2009 it
was increased to $7.25; and effective December 31, 2013 it was increased to $8.00 an hour.

by New York state law or regulation" are required to be given wage statements that include such information.  New York Lab. Law § 195(3).  Because the Commissioner's wage order applicable here expressly adopts the FLSA's overtime exemptions, under which Plaintiffs are exempt, (*see* 12 N.Y. Comp. Codes R. & Regs. § 142-2.2), Defendant was not required to include Plaintiffs' rates of pay or hours worked in their wage statements.  Accordingly, there has been no violation of Section 195(3), and Defendant is entitled to summary judgment on this claim. [10]

## CONCLUSION

For the reasons set forth above, Verizon respectfully requests that the Court grant its Motion for Partial Summary Judgment and dismiss Plaintiffs' FLSA overtime and minimum wage claims (First and Second Claims) in their entirety; Plaintiffs' NYLL overtime claim (Third Claim) for Haas as to the years 2009 to present, and Rahman 2010 to present; as well as Plaintiffs' NYLL minimum wage claim (Fourth Claim) and NYLL wage statement claim (Sixth Claim) with prejudice.

---

[10] The requirement to provide this information in wage statements came into effect in April 2011.  Prior to that time, Section 195(3) did not require that wage statements contain hours or hourly rate information for any employees, regardless of whether or not they were exempt.  *See* Labor Law--Wage Theft Prevention Act, 2010 N.Y. Sess. Law News 564 (S. 8380) (McKinney).  Accordingly, Verizon is entitled to summary judgment on this claim for the period prior to April 2011 for this additional reason as well.

Dated: November 17, 2014

Respectfully submitted,

s/ Tonya Braun
_____
Matthew W. Lampe
Kristina A. Yost
JONES DAY
222 East 41st Street
New York, New York 10017
Tel: 212.326.3939
Fax: 212.755.7306
mwlampe@jonesday.com
kyost@jonesday.com

Tonya Braun (*admitted pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard
Suite 600
Columbus, Ohio 43215
Tel: 614.469.3939
Fax: 614.461.4198
tbraun@jonesday.com

*Attorneys for Defendant Verizon New York Inc.*