**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WILLIAM HAAS AND AKHLAQUR RAHMAN on** behalf of themselves and all others similarly situated, | Case No. 13-cv-08130 (RA) |
| | **ECF Case** |
| **PLAINTIFF,** | |
| **v.** | |
| **VERIZON NEW YORK INC.,** | |
| **DEFENDANT.** | |

## DEFENDANT VERIZON NEW YORK INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE PURSUANT TO 29 U.S.C. § 216(b)

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    I.     FACTUAL BACKGROUND ................................................................................. 3

    II.    PROCEDURAL HISTORY ..................................................................................... 5

ARGUMENT ....................................................................................................................... 6

    I.     THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR
          CONDITIONAL CERTIFICATION AND NOTICE ......................................... 6

          A.    Plaintiffs and Putative Class Members Are Not Similarly Situated
               With Respect To Their Pay Provisions ...................................................... 7

          B.    The Plaintiffs Are Not Similarly Situated to the Putative Class As
               To Their Job Requirements ..................................................................... 14

               1.    Plaintiffs and Opt-in Affiants Are Not Similarly Situated
                     As To the Performance of Office or Non-Manual Work ............. 15

               2.    Plaintiffs and Opt-in Affiants Are Not Similarly Situated
                       As To Whether They Direct the Work of Two or More
                       Employees .................................................................................. 16

               3.    Plaintiffs and Opt-In Affiants Are Not Similarly Situated
                       As To Whether They Perform Work Directly Related to the
                       General Business Operations of Verizon ................................... 19

                4.    To the Extent Plaintiffs Seek to Rebut Their Deposition
                       Testimony with Sham Affidavits, They Should Be
                       Disregarded ................................................................................ 20

          C.    Plaintiffs' Additional Evidence Does Not Show That They Are
                Similarly Situated to Opt-Ins or the Putative Class Members ................ 21

    II.    DEFENDANT OBJECTS TO PLAINTIFFS' REQUEST FOR
          TELEPHONE NUMBERS AND WORK AND PERSONAL E-MAIL
          ADDRESSES AND TO POST THE NOTICE AT LOCAL MANAGERS'
          WORK LOCATIONS ....................................................................................... 24

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Ali v. New York City Health & Hosps. Corp.*,
11 Civ. 6393 (PAC), 2013 U.S. Dist. LEXIS 44091 (S.D.N.Y. Mar. 27, 2013)....................24

*Baldwin v. Trailer Inns, Inc*.,
266 F.3d 1104 (9th Cir. 2001) ...............................................................................16

*Capsolas v. Pasta Resources, Inc.*,
No. 10 Civ. 5595(RJH), 2011 WL 1770827 (S.D.N.Y. May 9, 2011)....................................25

*Damassia v. Duane Reade, Inc.*,
250 F.R.D. 152 (S.D.N.Y. 2008) ............................................................................21

*Gonzalez v. Scalinatella, Inc.*,
No. 13 Civ. 3629(PKC), 2013 WL 6171311 (S.D.N.Y. Nov. 25, 2013)................................25

*Guess v. US Bancorp*,
06-07535-JF, 2008 U.S. Dist. LEXIS 18806 (N.D. Cal. Feb. 26, 2008) .................................8

*Guillen v. Marshalls of MA, Inc.*,
09 Civ. 9575 (LAP) (GWG), 2012 U.S. Dist. LEXIS 91639 (S.D.N.Y. July 2,
2012) ...................................................................................................................24

*Guillen v. Marshalls of MA, Inc.*,
750 F.Supp.2d 469 (S.D.N.Y. 2010)........................................................................22

*Han v. Sterling Nat'l Mort. Co., Inc.*,
No. 09–CV–5589 (JFB)(AKT), 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011)....................25

*Hicks v. Mercedes-Benz U.S. Int'l Inc.*,
7:08-cv-0536-LSC, 2012 U.S. Dist. LEXIS 93708 (N.D. Ala. July 6, 2012) ........................13

*Hoffman-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989)...........................................................................................7, 8, 14

*Jenkins v. TJX Cos.*,
853 F. Supp. 2d 317 (E.D.N.Y. 2012) ....................................................................24

*Khan v. Airport Management Services, LLC*,
   No. 10 Civ. 7735(NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ...............................22

*Merriweather v. Southwest Research Institute*,
   09-cv-0328, 2010 U.S. Dist. LEXIS 117297 (S.D. Ind. Nov. 3, 2010).................................21

*Mike v. Safeco Ins. Co.*,
   274 F. Supp. 2d 216 (D. Conn. 2003)..........................................................................6, 14

*Myers v. Hertz Corp.*,
   624 F.3d 537, 555 (2d Cir. 2010)..................................................................... passim

*Pacheco v. Boar's Head Provisions Co., Inc.*,
   671 F. Supp. 2d 957 (W.D. Mich. 2009) ......................................................................21

*Parks v. Eastwood Ins. Servs., Inc.*,
   No. SA CV 02–507 GLT, 2002 WL 34370244 (C.D. Cal. July 29, 2002)...........................25

*Ramos v. Baldor Specialty Foods, Inc.*,
   10 Civ. 6271(RMB), 2011 WL 2565330 (S.D.N.Y. June 16, 2011) *aff'd* 687
   F.3d 554 (2d Cir. 2012)...............................................................................................16

*Reab v. Elec. Arts, Inc.*,
   214 F.R.D. 623 (D. Colo. 2002) ..................................................................................25

*Romero v. H.B. Auto. Group, Inc.*,
   No. 11 Civ. 386 (CM), 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012)....................8

*Rudd v. T.L. Cannon Corp.*,
   No. 3:10-CV-591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011).................................................7

*Trinh v. JP Morgan Chase & Co.*,
   No. 07-CV-1666 ............................................................................................................8

*Vargas v. HSBC Bank USA, N.A.*,
   11 Civ. 7887 (DAB), 2012 U.S. Dist. LEXIS 113993 (S.D.N.Y. Aug. 9, 2012) ...................14

*Zhang v. Bally Produce, Inc.*,
   12-CV-1045 (FB) (JMA), 2013 U.S. Dist. LEXIS 57544 (E.D.N.Y. Apr. 22,
   2013) ...........................................................................................................................23

STATUTES

29 U.S.C. § 216.............................................................................................................6, 8

29 U.S.C. § 626...........................................................................................................8

**RULES AND REGULATIONS**

29 C.F.R. § 541.100 ............................................................................... passim

29 C.F.R. § 541.200 ............................................................................... passim

29 C.F.R. § 541.201 ....................................................................................19

29 C.F.R. § 541.300 ......................................................................................7

29 C.F.R. § 541.400 ......................................................................................7

29 C.F.R. § 541.500 ......................................................................................7

29 C.F.R. § 541.600 ................................................................................7, 12

29 C.F.R. § 541.601 ............................................................................... passim

29 C.F.R. § 541.703 ....................................................................................16

# INTRODUCTION

Plaintiffs, Local Managers at Defendant Verizon New York Inc. ("Verizon" or "Defendant") who oversee teams of 15-23 unionized technicians and earn over $100,000 annually, brought this case alleging that they and other Local Managers were misclassified as exempt from the Fair Labor Standards Act ("FLSA") and New York Labor Law's overtime requirements. They now seek to certify an FLSA collective action of Local Managers at Verizon at any time between November 17, 2011 and the present ("Collective Action Period"). (Plaintiffs' Memorandum of Law in Support of Motion for Conditional Certification and Notice Pursuant to § 216(b) (hereinafter "Motion")).

The Second Circuit has instructed that to obtain conditional certification, Plaintiffs must make "some showing that there are other employees who are similarly situated" to them in two respects: "with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (emphasis added) (citations omitted). Here, Plaintiffs have failed on both counts.

