UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM HAAS AND AKHLAQUR RAHMAN on behalf of themselves and all others similarly situated,<br><br>                  PLAINTIFF,<br>v.<br><br>VERIZON NEW YORK INC.,<br><br>                  DEFENDANT. | Case No. 13-cv-08130 (RA)<br><br>ECF Case |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VERIZON NEW YORK INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO NAMED PLAINTIFFS' INDIVIDUAL CLAIMS

# TABLE OF AUTHORITIES

Page

**CASES**

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
   757 F.2d 523 (2d Cir. 1985)..................................................................................................6

*Caci v. Wiz of Lake Grove, Inc.*,
   267 F. Supp. 2d 297 (E.D.N.Y. 2003) ....................................................................................9

*Davis v. J.P. Morgan Chase*,
   587 F.3d 529 (2d Cir. 2009)...................................................................................................9

*El v. Potter*,
   01 Civ. 6125 (RWS), 2004 U.S. Dist. LEXIS 24447 (S.D.N.Y. Dec. 6, 2004) .......................4

*Gonzalez v. El Acajutla Rest. Inc.*,
   CV 04-1513 (JO), 2007 U.S. Dist. LEXIS 19690 (E.D.N.Y. Mar. 20, 2007) ..........................4

*Gonzalez v. McNeil Techs., Inc.*,
   No. 1:06cv204, 2007 U.S. Dist. LEXIS 27262 (E.D. Va. Apr. 11, 2007)................................5

*Haas v. Behr Dayton Thermal Products, LLC*,
   No. 3:07cv139, 2008 U.S. Dist. LEXIS 122184 (S.D. Ohio Dec. 22, 2008) ...........................8

*Hart v. Crab Addison, Inc.*,
   No. 13–CV–6458 CJS, 2014 WL 2865899 (W.D.N.Y. June 24, 2014) ...................................9

*Hicks v. Mercedes-Benz U.S. Int'l, Inc.*,
   No. 7:08-CV-0536-LSC, 2012 U.S. Dist. LEXIS 60221 (N.D. Ala. April 30,
   2012) ..............................................................................................................................5, 6, 8

*Lundy v. Catholic Health System of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013)...................................................................................................9

*Monger v. Cactus Salon & SPA's LLC*,
   No. 08–CV–1817 (FB)(WDW), 2009 WL 1916386 (E.D.N.Y. July 6, 2009).........................9

*Norceide v. Cambridge Health Alliance*,
   814 F. Supp. 2d 17 (D. Mass. 2011) .....................................................................................10

*Norceide v. Cambridge Health Alliance*,
  No. 10–11729–NMG, 2014 WL 775453 (Feb. 24, 2014) ......................................................10

*Perez v. Westchester Foreign Autos, Inc.*,
  No. 11 Civ. 6091(ER), 2013 WL 749497 (S.D.N.Y. Feb. 28, 2013) .........................................9

*Ramos v. Baldor Specialty Foods*,
  10 Civ. 6271 (RMB), 2011 U.S. Dist. LEXIS 66631 (S.D.N.Y. June 16, 2011) ..............3, 6, 8

*Switzoor v. SCI Eng'g, P.C.*,
  No. 11 Civ. 9322 (RA), 2013 U.S. Dist. LEXIS 129994............................................................7

*U.S. v. Klinghoffer Brox. Realty Corp.*,
  285 F.2d 487 (2d Cir. 1960)........................................................................................................9

*Yuquilema v. Manhattan's Hero Corp.*,
  No. 13–CV–461 (WHP)(JLC), 2014 WL 4207106 (S.D.N.Y. Aug. 20, 2014).......................10

*Zubair v. EnTEch Eng'g P.C.*,
  808 F. Supp. 2d 592 (S.D.N.Y. 2011)........................................................................................7

**STATUTES**

29 U.S.C.S. § 207...............................................................................................................................5

