UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
WILLIAM HAAS and AKHLAQUR                        :
RAHMAN, *on behalf of themselves and all*        :
*others similarly situated*,                     :
                                                 :
                    Plaintiffs,                  :          13 Civ. 8130 (RA) (JLC)
                                                 :
          -v-                                    :
                                                 :
VERIZON NEW YORK, INC.,                           :
                                                 :
                    Defendant.                   :
----------------------------------------------------------------X

## REPORT AND RECOMMENDATION

**Table of Contents**

I.  **Background** ...................................................................................................2

    A.  Facts ................................................................................................2

        1.  Plaintiffs' Compensation .........................................................3

        2.  Plaintiffs' Duties ....................................................................4

    B.  Procedural History ..........................................................................7

II.  **Discussion** ....................................................................................................9

    A.  Plaintiffs' Motion for Conditional Certification and Notice.............9

        1.  Applicable Legal Standards ....................................................9

        2.  Plaintiffs' Factual Showing in Support of
            Conditional Certification .......................................................10

        3.  Disclosure of Information for Verizon's Current
            And Former LMs ...................................................................14

        4.  Posting of the Notice.............................................................15

        5.  Conclusion ............................................................................15

    B.  The Parties' Cross-Motions for Summary Judgment.......................15

        1.  Applicable Legal Standards. ..................................................15

        2.  FLSA and NYLL Overtime Exemptions ...............................17

            a.  The Overtime Requirements ........................................17

            b.  Plaintiffs' Primary Duty...............................................18

            c.  Administrative Exemption ............................................22

                 i.  First Element (Salary)............................................23

                 ii.  Second Element (Office Work and General
                     Business Operations) .......................................23

                     a.  Office or Non-Manual Work.......................23

                     b.  Management or General Business
                        Operations...................................................26

                 iii.  Third Element (Discretion and
                    and Independent Judgment)................................28

i

|   |   | iv. | Conclusion ........................................................................31 |
|   | d. |   | Executive Exemption .....................................................31 |
|   |   | i. | First Element (Salary) ..............................................32 |
|   |   | ii. | Second Element (Primary Duty is Management).....................................................32 |
|   |   | iii. | Third Element (Directing Work of Other Employees) ................................................33 |
|   |   | iv. | Fourth Element (Hiring and Firing Authority)..................................................35 |
|   |   | v. | Conclusion .............................................................36 |
|   | e. |   | Highly Compensated Employee (HCE) Exemption .......................................................36 |
|   |   | i. | First Element (Performance of Office or Non-Manual Work)..............................................37 |
|   |   | ii. | Second Element (Exempt Duties).........................39 |
|   |   | iii. | Third Element (Salary) ..........................................40 |
|   |   | iv. | Conclusion .............................................................45 |
| 3. |   |   | FLSA and NYLL Minimum Wage Claims..............................45 |
| 4. |   |   | NYLL Wage Statement Claim ................................................47 |
| **III.** |   |   | **Conclusion** .......................................................................................48 |

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Ronnie Abrams, United States District Judge:**

Plaintiffs William Haas and Akhlaqur Rahman bring this action on behalf of themselves and all other similarly situated under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") against Verizon New York, Inc.[1] Plaintiffs seek relief for Verizon's alleged failure to pay them overtime and the minimum wage, and to furnish them with proper wage statements. Plaintiffs have moved for conditional certification and notice to form a class of similarly situated plaintiffs under the FLSA. Plaintiffs have also moved for partial summary judgment on the basis that Verizon cannot avail itself of certain exemptions to the overtime laws. Specifically, Plaintiffs assert that in attempting to justify its failure to pay overtime, Verizon cannot invoke the administrative, executive, or highly compensated employee exemptions. Verizon has cross-moved for partial summary judgment, arguing that Plaintiffs are subject to the highly compensated employee exemption, that it paid Plaintiffs above the minimum wage at all times, and that it was not required to provide wage statements to Plaintiffs. For the reasons set forth below, I recommend that Plaintiffs' motion for conditional certification and notice be granted. In addition, I recommend that both Plaintiffs' and Verizon's cross-motions be granted in part and denied in part.

---

[1] As of the date of this Report and Recommendation, 81 plaintiffs, in addition to Plaintiffs Haas and Rahman, have filed consents to join the action.

## I.    BACKGROUND

### A.    Facts[2]

Plaintiffs Haas and Rahman (collectively, "Plaintiffs") work as Installation and

Maintenance/Construction Local Managers ("LMs" or "Local Managers") for Defendant

Verizon New York, Inc. ("Verizon"), a company that provides voice, internet, and television

services to residential and business customers. Def. 56.1 ¶¶ 1, 2.

In Verizon's hierarchy, the reporting chain is as follows: technicians to LMs, LMs to

Area Managers ("AMs"), AMs to Directors, and Directors to Vice Presidents or Presidents.

Currently, Plaintiffs report to AM Colin Lashley ("Lashley") who reports to Director John

Quadrino ("Quadrino"). *Id.* at ¶ 8. Plaintiffs are two of six LMs who report to Lashley, and they

work out of Verizon's Hollis Garage located in South Queens. *Id.* at ¶ 7. Since 2007, Plaintiffs'

crews have ranged from 15 to 23 technicians. *Id.* at ¶ 4.

---

[2] The facts set forth below are taken from the Complaint ("Compl.") (Dkt. No. 1); Verizon's
Rule 56.1 Statement of Material Undisputed Facts in Support of its Motion for Partial Summary
Judgment as to Named Plaintiffs' Individual Claims ("Def. 56.1") (Dkt. No. 105); Plaintiffs'
Local Rule 56.1 Statement of Undisputed Facts ("Pl. 56.1") (Dkt. No. 101); Plaintiffs' Responses
and Objections to Defendant's Rule 56.1 Statement of Undisputed Facts ("Pl. Resp. 56.1") (Dkt.
No. 124); Verizon's Response to Plaintiffs' Local Civil Rule 56.1 Statement of Undisputed Facts
("Def. Resp. 56.1") (Dkt. No. 125); the deposition of William Haas dated July 24, 2014 ("Haas
Dep.") (Dkt. Nos. 103 Exs. 1-2, 107 Exs. 2 & 4, 119 Ex. C); the deposition of Akhlaqur Rahman
dated July 25, 2014 ("Rahman Dep.") (Dkt. Nos. 103 Exs. 3-4, 107 Exs. 1 & 3, 119 Ex. A); the
deposition of John Quadrino dated October 2, 2014 ("Quadrino Dep.") (Dkt. Nos. 103 Ex. 7, 119
Ex. G); the deposition of Guy Sorrentino dated July 17, 2014 ("Sorrentino Dep.") (Dkt. Nos. 103
Ex. 5, 119 Ex. J); the deposition of Colin Lashley dated October 1, 2014 ("Lashley Dep.") (Dkt.
Nos. 103 Ex. 6, 119 Ex. E); the declaration of Colin Lashley dated December 4, 2014 ("Lashley
Decl.") (Dkt. No. 120); the affidavit of William Haas dated November 13, 2014 ("Haas Aff.")
(Dkt. No. 103 Ex. 19); the affidavit of Akhlaqur Rahman dated November 12, 2014 ("Rahman
Aff.") (Dkt. No. 103 Ex. 20); the declaration of Arleen Preston dated November 17, 2014
("Preston Decl.") (Dkt. No. 108); and the declaration of Paul Olson dated December 8, 2014
("Olson Decl.") (Dkt. No. 122). The Court notes where facts are disputed.

## 1. Plaintiffs' Compensation

Plaintiffs' bi-weekly salaries during the time period relevant to this action are as follows:[3]

| Date | Haas | Rahman |
|---|---|---|
| November 2007 | $3,403.85 | $3,196.15 |
| April 2008 | $3,488.46 | $3,388.46 |
| April 2009 | $3,611.54 | $3,461.54 |
| April 2010 | $3,683.77 | $3,565.38 |
| April 2011 | $3,775.88 | $3,708.00 |
| April 2012 | $3,964.69 | $3,856.30 |
| April 2013 | $4,099.50 | $3,987.42 |

During this time period, Verizon did not pay Plaintiffs overtime for any hours worked in excess of 40 per week.[4] Plaintiffs received additional compensation in the form of holiday pay and differential pay. *Id.* at ¶ 58. Plaintiffs also received incentive bonus pay pursuant to criteria in Verizon's short term incentive policies. *Id.* at ¶ 59.

For the years 2011 to present, Plaintiffs Haas and Rahman earned in excess of $100,000, excluding bonuses.[5] *Id.* at ¶ 60.[6] Plaintiffs' gross compensation including bonuses during the years 2007 to 2013 is as follows:[7]

---

[3] *See* Def. 56.1 ¶¶ 55, 56.

[4] *See* Pl. 56.1 ¶ 17 and Def. Resp. 56.1 ¶ 17. Verizon did pay Plaintiffs overtime under certain limited circumstances, such as during a "Service Emergency." Preston Decl. ¶ 7 & Ex. B.

[5] This compensation significantly exceeds the minimum wage under both federal and New York state labor laws. *See* 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652.

[6] The average total compensation, including overtime, for technicians who worked with Plaintiffs during the years 2011 to 2013 was approximately $112,000. Pl. 56.1 ¶ 84.

[7] Pl. 56.1 ¶¶ 21, 22. According to Plaintiffs, Haas's bonuses in each of these years were: $0 (2007 and 2008), $7,527 (2009), $7,593 (2010), $9,990 (2011), $10,922 (2012), and $9,995 (2013). Verizon does not dispute these amounts except for the 2009 figure. Verizon argues that Plaintiffs have no evidence demonstrating Plaintiff Haas received this bonus in 2009. Def. Resp. 56.1 ¶ 21. Plaintiff Rahman's bonuses in each of these years were: $0 (2007, 2008 and 2009), $7,277 (2010), $12,510 (2011), $10,412 (2012), $9,722 (2013). Verizon does not dispute these figures. *Id.* at ¶ 22.

| Year | Haas | Rahman |
|------|------|--------|
| 2007 | $97,430.99 | $92,057.38 |
| 2008 | $98,910.92 | $92,389.05 |
| 2009 | $100,428.55 | $94,902.64 |
| 2010 | $103,352.05 | $100,233.64 |
| 2011 | $126,926.74 | $126,812.72 |
| 2012 | $123,429.03 | $119,395.17 |
| 2013 | $117,352.10 | $115,780.50 |

### 2. Plaintiffs' Duties

Each day Plaintiffs take their technicians' attendance. If Plaintiffs see that a technician does not have sufficient work, they coordinate with Verizon's dispatch department, which is initially responsible for assigning work. *Id.* at ¶¶ 26, 36. Other duties Plaintiffs perform include: monitoring the start and end times of technicians' jobs; ensuring the technicians only take an hour lunch break; informing technicians of proper procedures to follow; approving job deviations; coordinating team work among technicians; advising technicians how to handle difficult customers; and attending grievance proceedings. *Id.* at ¶¶ 27, 28, 29, 33.

Plaintiffs also spend a significant portion of their day traveling to worksites throughout Queens to perform quality and safety inspections to confirm that technicians follow Verizon's policies. Pl. 56.1 ¶¶ 27, 33, 34, 35. When doing this work in the field, Plaintiffs sometimes encounter safety hazards. *Id.* at ¶ 29. They also perform approximately 20 technician vehicle inspections every quarter. *Id.* at ¶ 40.