First, Plaintiffs cannot show that they are similarly situated to other Local Managers "with regard to their pay provisions…on which the criteria for many FLSA exemptions are based." Id. In particular, the Plaintiffs and putative class members are not similarly situated in their eligibility for the highly compensated employee ("HCE") exemption, which applies to individuals earning over $100,000 annually. Putative class members straddle this $100,000 threshold. Some Local Managers, like the Plaintiffs, earned over $100,000 for the entire three-year period, while others earned over $100,000 for only part of the period, and others yet never earned over $100,000. These differences critically impact the exemption analysis applicable to each putative class member. The Department of Labor has made it crystal clear that the HCE

exemption is fundmantally different from other exemptions because the $100,000 threshold itself is a "strong indicator of an employee's exempt status." 29 C.F.R. § 541.601(c). Consequently, the "detailed analysis of the employee's job duties" that is required for other exemptions is *not* required for employees who meet the HCE $100,000 threshold. 29 C.F.R. § 541.601(a). Under the HCE exemption, if an employee earns over $100,000, that individual is exempt if he or she has a primary duty including office or non-manual work and meets *any one* criteria of the executive, administrative or professional exemptions. *Id.* In contrast, an individual earning less than $100,000 is exempt only if he or she meets *all* of the criteria of these exemptions. Given the distribution of putative class members on either side of the $100,000 fault line, Plaintiffs cannot satisfy the Second Circuit's requirement that they be similarly situated to the putative class "with regard to their pay provisions [] on which the criteria for many FLSA exemptions are based." *Myers*, 624 F.3d at 555 (citations omitted).

Second, Plaintiffs cannot show that they and the putative opt-in class are "similarly situated with respect to their job requirements." *Id*. Plaintiffs' own witnesses demonstrate the lack of similarity. While Plaintiffs direct their technicians' work, evaluate their performance, initiate discipline, investigate potential infractions of Verizon's policies, and act as the company's representatative in grievance meetings, the opt-in witnesses claim to clean garages and trucks, throw out trash, deliver supplies, perform inspections using form checklists, perform customer service, hand out schedules and take attendance. Clearly these are very different job requirements, and the Second Circuit instructs that conditional certification should be denied where, as here, Plaintiffs fail to demonstrate similarity as to "job requirements…on which the criteria for many FLSA exemptions are based." *Id*.

# BACKGROUND

## I.    FACTUAL BACKGROUND

Plaintiffs, William Haas ("Haas") and Akhlaqur Rahman ("Rahman") (collectively

"Plaintiffs") are employed by Verizon in the title of Local Manager I&M/Construction ("Local

Manager").  (Deposition of Plaintiff William Haas ("Haas Dep.")[1] 4:24-5:6; 9:10-10:11;

Deposition of Akhlaqur Rahman ("Rahman Dep.") 9:6-22)[2].  Plaintiffs are responsible for a crew

of about 15 to 23 technicians.  (Complaint ("Compl.") ¶ 43-44; Dkt. No. 1; Haas Dep. 54:21-

55:13; Rahman Dep. 30:23-31:8; 80:24-81:24).  Plaintiffs direct their technicians' work (Haas

Dep. 172:18-173:14), continually assess their performance to keep them on track and hold them

accountable (Haas Dep. 106:12-107:9, 120:4-121:3; Rahman Dep. 232:6-233:25), and ensure

their technicians do not violate Verizon's Code of Conduct and other work rules (Rahman Dep.

163:4-7; Haas Dep. 162:24-163:4; Declaration of Colin Lashley ("Lashley Dec.") Ex. N).  When

their technicians do violate the rules, Plaintiffs initiate discipline.  (Haas Dep. 213:3-214:2;

Rahman Dep. 161:6-165:10; 199:16-202:7; 209:9-211:21).  For example, Plaintiff Haas has

suspended technicians without pay (Haas Dep. 162:24-163:4, 154:15-158:11, 163:5-170:11;

Haas Dep. Ex. 6; [3] Lashley Dec. Exs. H, I), and Plaintiff Rahman has sat in on hundreds of first-

step grievance proceedings (Rahman Dep. 116:24-117:3).  In their roles, Plaintiffs have

accomplished the following: Haas has "increased workforce operating productivity to

115%...and contributing $1.0M to profit" (Haas Dep. Ex. 24), managed "regional work force

generating $3.0 annual revenue, as well as end to end administrative management of technical

---

[1] The deposition testimony of William Haas is attached as Exhibit C to the Declaration of Tonya Braun in Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Braun Declaration" or "Braun Dec."), filed concurrently herewith.

[2] The deposition testimony of Akhlaqur Rahman is attached as Exhibit A to the Braun Declaration.

[3] All exhibits from Haas' deposition that are cited herein are attached as Exhibit D to the Braun Declaration.

capabilities, training and workforce productivity" (*id.*), "[d]elivered exceptional workforce

optimization performance while exceeding all business targets through use of military-based

inspirational leadership and discipline principles" (*id.*), and "managed the processes of planning,

budgeting and, and directing said workforce" (*id.*); and Rahman has " manage[d] individuals and

team performance…coach[ed] and develop[ed] for improvement" (Rahman Dep. Exs. 1 and 2)[4],

"consistently deliver[ed] on business targets for productivity…quality, customer service, and

safety" (*id.*), set up a call back process for calling customers back after installations (Rahman

Dep. 126:20-128:20), created individual performance plans to deal with low performers

(Rahman Dep. 165:14-166:22, 170:15-19), and acted as the "'go to' manager for resolution of

customer escalations and Public Service Commission (PSC) complaints…and effect[ed]

mutually satisfactory outcomes [regarding same]" (Rahman Dep. Exs. 1 and 2).

    Plaintiffs and other Local Managers received various types of compensation during the

Collective Action Period.  (Declaration of Paul Olson, December 2014 ("Olson December Dec.")

¶¶ 5-7).  Their gross pay consisted of a salary, incentive pay, and various other types of

compensation.  (Olson December Dec. ¶ 8).  The gross pay of some Local Managers, such as

Plaintiffs, exceeded $100,000 for all three years of the Collective Action Period.  (Declaration of

Paul Olson, Dkt. No. 109 ("Olson November Dec."), ¶¶ 13-15, 18-20, Olson December Dec. ¶

9).  The gross pay of some Local Managers, such as opt-in Mary Lynn Smith, was below

$100,000 for all three years of the Collective Action Period.  (Olson December Dec. ¶ 10).

Other Local Managers' gross pay excceeded $100,000 during only certain years in the three year

period.  (Olson December Dec. ¶¶ 11-13).  For example, putative class members Jeffrey Gardner

and Louis Schreib made over $100,000 in gross pay in 2011 and 2012 but not in 2013 (Olson

---

[4] All exhibits from Rahman's deposition that are cited herein are attached as Exhibit B to the Braun
Declaration.

December Dec. ¶¶ 11-12) and putative class member William Hiemcke made under $100,000 in 2011 and 2012 but over $100,000 in 2013.  (Olson December Dec. ¶ 13).

## II.    PROCEDURAL HISTORY

Plaintiffs brought this lawsuit on November 14, 2013.  (Compl., Dkt. No. 1, at ¶ 37).  On September 16, 2014, this Court issued an Order setting a November 17, 2014 deadline for the motion for conditional collective action certification and summary judgment motions.  (Dkt. No. 54).  On November 17, Plaintiffs filed the instant Motion (Dkt. No. 99) and a motion for partial summary judgment (Dkt. No. 102), and Defendant moved for partial summary judgment on the grounds that the Plaintiffs are exempt under the HCE exemption (Dkt. No. 106).  In Defendant's motion, Verizon demonstrated that Plaintiffs earned over $100,000 in gross pay in all three years of the Collective Action Period.  (Dkt. No. 106, at 13).  Verizon also demonstrated that Plaintiffs earned over $100,000 in each of those years even if incentive pay were excluded from gross pay.  *Id.* at 13-14.  Verizon further established, based on Plaintiffs' own testimony, that Plaintiffs satisfy the duties requirement of the HCE exemption.  (Dkt. No. 106, at 14-23).

In Plaintiffs' summary judgment motion, they argue that in 2009 and 2010 (which are outside the Collective Action Period), Plaintiffs do not meet the $100,000 threshold because their incentive pay is "discretionary."  (Dkt. No. 102, at 27).  Plaintiffs concede that the other components of Plaintiffs' pay counts towards the $100,000 threshold.  *Id.*

In support of the instant Motion, Plaintiffs submitted thirty-four affidavits from other Local Managers who have opted into the case.[5]  In contrast to the Plaintiffs, these opt-ins claim that their job duties consist of physical work such as cleaning trucks and garages and picking up

---

[5] Citations to affidavits of other Local Managers who have opted in to the case refer to Exhibits to Plaintiffs' Motion, attached to the Declaration of Kelly Anne Magnuson, Esq. (Dkt. No. 103, Exs. 21-50, 53- 56).

trash,[6] delivering supplies to technicians,[7] making site visits to perform safety and qualify

inspections according to form checklists,[8] traveling to customer locations and performing

customer service,[9] handing out schedules to technicians, and taking attendance.[10]

## ARGUMENT

## I.   THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE

In order to obtain conditional certification for notice purposes, a plaintiff must make a

threshold showing that he is "similarly situated" to the proposed class members.  29 U.S.C.