29 U.S.C. § 216...................................................................................................................................4

Labor Law--Wage Theft Prevention Act, 2010 N.Y. Sess. Law (S. 8380) ....................................10

**OTHER AUTHORITIES**

29 C.F.R. § 541.201 ..........................................................................................................................9

29 C.F.R. § 541.601 ..................................................................................................................4, 5, 6

29 C.F.R. § 541.701 ..........................................................................................................................8

29 C.F.R. § 778.211 ..........................................................................................................................5

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

    I.    The Maximum FLSA Claim Period Is March 11, 2011 To Present ....................... 3

    II.    Plaintiffs Satisfy The HCE Exemption For The Entirety Of Their FLSA Claim (2011 To Present); Haas Additionally Meets The HCE Exemption Under the NYLL 2009 To Present and Rahman 2010 to Present .......................... 4

        A.    Plaintiffs Meet the Compensation Threshold In the FLSA Claim Period ................................................................................................... 4

        B.    Haas Additionally Meets The Compensation Threshold In The Years 2009-2010 And Rahman In 2010, Applicable To Their NYLL Claims ............................................................................................. 4

        C.    The HCE Exemption Applies To Plaintiffs Because Their Primary Duty Includes Performing Office Or Non-Manual Work .......................... 5

        D.    The HCE Exemption Applies To Plaintiffs Because They Customarily and Regularly Perform Exempt Tasks .................................. 7

            1.    Plaintiffs Customarily and Regularly Direct The Work Of Two Or More Technicians ............................................................... 7

            2.    Plaintiffs' Primary Duty Is Directly Related To The Management or General Business Operations Of Verizon ............ 8

    III.    Plaintiffs Have Been Paid Well Above The Applicable Minimum Wage Rate At All Times Relevant To This Litigation ........................................................ 9

    IV.    Verizon Is Entitled to Summary Judgment On Plaintiffs' Derivative NYLL Wage Statement Claim Because Plaintiffs Are Properly Classified As Exempt Employees ...................................................................................... 10

CONCLUSION ..................................................................................................................... 10

**INTRODUCTION**

In their Opposition,[1] Plaintiffs acknowledge that they "oversee a crew of technicians who perform installation and maintenance for Defendant's customers." (Pls. 56.1 Resp. ¶ 3; *see also* Complaint ¶ 43, Dkt. 1.)  Plaintiffs admit that they themselves do not do the installation and maintenance work (Pls. 56.1 Resp. ¶ 6; *see also* Haas Dep. 171:15-172:17; Rahman Dep. 26:23-27:5; 30:14-22), but rather are "graded on" the extent to which their technicians achieve "scorecard" objectives regarding "productivity, quality . . . customer service and safety (Pls. 56.1 Resp. ¶¶ 12; 22; 37).  So while it is the technicians' job to perform the installations and do the maintenance, Plaintiffs' job is to "get the technicians to work" (*id.* ¶ 38), "confirm that the . . . technicians' work [is] done in accordance with Verizon's quality and safety protocols" (*id.* ¶ 13), "advise" and "address" technicians when they "deviate" from Verizon's policies and procedures (*id.* ¶¶ 39, 40), and "relay" to technicians how they stand in relation to scorecard metrics (*id.* ¶ 41), all for the purpose of "develop[ing] the technician[s] to perform" and "creat[ing] accountability" (*id.* ¶ 45).  Plaintiffs agree that this work provides for "the employees' health . . . and ultimately the company's well being" (*id.* ¶ 15) and that it allows for the Company to provide "good customer service" (*id.* ¶ 16).  Naturally then, as Plaintiffs concede, they are evaluated upon supervisory criteria such as "communicat[ing] objectives . . . direct[ing] employees . . . provid[ing] regular and ongoing performance feedback . . . [and] recommend[ing] and administer[ing] discipline as appropriate."  (*Id.* ¶¶ 17-18.)