Though Plaintiffs and Verizon agree on the duties outlined above, the parties disagree regarding the finer details of these duties and the importance of these duties to Plaintiffs' job. Primarily, Plaintiffs characterize their inspection duties as the crux of their job. *Id.* at ¶ 27. Verizon, on the other hand, emphasizes that Plaintiffs' managerial tasks lie at the core of their job. Def. Resp. 56.1 ¶ 27.

4

According to Plaintiffs, they spend a significant portion of their time in the field performing basic, repetitive inspections based on Verizon's procedures and checklists, which have the effect of routinizing their work. Pl. 56.1 ¶¶ 27, 33-41. In these inspections, Plaintiffs characterize their observations as "truly elementary," such as assessing whether a technician "use[s] knee pads and headlamps, lifts loads primarily with leg muscles, keeps load[s] close to body, removes and retains vehicle ignition key[s] when notifying garage mechanic[s] that the vehicle is ready for servicing, wears seatbelt[s] properly, and uses handrails to safely ascend or descend stairs." *Id.* at ¶ 38. Further, Plaintiffs characterize these duties as hazardous and demanding physical dexterity requiring them to utilize safety equipment to "protect them from falls, trips, falling objects, things going into their eyes, pieces of glass, pieces of concrete, [and] cuts." *Id.* at ¶¶ 29, 41-44. As to the physical demands of the job, Plaintiffs maintain that they have to "lie on the ground, climb over obstacles, and/or crawl into small spaces." *Id.* at ¶ 43. Further, Plaintiffs claim that they do not have discretion in performing these duties due to Verizon's strict standards, and that they are disciplined if they deviate from these standards. *Id.* at ¶¶ 50, 51, 52, 59, 60. Plaintiffs also state that carrying out these duties does not impact Verizon's general business operations, strategy, or objectives. *Id.* at ¶¶ 47, 48.

Verizon disagrees with Plaintiffs' characterization of their inspection duties. According to Verizon, though the work is done pursuant to standardized forms, evaluations are based on Plaintiffs' knowledge, and they have discretion in determining how to secure a deviating technician's compliance with Verizon's protocols. Def. Resp. 56.1 ¶¶ 27, 33, 34, 35, 37, 38, 39. Although acknowledging they may face some safety hazards, Verizon argues that Plaintiffs exaggerate the nature of the hazards and denies that the fieldwork requires physical dexterity. *Id.* at ¶¶ 29, 43, 45. Verizon also disputes that Plaintiffs' inspection duties do not impact Verizon's

5

general business operations. Instead, Verizon claims that this inspection work is necessary to ensure the quality and safety of its products and customers. *Id*. at ¶¶ 47, 48. As to Plaintiffs' alleged lack of discretion, Verizon contends that Plaintiffs "make a lot of decisions" in the application and administration of Verizon's rules and procedures. *Id*. at ¶¶ 51, 52, 59, 60.

Verizon characterizes Plaintiffs' managerial-oriented duties as critical to Verizon's overall business operations and necessary for the company to meet its customer service commitments because they evaluate technicians on productivity, quality, customer experience, and safety. Def. 56.1 ¶ 14; Def. Resp. 56.1 ¶¶ 47, 49, 50. Verizon avers that Plaintiffs' annual review process reflects the importance of their managerial duties, which evaluates Plaintiffs on their ability to communicate objectives to technicians, manage and direct their work, conduct their year-end formal reviews, provide ongoing performance feedback, training and development, and recommend and administer discipline as appropriate. Def. 56.1 ¶ 17.

Verizon emphasizes that Plaintiffs have a substantial role in directing the technicians they supervise. Though dispatch assigns the work, Verizon notes that it does so with input from Plaintiffs. Def. Resp. 56.1 ¶ 70. For example, Verizon states that Plaintiffs enter data into dispatch's system to specify the location and type of work that best suits each technician. *Id*. Additionally, according to Verizon, Plaintiffs work in conjunction with dispatch to rearrange work schedules to balance work distribution and account for absences or untimely job completion. *Id*. Verizon also contends that Plaintiffs train employees and are responsible for answering technicians' questions during the day as issues arise at work sites. *Id*. at ¶¶ 70, 78. Verizon maintains that, though Plaintiffs do not have the ability to hire and fire employees, *Id*. at ¶ 62, their recommendations receive serious weight in the disciplinary process. *Id*. at ¶¶ 63, 64, 65, 67, 68, 78. As an indicator that Plaintiffs' managerial duties are primary, Verizon points to

6

Plaintiffs' own résumés, which highlight these duties. *See* Def. 56.1 ¶¶ 20, 35; *see also* Haas

Dep. at 297; Rahman Dep. at 81.

Plaintiffs dispute Verizon's description of their managerial duties. Though Plaintiffs

admit that they perform managerial tasks on occasion, such as communicating objectives to

technicians, offering feedback, and providing reviews, they claim that Verizon mischaracterizes

the relative importance of these tasks to their job and the extent to which they perform them. Pl.

Resp. 56.1 ¶ 17. For example, not only can they not hire, fire, or demote technicians, but

Plaintiffs cannot unilaterally initiate disciplinary proceedings and any recommendations they

provide in such proceedings receive little weight. Pl. 56.1 ¶¶ 63, 65, 74, 76. Similarly, Plaintiffs

state they have a minimal role in the technicians' grievance process, which is limited to gathering

facts and providing them to supervisors. *Id.* at ¶ 77.  Plaintiffs also argue that they do not direct

technician work. Instead, the dispatch department assigns work, and Plaintiffs merely inform the

technicians of dispatch's decision. *Id.* at ¶¶ 70, 71. Furthermore, Plaintiffs claim that they cannot

determine the manner in which technicians do the installation work, such as what materials,

supplies, or tools they use because corporate policy dictates these decisions. *Id.* at ¶ 80.  Finally,

Plaintiffs contend that they do not train technicians. Instead, they only inform Verizon when

technicians have completed the training courses devised by Verizon and conducted by a

specialized "training coordinator." *Id.* at ¶ 78.

### B.    Procedural History

On November 14, 2013, Plaintiffs Haas and Rahman filed their Complaint claiming

Verizon failed to pay overtime and the minimum wage as required under the FLSA, 29 U.S.C.

§§ 201 *et seq.*, and NYLL, N.Y. Lab. Law §§ 1 *et seq.* Plaintiffs also claimed Verizon failed to

furnish proper wage statements in violation of NYLL. Plaintiffs seek unpaid overtime and

7

minimum wages, and damages for failure to receive adequate wage statements.[8] (Dkt. No. 1). On

March 11, 2014, Plaintiffs filed their written consent forms opting into the suit. (Dkt. Nos. 18 &

19). Verizon answered the complaint on January 21, 2014 (Dkt. No. 11), and amended its answer

on October 31, 2014. (Dkt. No. 92).

On November 17, 2014, Plaintiffs moved to conditionally certify a class and provide

notice pursuant to Section 216(b) of the FLSA, 29 U.S.C. § 216(b). (Dkt. No. 98); *see* Plaintiffs'

Memorandum of Law in Support of Motion for Conditional Certification and Notice Pursuant to

29 U.S.C. § 216(b) (Dkt. No. 99 ) ("Pls. Mem. Cert."). On the same date, the parties cross-

moved for partial summary judgment. (Dkt. Nos. 100 & 104). In their motion, Plaintiffs argued

that Verizon misclassified them as exempt employees because the administrative, executive, and

highly compensated employee ("HCE") exemptions do not apply to them. Plaintiffs'

Memorandum of Law in Support of Motion for Partial Summary Judgment (Dkt. No. 102) ("Pls.

Mem. Summ. Judg."), at 8-28. In its cross-motion, Verizon contended that it properly classified

Plaintiffs as exempt employees pursuant to the HCE exemption, that it paid them above the

minimum wage at all times, and that they were not entitled to wage statements as exempt

employees. Memorandum of Law in Support of Defendant Verizon New York Inc.'s Motion for

Partial Summary Judgment as to Named Plaintiffs' Individual Claims (Dkt. No. 106) ("Def.

Mem. Summ. Judg."), at 8-24.

On December 8, 2014, the parties filed their respective opposition papers to the summary

judgment motions. Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for

Partial Summary Judgment (Dkt. No. 117) ("Def. Mem. Opp. Summ. Judg."); Plaintiffs'

---

[8] The parties stipulated to a dismissal without prejudice of an additional claim asserted in the
Complaint regarding alleged violations of the Employee Retirement Income Security Act
("ERISA"). (Dkt. No. 27).

Memorandum of Law in Opposition to Defendant's Motion for Partial Summary Judgment (Dkt. No. 114) ("Pls. Mem. Opp. Summ. Judg."). Also on December 8, 2014, Verizon filed its opposition to Plaintiffs' motion to conditionally certify the class. Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion For Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) (Dkt. No. 121) ("Def. Mem. Cert.").

The parties both filed reply briefs on December 22, 2014. (Dkt. Nos. 128, 129, 130). These motions were referred to me on April 14, 2015 for a report and recommendation. (Dkt. No. 146).

## II.   DISCUSSION

### A.   Plaintiffs' Motion for Conditional Certification and Notice

#### 1.   Applicable Legal Standards

Under the FLSA, a plaintiff may seek certification to proceed as a collective action, thus giving other "similarly situated" employees the opportunity to join the litigation. 29 U.S.C. § 216(b); *see Cohen v. Gerson Lehrman Grp., Inc.*, 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). While the FLSA does not define "similarly situated," it is widely recognized that the standard for conditional collective action certification is not a stringent one. *Spencer v. No Parking Today, Inc.*, No. 12-CV-6323 (ALC) (AJP), 2013 WL 1040052, at *6 (S.D.N.Y. Mar. 15, 2013), *adopted by* 2013 WL 2473039 (S.D.N.Y. June 7, 2013); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 336 (S.D.N.Y. 2010); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007). In this Circuit, there is generally a two-stage certification process for FLSA collective actions. The first stage, conditional certification, requires only a "modest factual showing," based on the "pleadings and affidavits," that the putative class members were "victims of a common policy or plan that violated the law." *Cardenas v. AAA Carting*, 12-CV-7178

9

(VB), 2013 WL 4038593, at *1 (S.D.N.Y. Aug. 9, 2013) (quoting *Hoffman v. Sbarro, Inc.*, 982
F. Supp. 249, 261 (S.D.N.Y. 1997)); *see Cohen*, 686 F. Supp. 2d at 326-27; *Spicer*, 269 F.R.D. at
336. "In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not
weigh the merits of the underlying claims." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662
(S.D.N.Y. 2013).