§ 216(b).  Plaintiffs bear the burden of proof on this issue, *see Mike v. Safeco Ins. Co.*, 274

---

[6] J. Allette (Ex. 21) at ¶ 10; T. Barnes-Washington (Ex. 47) at ¶ 3; S. Brower (Ex. 22) at ¶12; J. Caleca (Ex. 43) at ¶ 7; D. Connelly (Ex. 23) at ¶ 4; T. Cosom (Ex. 44) at ¶ 6; G. I. Dickens (Ex. 24) at ¶ 11; B. Donnelly (Ex. 25) at ¶ 5; R. Dorah (Ex. 53) at ¶ 9; R. Dossantos (Ex. 26) at ¶ 11; P. Estro (Ex. 27) at ¶ 9; R. Fernez (Ex. 55) at ¶ 7; T. Flood (Ex. 28) at ¶ 3; R. Francis (Ex. 29) at ¶ 11; B. Horowitz (Ex. 30) at ¶ 8; D. Hounsell (Ex. 49) at ¶ 11; S. Hunte (Ex. 31) at ¶ 11-12; L. Jeffries (Ex. 32) at ¶ 9; C. Jones (Ex. 33) at ¶ 9; J. Kaye (Ex. 34) at ¶ 4; G. Kulikowski (Ex. 35) at ¶ 3; R. Manoyrine (Ex. 45) at ¶ 8; L. Marquino (Ex. 54) at ¶ 9; J. Melchione (Ex. 36) at ¶ 8; C. Moe (Ex. 37) at ¶ 5; J. Petrie (Ex. 46) at ¶ 6; M. Roche (Ex. 38) at ¶ 1; J. Schneider (Ex. 39) at ¶ 11; D. Schrader (Ex. 56) at ¶ 4; M. L. Smith (Ex. 48) at ¶ 5; J. Tableman (Ex. 40) at ¶ 6; M. Tellis (Ex. 41) at ¶ 3; F. Volpe (Ex. 42) at ¶ 8; K. Wade (Ex. 50) at ¶ 8.

[7] J. Allette at ¶ 9; T. Barnes-Washington at ¶ 3; S. Brower at ¶ 10; J. Caleca at ¶ 7; D. Connelly at ¶ 4; T. Cosom at ¶ 5; G. I. Dickens at ¶ 12; B. Donnelly at ¶ 4; R. Dorah at ¶ 7; P. Estro at ¶ 11; R. Fernez at ¶ 6; T. Flood at ¶ 3; R. Francis at ¶ 9; D. Hounsell at ¶ 9; S. Hunte at ¶ 13; L. Jeffries at ¶ 8; C. Jones at ¶ 7; J. Kaye at ¶ 3; G. Kulikowski at ¶ 3; R. Manoyrine at ¶ 7; L. Marquino at ¶ 7; J. Melchione at ¶ 6; C. Moe at ¶ 4; J. Petrie at ¶ 4; M. Roche at ¶ 1; J. Schneider at ¶ 10; D. Schrader at ¶ 6; M.L. Smith at ¶ 5; J. Tableman at ¶ 5; M. Tellis at ¶ 3; F. Volpe at ¶ 7; K. Wade at ¶ 7.

[8] J. Allette at ¶ 8; T. Barnes-Washington at ¶ 4; S. Brower at ¶ 7-8; J. Caleca at ¶ 10-11; D. Connelly  at ¶ 3; T. Cosom at ¶ 2; G. I. Dickens at ¶ 16; B. Donnelly at ¶ 4; R. Dorah at ¶ 6; R. Dossantos at ¶ 7; P. Estro at ¶ 10; R. Fernez at ¶ 10; T. Flood at ¶ 3; R. Francis at ¶ 10; B. Horowitz at ¶ 7; D. Hounsell at ¶ 8; S. Hunte at ¶ 15; L. Jeffries at ¶ 11; C. Jones at ¶ 6; J. Kaye at ¶ 3; G. Kulikowski at ¶ 3; R. Manoyrine at ¶ 7; L. Marquino at ¶ 7; J. Melchione at ¶ 4; C. Moe at ¶ 4; J. Petrie at ¶ 4; M. Roche at ¶ 3; J. Schneider at ¶ 14; D. Schrader at ¶ 5; M. L. Smith at ¶ 5; J. Tableman at ¶ 5; M. Tellis at ¶ 3; F. Volpe at ¶ 7; K. Wade at ¶ 7.

[9] J. Allette at ¶ 8-9; T. Barnes-Washington at ¶ 3; S. Brower at ¶ 11; J. Caleca at ¶ 7, 19; D. Connelly at ¶ 3-4; T. Cosom at ¶ 4; G. I. Dickens at ¶ 9; B. Donnelly at ¶ 5; R. Dorah at ¶ 8; R. Dossantos at ¶ 6; P. Estro at ¶ 12; R. Fernez at ¶ 6; T. Flood at ¶ 3; R. Francis at ¶ 7; B. Horowitz at ¶ 6; D. Hounsell at ¶ 9-10; S. Hunte at ¶ 13; L. Jeffries at ¶ 8; C. Jones at ¶ 8; J. Kaye at ¶ 3; G. Kulikowski at ¶ 3; R. Manoyrine at ¶ 7; L. Marquino at ¶ 8; J. Melchione at ¶ 7; D. Schrader at ¶ 5; M. L. Smith at ¶ 6; J. Tableman at ¶ 5; M. Tellis at ¶ 3; F. Volpe at ¶ 7; K. Wade at ¶ 7

[10] J. Allette at ¶ 7; T. Barnes-Washington at ¶ 3; S. Brower at ¶ 7; J. Caleca at ¶ 6; D. Connelly at ¶ 3; G. T. Cosom at ¶ 2; I. Dickens at ¶ 10; B. Donnelly at ¶ 4; R. Dorah at ¶ 4; R. Dossantos at ¶ 11; P. Estro at ¶ 8; R. Fernez at ¶ 6; T. Flood at ¶ 3; R. Francis at ¶ 8; B. Horowitz at ¶ 6; D. Hounsell at ¶7; S. Hunte at ¶ 10; L. Jeffries at ¶ 7; J. Kaye at ¶ 3; G. Kulikowski at ¶ 3; R. Manoyrine at ¶ 6; L. Marquino at ¶ 3; J. Melchione at ¶ 4; C. Moe at ¶ 3; J. Petrie at ¶ 3; M. Roche at ¶ 1; J. Schneider at ¶ 9; D. Schrader at ¶ 3; M. L. Smith at ¶ 5; J. Tableman at ¶ 4; M. Tellis at ¶ 3; F. Volpe at ¶ 7; K. Wade at ¶ 6.

F. Supp. 2d 216, 220 (D. Conn. 2003), and courts have discretion in determining whether the

plaintiff's showing warrants conditional certification. *See Hoffman-La Roche Inc. v. Sperling*,

493 U.S. 165, 171-72 (1989).  Although the burden is not high at this stage, plaintiffs must at

least make a "modest factual showing" that conditional certification is appropriate.  *Myers*, 624

F.3d at 555 (citations omitted).  Courts "must…take a measured approach when addressing a

request for collective action certification, mindful of the potential burdens associated with

defending against an FLSA claim involving a large and broadly defined collective group of

plaintiffs."  *Rudd v. T.L. Cannon Corp.*, No. 3:10-CV-591 (TJM/DEP), 2011 WL 831446, at *6

(N.D.N.Y. Jan. 4, 2011), *adopted by*, 2011 WL 830636 (N.D.N.Y. Mar. 03, 2011).