But this is by no means the full extent of Plaintiffs' admitted supervisory duties.  They also ensure that their technicians receive a "full day" of work assignments and request additional work as necessary from the dispatch center (*id.* ¶¶ 26, 36); review reports regarding their technicians' work (*id.* ¶ 24); monitor whether technicians go straight to their first job (*id.* ¶ 27);

---

[1] "Opposition" and "Opp." refer to Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment (Dkt. 114).  "Pls. 56.1 Resp." refers to  Plaintiffs' Responses and Objections to Defendant's Rule 56.1 Statement of Undisputed Facts (Dkt. 116).

ensure that they take an hour-long lunch break (*id.*); inform technicians regarding proper procedures to follow (*id.* ¶ 28); approve deviations from assigned jobs (*id.*); direct technicians to assist other technicians (*id.*); explain to their technicians how to handle difficult customers and situations they have not previously encountered (*id.* ¶ 29); answer calls from their technicians regarding questions and issues that arise in the course of their work (*id* ¶ 50); "occasionally" discipline employees by sending them home (*id.* ¶ 31); inform their Area Manager of their technicians' disciplinary infractions, including violations of the safety plan and when technicians are found "off the job" (*id.* ¶¶ 32, 48, 49); and attend grievance meetings (*id.* ¶ 33).

Indisputably, therefore, Plaintiffs admit to performing the very essence of supervisory work. Plaintiffs also concede that they received non-discretionary income in excess of $100,000 in the years 2011 to present (*id.* ¶ 60) and that, if the incentive bonus pay that Haas received in 2009 and 2010 and Rahman received in 2010 is counted, they earned in excess of $100,000 in those years as well (*id.* ¶ 61, 62). With respect to the incentive pay bonus, Plaintiffs admit that it was paid pursuant to criteria outlined in Verizon's short term incentive policy (*id.* ¶ 59).

These undisputed facts alone confirm that Haas qualifies for the Highly Compensated Employee ("HCE") exemption under the FLSA and NYLL from 2009 to present, as does Rahman from 2010 to present. Thus, Plaintiffs' overtime claims in these years fail. In addition, given their admissions regarding their compensation from 2007 to present (Pls. 56.1 Resp. ¶¶ 55, 56), Plaintiffs' minimum wage claims fail because they were paid well above the applicable minimum wage rate throughout the pertinent limitations periods. Finally, Plaintiffs' wage statement claim necessarily fails because it is a derivative claim.[2]

---

[2] Plaintiffs' Rule 56.1 Response purports to dispute various additional facts. But many of Plaintiffs' responses do not "specifically controvert" Verizon's statements with citations to the record as Local Rule 56.1 requires, but rather add irrelevant "clarifications" or information that has no bearing on the material issue. (*See* Pls. 56.1 Resp. ¶¶ 3, 6, 10, 11, 14, 20, 24, 25, 27, 29, 31, 32, 33, 34, 35, 39, 40, 41, 45, 46, 50, 53, 54, 57, 58). Additionally, where Plaintiffs dispute certain facts, they do so largely based upon after-the-fact affidavits that are inconsistent with their prior deposition testimony. (*Id.* ¶¶ 6, 10, 13, 16, 17, 32, 47, 53). Plaintiffs' Rule 403 objections also are misplaced given that Verizon's statements are supported by Plaintiffs' own deposition testimony.