     In the second stage, a defendant can move to decertify if discovery reveals that the
claimants are not similarly situated. *See Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010);
*Iglesias-Mendoza*, 239 F.R.D. at 367. At this second stage, the court has a "fuller record" to
determine "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named
plaintiffs." *Myers*, 624 F.3d at 555.[9]

### 2.    Plaintiffs' Factual Showing in Support of Conditional Certification

     Here, Plaintiffs have met their burden for conditional collective action certification.
According to Verizon's Director of Labor Relations, Guy Sorrentino ("Sorrentino"), all LMs
within the state of New York have similar functions regardless of location. Sorrentino Dep. at
88-89. For example, Verizon expects all LMs to coach and develop, train, plan work, and inspect
worksites. *Id.* at 83-84. Additionally, Sorrentino acknowledged that Verizon provides the same
training materials to all LMs regardless of location. *Id.* at 75-78 (training materials provided on
Verizon's e-web for LMs consistent across different locations in New York state). Further, AM

---

[9] As other courts have pointed out, in contrast to the requirements of Rule 23 pertaining to class
actions, "neither the FLSA nor the Federal Rules of Civil Procedure provide for the certification
of an FLSA collective action." *Amendola v. Bristol–Myers Squibb Co.*, 558 F. Supp. 2d 459, 463
n.1 (S.D.N.Y.2008); *see Diaz v. S & H Bondi's Dep't Store, Inc.*, No. 10-CV-7676 (PGG), 2012
WL 137460, at *1 n.1 (S.D.N.Y. Jan. 17, 2012). While Plaintiffs have simply styled their motion
as one for "conditional certification," it is more appropriately characterized as a request for the
Court to authorize notice to potential opt-in plaintiffs. *Feng v. Hampshire Times*, No. 14-CV-
7102 (SHS) (JLC), 2015 WL 1061973, at *1 (S.D.N.Y. Mar. 11, 2015).

Colin Lashley testified at his deposition that LMs have similar duties regardless of the garage in which they work, as evidenced by the fact that no retraining is necessary when LMs transfer to another location. Lashley Dep. at 217-20.

Plaintiffs' depositions and affidavits further support the similarity in job duties among LMs. According to Plaintiffs, common functions that LMs perform include: conducting inspections using Verizon's checklists; traveling to customer locations; performing customer service; cleaning garages; delivering supplies to technicians; distributing dispatch's work orders; and taking attendance. Haas Aff. at ¶¶ 2-15; Rahman Aff. at ¶¶ 2-15; Haas Dep. at 173; Rahman Dep. at 32.[10]

Verizon contends that differences exist among LMs with respect to both pay and job duties, precluding Plaintiffs from making its "modest factual showing" that LMs are similarly situated. For example, Verizon asserts that the job duties of Plaintiffs and potential opt-ins vary in the amount of cleaning work they do; whether they deliver supplies to technicians in the field; whether they direct the work of two or more employees; whether they have a significant role in the disciplinary process; and whether they evaluate technicians' performance. Def. Mem. Cert., at 15-20. Plaintiffs contest that these differences between themselves and the opt-in plaintiffs exist. However, such factual disputes "should be addressed at the second stage of certification

---

[10] Plaintiffs have submitted affidavits from 35 opt-in plaintiffs, who work in different garages across New York state, demonstrating similarity both in their duties as LMs and in Verizon's failure to pay them overtime. (Dkt. No. 103 Exs. 21-50 and 53-56). The Court notes that although the opt-ins work in different garages across New York, this does not defeat conditional certification. In determining whether to conditionally certify with respect to different locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." *Garcia v. Four Broth. Pizza, Inc.*, No. 13-CV-1505 (VB), 2014 WL 2211958, at * 5 (S.D.N.Y. May 23, 2014) (quoting *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013)).

after the completion of discovery." *Ack v. Manhattan Beer Distribs., Inc.*, No. 11-CV-5582 (CBA), 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (quoting *Summa v. Hofstra Univ.*, No. 07-CV-3307 (DRH) (ARL), 2008 WL 3852160, at *5 (E.D.N.Y. Aug. 14, 2008)).

Even crediting Verizon's argument, the mere fact that some differences exist cannot defeat conditional certification, otherwise conditional certification would only be appropriate where employees "were clones of one another working in completely identical stores, in identical neighborhoods, with identical clientele." *Damassia v. Duane Reade, Inc.*, No. 04-CV-8819 (GEL), 2006 WL 2853971, at *6 (S.D.N.Y. Oct. 5, 2006); *see Costello v. Kohls Illinois, Inc.*, No. 13-CV-1359 (GHW), 2014 WL 4377931, at *7 (S.D.N.Y. Sept. 4, 2014) ("There is no requirement that all collective action members be identically situated; rather, they must be similarly situated."). Any arguments that individualized issues predominate are reserved for the second stage of the inquiry where the employer can move for decertification if discovery reveals that the claimants are not similarly situated. *Iglesias-Mendoza*, 239 F.R.D. at 369 ("If the fruits of full discovery reveal that plaintiffs are not, in fact, 'similarly situated' to defendants' other employees, or that only employees who worked at the same facility or engaged in a particular job are 'similarly situated,' [the court] may later decertify the class or divide it into subclasses, if appropriate.").

Verizon also argues that any job similarities that seemingly exist between the named Plaintiffs and the opt-ins are described only in Plaintiffs Haas and Rahman's affidavits, which contradict their deposition testimony. Def. Mem. Cert., at 20-21. However, "where there are alleged discrepancies between affidavits and depositions, minor inconsistencies will go to the credibility of the declarant—and therefore to the weight to be given his or her testimony—rather than the admissibility of the testimony." *Trinidad*, 962 F. Supp. 2d at 553. Further, "at the

12

conditional certification stage, courts are not to make credibility determinations." *Id.* (citing *Lynch v. United Servs. Auto. Ass'n.*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

Here, the inconsistencies do not warrant disregarding Plaintiffs' affidavits, as Verizon proposes. Instead, the deposition testimony and affidavits often simply cast the same job duty in a different light or emphasize different parts of the same duty. For example, Verizon points to differences between Plaintiffs' affidavit and deposition testimony with respect to their use of checklists. Def. Mem. Opp. Summ. Judg., at 20 n.14. Instead of contradicting each other, however, Plaintiffs' depositions elaborate on the focus and purpose of the checklists, while the affidavits provide details as to their style and the manner in which Plaintiffs use them.

Verizon also argues that pay differences among LMs require the Court to conclude that LMs are not similarly situated. Some LMs make less than $100,000 while others make more than this amount, which affects the potential exemptions that may apply, particularly the HCE exemption. However, courts still grant conditional certification even when employees may be subject to multiple exemptions. *See, e.g.*, *Summa*, 2008 WL 3852160, at *5 ("[W]hether the plaintiff or any putative plaintiffs are exempt or otherwise excluded from the FLSA is not a proper inquiry for the court on this motion. Such factual determinations will be addressed at the second stage of the certification process after the completion of discovery."), *adopted in part by* 715 F. Supp. 2d 378 (E.D.N.Y. 2010). The similarity among the claimants derives from the fact that they were all victims of Verizon's alleged "common policy or plan that violated the law" by not paying them overtime, not from the fact that they all made the same salary. *Cardenas*, 2013 WL 4038593, at *1 (quoting *Hoffman*, 982 F. Supp. at 261).[11]

---

[11] The $100,000 threshold is only applicable to one of the three asserted exemptions: the HCE exemption. Moreover, even if some Plaintiffs made more than $100,000 in a given year, the HCE exemption still may not apply to them if Verizon does not satisfy its other elements.

Accordingly, because Plaintiffs have met their modest burden and demonstrated that Verizon subjected them to a common policy or plan that Plaintiffs allege violated the law, the Court should grant their motion for conditional class certification.

### 3.    Disclosure of Information for Verizon's Current and Former LMs

Plaintiffs seek the names, addresses, telephone numbers, dates of employment, locations of employment, and work and personal email addresses for all LMs assigned to installation and maintenance technicians in New York "at any time from three years prior to the date of the Court's Order [granting conditional certification] to the present." Pls. Mem. Cert., at 20. Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification (and have even allowed it prior to conditional certification). *See, e.g.*, *Bhumithanarn v. 22 Noodle Market Corp.*, No. 14-CV-2625 (RJS), 2015 WL 4240985, at *4-5 (S.D.N.Y. July 13, 2015); *Youngblood v. Family Dollar Stores, Inc.*, Nos. 09-CV-3176 (RMB) (FM), 10-CV-7580 (RMB) (FM), 2011 WL 1742109, at *5 (S.D.N.Y. Jan. 5, 2011); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09-CV-1148 (LBS), 2010 WL 2362981, at *3 (S.D.N.Y. June 14, 2010). Accordingly, the Court should require Verizon to produce the names, mailing addresses, email addresses, telephone numbers, and dates and locations of employment for all LMs assigned to installation and maintenance technicians in New York for the period three years prior to the date of the Court's Order to the present. Pls. Mem. Cert., at 20.[12]

---

[12] The Court notes that Plaintiffs only seek this information for the three-year period prior to the Court's Order. Pls. Mem. Cert., at 20. Therefore, the Court will not reach the issue as to whether Plaintiffs are entitled to this information for the time period six years prior to the Court's Order, in line with NYLL's statute of limitations, about which courts in this District have disagreed. *Compare Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10-CV-7557 (JGK), 2011 WL 2207517, at *6 (S.D.N.Y. June 6, 2011) ("Because the plaintiffs also allege state law claims, which are governed by a six year statute of limitations . . . [g]iven the limited burden on the defendants, it is appropriate to permit the plaintiffs to provide notice to potential opt-in plaintiffs

### 4.    Posting of the Notice

The Court should further grant Plaintiffs' request that Verizon post the notice and consent

forms in a conspicuous place at all work locations of potential collective action members. Courts

in this Circuit routinely grant such requests. *See, e.g.*, *Trinidad*, 962 F. Supp. 2d at 564

(collecting cases).

### 5.    Conclusion

For the foregoing reasons, the Court should grant Plaintiffs' motion for conditional

collective action certification and notice. The Court should direct Verizon to provide to Plaintiffs

the names, mailing addresses, work and personal email addresses, telephone numbers, and dates

and locations of employment for all LMs assigned to installation and maintenance technicians in

New York from three years prior to the date of the Court's Order to the present. In addition, the

Court should require Verizon to post the notice and consent forms in a conspicuous place at all

work locations of potential collective action members.

### B.    The Parties' Cross-Motions for Summary Judgment

### 1.    Applicable Legal Standards

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party may move for

summary judgment as to the entire case, or for "'partial summary judgment on a claim or

defense, or on part of each claim or defense.'" *Severstal Wheeling, Inc. v. WPN Corp.*, No. 10-

CV-954 (LTS), 2014 WL 2959014, at *3 (S.D.N.Y. Apr. 11, 2014) (quoting *Martinez v. Hilton

Hotels Corp.*, 930 F. Supp. 2d 508, 518 (S.D.N.Y. 2013)). Summary judgment should be granted

---

who were employed by the defendants as far back as 2004, even if those plaintiffs' FLSA claims
might be time-barred.") *with Garcia v. Spectrum of Creations, Inc.*, No. 14-CV-5298 (AJN)
(GWG), 2015 WL 2078222, at *8 (S.D.N.Y. May 4, 2015) ("[W]e agree with those cases that
limit the time period to the FLSA limitations period . . . Three years is the maximum time period
to join an FLSA collective action and no New York state class action has been certified.")
(collecting cases).

if the moving party can demonstrate, based on the depositions, documents, affidavits, admissions, and other materials in the record, "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted); *see Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (court is confined to "issue-finding," not "issue-resolution"). "'A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting *Niagara Mohawk Power Corp. v. Hudson River–Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012)). In considering the evidence, a court must "'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Hedlund v. N.Y.C. Transit Auth.*, 507 F. App'x 35, 36 (2d Cir. 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "It is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

The moving party bears the initial burden of establishing that there are no genuine disputes of material fact for trial. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets its initial burden, the nonmoving party must then cite specific facts in the record to establish that there are material issues of fact requiring a trial."