> ### A.      Plaintiffs and Putative Class Members Are Not Similarly Situated With Respect To Their Pay Provisions

Plaintiffs must make "some showing that there are other employees who are similarly

situated…with regard to their pay provisions, on which the criteria for many FLSA exemptions

are based."  *See Myers*, 624 F.3d at 555 (citations omitted).   Most FLSA exemptions have both a

pay threshold requirement and duties requirements.  *See, e.g.,* 29 C.F.R. § 541.100 ($455 a week

salary threshold for executive exemption); 29 C.F.R. § 541.601 ($100,000 annual threshold for

HCE exemption).  The duties requirement is different for every exemption.  *Compare* 29 C.F.R.

§ 541.100 (executive exemption); 29 C.F.R. § 541.200 (administrative exemption); 29 C.F.R.

§ 541.300 (professional exemption); 29 C.F.R. § 541.400 (computer employees); 29 C.F.R.

§ 541.500 (outside sales); 29 C.F.R. § 541.601 (HCE exemption).  Thus, if a putative class

member meets the pay threshold for a particular exemption while another does not, different

standards apply to their claims; and where some putative class members meet the pay threshold

for one exemption while others meet the pay threshold for another exemption, those putative

class members are not "similarly situated" under the Second Circuit's test because their different

compensation levels trigger different duties requirements.  *Myers*, 624 F.3d at 555 (plaintiffs

must show there are "other employees who are similarly situated…with regard to their pay

provisions, on which the criteria for many FLSA exemptions are based") (citations omitted).

      The Second Circuit's "similarly situated" test is rooted in the U.S. Supreme Court's

admonition that notice is warranted only "in appropriate cases" where the "judicial system

[would] benefit[] by efficient resolution in one proceeding of common issues of law and fact

arising from the same alleged . . . activity."  *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S.at

169-70.[11]  A case where class members are subject to different exemptions based on differences

in their pay cannot be "efficient[ly] resol[ved]" in one proceeding because a jury would have to

look at each employee individually to decide the exemption inquiry.  *Id.*  Accordingly, courts

have denied conditional certification where different putative class members could be subject to

multiple different exemptions.  *Romero v. H.B. Auto. Group, Inc.*, No. 11 Civ. 386 (CM), 2012

U.S. Dist. LEXIS 61151, at *36 (S.D.N.Y. May 1, 2012) ("The fact that the putative opt-ins may

have been misclassified under at least two different exemptions, premised on their different job

duties, also militates against conditionally certifying the collective action as proposed."); *Trinh v.

JP Morgan Chase & Co.*, No. 07-CV-1666 W (WMC), 2008 U.S. Dist. LEXIS 33016, at *13

(S.D. Cal. Apr. 22, 2008) (refusing to conditionally certify FLSA class of loan officers where

determination of exempt status "necessarily involve[d] a fact-by-fact inquiry into the

circumstances of each employee to see if he or she falls within an administrative, outside sales,

highly compensated, combination, or any other exemption"); *Guess v. US Bancorp*, 06-07535-

JF, 2008 U.S. Dist. LEXIS 18806, at *12 (N.D. Cal. Feb. 26, 2008) (denying conditional

---

[11] *Hoffman-LaRoche* was decided under the Age Discrimination in Employment Act ("ADEA"), but the ADEA adopts the opt-in scheme and "similarly situated" requirements of the FLSA.  29 U.S.C. 216(b); 29 U.S.C. § 626(b).  Thus, the standards set by *Hoffman-LaRoche* are equally applicable to the FLSA's conditional certification test.  *See Myers*, 624 F.3d at 554, n.9 ("*Hoffman LaRoche's* interpretation of § 216(b) therefore binds us in FLSA cases as well as in ADEA cases.").

certification where employer argued that various exemptions, including the HCE exemption, applied, which would result in a "fact-specific, individualized inquiry").

Here, Plaintiffs legally cannot show that the putative class is similarly situated with respect to the pay provisions applicable to their exemptions.  In particular, the putative class is not similarly situated as to the $100,000 eligibility threshold of the HCE exemption.  *Supra*, pp. 4-5.  For those putative class members meeting the $100,000 pay threshold, the jury would not have to perform a "detailed analysis of the employee[s] job duties."  29 C.F.R. § 541.601(c). The jury would need to determine only whether they have a "primary duty" that" includes performing office or non-manual work" and whether they "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an exempt executive, administrative or professional employee."  29 C.F.R. § 541.601(a), (d).  In contrast, for those putative class members not meeting the $100,000 threshold, the jury would need to evaluate whether they meet all the requirements of one of the applicable exemptions.  For example, in this latter scenario, the jury would need to evaluate whether putative class members' (1) "primary duty is management of the enterprise in which the employee[s] [are] employed or of a customarily recognized department or subdivision thereof"; (2) whether they "customarily and regularly direct[] the work of two or more other employees"; and (3) whether their "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100 (executive exemption).  Alternatively, the jury would need to evaluate whether putative class members' (1) primary duty is the performance of nonmanual work directly related to Verizon's management or business operations; and (2) whether their primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.200 (administrative exemption).

To illustrate, putative class members Jeffrey Gardner and Louis Schreib made over $100,000 in gross pay in 2011 and 2012 but not in 2013.  (Olson December Dec. ¶¶ 11-12).  Thus, in 2011 and 2012, the HCE exemption could apply to them, but not in 2013, because their compensation levels went down that year.  In 2011 and 2012, the jury would need to determine only whether Gardner and Screib, for example, directed the work of two or more full-time equivalent employees, but in 2013, the jury additionally would need to determine whether they had a primary duty of management and made recommendations concerning changes in employee status.  The analysis of putative class member William Hiemcke, whose compensation went up over the three years, would be different.  He made under $100,000 in 2011 and 2012 but over $100,000 in 2013.  (Olson December Dec. ¶ 13).  As to him, in 2013, the jury would need to determine whether he met the HCE exemption requirements but in 2011 or 2012 the jury would need to determine whether he satisfied either the executive or administrative exemptions.  The analysis would differ still for opt-in Royan Dorah, because he earned more than $100,000 for all three years of the Collective Action Period (Olson December Dec. ¶ 9), while the jury's analysis of Dorah would be different still from its analysis of opt-in Mary Lynn Smith, who earned less than $100,000 for all three years (Olson December Dec. ¶ 10).

Plaintiffs' contention that incentive pay should not count towards the $100,000 pay threshold (Dkt. No. 102, at 27), does not, even if meritorious (which Verizon vigorously denies, (Dkt. No. 106, at 12-13)), eliminate this barrier to collective treatment.  Even if the jury were to exclude incentive pay from the gross pay amounts, putative class members would still straddle the $100,000 threshold over the class period, and other class members would still be above the threshold for all years while still others would be below the threshold for all years.  For example, opt-in Stephen Michael Brower made over $100,000 in gross pay in 2011 and 2012, even

excluding incentive pay, but in 2013 dropped below $100,000 with incentive pay excluded from

his gross pay.  (Olson December Dec. ¶ 16).  In 2011 and 2012, the jury would need to determine

only whether Brower, for example, performed office or non-manual work related to general

business operations of Verizon and would not additionally need to determine whether he

exercised discretion and independent judgment as part of his job.  In 2013, the jury would also

need to determine whether Brower customarily and regularly exercised discretion and

independent judgment.  In contrast, opt-ins Brian James Donnelly, Paul Estro, Barry Horowitz

and Donald Schrader made over $100,000 in 2011 in gross pay excluding incentive pay but

below $100,000 in 2012 and 2013 without incentive pay.  (Olson December Dec. ¶¶ 17-20).  As

to them, the jury could apply the HCE exemption in 2011, but would need to apply the executive

or administrative exemption in 2012 or 2013.  In yet another variation, putative class member

Cynthia LoFaso made less than $100,000 in gross pay excluding incentive pay in 2011 and 2012

but more than $100,000 in gross pay excluding incentive pay in 2013.  (Olson December Dec. ¶

21).  Thus, LoFaso could be subject to the HCE exemption in 2013, but not in 2011 or 2012,

while the executive or administrative exemption could apply to her in 2011 and 2012.  Other

putative class members, such as Terrance Brennan, earned more than $100,000 excluding

incentive pay for all three years of the Collective Action Period (Olson December Dec. ¶ 14),

while others yet, such as George Condoulis, earned less than $100,000 excluding incentive pay

for all three years (Olson December Dec. ¶ 15).  The jury's analysis of Brennan and Condoulis'

claims would differ based on these variations in their pay.