Plaintiffs' primary arguments to the contrary (Opp. 1-2), that they perform "ordinary inspection work;" direct their technicians' work, but not "customarily and regularly;" and do not perform work related to Verizon's management or business operations (Opp. 7-17) ring hollow in light of their above-referenced admissions regarding their core managerial duties.  Not surprisingly, Plaintiffs rely heavily upon after-the-fact affidavits that contradict their previous sworn testimony.  This should not be condoned.[3]  *See, e.g., Ramos v. Baldor Specialty Foods*, 10 Civ. 6271 (RMB), 2011 U.S. Dist. LEXIS 66631, at *11-12 (S.D.N.Y. June 16, 2011) (courts in this Circuit "have rejected such attempts to rely on declarations that contradict the witness's prior deposition testimony and have granted summary judgment even where the purposed new evidence would otherwise create a triable issue of fact" (internal quotations omitted)).  Plaintiffs claim that company policies or input from their Area Manager or other departments constrains the manner in which Plaintiffs carry out their duties (*see* Opp. 4-6; Pl. 56.1 Resp. ¶¶ 10, 32, 41, 46, 53), but that is irrelevant here because Plaintiffs do not need to exercise discretion and independent judgment or be the ultimate decision maker to qualify for the HCE exemption (*see* Motion[4] 16-17).  Plaintiffs have wholly failed to create a genuine issue of material fact.

**I.      The Maximum FLSA Claim Period Is March 11, 2011 To Present.**

Without a shred of legal support, Plaintiffs argue (Opp. 18-19) that it would be "penalizing" for this Court to look to the date when Plaintiffs *filed* their written consent forms as

---

(continued…)

(*Id.* at  ¶¶ 6, 13, 17, 18, 24, 25, 28, 30, 31, 32, 33, 35, 42, 47).  Finally, Plaintiffs cannot legitimately disclaim (*Id.* ¶¶ 20, 35; *see also* Opp. 2, 12-13) that they drafted the language cited by Verizon in seeking assistance with their resumes. (*See* Haas Dep. 299:4-6 (" Q.  We've already established that you drafted the bullets here under Field Manager.  A.  Yes." (This excerpt from the Haas Deposition is attached to the Supplemental Declaration of Tonya Braun, filed contemporaneously herewith, as Exhibit A)); Rahman Dep. 273:15-18 ("Q. Here where you wrote 'I manage 30 to 60 technicians on a daily basis,' again, your choice of words, correct? A. Correct.").  In sum, neither Plaintiffs' Opposition or 56.1 Response create any factual issue requiring trial.

[3] Verizon addressed contradictions between Plaintiffs' affidavits and their prior deposition testimony in its Opposition to Plaintiffs' Motion for Partial Summary Judgment (Dkt. 117, 20-21, n.14.)

[4] "Motion" refers to Verizon's Motion and Memorandum in Support of Partial Summary Judgment as to Named Plaintiffs' Individual Claims (Dkt. 104; 106).

establishing their FLSA claim period.  Based upon the explicit language of the statute and controlling case law, it does not matter when Plaintiffs *signed* their consent forms (*id.* 18) or what intent they supposedly expressed in their Complaint (*id.*) nor are the earnings of a single opt-in plaintiff (*id.* 18-19) of any consequence.  Instead, as Verizon outlined (Motion 9-10), the law could not be more clear that the FLSA period is dictated by the date Plaintiffs *filed* their opt-in forms with the Court.  29 U.S.C. § 216(b); *El v. Potter*, 01 Civ. 6125 (RWS), 2004 U.S. Dist. LEXIS 24447, at **24-25 (S.D.N.Y. Dec. 6, 2004); *Gonzalez v. El Acajutla Rest. Inc.*, CV 04-1513 (JO), 2007 U.S. Dist. LEXIS 19690, at **14-15 (E.D.N.Y. Mar. 20, 2007) (named plaintiffs are required "to submit a written consent to join in a collective action under the FLSA, . . . [which] is *not* satisfied by the filing of the complaint itself") (emphasis added).  In sum, Plaintiffs' FLSA claim period reaches back no earlier than March 11, 2011.