16

*Quintero v. Rite Aid of New York, Inc.*, No. 09-CV-6084 (JLC), 2011 WL 5529818, at *4

(S.D.N.Y. Nov. 10, 2011) (citing *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998)). "If

there is any evidence in the record that could reasonably support a jury's verdict for the

nonmoving party, summary judgment must be denied." *Id.* (citing *Am. Home Assurance Co. v.*

*Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006)).

### 2.    FLSA and NYLL Overtime Exemptions[13]

#### a.    The Overtime Requirements

"The FLSA was enacted to eliminate 'labor conditions detrimental to the maintenance of

the minimum standard of living necessary for health, efficiency, and general well-being of

workers,' and to 'guarantee [ ] compensation for all work or employment engaged in by

employees covered by the Act.'" *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 160 (2d Cir.

2008) (quoting 29 U.S.C. § 202(a) and *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No.*

*123*, 321 U.S. 590, 602 (1944)). Subject to certain exceptions, the FLSA, and the analogous

provisions under NYLL, require employers to compensate employees who work more than 40

hours per week at a rate of one and one-half times their regular rate of pay. 29 U.S.C.

§ 207(a)(1); 12 N.Y. Comp. Codes R. & Regs. §§ 142-2.2, 146-1.4. Employees are exempt from

the overtime provisions, however, if they are "employed in a bona fide executive, administrative,

or professional capacity." 29 U.S.C. § 213(a)(1). Additionally, "[a]n employee with total annual

compensation of at least $100,000 is deemed exempt . . . if the employee customarily and

regularly performs any one or more of the exempt duties or responsibilities of an executive,

administrative or professional employee . . . [and] whose primary duty includes performing

office or non-manual work." 29 C.F.R. § 541.601(a)-(d).

---

[13] NYLL applies the same overtime exemptions as the FLSA. 12 N.Y. Comp. Codes R. & Regs. § 142-2.2. *See Reiseck v. Univ. Comm. of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010).

An employer seeking to rely upon an exemption as a defense to paying overtime bears the burden of proving that such exemption applies. *McLean v. Garage Mgmt. Corp.*, 819 F. Supp. 2d 332, 337 (S.D.N.Y. 2011) (citing *Reiseck v. Univ. Comm. of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010)). "Because the FLSA is a remedial statute, its exemptions are construed narrowly against the employer." *Kahn v. Superior Chicken & Ribs, Inc.*, 331 F. Supp. 2d 115, 117 (E.D.N.Y. 2004) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)); *see Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991); *Ramos*, 687 F.3d at 558 ("'To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.'") (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). Whether an exemption applies to a particular employee "is a mixed question of law and fact" that depends upon "the [employee's] actual job characteristics and duties" and requires consideration of "all the facts in a particular case." *Myers*, 624 F.3d at 548 (citations omitted). Because this is a fact-intensive inquiry, "[e]ven where there has been full discovery, courts are often reluctant to grant summary judgment based on [a FLSA] exemption . . . ." *Indergit v. Rite Aid Corp.*, Nos. 08-CV-9361 (PGG), 08-CV-11364 (PGG), 2010 WL 1327242, at *7 (S.D.N.Y. Mar. 31, 2010).

### b.    Plaintiffs' Primary Duty

Because what constitutes Plaintiffs' primary duty is central to all of the exemptions, the Court will address this subject first.[14] An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). An employee's

---

[14] *See* 29 C.F.R. § 541.100(a)(2) (executive exemption applies to employee "[w]hose primary duty is management of the enterprise . . ."; 29 C.F.R. § 541.200(a)(2) (administrative exemption applies to employee [w]hose primary duty is the performance of office or non-manual work . . ."; 29 C.F.R. § 541.601(d) (HCE exemption applies to employee [w]hose primary duty includes performing office or non-manual work.").

18

primary duty depends on such factors as "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* In particular, the amount of time an employee spends performing exempt work, as opposed to nonexempt work, is a "useful guide in determining whether exempt work is the primary duty of an employee," but "[t]ime alone . . . is not the sole test . . . ." *Id.* § 541.700(b); *see, e.g., Scott v. SSP Am., Inc.*, No. 09-CV-4399 (RRM) (VVP), 2011 WL 1204406, at *8-9 (E.D.N.Y. Mar. 29, 2011) (crediting plaintiff's testimony that she spent 90 percent of her time performing nonexempt tasks but finding exempt work more important to success of defendant's business). A court's evaluation of an employee's primary duty must be based on "all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a).

Here, the parties paint dueling pictures of what constitutes the core of Plaintiffs' job. Plaintiffs argue that their primary duty consists of visiting customer locations and performing routine inspection work based on highly standardized checklists promulgated by Verizon. Haas Dep. at 13 ("[W]e spend most of our time driving in the car, the fact that we're required to do work observations which are strictly off a checklist."). Plaintiffs maintain that in performing their job they are highly regimented. Haas Dep. at 121-22 ("[T]o use a military analogy, I am a foot soldier, and I am to do exactly what I am told. If I'm told to march up a hill, I march up a hill, ask no questions."). Plaintiffs further contend that they have little freedom from direct supervision in carrying out their primary duty and that leadership is discouraged. *See* Haas Dep. at 84 ("We're told to do what we're told."); *see also* Rahman Dep. at 31-32 ("I have a team of

19

techs that report to me, and I wouldn't call it supervising . . . I take their attendance, and I basically follow the guidelines the company sets forth in order to get the technicians to work.").

Plaintiffs contend that their managerial role is exceptionally narrow and secondary to the many hours they spend in the field conducting inspections that subject them to hazardous working conditions requiring various safety precautions and physical dexterity. Lashley Dep. at 226 (acknowledging that the majority of local managers' work hours are spent in the field). They also point to the fact that they routinely perform non-managerial tasks, such as cleaning garages, trucks, and store rooms, to support their argument that their primary duty is not managerial, but rather comprised of more menial tasks. Haas Dep. at 98-99 ("We're all assigned the collateral duty of keeping a specific area of the garage clean and orderly."). Further, Plaintiffs state that they do not: interview or select employees to hire; set employees pay or hours; direct or apportion employees' work; determine the materials, supplies, tools, machinery or equipment used on jobs; train employees, or plan the budget. *See* Pl. 56.1 ¶ 80, 82; Haas Dep. at 86; *see also* Lashley Dep. at 91, 214.[15]

Verizon provides a very different description. Verizon portrays Plaintiffs' primary role in the organization as managers of technicians and that their work is integral to the success of Verizon's business.[16] *See* Lashley Dep. at 23 ("Their [the LMs] job is to manage the techs . . .

---

[15] *See* Lashley Dep. at 91 ("Q: [D]o [local managers] actually do any hiring? A: No."); Lashley Dep. at 214 ("Q: Can local managers set rates of pay for technicians? A: No."); Haas Dep. at 86 ("Q: And you said that you don't plan their [technicians'] work? . . . A: Correct."); Def. Resp. 56.1 ¶ 80 ("Does not dispute that Plaintiffs do not determine the type of materials, supplies, machinery, equipment or tools to be used . . . ."); Haas Dep. at 86 ("I don't do their [technicians'] training."); Def. Resp. 56.1 ¶ 82 (not disputing that Plaintiffs do not plan the budget).

[16] The Department of Labor has identified a non-exhaustive list of activities that constitute "management." Such activities include: "interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees'

one of [their] tasks [is] . . . moving their techs towards making a number or meeting a customer's

expectation . . ."). Verizon argues that this management function is the most important aspect of

Plaintiffs' job and that Plaintiffs do inspection work only insofar as it is necessary to effectively

manage the technicians. *See* Lashley Dep. at 31 ("Most managers, I believe, go to the job, make

an assessment, . . . do their coaching, do their feedback . . . praise the techs for a job well done or

tell them there's a deviation, [and] correct deviations on the spot . . ."). Verizon specifically

points to the fact that Plaintiffs themselves admit that they: assess their technicians' performance

to hold them accountable; review reports on the number of jobs completed in a day and timelines

of departure to the field; ensure that the technicians get a full day's worth of work; review

technicians' scorecard results with them on a monthly basis; initiate disciplinary proceedings;

and are themselves evaluated based on their abilities as managers. *See* Def. 56.1 ¶¶ 17, 24.

Further, Verizon argues that Plaintiffs' own résumés highlight the managerial aspects of the

job.[17]

---

productivity and efficiency for the purpose of recommending promotions or other changes in
status; handling employee complaints and grievances; disciplining employees; planning the
work; determining the techniques to be used; apportioning the work among the employees;
determining the type of materials, supplies, machinery, equipment or tools to be used or
merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or
merchandise and supplies; providing for the safety and security of the employees or the property;
planning and controlling the budget; and monitoring or implementing legal compliance
measures." 29 C.F.R. § 541.102.

[17] The Court notes that "résumés are not dispositive of . . . Plaintiffs' primary duty because the
determination of whether or not an employee qualifies as exempt under the regulations focuses
on evidence regarding the actual day-to-day activities of the employee rather than more general
job descriptions contained in résumés, position descriptions, and performance evaluations."
*Ozawa v. Orsini Design Assocs., Inc.*, No. 13-CV-1282 (JPO), 2015 WL 1055902, at *6 n.4
(S.D.N.Y. Mar. 11, 2015) (quoting *Martinez*, 930 F. Supp. 2d at 525 n.16); *see Perkins v. S. New
England Tel. Co.*, 669 F. Supp. 2d 212, 219 n.3 (D. Conn. 2009) ("'[W]hether an employee is
covered by an exemption to the FLSA overtime requirements does not depend on an employee's
general characterization of his or her job in a résumé designed to enhance the employee's duties
and responsibilities to obtain a job . . . What is important is what an employee actually does on a
day-to-day basis.'") (quoting *Ale v. TVA*, 269 F.3d 680, 688 (6th Cir. 2001)).

Highlighting this disparate view of Plaintiffs' primary duty is the fact that the parties rely on the same document, entitled "Local Manager Daily Routine," to support their respective positions. (Dkt. Nos. 133, 134).[18] In this document, Area Manager Lashley lists daily tasks LMs perform. Verizon points to various tasks that are managerial in nature, such as LMs' approval of time sheets, checking technicians' results, reviewing low performers, and ensuring timely departures to the field. (Dkt. No. 134). Plaintiffs, however, focus on the fact that this daily routine indicates that they spend the majority of their day in the field conducting inspections and that the document lacks any reference to their role in the grievance or disciplinary process or their purported evaluation of technicians. (Dkt. No 133).

Therefore, there are fundamental disputes between the parties regarding the nature of Plaintiffs' job that prevent the Court from determining what constitutes Plaintiffs' primary duty as a matter of law. These disputes will prove instrumental in evaluating the three exemptions Verizon invokes, to which the Court now turns.

### c.    Administrative Exemption

Plaintiffs argue they are entitled to partial summary judgment holding that Verizon cannot avail itself of the administrative exemption. The administrative exemption applies to "those employees who (1) are compensated on a salary or fee basis at a rate no less than $455 per week; (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with

---

[18] Plaintiffs alerted the Court to this evidence in a January 15, 2015 letter, which was after the summary judgment motions were fully briefed. Verizon responded to Plaintiffs' letter on January 20, 2015. (Dkt. Nos. 133, 134). Given that both parties have been heard on the subject, the Court considers this document to be part of the summary judgment record.