Even if the Court determines that only salary should be considered (which Verizon

strongly contends would not be appropriate), putative class members would still earn below

$100,000 in certain years of the Collective Action Period and above $100,000 in others.  For

example, opt-ins Rui Dossantos and James Petrie earned under $100,000 in salary alone in 2011

and 2012 but over $100,000 in 2013.  (Olson December Dec. ¶¶ 24, 26).  Thus, in 2013, the jury

would only need to decide, for example, whether they had a primary duty of management and

not whether the other criteria of the executive exemption were met.  In contrast, in 2011 and

2012, the jury would also need to determine whether they customarily and regularly directed the

work of two or more employees and whether they were able to recommend changes in status.

On the other hand, opt-ins Joseph Schneider, Conlan Moe and Ramon Manoyrine made over

$100,000 in salary in 2012 and 2013 but not in 2011.  (Olson December Dec. ¶¶ 25, 27-28).

Thus, looking at salary alone, the jury would need to decide whether they met the HCE

exemption in 2012 and 2013, but whether they met the requirements of the executive or

administrative exemption in 2011.  Finally, the jury's analysis would also differ as to putative

class member Ronald Abraham, who earned over $100,000 in salary alone during all three years

(Olson December Dec. ¶ 22), and putative class member Paul Joseph Savage JR, who earned less

than $100,000 in salary during all three years (Olson December Dec. ¶ 23).

Furthermore, different exemptions could apply even to individuals over the $100,000

threshold in the same year.  As to such individuals, they would be exempt if they were found to

perform office or nonmanual work and any one or more of the exempt duties outlined in the

executive and administrative exemptions.  29 C.F.R. § 541.601.  Indeed, at least five different

"exemptions" would be in play: (1) primary duty relating to management or general business

operations, 29 C.F.R. § 541.200(a)(2), (2) directing the work of two or more full-time equivalent

employees, 29 C.F.R. § 541.100(a)(3), (3) management as primary duty, 29 C.F.R. §

541.100(a)(2), (4) exercising discretion and independent judgment, 29 C.F.R. § 541.200(a)(3), or

(5) authority to hire or fire other employees or whose suggestions and recommendations as to the

hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight, 29 C.F.R. § 541.100(a)(4).  The jury would need to proceed employee-by-employee to determine which, if any, of these "exemptions" apply.

The massive inefficiencies inherent in such a proceeding are illustrated further by Plaintiffs' own highly generalized cookie-cutter affidavits.  For example, affiant Stephen Michael Brower, who meets the $100,000 threshold in 2011 and 2012, appears from his affidavit to have customarily and regularly directed the work of two or more full-time employees and thus would be subject to the HCE exemption on those grounds.  *See* S. Brower at ¶ 7 (hands out assignments to tech each day); *Hicks v. Mercedes-Benz U.S. Int'l Inc.*, 7:08-cv-0536-LSC, 2012 U.S. Dist. LEXIS 93708, at *31 (N.D. Ala. July 6, 2012) (concluding that third prong of the executive exemption was satisfied where plaintiffs admitted that they supervised team leaders and gave work directions and assignments to group members).  In contrast, other opt-ins, such as Paul Estro, who earned over $100,000 in at least one of the three years, testified only to "distribut[ing]…schedules" to techs (P. Estro at ¶ 8) and may not be exempt on the basis of customarily and regularly directing the work of technicians.  Instead, Mr. Estro testified to "handl[ing] customer service issues" (P. Estro at ¶ 12), which would meet the first prong of the administrative exemption concerning office or non-manual work related to Verizon's general business operations, or, alternatively, could demonstrate that he exercised discretion and judgment with respect to his job.

In sum, the proposed putative class is not similarly situated with respect to the pay provisions driving exemption eligibility and thus Plaintiffs' Motion should be denied.  *Myers*, 624 F.3d at 555.

**B.      The Plaintiffs Are Not Similarly Situated to the Putative Class As To Their Job Requirements**

Plaintiffs must also make a "modest factual showing" that they are similarly situated to the putative class with respect to their "job requirements." *Myers*, 624 F.3d at 555.  Because most exemptions hinge on employee job duties, this showing is necessary to ensure that group adjudication would be efficient and manageable. *See Hoffmann-LaRoche,* 493 U.S. at 169-70 (conditional certification appropriate only if group adjudication would allow for "efficient resolution"); *see also Vargas v. HSBC Bank USA, N.A.*, 11 Civ. 7887 (DAB), 2012 U.S. Dist. LEXIS 113993, at *13-14 (S.D.N.Y. Aug. 9, 2012) (denying conditional certification in exemption case where "different Fund Accountants ha[d] very different understandings of their own job duties and spen[t] their time on the job doing very different things); *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) (denying notice where plaintiff failed to "provide[] evidence of a common thread binding his proposed class of employees").[12]

Here, Plaintiffs' Motion should be denied for the second and independent reason that they cannot demonstrate that they are similarly situated to the putative class members with respect to "job requirements." *Myers*, 624 F.3d at 555.  Specifically, Plaintiffs and their own affiants are materially dissimilar to each other as to (1) whether their primary duty includes the performance of office or non-manual work (*see* 29 C.F.R. § 541.601(d); 29 C.F.R. § 541.200(a)(2)), (2) whether they customarily and regularly direct the work of two or more technicians (*see* 29 C.F.R. § 541.601(a); 29 C.F.R. § 541.100(a)(3)), and (3) whether they customarily and regularly

---

[12] Plaintiffs cite several cases in their Motion (p. 18-19) suggesting that the Court should not consider evidence of differences in duties based on conflicting evidence submitted by plaintiffs and defendants at the conditional certification stage.   But none of the cases suggest that conditional certification should be granted here, where testimony from the Plaintiffs and their own witnesses themselves plainly demonstrates that they are not similarly situated.

perform work related to the management or general business operations of Verizon or its customers (*see* 29 C.F.R. § 541.601(a); 29 C.F.R. § 541.100(a)(2)).

1. ***Plaintiffs and Opt-in Affiants Are Not Similarly Situated As To the Performance of Office or Non-Manual Work***

Plaintiffs and the opt-in affiants are not similarly situated as to whether their primary duty includes the performance of office or non-manual work, a duty relevant to the HCE and administrative exemptions. 29 C.F.R. § 541.601(d); 29 C.F.R. § 541.200(a)(2). The opt-ins claim they clean trucks, take out trash, and clean their area in the garage as one of six duties they regularly perform.[13] In contrast, the Plaintiffs spend very little time on manual work, as their technicians were supposed to clean the trucks and Plaintiffs did the task only when their technicians failed to do so properly or when higher ups came in for inspections, which occurred at most twice a year. (Haas Dep. 227:12-229:3; Rahman Dep. 234:5-235:9). Thus, Plaintiff Rahman cleaned out a truck only five to seven times in the course of an entire year and he estimates the task took only an hour. (Rahman Dep. 235:10-22). Similarly, as to other cleaning duties, Plaintiff Haas only cleaned out storage rooms four to five times from 2007 to the present (Haas Dep. 229:7-20), and Plaintiff Rahman testified that it is primarily the technicians' responsibility to keep the garage clean by putting equipment away and he only comes in after them to make sure it is done properly, which takes no more than 15 minutes per day. (Rahman Dep. 54:11-55:16). And neither Plaintiff claims to have any additional cleaning or manual duties. *See* Haas Dep. 21:22-22:9; 222:17-20 (no other work he performs with his hands); Rahman Dep. 238:7-14 (performed no other manual tasks).

---

[13] J. Allette at ¶ 10; T. Barnes-Washington at ¶ 3; S. Brower at ¶12; J. Caleca at ¶ 7; D. Connelly at ¶ 4; T. Cosom at ¶ 6; G. I. Dickens at ¶ 11; B. Donnelly at ¶ 5; R. Dorah at ¶ 9; R. Dossantos at ¶ 11; P. Estro at ¶ 9; R. Fernez at ¶ 7; T. Flood at ¶ 3; R. Francis at ¶ 11; B. Horowitz at ¶ 8; D. Hounsell at ¶ 11; S. Hunte at ¶ 11-12; L. Jeffries at ¶ 9; C. Jones at ¶ 9; J. Kaye at ¶ 4; G. Kulikowski at ¶ 3; R. Manoyrine at ¶ 8; L. Marquino at ¶ 9; J. Melchione at ¶ 8; C. Moe at ¶ 5; J. Petrie at ¶ 6; M. Roche at ¶ 1; J. Schneider at ¶ 11; D. Schrader at ¶ 4; M. L. Smith at ¶ 5; J. Tableman at ¶ 6; M. Tellis at ¶ 3; F. Volpe at ¶ 8; K. Wade at ¶ 6.