II. **Plaintiffs Satisfy The HCE Exemption For The Entirety Of Their FLSA Claim (2011 To Present); Haas Additionally Meets The HCE Exemption Under the NYLL 2009 To Present and Rahman 2010 to Present.**

As earning a "high level of compensation is a strong indicator of an employee's exempt status" and "eliminate[es] the need for a detailed analysis of the employee's job duties" (29 C.F.R. § 541.601(c)), employees earning more than $100,000 are exempt if they "customarily and regularly perform[] *any one or more* of the exempt duties or responsibilities of an executive, administrative, or professional employee. . . ."  29 C.F.R. § 541.601(a); (c) (emphasis added).

A. **Plaintiffs Meet the Compensation Threshold In the FLSA Claim Period.**

Plaintiffs do not dispute that they earned non-discretionary income in excess of $100,000 as required by the HCE in the years 2011 to present.  (Pl. 56.1 Resp. ¶ 60.)

B. **Haas Additionally Meets The Compensation Threshold In The Years 2009-2010 And Rahman In 2010, Applicable To Their NYLL Claims.**

Plaintiffs argue (Opp. 17-18) the incentive pay that Haas received in 2009 and 2010, and that Rahman received in 2010, should not count toward the $100,000 threshold because it is

- 4 -

"discretionary" and that accordingly, they are below the threshold for those years. Plaintiffs erroneously contend (Opp. 17) that Verizon "maintained complete discretion to reduce or eliminate the VIP award bonuses" based solely upon their manager's input as to how well they performed on an individual basis. But Plaintiffs do not claim (nor could they) that Verizon retained discretion as to the *fact* of the bonus once it announced the bonus in a plan document published in advance and available to exempt employees. Plaintiffs also ignore their admission (Pls. 56.1 Resp. ¶ 59) that the criteria for payment was outlined in the plan document. Accordingly, as Verizon established (Motion 11-12), these payments are nondiscretionary as a matter of law. *See* 29 C.F.R. § 778.211(b) (bonuses discretionary only if the employer "retain[s] discretion both as to the fact of payment *and* as to the amount until a time quite close to the end of the period for which the bonus is paid") (emphasis added); *see also Gonzalez v. McNeil Techs., Inc.*, No. 1:06cv204, 2007 U.S. Dist. LEXIS 27262, at *13 (E.D. Va. Apr. 11, 2007) ("The clear thrust of [29 U.S.C.S.] § 207 is that once a bonus is promised to an employee as an inducement to achieve some business goal, even if that promise is not a guarantee of payment but contingent on other factors such as the financial state of the company" it is non-discretionary).

### C. The HCE Exemption Applies To Plaintiffs Because Their Primary Duty Includes Performing Office Or Non-Manual Work.

Plaintiffs cannot avoid the HCE exemption by contending (Opp. 7-10) that their work is not office or non-manual because they perform "ordinary inspection work."

*First*, Plaintiffs' entire argument is premised on their flawed contention (Opp. 10) that the HCE exemption "cannot apply" because "Verizon has failed to show that Plaintiffs' primary duty is office or non-manual work." This is not what the HCE requires. The HCE exemption applies to any employee who otherwise meets its requirements and "whose primary duty *includes* performing office or non-manual work." 29 C.F.R. § 541.601(d) (emphasis added); s*ee also Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, No. 7:08-CV-0536-LSC, 2012 U.S. Dist. LEXIS

60221, at *8 (N.D. Ala. April 30, 2012) (there is a "vast difference between fully determining an employee's 'primary duty' as part of the [white collar] exemption analysis and simply determining whether that primary duty 'includes performing office or non-manual work'" (quoting 29 C.F.R. § 541.601(d))).