22

respect to matters of significance." *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 637-38 (S.D.N.Y. 2013) (internal quotation omitted).

In order to prevail on this portion of their motion, Plaintiffs need only establish that Verizon failed to satisfy one element of the administrative exemption. Therefore, the Court must analyze all of the elements because even if there is a genuine dispute of fact as to one of the elements, Verizon's failure to satisfy any of them will preclude it from invoking the exemption.

### i.    First Element (Salary)

The parties do not dispute that Plaintiffs satisfy the first element of the administrative exemption, as their salaries exceeded the $455 per week requirement. Pls. Mem. Summ. Judg., at 8 n.3.

### ii.    Second Element (Office Work and General Business Operations)

The second element of the administrative exemption asks whether Plaintiffs' "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2). This element requires two inquiries: first, whether the employee's primary duty is office or non-manual in nature; and second, whether the work directly relates to the management or general business operations of the employer. *Reiseck*, 591 F.3d at 105.

### a.    Office or Non-Manual Work

Though the regulations do not define non-manual work, they do define manual work. The regulations provide that workers in the following types of employment are not engaged in office or non-manual work: non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers,

23

laborers and other employees who perform work involving repetitive operations with their hands, physical skill, and energy. 29 C.F.R. § 541.601(d).

Courts have construed the regulation to find the exemption does not apply to those primarily involved in inspection work. In *Zubair v. EnTech Eng'r, P.C.*, 808 F. Supp. 2d 592 (S.D.N.Y. 2011), for example, the court found the exemption did not apply to an employee whose job entailed field work "visiting various project sites where, among other things, he coordinated the work of other inspectors and confirmed that the contractors' work was in accordance with contract specifications." *Id.* at 600; *see Switzoor* v. *SCI Eng'r, P.C.*, No. 11-CV-9332 (RA), 2013 WL 4838826, at *3 n.3 (S.D.N.Y. Sept. 11, 2013) (employee not exempt from overtime in his role inspecting New York City bridges).

However, the mere fact that much of an employee's functions take place in the field is insufficient to conclude that the employee's primary duty is manual in nature. *See, e.g., Roe-Midgett v. CC Servs., Inc.*, 512 F.3d 865, 876 (7th Cir. 2008) (claims adjusters working in the field are exempt administrative employees); *Savage* v. *UNITE HERE*, No. 05-CV-10812 (LTS) (DCF), 2008 WL 1790402, at *6 (S.D.N.Y. Apr. 17, 2008) (union organizer non-exempt, despite most of her work taking place in the field, because her primary duty included motivating and recruiting workers to unionize, which did not depend on "manual dexterity or physical talents, but on her interpersonal skills, organizational abilities, and strategic decision making ability").

If the Court accepts Plaintiffs' view of their primary duty, then their work would not be office or non-manual in nature. According to Plaintiffs, their primary duty entails inspection work in the field that subjects them to both hazardous and uncomfortable working conditions. This inspection work requires Plaintiffs to travel to various locations, evaluate the technician's worksite, and make reports based on this inspection. Haas Dep. at 73 ("They're [LMs] all doing

24

the same thing. They're driving to their technicians. They're dropping off supply [sic] to their technicians. They're following a checklist to make sure that they're working safely. They're following a checklist as far as quality."). While performing this work, Plaintiffs maintain that they utilize safety equipment to protect against various potential dangers, such as "falls, trips, falling objects [and] things going into their eyes," Lashley Dep. at 189, which may occur when they are lying on the ground, climbing over obstacles, crawling into small spaces, climbing ladders, going down into manholes, or moving items on job sites to inspect areas. Haas Aff. at ¶ 7; Rahman Aff. at ¶ 5. Though fieldwork is insufficient in and of itself to constitute manual labor, the fact that this work subjects Plaintiffs to danger and requires physical skill would be sufficient to demonstrate that Plaintiffs perform manual work. *See* 29 C.F.R. § 541.601(d).

However, if the Court accepts Verizon's view of Plaintiffs' primary duty, then it would be properly characterized as office and non-manual in nature. Verizon argues that Plaintiffs' primary duty is managing technicians and that any field inspections are incidental to this managerial function. Office or non-manual tasks they perform in that role include: attending grievance proceedings; evaluating technicians on a monthly basis; and generally monitoring technicians, such as ensuring they leave the garage by 8:00 a.m. and that they have sufficient work for the day.[19] These managerial responsibilities, if an employee's primary duty, typically satisfy the definition of office and non-manual work for purposes of the administrative exemption. *See, e.g., Raffe v. Am. Nat. Red Cross*, No. 08-CV-00211 (NPM), 2011 WL 6019436,

---

[19] *See* Haas Dep. at 114 ("Q: [Y]ou're the one that has to be looking at the report to see if they're not meeting this requirement to leave [the garage] before eight a.m.? A: Yes."); Rahman Dep. at 32 ("I would look at the logs of technicians, see who has work and who doesn't. Those that don't have work, I would refer to the dispatch center and say these people need work . . . ."); Haas Dep. at 117 ("Q: Have you ever met with a tech individually to talk about his or her performance? A: I'm required to do that once a month when I do their coaching . . . ."); *Id.* at 193-95 (discussing the times he attended grievance proceedings).

at *10-13 (N.D.N.Y. Nov. 30, 2011) (employee exempt where he oversaw an entire department within the Red Cross); *Wright v. Monroe Cnty. N.Y.*, No. 05-CV-6268T (MAT), 2007 WL 1434793, at *5 (W.D.N.Y. May 14, 2007) (primary duty was office or non-manual in nature where employee maintained records, conducted performance evaluations, and reported on status of current investigations).

Therefore, the Court finds that a genuine dispute of material fact exists regarding whether Plaintiffs' primary duty was office or non-manual in nature because the conclusion depends on whether the Court accepts Plaintiffs' or Verizon's depiction of Plaintiffs' primary duty. A reasonable factfinder could conclude that either view is supported by the record. Accordingly, this issue is ill-suited for summary judgment at this time. However, because Verizon must satisfy all aspects of the administrative exemption in order to survive Plaintiffs' motion, the Court will consider the other elements.

### b.      Management or General Business Operations

The second inquiry under this element of the administrative exemption asks whether Plaintiffs' work directly relates to the management or general business operations of the employer. In order to satisfy this element, "an employee must perform work directly related to assisting with the running or servicing of the business," rather than, for instance, manufacturing goods or selling products in a retail establishment. 29 C.F.R. § 541.201(a).

The Second Circuit has clarified that the central inquiry is whether the employee's primary duty relates to administration or to production. *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531-32 (2d Cir. 2009) ("Employment may thus be classified as belonging in the administrative category, which falls squarely within the administrative [exemption], or as production/sales work, which does not."); *accord Cohen*, 686 F. Supp. 2d at 328. Therefore, an

26

employee who primarily produces goods or services engages in production, while an employee who does not is deemed an administrator. Irrelevant to this inquiry is "the level of responsibility, importance or skill needed to perform a particular job" or the "physical conditions of [the employee's] employment." *Davis*, 587 F.3d at 532-33.[20]

If the employee does not produce the good or provide the service, courts have routinely held that the employee falls on the administrative side of this distinction. *See, e.g.*, *Ozawa v. Orsini Design Assocs., Inc.*, No. 13-CV-1282 (JPO), 2015 WL 1055902, at *4 (S.D.N.Y. Mar. 11, 2015) (business's primary function was interior design and because plaintiff did not provide interior design services, she was an administrator); *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 477 (S.D.N.Y. 2008) (plaintiff considered administrator because he did not produce drugs sold by defendant, but rather promoted drugs others produced as pharmaceutical representative); *Kadden v. VisuaLex, LLC*, 910 F. Supp. 2d 523, 540 (S.D.N.Y. 2012) ("[Plaintiff's] time was billed to the clients and was the service for which VisuaLex was hired. This was not 'employment activity ancillary to [the] employer's principal production activity,' such that it would qualify as administrative work.") (quoting *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 904-05 (3d Cir. 1991)).

Here, under either Plaintiffs' or Verizon's view, Plaintiffs should be considered administrators. The parties agree that Plaintiffs do not install the services Verizon provides. Instead, the technicians do that, and therefore, it would be the technicians who fall on the production side of the *Davis* dichotomy. Under Plaintiffs' view of their primary duty, Plaintiffs' role is to inspect technician work to ensure that the technicians provided the service in a safe and

---

[20] Accordingly, the Court rejects Plaintiffs' argument that an administrator must be integral to the running of Verizon's business. *See* Pls. Mem. Summ. Judg., at 19-20. *Davis* makes clear that the true distinction is based on the "nature of [the employee's] duties," not the importance or level of responsibility of the employee's job. 587 F.3d at 532-33.

27

adequate way. *See, e.g.*, Haas Dep. at 13. In fact, the regulations provide that quality control is a

type of job that falls within the definition of an administrator. *See* 29 C.F.R. § 541.201(b)

("Work directly related to management or general business operations includes . . . quality

control.").

  Therefore, the Court finds that Plaintiffs' primary duty is directly related to the

management or general business operations of the employer. However, because there is a

genuine dispute of material fact regarding whether Plaintiffs' work is office or non-manual in

nature, the Court cannot conclude, as a matter of law, that Verizon satisfies this element of the

administrative exemption.

**iii.**  **Third Element (Discretion and Independent Judgment)**

  The third element of the administrative exemption asks whether Plaintiffs exercise

discretion and independent judgment with respect to matters of significance. Factors to consider

include: whether the employee has the authority to formulate, affect, interpret, or implement the

business's management policies or its operating practices; whether the employee is involved in

planning the business's long-term or short-term business objectives; whether the employee

carries out major assignments in conducting the operations of the business; and whether the

employee has authority to commit the business to matters that have significant financial impact.

*In re Novartis Wage & Hour Litig.*, 611 F.3d 141, 155-56 (2d Cir. 2010) (citing 29 C.F.R.

§ 541.202(b)), *abrogated on other grounds by Christopher v. SmithKline Beecham Corp.*, 132 S.

Ct. 2156 (2012). Additionally, the regulations provide that "the exercise of discretion and

independent judgment must be more than the use of skill in applying well-established techniques,

procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e);

*see Ebert v. Holiday Inn*, No. 11-CV-4102 (ER), 2014 WL 349640, at *11-12 (S.D.N.Y. Jan. 31,

28

2014) (employee non-exempt where his "primary duties involved preparing standard reports, performing data entry tasks, and managing the disbursement of petty cash at the direction of his supervisors"). However, an employee need not have unfettered discretion without oversight in order to qualify for this exemption. *Carhuapoma v. New York-Presbyterian Healthcare Syst., Inc.*, No. 11-CV-8670 (JPO) (RLE), 2013 WL 1285295, at *10 (S.D.N.Y. Mar. 29, 2013) ("[T]he Second Circuit has made clear that an employee can be exempt even if his discretion is 'circumscribed' by a guidebook or supervisor, as long as, despite the circumscription, 'judgments must still be made' by that employee.") (quoting *Donovan v. Burger King Corp.*, 675 F.2d 516, 521-22 (2d Cir. 1982)).