Plaintiffs' affiant witnesses also claim that they bring supplies to technicians as another of their main duties.[14]  In contrast, Plaintiffs testified that it is the technicians who are responsible for bringing their own supplies to job sites, that they only do this twice a week or so (Haas Dep. 229:21-230:19), and typically, only in connection with performing a work observation at that job site.  (Haas Dep. 230:20-25).  *See* 29 C.F.R. § 541.703(a) ("[w]ork that is 'directly and closely related' to the performance of exempt work is also considered exempt work").

> **2.      *Plaintiffs and Opt-in Affiants Are Not Similarly Situated As To Whether They Direct the Work of Two or More Employees***

Nor are Plaintiffs and their opt-in affiants similarly situated as to whether they direct the work of two or more employees, a duty pertinent to the executive and HCE exemptions.  29 C.F.R. § 541.601(a); 29 C.F.R. § 541.100(a)(3).  The "directing the work" prong is met if employees have responsibility for matters such as ensuring employees' compliance with policies and procedures or evaluating employees.  *Ramos v. Baldor Specialty Foods, Inc.*, 10 Civ. 6271(RMB), 2011 WL 2565330, at *6 (S.D.N.Y. June 16, 2011) *aff'd* 687 F.3d 554 (2d Cir. 2012) (concluding that plaintiff directed the work of other employees as part of his management duties, in part, because the "main part" of his job was to "mak[e] sure his [P]ickers [were] doing their job correctly"); *Baldwin v. Trailer Inns, Inc*., 266 F.3d 1104, 1116-17 (9th Cir. 2001) (holding that plaintiffs satisfied "directing work" element of executive exemption  where they "ensur[ed] [employees' compliance with [company] policies and procedures" and evaluated employees' work).  Plaintiffs and their affiants are not similarly situated as to these duties.

---

[14] J. Allette at ¶ 9; T. Barnes-Washington at ¶ 3; S. Brower at ¶ 10; J. Caleca at ¶ 7; D. Connelly at ¶ 4; T. Cosom at ¶ 5; G. I. Dickens at ¶ 12; B. Donnelly at ¶ 4; R. Dorah at ¶ 7; P. Estro at ¶ 11; R. Fernez at ¶ 6; T. Flood at ¶ 3; R. Francis at ¶ 9; D. Hounsell at ¶ 9; S. Hunte at ¶ 13; L. Jeffries at ¶ 8; C. Jones at ¶ 7; J. Kaye at ¶ 3; G. Kulikowski at ¶ 3; R. Manoyrine at ¶ 7; L. Marquino at ¶ 7; J. Melchione at ¶ 6; C. Moe at ¶ 4; J. Petrie at ¶ 4; M. Roche at ¶ 1; J. Schneider at ¶ 10; D. Schrader at ¶ 6; M. L. Smith at ¶ 5; J. Tableman at ¶ 5; M. Tellis at ¶ 3; F. Volpe at ¶ 7; K. Wade at ¶ 7.

As to ensuring employees' compliance with policies and procedures, Plaintiffs enforce various policies and procedures and initiate the disciplinary process when appropriate. (Haas Dep. 213:3-214:2; Rahman Dep. 161:6-165:10; 199:16-202:7; 209:9-211:21). As part of this role, Plaintiff Haas has sent technicians home without pay based upon their behavior in the workplace. (Haas Dep. 162:24-163:4; 154:15-158:11; 163:5-170:11). Haas also conducts "fact finding," provides a report of his findings, and "opines" whether the case is "strong." (*Id.*; 185:19-188:14). Rahman also investigates such infractions by technicians. (Rahman Dep. 111:13-113:9, 209:9-210:21). In contrast, Plaintiffs' affiant witnesses claim that they either have no role or a purely robotic one in discipline.[15]

Similarly, Plaintiffs ensure that their technicians meet scorecard objectives regarding "productivity, quality . . . customer experience and safety" (Rahman Dep. 86:13-87:3; 135:4-138:22) To ensure his technicians do so, Haas reviews WAFA reports regarding jobs completed in a day (Haas Dep. 107:21-108:7) and SABIT reports to determine whether technicians are leaving the garage on time as required (Haas Dep. 113:4-114:11), completes technician work observations (Haas Dep. 114:12-25), posts team results on a daily basis (Haas Dep. 115:2-22), and individually meets with technicians on a monthly basis to review their "scorecard" results (Haas Dep. 117:8-118:8). Rahman monitors whether his technicians leave the garage by 8 a.m., and otherwise "make[s] sure the techs are performing" through work observations. (Rahman Dep. 32:8-33:7; 185:13-188:10.) Plaintiffs also complete mid-year and year-end performance appraisals for their technicians. (Haas Dep. 106:12-107:9).

---

[15] J. Allette at ¶ 13; T. Barnes-Washington at ¶ 4; S. Brower at ¶ 9; J. Caleca at ¶ 10-11; D. Connelly at ¶ 6-7; T. Cosom at ¶ 2; G. I. Dickens at ¶ 17; B. Donnelly at ¶ 6; R. Dorah at ¶ 10; R. Dossantos at ¶ 9; P. Estro at ¶ 14; R. Fernez at ¶ 11; T. Flood at ¶ 4; R. Francis at ¶ 14; B. Horowitz at ¶ 7; D. Hounsell at ¶ 13-14; S. Hunte at ¶ 16-17; L. Jeffries at ¶ 13; C. Jones at ¶ 10; J. Kaye at ¶ 5; G. Kulikowski at ¶ 4; R. Manoyrine at ¶ 13; L. Marquino at ¶ 12; J. Melchione at ¶ 10; C. Moe at ¶ 7; J. Petrie at ¶ 7; M. Roche at ¶ 4; J. Schneider at ¶ 17; D. Schrader at ¶ 8; M. L. Smith at ¶ 8; J. Tableman at ¶ 7; M. Tellis at ¶ 4; F. Volpe at ¶ 6; K. Wade at ¶ 10.

Plaintiffs' affiant witnesses do not acknowledge having any role in evaluating technicians other than filling out standardized checklists as part of safety and quality inspections.[16] Although Plaintiffs do perform work observations during which they, in part, fill out these checklists, they move beyond this task and direct the work of their technicians while performing observations.  For example, Plaintiff Rahman uses the observations as a mechanism to find performance issues and follows up with technicians to ensure that they remedy the issues. (Rahman Dep. 62:9-16, 71:19-23).  As a result of what he sees in the observations, he reports back to his Area Manager on situations that may warrant discipline.  (Rahman Dep. 162:8-163:3).  Plaintiff Haas takes the opportunity while doing observations to talk to his technicians about where they stand in relation to their objectives.  (Haas Dep. 134:18-135:4).