Applying the proper analysis, Plaintiffs' argument (Opp. 7-10) must fail because it focuses on just one of Plaintiffs' duties, technician work observations (for which they omit the underlying purpose and significance), when Verizon only need establish, as it amply did with reference to many other duties (Motion 14-16; *supra* 1-2), that Plaintiffs' primary duty *includes* office of non-manual work. Indeed, although Plaintiffs dispute the frequency with which certain "administrative office duties" are performed (Opp. 10), they do not dispute that they perform such tasks, which cumulatively, if nothing more, shows that Plaintiffs' responsibility to "oversee" (Compl. ¶ 43; Dkt. 1) their technicians *includes* office or non-manual work. Moreover, Plaintiffs' affirmative statement that they are "the lowest-level 'managers' at Verizon" (Memorandum of Law In Support Of Motion for Partial Summary Judgment, 1; Dkt. 102) clearly places them within the ambit of the HCE exemption (*see* 29 C.F.R. § 541.601(d) (excluding only "non-management" employees "who perform work involving repetitive operations with their hands, physical skill and energy")).

*Second*, Plaintiffs' argument that they primarily perform "inspection work" (Opp. 7-8) relies upon after-the-fact affidavits that improperly contradict their pleading admissions that their job is to "oversee a crew of technicians" (Compl. ¶ 43, Dkt. 1) (*see Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528-29 (2d Cir. 1985)), as well as their deposition admissions that they perform a broad spectrum of traditional managerial tasks (*see* Motion 4-6; *supra* 1-2); (*see Ramos,* 2011 U.S. Dist. LEXIS 66631, at **11-12).

*Third*, the fallacy in Plaintiffs' attempt to align themselves with the plaintiffs in *Zubair* and *Switzoor* (Opp. 9) could not be more plain.  Those plaintiffs held the title "inspector" and provided paint inspection services on DOT projects.  *See Zubair v. EnTEch Eng'g P.C.*, 808 F. Supp. 2d 592, 595 (S.D.N.Y. 2011); *Switzoor v. SCI Eng'g, P.C.*, No. 11 Civ. 9322 (RA), 2013 U.S. Dist. LEXIS 129994, at **2-3; 9-10, n.3 (S.D.N.Y. Sept. 11, 2013).  They did not "oversee" (Compl. ¶ 43; Dkt. 1) a team of employees and thus their performance was not evaluated based upon the performance of their "crew" as is the case here (Pls. 56.1 Resp. ¶¶ 12; 22; 37).  And while the plaintiffs in *Zubair* and *Swootizer* may have simply confirmed that "contractor's work" was "in accordance with contract specifications" (Opp. 7), Plaintiffs here "develop the technician[s] to perform" and create "accountability" (Pls. 56.1 Resp. ¶ 45).

### D. The HCE Exemption Applies To Plaintiffs Because They Customarily and Regularly Perform Exempt Tasks.

#### 1. Plaintiffs Customarily and Regularly Direct The Work Of Two Or More Technicians.

Plaintiffs' claim (Opp. 11-14) that they do not "customarily and regularly direct the work of two or more other employees" deserves short shrift.  Plaintiffs' job is to "oversee a crew of technicians" (Compl. ¶ 43, Dkt. 1); the crews, by their own admission, number "20-25" employees (*id.* ¶ 44; *see also* Pl. 56.1 Resp. ¶ 4); and they are the only managers regularly in the field overseeing the technicians (Pls. 56.1 Resp. ¶ 11; *see also* Haas Dep. 233:19-235:5 (Plaintiffs' supervisor spends "[v]ery little time" in the field with the technicians)).  And Plaintiffs' pleadings admission that they "spend a large portion of their day" confirming that the "technicians are at their scheduled location and performing their jobs" (Compl. ¶ 38; Dkt. 1) and their Rule 56.1 Resp. admissions that this oversight responsibility spans the full spectrum of traditional supervisory responsibilities (*supra* 1-2) forecloses any sustainable inference that what Plaintiffs are doing in the field does not qualify as directing the work of their technicians.  *See*

*Haas v. Behr Dayton Thermal Products, LLC*, No. 3:07cv139, 2008 U.S. Dist. LEXIS 122184, at *45 (S.D. Ohio Dec. 22, 2008) ("[G]eneral supervision of two or more other employees" is sufficient to meet this prong because the "extent the Plaintiffs actually 'manage' the employees" is a separate consideration); *see also* 29 C.F.R. § 541.701 (defining "customarily and regularly" as a "frequency that must be greater than occasional but which, of course, may be less than constant").