Here, there is a genuine dispute of material fact regarding whether Plaintiffs' duties include the exercise of discretion and independent judgment with respect to matters of significance. Plaintiffs maintain that they perform their inspection work based on highly standardized checklists and regulations provided by Verizon, leaving no room for independent judgment and discretion. *See, e.g.*, Haas Dep. at 13. As the regulations state, "the exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). Further, the regulations specifically provide that inspection work generally does not involve sufficient discretion or independent judgment to fall within the administrative exemption. The work normally entails "specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits." 29 C.F.R. § 541.202(g); *see Debejian v. Atl. Testing Labs.*,

29

*Ltd.*, 64 F. Supp. 2d 85, 89-90 (N.D.N.Y. 1999) ("[Employee's] position does not include work requiring the consistent exercise of discretion and judgment. To the contrary, as noted, the [employee] merely compares test results with industry or project standards.") (citing 29 C.F.R. § 541.315(a)); *Switzoor*, 2013 WL 4838826 at *3-4. Apart from their inspection work, Plaintiffs argue that any managerial responsibilities they might have do not entail discretion. They cannot hire or fire technicians; their opinion receives little weight in the disciplinary process; they do not set pay for other employees; they have a limited role in the grievance process; they do not direct technician work; they do not train technicians; and they do not determine how the technicians do the installation work, such as what materials, supplies, or tools are used. *See supra* at Page 7.

However, Verizon's characterization is equally plausible on the present record. Verizon argues that Plaintiffs assess technician performance, determine the best method for approaching technicians, decide how to reallocate work, discipline technicians, attempt to resolve grievances, and determine whether the company should pay in response to customer damage complaints. Lashley Decl. ¶¶ 19, 20, 21, 25, 31, 33, 42, 50. This type of work is of the kind courts have found to satisfy the discretion and independent judgment standard. *See, e.g., Savage*, 2008 WL 1790402, at *9 ("Plaintiff's job required her to determine how to best approach individual workers and convince them of the benefit of organizing and choosing UNITE as their representative. Plaintiff made her own decisions about whom to approach and tailored her approach to each individual worker."); *Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481, 490-92 (E.D.N.Y. 2012) (discretion and independent judgment exercised due to plaintiff's control of town finances).

In sum, there is a genuine dispute that prevents the Court from determining whether Plaintiffs' primary duty entails the exercise of discretion and independent judgment.

### iv.   Conclusion

In order for Plaintiffs to prevail on this portion of their motion, they would need to demonstrate that Verizon failed to satisfy at least one of the administrative exemption's elements. They have not done so, as genuine disputes of material fact exist that prevent the Court from granting the motion as to this exemption at this time.

### d.   Executive Exemption

Plaintiffs separately argue they are entitled to partial summary judgment holding that Verizon cannot avail itself of the executive exemption. The executive exemption applies to those employees "(1) compensated on a salary basis at a rate of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly direct the work of two or more other employees; and (4) who have the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." *Ramos*, 687 F.3d at 559-60 (quoting 29 C.F.R. § 541.100(a)). "'Consideration of these factors is a highly fact intensive inquiry, to be made on a case-by-case basis in light of the totality of the circumstances.'" *Martinez*, 930 F. Supp. 2d at 523 (quoting *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010)).

As with the administrative exemption, in order to prevail on this portion of their motion, Plaintiffs need only establish that Verizon failed to satisfy one element of the executive exemption. Therefore, the Court must analyze all of the elements because even if there is a

31

genuine dispute of fact as to one or more of the elements, Verizon's failure to meet any one of

them will result in its inability to invoke the exemption.

### i.    First Element (Salary)

The parties do not dispute that Plaintiffs satisfy the first element of the executive

exemption, as Plaintiffs' salaries exceeded $455 per week. Pls. Mem. Summ. Judg., at 8 n.3.

### ii.    Second Element (Primary Duty is Management)

The regulations define management as including, but not limited to:

> activities such as interviewing, selecting, and training of employees; setting
> and adjusting their rates of pay and hours of work; directing the work of
> employees; maintaining production or sales records for use in supervision
> or control; appraising employees' productivity and efficiency for the
> purpose of recommending promotions or other changes in status; handling
> employee complaints and grievances; disciplining employees; planning the
> work; determining the techniques to be used; apportioning the work among
> the employees; . . . providing for the safety and security of the employees
> or the property; planning and controlling the budget; and monitoring or
> implementing legal compliance measures.

*Mullins v. City of New York*, 653 F.3d 104, 107 (2d Cir. 2011) (citing 29 C.F.R. § 541.102).

As detailed above, there is a genuine dispute of material fact regarding Plaintiffs' primary

duty. Under Plaintiffs' theory, their job would not satisfy this element of the executive

exemption. Plaintiffs argue that their primary duty entails inspection work in the field and that

any management functions they do have are severely limited in both scope and discretion and

secondary to their work as inspectors.[21] *See, e.g.*, *Lema v. Mugs Ale House Bar*, No. 12-CV-

2182 (PKC), 2014 WL 2917031, at *4 (E.D.N.Y. June 26, 2014) (denying summary judgment

---

[21] For example, Plaintiffs claim that they never: interview or select employees to hire; set
employees' pay or hours; direct the work of employees; maintain records; recommend
promotions based on efficiency; handle employee complaints or grievances; discipline
employees; dictate how employees perform their work; apportion work among employees;
provide for the safety and security of employees or property; plan the budget; or monitor and
implement compliance policies. *See supra* at Pages 20-21.

due to factual dispute regarding whether plaintiff was simply chef or kitchen manager);

*Clougher*, 696 F. Supp. 2d at 288 (denying summary judgment where employee claimed,

despite title as "assistant store manager," that he performed very little managerial work, but

instead stocked shelves, unloaded trucks, manned cash register, swept floors, and assisted

customers).

Verizon, on the other hand, argues that Plaintiffs' most important duty is to manage their

technicians' performance to ensure it meets safety, quality, and service standards. Additionally,

Verizon characterizes Plaintiffs' role as: ensuring that technicians meet their objectives and

have the proper amount of work; answering their questions; motivating their teams; approving

job deviations; disciplining or initiating the disciplinary process; and participating in the

grievance process. *See supra* at Page 6; *see also Amash v. Home Depot U.S.A., Inc.*, No. 12-CV-

837 (TJM), 2014 WL 1795160, at *4 (N.D.N.Y. May 5, 2014) (determining employee's

primary duty was managerial due to role involving coaching and training, recommending

changes to employee status, scheduling and directing work of other employees, disciplining

employees, and handling employee grievances).

Given these dueling versions of Plaintiffs' job, "there are too many factual disputes . . . to

conclude, as a matter of law, that management was Plaintiffs' 'primary duty.'" *Martinez*, 930 F.

Supp. 2d at 525.

### iii.     Third Element (Directing Work of Other Employees)

The third element of the executive exemption, that an exempt employee customarily and

regularly directs the work of two or more employees, also cannot be resolved on summary

judgment because there are material factual disputes concerning the extent of Plaintiffs'

authority over the technicians. Factors to consider in this analysis include whether the

33

employee: instructed other employees; trained other employees; reported other employees' poor performance to superiors; set other employees' schedules; or paid other employees. *See, e.g.*, *Lema*, 2014 WL 2917031, at \*5.

Under Plaintiffs' version of the facts, they do not perform any of these functions. *See* Haas Dep. at 86-87 ("I don't plan [the technicians'] work . . . I don't do [the technicians'] training . . . I don't coach. I don't set objectives. I don't recommend disciplinary action. I don't recommend hiring and pay increases."). Verizon, however, argues that Plaintiffs' primary role is to supervise their team of technicians and regularly direct their work, and Plaintiffs even acknowledge many of these functions. *See* Haas Dep. at 174 ("[W]e're required in the morning to make sure each of the techs are loaded from dispatch with a specific amount of work"); *id.* at 260 (technicians call to ask what to do in unfamiliar situations); *id.* at 213-14 (LM initiates discipline by bringing a problem to his supervisor's attention); *id.* at 305-06 (technicians have to alert an LM when they are going to be absent, late, or untimely in completing a job); *id.* at 309 (technicians have to call an LM in order to deviate from their work schedule); Lashley Dep. at 177 ("[L]ocal managers can train, they can go out to jobs and if they see a technician not doing something correctly, they can train them on doing it properly . . . .").

A reasonable jury could credit either parties' characterization of this aspect of Plaintiffs' job, thus preventing the Court from concluding that Verizon fails to satisfy this element of the executive exemption. *See Lema*, 2014 WL 2917031 at \*5 (disputes as to whether employee was manager or only sales person with managerial title); *Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 283 (E.D.N.Y. 2013) (same); *Martinez*, 930 F. Supp. 2d at 527 (issues of fact where employees with managerial title maintained "they did not assign work to the cleaning staff, had little to no discretion in determining how or when work was to be performed, and

34

little opportunity . . . to improve the performance or productivity of the cleaning staff, given

their limited disciplinary authority over such employees").

### iv.     Fourth Element (Hiring and Firing Authority)

The final element of the executive exemption is whether Plaintiffs "ha[ve] the

authority to hire or fire other employees" or whether their "suggestions and recommendations as

to the hiring, firing, advancement, promotion or any other change of status of other employees

are given particular weight." 29 C.F.R. § 541.100(a)(4); *see Trimmer v. Barnes & Noble*, 31 F.

Supp. 3d 618, 624-25 (S.D.N.Y. 2014).  If an employee lacks final supervisory authority, his

suggestions and recommendations must be given particular weight to be classified as exempt.

*See Amash v. Home Depot U.S.A., Inc.*, No. 12-CV-837 (TJM), 2014 WL 4119409, at *6

(N.D.N.Y. Aug. 21, 2014).

The parties do not dispute that Plaintiffs lack the ability to hire or fire employees. *See*

Pl. 56.1 ¶¶ 62, 63; Def. Resp. 56.1 ¶ 62 . The parties do dispute, however, whether Plaintiffs'

suggestions and recommendations as to the hiring, firing, advancement, or promotion of

technicians are given particular weight. Plaintiffs assert that they have a very limited role in

disciplining technicians because discipline is governed by the technicians' union contract,

Verizon's Labor Relations Department, and Plaintiffs' supervisors. Lashley Dep. at 93. Further,

Plaintiffs maintain that they simply act as a conduit of information to their supervisors who make

the final disciplinary decisions, and that their supervisors generally ignore any opinions Plaintiffs

express regarding potential discipline. *See* Haas Aff. at ¶¶ 22-23; Rahman Aff. at ¶¶ 22-23.

Verizon, however, contends that the evidence demonstrates that Plaintiffs initiate the disciplinary

process by raising the technicians' infractions to their supervisors and that their supervisors give

particular weight to Plaintiffs' views because they are in the best position to evaluate the

35

technicians' performance history and the infraction at issue. *See* Haas Dep. at 213-14

(acknowledging that bringing issues to his supervisor is the initiation of discipline); Lashley

Decl. at ¶ 34 ("I usually give close consideration to these recommendations . . . because Haas

and Rahman work closest to the technicians and, based on their investigation, they are in the best

position to know the details of a particular incident."). Verizon further argues that Plaintiffs'

evaluation of technicians throughout the year affects the ability of technicians to apply for a

promotion. *See* Lashley Decl. at ¶ 13.