Finally, Plaintiffs perform other work directing technicians that their affiant witnesses do not list in their job requirements.  Plaintiffs direct their technicians throughout the day on the proper procedures to follow, such as what to do when they have completed the day's work (Haas Dep. 172:18-173:14), and/or how to proceed if they cannot complete a job within a certain amount of time (Rahman Dep. 122:25-124:8).  Haas, for example, directs technicians to assist other technicians in order to complete work in a timely manner.  (Haas Dep. 309:22-310:13). Haas further monitors whether his technicians go straight to their first job, take their lunch breaks, and return to the garage as scheduled.  (Haas Dep. 151:19-152:8).  Haas' technicians also call him to ask how to approach difficult customers and how to handle a situation they have not previously encountered.  (Haas Dep. 259:24-262:8.)  Plaintiff Rahman also answers questions

---

[16] J. Allette at ¶ 8; T. Barnes-Washington at ¶ 4; S. Brower at ¶ 7-8; J. Caleca at ¶ 10-11; D. Connellyat ¶ 3; T. Cosom at ¶ 2-3; G. I. Dickens at ¶ 16; B. Donnelly at ¶ 4; R. Dorah at ¶ 6; R. Dossantosat ¶ 7; P. Estro at ¶ 10; R. Fernez at ¶ 10-11; T. Flood at ¶ 4; R. Francis at ¶ 10; B. Horowitz at ¶ 7; D. Hounsell at ¶ 13; S. Hunte at ¶ 17; L. Jeffries at ¶ 13-14; C. Jones at ¶ 10; J. Kaye at ¶ 5; G. Kulikowski at ¶ 4; R. Manoyrine at ¶ 7, 12; L. Marquino at ¶ 7; J. Melchione at ¶ 5; C. Moe at ¶ 4, 9; J. Petrie at ¶ 10-11; M. Roche at ¶ 3-4; J. Schneider at ¶ 14-16; D. Schrader at ¶ 5, 9; M. L. Smith at ¶ 5; J. Tableman at ¶ 3-4; M. Tellis at ¶ 4; F. Volpe at ¶ 6; K. Wade at ¶ 7, 10.

from his technicians that arise in the course of their work (Rahman Dep. 73:12-75:19; 159:21-160:4) and directs them how to proceed if, for example, they will not complete a job within a certain period of time (Rahman Dep. 122:25-124:8).  The affiant witnesses claim to merely hand out work schedules.[17]  In sum, the Plaintiffs and their affiants exhibit fundamental dissimilarities as to whether they direct the work of two or more employees.

### 3. *Plaintiffs and Opt-In Affiants Are Not Similarly Situated As To Whether They Perform Work Directly Related to the General Business Operations of Verizon*

In addition, Plaintiffs and the affiants lack similarity as to whether their primary duty includes "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."  29 C.F.R. § 541.200(a)(2).  This is a duty relevant to the HCE and administrative exemptions.  29 C.F.R. § 541.601(a); 29 C.F.R. § 541.200(a)(2).  This type of work is generally "related to assisting with the running or servicing of the business, as distinguished, for example from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).  Work in functional areas such as "quality control," "personnel management" and/or "safety and health" meets this requirement.  29 C.F.R. § 541.201(b).  Although both Plaintiffs and the affiants perform relevant to these criteria, there are material differences in the way they perform those duties.

First, both the Plaintiffs and the affiants perform work observations, but they do them very differently.  The affiants perform these observations, which they refer to as safety and

---

[17] J. Allette at ¶ 7; T. Barnes-Washington at ¶ 3; S. Brower at ¶ 7; J. Caleca at ¶ 6; D. Connelly at ¶ 3; T. Cosom at ¶ 2; G. I. Dickens at ¶ 10; B. at ¶ 4; R. Dorah at ¶ 4; R. Dossantos at ¶ 11; P. Estro at ¶ 8; R. Fernez at ¶ 6; T. Flood at ¶ 3; B. Horowitz at ¶ 6; D. Hounsell at ¶7; S. Hunte at ¶ 10; L. Jeffries at ¶ 7; J. Kaye at ¶ 3; G. Kulikowski at ¶ 3; R. Manoyrine at ¶ 6; L. Marquino at ¶ 3; J. Melchione at ¶ 4; C. Moe at ¶ 3; J. Petrie at ¶ 3; M. Roche at ¶ 1; J. Schneider at ¶ 9; D. Schrader at ¶ 3; M. L. Smith at ¶ 5; J. Tableman at ¶ 4; M. Tellis at ¶ 3; F. Volpe (at ¶ 7; K. Wade at ¶ 6.

quality inspections, using a checklist from which they could not deviate.[18]  They acknowledged

no business purpose behind this.  Plaintiffs, on the other hand, testified that the purposes of these

types of observations were ensuring that customers are getting the best service (Rahman Dep.

67:15-68:10), ensuring that the technicians are in compliance with company safety standards

(Rahman Dep. 58:6-59:20), ensuring that customers are safe, (*id.*), and improving the

performance of the technicians (Haas Dep. 332:6-23), points material to an analysis of whether

they are performing work related to "general business operations."

      Similarly, both Plaintiffs and the affiants testified to having some responsibility for

customer relations but in very different capacities.  The affiants testified in large part that they

"perform in person customer service" (*see e.g.,* C. Jones at ¶ 8).  In contrast, Plaintiff Haas'

technicians call him about how to approach difficult customer issues and he "go[es] out on

customer disputes" and exercises his "judgment" to, for example "recommend that the

tech[nician] leave."  (Haas Dep. 260:5-261:7).  Plaintiff Rahman investigates customer damage

complaints, and, in some instances, has made an assessment of whether the company should pay

out the complaint.  (Rahman Dep. 189:4-192:18).   In sum, Plaintiffs and the affiants are not

similarly situated with regard to the "job requirements" pertinent to the applicable exemptions

and thus their request for conditional certification should be denied for this second reason.

      **4.**    ***To the Extent Plaintiffs Seek to Rebut Their Deposition Testimony with***
           ***Sham Affidavits, They Should Be Disregarded***

      To the extent Plaintiffs argue that their own affidavits show that they have job duties

consistent with those of the opt-in affiants, Plaintiffs' affidavits, prepared after their depositions,

---

[18] J. Allette at ¶ 8; T. Barnes-Washington at ¶ 4; S. Brower at ¶ 7-8; J. Caleca at ¶ 11; D. Connelly at ¶ 3; T. Cosom at ¶ 3; G. I. Dickens at ¶ 16; B. Donnelly at ¶ 4; R. Dorah at ¶ 6; R. Dossantos at ¶ 7; P. Estro at ¶ 10; R. at ¶ 11; T. Flood at ¶ 4; R. Francis at ¶ 14; B. Horowitz at ¶ 7; D. Hounsell at ¶ 13; S. Hunte at ¶ 17; L. Jeffries at ¶ 13-14; C. Jones at ¶ 10; J. Kaye at ¶ 5; G. Kulikowski at ¶ 4; R. Manoyrine at ¶ 11; L. Marquino at ¶ 12; J. Melchione at ¶ 10; C. Moe at ¶ 7; J. Petrie at ¶ 7; M. Roche at ¶ 3; J. Schneider at ¶ 14; D. Schrader at ¶ 5; M. L. Smith at ¶ 5; J. Tableman at ¶ 5; M. Tellis at ¶ 3; F. Volpe at ¶ 7; K. Wade at ¶ 7.

are sham affidavits that should be disregarded.  *See, e.g., Damassia v. Duane Reade, Inc.*, 250

F.R.D. 152, 159-60 (S.D.N.Y. 2008) (refusing to rely on affidavits submitted in support of

conditional certification, because they were inconsistent with deposition testimony and thus not

reliable); *see also Merriweather v. Southwest Research Institute*, 09-cv-0328, 2010 U.S. Dist.

LEXIS 117297 (S.D. Ind. Nov. 3, 2010) (similar).  As fully detailed in Verizon's memorandum

of law in opposition to Plaintiffs' summary judgment motion at pp. 20-21, filed

contemporaneously herewith, these affidavits contradict the Plaintiffs' deposition testimony in

multiple, fundamental respects and this Court should not rely on them in deciding this Motion.

Moreover, the contradictions between Plaintiffs' deposition testimony and their affidavits, at

best, present credibility issues which will make "cross-examination of each plaintiff" important.

*Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 965 (W.D. Mich. 2009).

This further "suggest[s] the need for separate mini-trials to resolve each individual's claim," and

thus  "eliminate[s] any judicial efficiency that might be gained through a collective approach."

*Id.*

       **C.**     **Plaintiffs' Additional Evidence Does Not Show That They Are Similarly Situated to Opt-Ins or the Putative Class Members**

      None of the additional evidence submitted by Plaintiffs in support of their Motion shows

that they are similarly situated to the opt-ins or the putative class members.  First, Plaintiffs point

to the fact that the Plaintiffs and putative class members went through similar training and were

evaluated similarly (*see* Motion at 3, 16).  But Plaintiffs cannot use these documents as evidence

of a "common policy" justifying conditional certification because such evidence can only do so

if it demonstrates a "common policy or plan that *violated the law*."  *Myers*, 624 F.3d at 555

(emphasis added) (internal quotation marks omitted).  The materials Plaintiffs rely on

unequivocally demonstrate the expectation of managerial work, are fully consistent with exempt

status, and thus do not support Plaintiffs' Motion.  (*See, e.g.,* Rahman Dep. 265:21-268:6;

Lashley Dec. Ex. P, at Haas 000366-000367 (setting forth the following objectives: (1) "Sets and

communicates objectives, manages the work directs, the employee, and conducts a year-end

formal review to assess the contribution to the business;" (2) "Provides regular and ongoing

performance feedback, training and development and takes appropriate action when employee

does not meet performance standards;" and (3) "Places employee on performance improvement,

recommends and administers discipline as appropriate"); *see also* Haas Dep. 220:19-221:24;

Lashley Dec. Ex. O (similarly defining supervisor responsibilities for 2014 appraisal process)).