Plaintiffs' argument (Opp. 11-12) that they cannot "meaningfully direct" technicians also is misplaced because Plaintiffs do not need to exercise discretion to meet this prong of the executive exemption.  *See Ramos,* 2011 WL 2565330, at *6, n.5 ("[T]here is no . . . requirement that ['executive' management] duties entail the exercise of . . . independent judgment" (internal quotations and citations omitted)).

Moreover, Plaintiffs fail in their attempt (Opp. 13-14) to distinguish Verizon's case law. Plaintiffs claim that the plaintiffs in *Hicks* all admitted that they supervise, but that was not the case in each of the *Hicks'* HCE exemption decisions.  In *Hicks*, 2012 U.S. Dist. LEXIS 60221, at **20-21, the court concluded that a plaintiff customarily and regularly directed his team despite claims, nearly identical to Plaintiffs here, that he "only relay[ed] messages" because the plaintiff admitted, as Plaintiffs do here, that he relayed directions to "'make sure they were doing'" what was required.  Thus, the *Hicks* decisions (and Verizon's other cases) could not be more on point.

### 2. Plaintiffs' Primary Duty Is Directly Related To The Management or General Business Operations Of Verizon.

Plaintiffs fare no better in their attempt to create a triable issue with respect to whether their work is directly related to the management or general  business operations of Verizon.

*First*, Plaintiffs' argument (Opp. 14-15) that they perform "ordinary inspection" work and thus do not perform work directly related to the management or general business operations is a nonstarter for the same reasons addressed *supra* at 5-7.

- 8 -

*Second*, Plaintiffs' reliance on *Davis* (Opp. 15-16) actually underscores that Plaintiffs' work falls on the *administrative* side of "assisting with the running or servicing of the business" rather than *production* side "of working on a manufacturing production line or selling a product" with respect to the administrative/production dichotomy.  *See* 29 C.F.R. § 541.201(a).  In *Davis*, the court analyzed the work of the plaintiff underwriters and concluded that they "produce[d] the services – loans – that [were] 'sold' by the business to produce its income." *Davis v. J.P. Morgan Chase*, 587 F.3d 529, 537 (2d Cir. 2009).  Here, Verizon is in the telecommunication business (Pls. 56.1 Resp. ¶ 1), and Plaintiffs admit that they do not perform the installation and maintenance work for Verizon's customers, which is reserved for the unionized technicians (Pls. 56.1 Resp. ¶ 6; *see also* Haas Dep. 171:15-172:17; Rahman Dep. 26:23-27:5; 30:14-22).  Applying *Davis*, it is the technicians, not Plaintiffs, who "produce the service[]" that is "'sold'" by Verizon.  *See id.* at 536-37 (contrasting plaintiffs with "marketing representatives charged with cultivating and supervising an independent sales force" who met the administrative exemption because "their primary duties of . . . organizing the sales people were aimed at promoting . . . customer sales *generally* not routine selling efforts" (internal quotations omitted)).

### III. Plaintiffs Have Been Paid Well Above The Applicable Minimum Wage Rate At All Times Relevant To This Litigation.

Plaintiffs' argument (Opp. 19-20) that the Second Circuit's "weekly method" for analyzing minimum wage claims set forth in *U.S. v. Klinghoffer Brox. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960), should be rejected because it is a "fifty-four year old" case is absurd.[5] None of Plaintiffs' off-point cases overcome this clearly established body of law.  The New York federal court cases Plaintiffs cite (Opp. 19) involve only whether a weekly salary should be