A reasonable jury could credit either parties' characterization of Plaintiffs' role in the

disciplinary process, thus preventing the Court from concluding that Verizon fails to satisfy this

element of the executive exemption. *See Trimmer*, 31 F. Supp. 3d at 625 (recognizing that

employees were involved in interviewing candidates for hire and recommending termination to

superiors, but concluding that genuine disputes of material fact existed regarding the weight

given to such recommendations); *Martinez*, 930 F. Supp. 2d at 527 (issues of fact regarding

employee's hiring and firing authority where employee claimed his suggestions were not taken

seriously).

### v.      **Conclusion**

In order for Plaintiffs to prevail on this portion of their motion, they would need to

demonstrate that Verizon failed to satisfy at least one of the elements of the executive exemption.

As with the administrative exemption, they have not done so, as genuine disputes of material fact

exist that prevent the Court from granting the motion as to this exemption at this time.

### e.      **Highly Compensated Employee (HCE) Exemption**

Both Plaintiffs and Verizon move for summary judgment on the HCE exemption.

Verizon argues that it properly classified Plaintiffs as exempt from overtime due to their status as

highly compensated employees, while Plaintiffs claim that this exemption does not apply to

36

them. For the reasons discussed below, the Court should deny Verizon's motion and grant Plaintiffs' motion in part.

An employee is deemed exempt as highly compensated if: (1) the employee's total annual compensation is at least $100,000 per year; (2) the employee customarily and regularly performs any one or more of the tasks of the exempt duties or responsibilities of an executive, administrative, or professional employee; and (3) the employee's primary duty includes performing office or non-manual work. 29 C.F.R. § 541.601(a)-(d); *see Zubair*, 808 F. Supp. 2d at 599.

As with the administrative and executive exemptions, in order to prevail on this portion of their motion, Plaintiffs need only establish that Verizon failed to satisfy one element of the HCE exemption. Therefore, the Court must analyze all of the elements because even if there is a genuine dispute of fact as to one or more of the elements, Verizon's failure to meet any one of them will result in its inability to invoke the HCE exemption. The Court will begin by addressing the performance of office or non-manual work.

### i.     First Element (Performance of Office or Non-Manual Work)

As discussed previously, there is a genuine dispute of material fact regarding whether Plaintiffs' primary duty is office or non-manual in nature. *See supra* at Pages 23-26. However, Verizon draws the distinction that while the administrative exemption requires that the employee's primary duty "is" office or non-manual work, the HCE exemption only requires that the employee's primary duty "includes" office or non-manual work. *See* Def. Mem. Summ. Judg. at 14-16. Therefore, Verizon argues that even if it cannot prevail on the administrative exemption because Plaintiffs' primary duty is not office or non-manual in nature, it can still prevail on this

37

element of the HCE exemption because the inquiry here is only whether Plaintiffs' primary duty includes some office or non-manual work. Def. Mem. Summ. Judg., at 14.[22]

However, accepting Verizon's argument would render this element effectively meaningless, as the vast majority of jobs include some minimal level of office or non-manual work. Indeed, even those jobs defined by manual work often have some non-manual aspect to them. For example, would mechanics not satisfy this element because one of their duties is to sit at a computer ordering parts from a supplier, even though they spend nearly their entire day under the hood of a car?[23] According to Verizon, the answer would be yes, which proves too much. *See Zubair*, 808 F. Supp. 2d at 595, 600 (genuine issue of fact as to whether employee performed office or non-manual work under the HCE exemption despite acknowledgment that employee "reviewed [] reports"); *Nigg v. United States Postal Serv.*, 829 F. Supp. 2d 889, 897 (C.D. Cal. 2011) (genuine issue of fact as to whether employee performed office or non-manual work under the HCE exemption despite employees' concession that they performed a minimal level of customer outreach, program development, and training).

Even accepting *arguendo* Verizon's novel claim that this distinction is meaningful and the employee's primary duty need only *include* some minimal level of office or non-manual

---

[22] Verizon does not cite to any case law in this Circuit but relies only on one case from Alabama to support its contention that a distinction should be drawn based on the word "includes." Def. Mem. Summ. Judg. at 14-16 (citing *Hicks v. Mercedes-Benz U.S. Int'l, Inc.*, No. 08-CV-0536 (LSC), 2012 WL 1566140, at *2 (N.D. Ala. Apr. 30, 2012) ("There is a vast difference between fully determining an employee's 'primary duty' as part of the executive-exemption analysis and simply determining whether that primary duty '*includes* performing office or non-manual work.'") (emphasis in original)). However, even if the Court were to accept the distinction drawn in *Hicks*, the question still remains whether Plaintiffs' *primary duty* includes office or non-manual work.

[23] *See* 29 C.F.R. § 541.601(d) ("[The HCE exemption] applies only to employees whose primary duty includes performing office or non-manual work. Thus, for example, . . . mechanics . . . are not exempt under this section no matter how highly paid they might be.").

work, it is still the employee's *primary duty* that is ultimately at issue. Under Plaintiffs'
characterization of their job, their primary duty is inspection work involving physical dexterity
and safety hazards, which does not include any office or non-manual work. *See supra* at Pages
18-22. Verizon's argument does not negate the conclusion that there is a genuine dispute of
material fact as to this element of the HCE exemption.

     The Court should thus deny Verizon's motion as to the HCE exemption because, in order
to prevail, it has to satisfy each element of the exemption. However, in order to fully evaluate
Plaintiffs' motion as to this exemption, the Court will address the other two elements.

### ii.     Second Element (Exempt Duties)

     According to the regulations, "a high level of compensation is a strong indicator of an
employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job
duties. Thus, a highly compensated employee will qualify for exemption if the employee
customarily and regularly performs any one or more of the exempt duties or responsibilities of an
executive, administrative or professional employee . . . ." 29 C.F.R. § 541.601(c); s*ee Kadden*,
910 F. Supp. 2d at 538 n.127 ("In fact, the regulations do not anticipate any relaxation of the
standards for establishing exempt status until the salary rises above $100,000, at which point the
employee is deemed a 'highly compensated employee . . . .'"). The regulations clarify that as
long as the employee customarily and regularly performs one of the duties of an administrative,
executive, or professional employee this element is satisfied even if the employee performs no
other duties that would qualify. 29 C.F.R. § 541.601(c). "An employee may qualify as a highly
compensated executive employee, for example, if the employee customarily and regularly directs

the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption . . . ." 29 C.F.R. § 541.601(c).[24]

Though there are factual disputes regarding whether Plaintiffs' primary duty consists of office or non-manual work, the parties agree that Plaintiffs customarily and regularly perform some office or non-manual work. *See supra* at Page 7. Also, as discussed previously, there is no genuine dispute of material fact that Plaintiffs' duties fall on the administrative side of the *Davis* dichotomy. *See supra* at Pages 26-28.

Thus, even if not their primary duty, Plaintiffs customarily and regularly perform tasks of an administrator that are office or non-manual in nature and related to the management or general business operations of Verizon. Therefore, the Court concludes that Verizon satisfies this element of the HCE exemption.

### iii.    Third Element (Salary)

To qualify for the HCE exemption, Plaintiffs must have a total annual compensation of at least $100,000. 29 C.F.R. § 541.601(a).[25] This total annual compensation must include "at least $455 per week paid on a salary or fee basis." *Id.* § 541.601(b). "Total annual compensation may also include commissions, nondiscretionary bonuses and other nondiscretionary compensation earned during a 52-week period." *Id.* § 541.601(b)(1). Central to the dispute

---

[24] "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' include work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." 29 C.F.R. § 541.701; *see In re Novartis*, 593 F. Supp. 2d 637, 646 (S.D.N.Y. 2009).

[25] The Court notes that though the standards are less stringent when an employee earns more than $100,000 annually, *see Kadden*, 910 F. Supp. 2d at 538 n.127, employees making more than $100,000 are still entitled to overtime if they are otherwise qualified. In fact, the technicians Plaintiffs supervise generally earn more than $100,000, but are nonetheless paid overtime. *See supra* at note 6.

between the parties as to this element is whether Plaintiffs' bonuses are discretionary. If the bonuses are discretionary, then they cannot be included in Plaintiffs' annual compensation. 29 C.F.R. § 778.208 ("Among these excludable payments are discretionary bonuses, gifts and payments in the nature of gifts on special occasions, contributions by the employer to certain welfare plans and payments made by the employer pursuant to certain profit-sharing, thrift and savings plans.")

In order for a bonus to be discretionary, "the employer must retain discretion both as to the fact of payment and as to the amount until a time quite close to the end of the period for which the bonus is paid." 29 C.F.R. § 778.211(b). The regulations further explain that "[b]onuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay." *Id.* § 778.211(c).

Here, Plaintiffs themselves characterize these bonuses as "incentive awards for Local Managers managing their techs towards meeting company objectives." Pls. Mem. Summ. Judg., at 27. This characterization falls squarely within a bonus designed to "induce [employees] to work more steadily or more rapidly or more efficiently . . . ." 29 C.F.R. § 778.211(c); *see Guadalupe v. Tri-State Emp., Mgmt. & Consulting, Inc.*, No. 10-CV-3840 (NG) (CLP), 2013 WL 4547242, at *9-10 (E.D.N.Y. Aug. 28, 2013) (bonus non-discretionary where it was dependent on number of cars towed to induce employees to work more). Plaintiffs also argue that Verizon can alter the amount of the bonus they receive based on their performance, Pls. Mem. Summ. Judg., at 28, but they do not assert that Verizon has discretion as to the fact of payment. As Plaintiffs' acknowledge, a bonus is only discretionary where "the employer retains discretion as to both the fact *and* amount of the payment." Pls. Mem. Opp. Summ. Judg., at 17 (citing *Mendez*

41

*v. Radec Corp.*, 232 F.R.D. 78, 89 (W.D.N.Y. 2005) (emphasis added)); *see Guadalupe*, 2013 WL 4547242 at \*9-10 (requiring employer to have discretion as to both amount of payment and fact of payment to be discretionary) (quoting 29 C.F.R. § 778.211(a)). According to 29 C.F.R. § 778.211(b), if "the employer promises in advance to pay a bonus" or there is a "prior agreement" regarding a bonus, the employer has "abandoned [its] discretion with regard to it." *See Gonzalez v. McNeil Techs., Inc.*, No. 06-CV-204 (TRJ), 2007 WL 1097887, at \*4 (E.D.Va. Apr. 11, 2007) ("[T]he crux of the question whether a bonus [is discretionary] is whether it has been promised to the employee, even if that promise is attended by certain conditions and the employee understands that a bonus might not be paid . . . ."). Here, Verizon announces its bonuses in advance in order to incentivize work in a document entitled "Verizon Incentive Plan," which outlines how bonuses will be calculated. *See* Preston Decl. Ex. C. Given the existence of this prior agreement to pay incentive bonuses, the Court concludes these to be non-discretionary bonuses.

Verizon thus satisfies this element of the exemption for any year in which Plaintiffs' gross compensation, including their bonus, exceeded $100,000. The only years in which Plaintiff Haas earned less than $100,000 were 2007 and 2008. The only years in which Plaintiff Rahman earned less than $100,000 were 2007, 2008, and 2009.