To the extent Plaintiffs contend that they and the putative class "were not actually given job

duties in conformity" with these lawful evaluation and training materials, this argument has been

rejected by courts in this jurisdiction as insufficient to justify conditional certification.  *See, e.g.,*

*Guillen v. Marshalls of MA, Inc.*, 750 F.Supp.2d 469, 476 (S.D.N.Y. 2010) (denying conditional

certification in exemption case where plaintiff claimed that "he was not actually given job duties

in conformity with [company] policies"); *see also Khan v. Airport Management Services, LLC*,

No. 10 Civ. 7735(NRB), 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011) (similar).

Second, Plaintiffs argue (*see* Motion at 7-9, 16), that because there are certain operational

rules that "apply to all LMs," such as the Code of Conduct, Work Rules, and attire guidelines,

and the collective bargaining agreement, conditional certification is appropriate (*See* Motion at

7-9, 16).  Plaintiffs' argument misses the mark.  These rules apply to the *technicians*, and

Plaintiffs' job is to enforce them.  (Rahman Dep. 163:4-7; Haas 162:24-163:4).  And these

materials in any event offer no support to Plaintiffs' claim of a uniform policy of misclassifying

Local Managers.  *See Myers*, 624 F.3d at 555 (notice only appropriate where Plaintiffs and

putative class members are victims of a "common policy or plan that *violated the law*." (emphasis added) (internal quotation marks omitted)).

Third, Plaintiffs rely on the fact that Local Managers use checklists for certain aspects of their jobs, namely work observations. (*See* Motion at 7-9, 16).  But these work observations are fully consistent with performance of exempt work (*supra* at p. 18) and in any event relate to just one duty of Local Managers.  *See, e.g.,* W. Haas Aff. (Ex. 19) at ¶ 3 (performing only 22 safety/quality inspections per month, which is less than one per day).  Moreover, there is significant variation in (1) how often Local Managers do these observations ((*see* Haas Dep. 92:25-93:10) (Haas only does work observation on some days); (Rahman Dep. 39:24-41:2) (Rahman does not do them when there is a safety, quality, or customer issue that arises)), (2) the degree to which Local Managers use the checklist versus inserting their own comments (*see* Deposition of Guy Sorrentino ("Sorrentino Dep.")[19] 68:10-69:3) (testifying that the Local Managers may use the comments field in their quality checks differently)), and (3) the extent to which Local Managers use the observations as a tool for providing technicians with feedback on their work performance ((*see* Rahman Dep. 62:9-16, 71:19-23) (Rahman follows up with the technician after noticing issue as part of observation); (Haas Dep. 134:18-135:4) (Haas talks to his technicians about where they stand in relation to their objectives)).  Given this degree of variation in the use of these checklists, Plaintiffs cannot rely on them in support of their Motion.

Fourth, Plaintiffs argue that the fact that Verizon classified all Local Managers as exempt justifies conditional certification.  (*See* Motion at 16).  But courts in the Second Circuit have consistently found that a blanket exemption policy is not sufficient evidence to show that Plaintiffs are similarly situated to potential class members. *See Zhang v. Bally Produce, Inc.*, 12-

---

[19] The deposition testimony of Guy Sorrentino is attached as Exhibit J to the Braun declaration.

CV-1045 (FB) (JMA), 2013 U.S. Dist. LEXIS 57544, at *11 (E.D.N.Y. Apr. 22, 2013); *Ali v. New York City Health & Hosps. Corp.*, 11 Civ. 6393 (PAC), 2013 U.S. Dist. LEXIS 44091, at **6-7 (S.D.N.Y. Mar. 27, 2013); *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 323 (E.D.N.Y. 2012); *Guillen v. Marshalls of MA, Inc.*, 09 Civ. 9575 (LAP) (GWG), 2012 U.S. Dist. LEXIS 91639, at *3 (S.D.N.Y. July 2, 2012).

Finally, Plaintiffs point to the evidence of Verizon's 30(b)(6) witness as supporting their theory that conditional certification is appropriate here. (*See* Motion at 16). In so doing, Plaintiffs mischaracterize the testimony of Verizon's 30(b)(6) witness, Guy Sorrentino. Mr. Sorrentino testified that although there were certain duties that he believed all Local Managers shared, he explained that there was no complete, centralized description of Local Manager duties and the duties varied from person to person. (Sorrentino Dep. 80:20-83:8). The duties Mr. Sorrentino describes, moreover, are core managerial duties and thus do not give rise to an inference of a uniform misclassification policy. *Id.* (testifying to duties such as being the "tactical leader of their team," "coach[ing]," "develop[ing]" and "train[ing]"); *see also Myers*, 624 F.3d at 555 (notice only appropriate where Plaintiffs and putative class members are victims of a "common policy or plan that *violated the law*." (emphasis added) (internal quotation marks omitted)). Thus, this testimony does not support Plaintiffs' Motion.

## II. DEFENDANT OBJECTS TO PLAINTIFFS' REQUEST FOR TELEPHONE NUMBERS AND WORK AND PERSONAL E-MAIL ADDRESSES AND TO POST THE NOTICE AT LOCAL MANAGERS' WORK LOCATIONS

The Court should deny the Motion outright, in which case it would not need to reach Plaintiffs' request (Motion at p. 20) for putative class member telephone numbers and work and personal e-mail addresses, as well as their request to post the Notice in Local Managers' work locations. If the Court does reach these requests, however, Plaintiffs' request for telephone numbers and e-mail addresses should be denied because first-class mail is far and away the

preferred notice method. *Gonzalez v. Scalinatella, Inc.*, No. 13 Civ. 3629(PKC), 2013 WL 6171311, at *5 (S.D.N.Y. Nov. 25, 2013) (finding first-class mail sufficient and requiring no production of telephone numbers or e-mail addresses); *Han v. Sterling Nat'l Mort. Co., Inc.*, No. 09–CV–5589 (JFB)(AKT), 2011 WL 4344235, at *12 (E.D.N.Y. Sept. 14, 2011) ("[P]laintiff's request for…phone numbers is premature" because "there is no evidence at this time that plaintiff will have trouble reaching the Proposed Class by sending the class notice to their address via first class mail."); *see also Parks v. Eastwood Ins. Servs., Inc.*, No. SA CV 02–507 GLT (MLGx), 2002 WL 34370244, at *5 (C.D. Cal. July 29, 2002) ("[P]roduction of telephone numbers . . . is unwarranted and presents a greater risk of improper solicitation"); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) ("[E]lectronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court").

For the same reasons, Plaintiffs' request that the notice be posted in the LM work locations should similarly be denied. *See Scalinatella, Inc.*, 2013 WL 6171311, at *5 (no notice posting required); *Capsolas v. Pasta Resources, Inc.*, No. 10 Civ. 5595(RJH), 2011 WL 1770827, at *5 (S.D.N.Y. May 9, 2011) (same).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiffs' Motion in its entirety.

- 25 -

Dated:  December 8, 2014      Respectfully submitted,

               s/ Tonya Braun
               Matthew W. Lampe
               Kristina A. Yost
               JONES DAY
               222 East 41st Street
               New York, New York 10017
               Tel: 212.326.3939
               Fax: 212.755.7306
               mwlampe@jonesday.com
               kyost@jonesday.com

               Tonya Braun (*admitted pro hac vice*)
               JONES DAY
               325 John H. McConnell Boulevard
               Suite 600
               Columbus, Ohio 43215
               Tel: 614.469.3939
               Fax: 614.461.4198
               tbraun@jonesday.com

               *Attorneys for Defendant Verizon New York Inc.*