---

[5] The Second Circuit and district courts within the Circuit continue to follow *Klinghoffer. See, e.g., Lundy v. Catholic Health System of Long Island Inc.*, 711 F.3d 106, 114-17 (2d Cir. 2013); *Hart v. Crab Addison, Inc.*, No. 13–CV–6458 CJS, 2014 WL 2865899, at *11 (W.D.N.Y. June 24, 2014); *Perez v. Westchester Foreign Autos, Inc.*, No. 11 Civ. 6091(ER), 2013 WL 749497, at *10 (S.D.N.Y. Feb. 28, 2013); *Monger v. Cactus Salon & SPA's LLC*, No. 08–CV–1817 (FB)(WDW), 2009 WL 1916386, at *1 (E.D.N.Y. July 6, 2009); *Caci v. Wiz of Lake Grove, Inc.*, 267 F. Supp. 2d 297, 299-300 (E.D.N.Y. 2003).

divided by 40 hours or the total hours worked for overtime calculation purposes and do not address how to calculate the wage for minimum wage purposes.  Moreover, *Yuquilema v. Manhattan's Hero Corp.*, No. 13–CV–461 (WHP)(JLC), 2014 WL 4207106, at *5 (S.D.N.Y. Aug. 20, 2014), actually supports Verizon's argument that there is no minimum wage claim where the effective hourly rate of pay is greater than the minimum wage.  Finally, *Norceide v. Cambridge Health Alliance*, is a Massachusetts case in which the court took the "minority approach" in analyzing the pay of non-exempt hourly employees who only had been compensated for a specified number of hours.  814 F. Supp. 2d 17, 24 (D. Mass. 2011); *see also* No. 10–11729–NMG, 2014 WL 775453, at *4 (Feb. 24, 2014).

**IV.  Verizon Is Entitled to Summary Judgment On Plaintiffs' Derivative NYLL Wage Statement Claim Because Plaintiffs Are Properly Classified As Exempt Employees.**

Plaintiffs do not refute (Motion 24-25) that this derivative claim necessarily fails if this Court grants Verizon summary judgment, as it should.  In any event, Plaintiffs do not dispute Verizon's point (Motion 25, n.10) that the requirement to provide wage statement information only came into effect in April 2011, and thus, there is literally no basis for Plaintiffs' wage statement claim prior to April 2011.  *See* Labor Law--Wage Theft Prevention Act, 2010 N.Y. Sess. Law News 564 (S. 8380) (McKinney).

## CONCLUSION

For the reasons set forth above, Verizon's Motion should be granted.[6]

---

[6] Because Verizon's motion for partial summary judgment should be granted, this Court should also deny as moot Plaintiffs' motion for FLSA conditional certification.  The parties originally agreed that both Plaintiffs' motion for conditional certification and any summary judgment motions should be filed at the close of first-phase discovery. (Dkt. 15-1.)  After the close of first-phase discovery, Plaintiffs objected to Verizon being permitted to move for summary judgment at that time. (Dkt. 33.) Verizon argued, citing extensive authority, that it should be permitted to move for summary judgment motion at the same time Plaintiffs moved for conditional certification because the granting of the summary judgment motion (which challenges Plaintiffs' FLSA claims in their entirety) would moot the FLSA conditional certification motion, eliminating the Court's need to consider it on its merits. (Dkt. 40.)  Agreeing with Verizon, Magistrate Judge Cott ordered both motions to be filed at the same time.  (Dkt. 54.)

Dated: December 22, 2014

Respectfully submitted,

s/ Tonya Braun
Matthew W. Lampe
Kristina A. Yost
JONES DAY
222 East 41st Street
New York, New York 10017
Tel: 212.326.3939
Fax: 212.755.7306
mwlampe@jonesday.com
kyost@jonesday.com

Tonya Braun (*admitted pro hac vice*)
JONES DAY
325 John H. McConnell Boulevard
Suite 600
Columbus, Ohio 43215
Tel: 614.469.3939
Fax: 614.461.4198
tbraun@jonesday.com

*Attorneys for Defendant Verizon New York Inc.*