Though the parties dispute what the relevant FLSA claim period should be in this case, the conclusion that Plaintiffs' compensation includes their bonuses renders this issue moot for FLSA purposes because the claim period does not stretch back to 2009 (or earlier) under either parties' position. *See* Def. Mem. Summ. Judg., at 9-10; Pls. Mem. Opp. Summ. Judg., at 18-19. However, if Judge Abrams were to disagree with my conclusion and find that the bonuses were discretionary, thereby excluding them in calculating Plaintiffs' compensation, then

42

Plaintiffs Haas and Rahman would have made less than $100,000 in 2010, which would be within the claim period if the Court accepts Plaintiffs' argument that it stretches back to 2010. Pl. 56.1 ¶¶ 21, 22. Therefore, determining whether the claim period stretches back to 2010 (as Plaintiffs claim) or only to 2011 (as Verizon claims) would be critical because Plaintiffs made less than $100,000 in 2010 but not 2011, thereby preventing Verizon from invoking the HCE exemption in 2010. In the interest of completeness, the Court will address this issue below.

Under 29 U.S.C. § 216(b), "no employee shall be a party plaintiff to any such action [under the FLSA] unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Further, according to 29 U.S.C. § 256, a collective action shall be considered commenced in the case of any individual for statute of limitations purposes:

> (a) On the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or
>
> (b) If such written consent was not so filed or if his name did not so appear – on the subsequent date on which such written consent is filed in the court in which the action was commenced.

In this case, Plaintiffs Haas and Rahman filed their Complaint on November 14, 2013, but did not file their written consent forms until March 11, 2014. (Dkt Nos. 1, 18, 19). Verizon argues, therefore, that the FLSA claim period should begin on March 11, 2011, three years prior to the date on which Plaintiffs filed their written consent forms.[26] Plaintiffs on the other hand

---

[26] Verizon assumes for these purposes that Plaintiffs could establish a willful violation of the FLSA. Def. Mem. Summ. Judg., at 10. If no such willful violation occurred, then the claim period would be two years. *See Nakahata v. New York-Presbyterian Healthcare Syst., Inc.*, 723 F.3d 192, 198 n.4 (2d Cir. 2012) (citing 29 U.S.C. § 255(a)).

argue that the Complaint should be the operative document in determining the claim period; thus, under their theory, it would begin on November 14, 2010. The Court agrees with Verizon.

Courts routinely hold that the requirement to file a written consent opting into the suit applies to named plaintiffs. *See, e.g.*, *Suarez v. S & A Painting & Renovation Corp.*, No. 08-CV-2984 (CPS) (JO), 2008 WL 5054201, at *1 n.1 (E.D.N.Y. Nov. 21, 2008) ("As a result, notwithstanding the fairly obvious inference of consent to sue that could normally be drawn from a plaintiff's affirmative act of filing suit, the case law holds that a plaintiff who does not timely file an explicit statement of consent to join in his own lawsuit risks dismissal or the limitation of otherwise available damages."); *El v. Potter*, No. 01-CV-6125 (RWS), 2004 WL 2793166, at *9 (S.D.N.Y. Dec. 6, 2004) (same). Therefore, the Court concludes that the FLSA claim period began on March 11, 2011.

Though the FLSA claim period only stretches back to March 11, 2011, NYLL has a six year statute of limitations.[27] The parties do not dispute that, even including bonuses, Haas earned less than $100,000 in 2007 and 2008 and that Rahman earned less than $100,000 in 2007, 2008, and 2009. Pl. 56.1 ¶¶ 21, 22. Therefore, for these years, where Plaintiffs made less than $100,000, Plaintiffs are entitled to a ruling that Verizon cannot rely on the HCE exemption as to Plaintiffs' NYLL claims.[28]

---

[27] *See* N.Y. Lab. Law § 663(3); *see also Ramos*, 2014 WL 3639194 at *4 (recognizing NYLL's six year statute of limitations).

[28] NYLL applies the same overtime exemptions as the FLSA. 12 N.Y. Comp. Codes R. & Regs. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. § 201 *et seq.*, the Fair Labor Standards Act of 1938, as amended; provided, however, that the exemptions set forth in section 13(a)(2) and (4) shall not apply."). The HCE exemption falls within Section 13 of 29 U.S.C. § 201 pursuant to 29 C.F.R. § 541.601, which states, "An employee with total annual compensation of at least $100,000 is deemed exempt under section 13(a)(1) of the Act if the employee customarily and

44

### iv.  Conclusion

In sum, as to the HCE exemption, the Court should grant in part and deny in part Plaintiffs' motion. The Court should deny Plaintiffs' motion as to its FLSA claims because there is a genuine dispute of material fact regarding whether Plaintiffs' primary duty included office or non-manual work. The Court should grant Plaintiffs' motion as to its NYLL claims for the years in which Plaintiffs made less than $100,000 and hold that Verizon cannot avail itself of the HCE exemption as to those claims.

Verizon's motion as to the HCE exemption should be denied. As noted, Verizon cannot rely on this exemption in its defense of the NYLL claims for the years in which Plaintiffs made less than $100,000. Additionally, as to the FLSA claims, there is a genuine dispute of material fact regarding whether Plaintiffs' primary duty included office or non-manual work.

\* \* \*

In order for Verizon to avail itself of any of the three exemptions, it must satisfy each element of the relevant exemption. The only exemption for which Plaintiffs can demonstrate as a matter of law that Verizon failed to satisfy an element is the salary requirement of the HCE exemption for the years 2007-2008 for Plaintiff Haas and the years 2007-2009 for Plaintiff Rahman. Therefore, the Court concludes that Verizon cannot rely on the HCE exemption during those years. As for the administrative and executive exemptions, the Court concludes that genuine disputes of material fact exist preventing the Court from granting Plaintiffs' motion.

### 3.  FLSA and NYLL Minimum Wage Claims

Verizon also moves for partial summary judgment on Plaintiffs' claim that Verizon failed to pay them the minimum wage as required by the FLSA and NYLL. 29 U.S.C. § 206 and N.Y.

---

regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee."

Lab. Law § 652; Def. Mem. Summ. Judg., at 24. Plaintiffs base their theory on dividing their workweek into two portions: (1) the first 40 hours worked in a given week and (2) any hours worked in excess of 40. Plaintiffs argue that their entire compensation was attributable to the first 40 hours of work done in a week, meaning that Verizon paid Plaintiffs nothing for any hour worked in excess of 40. Pls. Mem. Opp. Summ. Judg., at 19.

However, in determining compensation for minimum wage purposes, NYLL provides that "[w]hen an employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings." 12 N.Y. Comp. Code R. & Regs. § 142-2.16. This is also the approach courts in this Circuit have adopted for the calculation of the minimum wage under the FLSA. *See, e.g.*, *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960) ("If the total wage paid to each guard in this case during any given week is divided by the total time he worked that week, the resulting average hourly wage exceeds [the minimum wage] for every week and every guard involved. We believe this is all that is necessary to meet the [minimum wage requirements]."). Plaintiffs argue that this authority is outdated. Pls. Mem. Opp. Summ. Judg. at 19. However, courts continue to apply this rule. *See, e.g.*, *Lundy v. Catholic Health Syst. of Long Island Inc.*, 711 F.3d 106, 116 (2d Cir. 2013); *Hart v. Crab Addison, Inc.*, No. 13-CV-6458 (CJS), 2014 WL 2865899, at *11 (W.D.N.Y. June 24, 2014); *Perez v. Westchester Foreign Autos, Inc.*, No. 11-CV-6091 (ER), 2013 WL 749497, at *10 (S.D.N.Y. Feb. 28, 2013).

Using this method, ever were the Court to accept Plaintiffs' assertion that they worked 80 hours per week, Haas Dep. at 247-48, Plaintiffs were still paid far in excess of the minimum

wage.[29] Therefore, the Court should grant Verizon's motion for partial summary judgment as to Plaintiffs' federal and state minimum wage claims.

4.    **NYLL Wage Statement Claim**

Verizon also moves for partial summary judgment on Plaintiffs' claim that it failed to provide them with adequate wage statements. Pursuant to state law, every employer must "furnish each employee with a statement with every payment of wages, listing the following: . . . regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." N.Y. Lab. Law § 195(3). Plaintiffs allege that Verizon violated this provision due to its failure to include the number of hours worked by Plaintiffs and the corresponding hourly and overtime rates of pay for the hours they worked. Compl. at ¶ 87. However, an employer need only provide this information for "employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation . . . ." N.Y. Lab. Law § 195(3); *see, e.g.*, *Carter v. Tuttnaeur U.S.A. Co., Ltd.*, No. 13-CV-00679 (ADS) (ARL), 2015 WL 148468, at *6 (E.D.N.Y. Jan. 12, 2015).

This requirement came into effect on April 9, 2011. *See* New York Wage Theft Prevention Act (the "WTPA"), 2010 N.Y. Sess. Laws ch. 564. Therefore, prior to April 9, 2011, Verizon was not obliged to provide Plaintiffs with wage statements detailing hourly and overtime rates of pay and the corresponding number of hours worked in each category. *Dominguez v. B S Supermarket, Inc.*, No. 13-CV-7247 (RSM) (CLP), 2015 WL 1439880, at *13

---

[29] Plaintiff Haas's lowest bi-weekly salary was $3,403 in 2007. *See* Def. 56.1 ¶ 55. This amounts to $1,701.50 per week. Assuming Plaintiff Haas worked 80 hours during this week, he still made in excess of $20 per hour. Plaintiff Rahman's lowest bi-weekly salary was $3,196 in 2007, amounting to $1,598.08 per week and $19.97 per hour, assuming an 80 hour work-week. *See id.* at ¶ 55. These amounts are far in excess of the minimum wage.

(E.D.N.Y. Mar. 27, 2015) (only awarding damages pursuant to N.Y. Lab. Law § 195(3) for the time period after April 9, 2011).

Accordingly, the Court should grant Verizon's summary judgment motion on this claim for the period preceding April 9, 2011. However, for the period after this date, because genuine disputes of material fact exist regarding whether Plaintiffs were exempt from overtime, the Court should deny Verizon's motion for summary judgment as to this claim.

## III.   CONCLUSION

To summarize, the Court makes the following recommendations:

1. Plaintiffs' motion for conditional certification and notice should be granted.

2. Plaintiffs' motion for partial summary judgment should be granted in part and denied in part. Specifically, the Court should deny Plaintiffs' motion as to the administrative and executive exemptions. As to the HCE exemption, Plaintiffs' motion should be granted for any years in which Plaintiffs' total compensation, including their bonuses, did not exceed $100,000, but denied for any years in which their total compensation was greater than $100,000.

3. Verizon's motion for partial summary judgment as to the HCE exemption should be denied.

4. Verizon's motion for partial summary judgment as to Plaintiffs' minimum wage claims should be granted.

5. Verizon's motion for partial summary judgment as to Plaintiffs' wage statement claims should be granted for the period prior to April 11, 2011, but denied for the period after that date.

Thus, if the Court adopts these recommendations, Verizon is still entitled to argue that Plaintiffs are properly classified as exempt employees pursuant to the executive, administrative, and HCE exemptions for all years except for the years in which Plaintiffs made less than $100,000. For those years where Plaintiffs made less than $100,000, Verizon is not entitled to

rely on the HCE exemption, though Verizon may still argue that Plaintiffs were exempt during those years pursuant to either the administrative or executive exemptions.

**PROCEDURE FOR FILING OBJECTIONS**
**TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Abrams.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW** . 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: August 13, 2015
New York, New York

JAMES L. COTT
United States Magistrate Judge

49