UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 9/30/2015

WILLIAM HAAS and AKHLAQUR
RAHMAN, *on behalf of themselves and all
others similarly situated*,

Plaintiffs,

v.

VERIZON NEW YORK, INC.,

Defendant.

No. 13-CV-8130 (RA)

ORDER ADOPTING REPORT &
RECOMMENDATION IN PART AND
DECLINING TO ADOPT IN PART

RONNIE ABRAMS, United States District Judge:

Plaintiffs bring this collective action pursuant to the Fair Labor Standards Act (the
"FLSA"), 29 U.S.C. § 201, *et seq.*, and various provisions of New York Labor Law ("NYLL"),
alleging that their employer, Defendant Verizon New York, Inc., failed to pay them overtime and
the minimum wage. Plaintiffs also allege Verizon failed to provide them proper wage statements
pursuant to NYLL. Plaintiffs moved for conditional certification and notice under the FLSA (the
"Certification Motion") and for partial summary judgment on their individual claims ("Plaintiffs'
Summary Judgment Motion"). ECF Nos. 98 & 100. Verizon cross-moved for partial summary
judgment on Plaintiffs' individual claims ("Verizon's Summary Judgment Motion"), arguing that
Plaintiffs qualify for the highly compensated employee ("HCE") exemption to the FLSA's
overtime provisions. ECF No. 104.

On August 13, 2015, Magistrate Judge James L. Cott issued a comprehensive Report and
Recommendation (the "Report") recommending that the Certification Motion be granted, that
Plaintiffs' Summary Judgment Motion be granted in part and denied in part, and that Verizon's
Summary Judgment Motion be granted in part and denied in part. ECF No. 177. Specifically, the

Report concluded that disputed issues of material fact should preclude the entry of summary judgment for any party with regard to Plaintiffs' overtime claims, including the applicability of the HCE exemption, except that Plaintiffs' Summary Judgment Motion should be granted as it relates to the unavailability of the HCE exemption—which requires that an employee's annual compensation be at least $100,000, *see* 29 C.F.R. § 541.601(a)—for any years in which Plaintiffs' total compensation, including bonuses, was less than $100,000. *See* Rep. at 48.[1]  The Report also concluded that Verizon's Summary Judgment Motion should be granted as it relates to Plaintiffs' minimum wage claims and, for the period prior to April 11, 2011, to Plaintiffs' wage statement claims. *See id.*

On August 31, 2015, Verizon filed objections to the Report (the "Objections"). ECF No. 181. Plaintiffs filed no objections, but on September 17, 2015, opposed Verizon's Objections (the "Opposition"). ECF No. 186. On September 24, 2015, the Court heard oral argument on the Objections.

The Court assumes the parties' familiarity with the Report and its exhaustive review of the record in this case. Judge Cott meticulously distilled a record containing thousands of pages of deposition testimony, documentary evidence, affidavits, and legal briefs and carefully articulated the factual disputes that underlie the parties' opposing characterizations of Plaintiffs' job duties. Nonetheless, with the benefit of the parties' narrowed arguments in response to the Report based primarily on how Plaintiffs characterize their own jobs, the Court disagrees with the Report's conclusion that a genuine factual dispute exists as to whether Plaintiffs' primary duty includes

---

[1] The Report determined that, including bonuses, the only years at issue in which Plaintiff Haas earned less than $100,000 were 2007 and 2008 and the only years at issue in which Plaintiff Rahman earned less than $100,000 were 2007, 2008, and 2009. Rep. at 44. These years are outside what the Report found to be the applicable claim period under the FLSA's three-year statute of limitations, but not outside NYLL's six-year limitations period. *See id.* & n.27. Accordingly, the Report concluded that Plaintiffs are entitled to a ruling that the HCE exemption does not apply only as to some of their claims brought under NYLL. *See id.* at 45.

2

office or non-manual work for the purposes of the HCE exemption. The Court therefore grants
Verizon's Summary Judgment Motion because Plaintiffs qualify for the HCE exemption as a
matter of law for all years within the FLSA's statute of limitations. Accordingly, and for the
reasons set forth below, the Court adopts in part and declines to adopt in part the Report's
recommendations.

## STANDARD OF REVIEW

A "court may accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The applicable standard
of review depends on the nature of the magistrate judge's findings and the scope of the parties'
objections.

When a magistrate judge decides "pretrial matter not dispositive of a party's claim or
defense," the Court must "modify or set aside any part of the order that is clearly erroneous or is
contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). "A decision is 'clearly
erroneous' when the Court is, 'upon review of the entire record [ ] left with the definite and firm
conviction that a mistake has been committed.'" *Palacio v. City of N.Y.*, 489 F. Supp. 2d 335, 339
(S.D.N.Y. 2007) (alteration in original) (quoting *United States v. Snow*, 462 F.3d 55, 72 (2d Cir.
2006)). Unlike class certification motions brought under Rule 23, motions for conditional
certification of FLSA collective actions qualify as "pretrial matter" subject to clear error review.
*See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383 (E.D.N.Y. 2010); *Mazur v. Olek Lejbzon
& Co.*, No. 05-CV-2194, 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005).

When a magistrate judge considers a dispositive motion, "the [C]ourt shall make a *de novo*
determination of those portions of the report or specified proposed findings or recommendations
to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b)(3) ("The district

3

judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). When no timely objection is made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 170 (S.D.N.Y. 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). Clear error review also applies "to the extent that the party makes only conclusory or general objections, or simply reiterates the original arguments." *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009).

## DISCUSSION

Verizon objects principally to the Report's conclusion that there is a genuine factual dispute as to whether Plaintiffs' primary duty "includes performing office or non-manual work" for the purposes of the HCE exemption. *Compare* Rep. 37–39 *with* Obj. at 5–17. In addition, Verizon raises three other objections. First, Verizon argues that the Report erred in concluding that there was a genuine factual dispute as to whether Plaintiffs customarily and regularly direct the work of two or more employees. *Compare* Rep. at 33–35 *with* Obj. at 17–20. Second, Verizon argues that, because the HCE exemption should apply to Plaintiffs' individual FLSA claims, the Certification Motion should be denied as moot. *Compare* Rep. at 9–15 *with* Obj. at 20–22. Third, Verizon argues that, in the event that the Certification Motion is granted, the Report erred in requiring Verizon to produce the e-mail addresses of potential class members. *Compare* Rep. at 14–15 *with* Obj. at 22–23.

## I.    The HCE Exemption

Under the HCE exemption, employees whose total annual compensation is at least $100,000 are exempt from the FLSA's overtime requirements if they "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative

4

or professional employee." 29 C.F.R. § 541.601(a). In addition, the HCE exemption "applies only to employees whose primary duty includes performing office or non-manual work." *Id.* § 541.601(d). The Report concluded that for the purposes of their FLSA claims, Plaintiffs meet the two requirements of § 541.601(a) as a matter of law. *See* Rep. at 39–44. Plaintiffs neither objected to these portions of the Report nor appear to dispute them. Because the Court finds no clear error in the Report's analysis of § 541.601(a), the outcome of Verizon's Summary Judgment Motion hinges on whether Plaintiffs satisfy § 541.601(d).

In considering whether Plaintiffs' primary duty includes performing office or non-manual work, Judge Cott first rightly found that the scope of Plaintiffs' primary duty was subject to a genuine factual dispute. *See* Rep. at 18–22. In particular, Judge Cott concluded that although the parties generally agree on Plaintiffs' job duties, they "disagree regarding the finer details of these duties and the importance of these duties to Plaintiffs' job. Primarily, Plaintiffs characterize their inspection duties as the crux of their job. . . . Verizon, on the other hand, emphasizes that Plaintiffs' managerial tasks lie at the core of their job." *Id.* at 4. Ultimately, the Report recommended denying Verizon's Summary Judgment Motion in part because, "[u]nder Plaintiffs' characterization of their job, their primary duty is inspection work involving physical dexterity and safety hazards, which does not include any office or non-manual work." *Id.* at 39. Verizon objects to this conclusion, arguing that even as characterized by Plaintiffs, Plaintiffs' primary duty includes performing office or non-manual work. *See* Obj. at 10–12.

## A.     The Applicable Standard

As a preliminary matter, Verizon contends that the Report applied an incorrect standard in determining whether Plaintiffs' primary duty includes performing office or non-manual work under § 541.601(d). *See* Obj. at 5–10. Judge Cott was not persuaded by Verizon's argument that

in light of the HCE exemption's use of the word "includes," Verizon is required to establish only that "Plaintiffs' primary duty includes some office or non-manual work." Rep. at 38. The Report concluded that "accepting Verizon's argument would render this element effectively meaningless, as the vast majority of jobs include some minimal level of office or non-manual work." *Id.* In its Objections, Verizon engaged in a thorough analysis of statutory interpretation, contrasting the HCE exemption's use of the word "includes" with the administrative exemption to the FLSA, which requires in part that an employee's "primary duty *is* the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," 29 C.F.R. § 541.200(a)(2) (emphasis added). *See* Obj. at 8–9. According to Verizon, the use of the word "includes" in the HCE exemption must impose a less burdensome standard than the use of "is" does under the administrative exemption, such that "Verizon needs to show only that Plaintiffs' primary duty consisted, at least in part, of non-manual work." *Id.* at 5.

Plaintiffs agree. They do not dispute the standard itself in their Opposition, arguing instead that the Report properly applied the standard as Verizon describes it. *See* Opp. at 13 ("[T]he Court based its denial of [Verizon's] motion . . . on its finding that Plaintiffs' primary duty did not 'include' office or non-manual work."). At oral argument, Plaintiffs' counsel recognized that the HCE exemption indeed "uses the word 'includes'" and conceded that "includes" is "a tougher standard for us, certainly, than 'is.'" Oral Arg. Tr. at 21.

The Court agrees with the parties that the plain meaning of 29 C.F.R. § 541.601(d) requires only that Plaintiffs' primary duty consist in part of office or non-manual work, not that their primary duty consist entirely of such work.

6

**B.      Plaintiffs' Primary Duty**

An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Determining an employee's primary duty usually requires a detailed analysis "based on all the facts in a particular case." *Id.* Here, however, because Verizon argues that it is entitled to summary judgment even under Plaintiffs' theory of their primary duty, such an analysis is not required. Plaintiffs' primary duty, as Plaintiffs themselves characterize it, "is to travel to [Verizon's] customers' locations to perform formulaic inspections to collect facts and to confirm that their [t]echnicians' work was done in accordance with [Verizon's] quality and safety protocols, which is nearly always done using a rigid and written checklist." Opp. at 5; *see also* Rep. at 19 ("Plaintiffs argue that their primary duty consists of visiting customer locations and performing routine inspection work based on highly standardized checklists promulgated by Verizon.").

According to Plaintiffs, the inspections they perform involve six specific components. First, "[e]ach inspection requires that [they] travel to various locations in Queens and spend time on the worksite where the particular technician subject to the inspection is working." Magnuson Decl. Ex. 19 ("Haas Aff.") ¶ 4; *see also* Magnuson Decl. Ex. 20 ("Rahman Aff.") ¶ 4 (similar). Second, the inspections "require [Plaintiffs] to view the work that has been done and/or is being done by Verizon's technicians." Haas Aff. ¶ 5; *see also* Rahman Aff. ¶ 4 (similar). Third, while on the various worksites, Plaintiffs "need to wear safety equipment, apparel, and accessories because every job site has safety concerns." Haas Aff. ¶ 6; *see also* Rahman Aff. ¶ 5 (similar). Fourth, during the inspections, Plaintiffs "can be required to lie on the ground, climb over obstacles or crawl into small spaces. [Plaintiffs] may also be required to climb ladders or lower [themselves] into sub-ground crawl spaces to inspect cables and cable connections. [Plaintiffs] often have to

7

move items on the site to inspect areas." Haas Aff. ¶ 7; *see also* Rahman Aff. ¶ 5 (similar). Fifth, Plaintiffs "inspect the technicians' work by following Verizon's procedures and checklists. The checklists are extremely specific and [Plaintiffs'] role is to answer each of the questions posed on the checklist." Haas Aff. ¶ 8; *see also* Rahman Aff. ¶ 6 (similar). Sixth, "[i]n performing inspections, [Plaintiffs] gather facts and report them to the proper individuals or departments at Verizon." Haas Aff. ¶ 9; *see also* Rahman Aff. ¶ 6 (similar).

This summary mirrors the Report's description of how Plaintiffs characterize their inspections. *See* Rep. at 5, 38–39. At oral argument, Plaintiffs' counsel confirmed in response to questioning that Plaintiffs "agree with Judge Cott's characterization" for the purposes of analyzing § 541.601(d). Oral Arg. Tr. at 27.

## C.   Whether Plaintiffs' Primary Duty Includes Performing Office or Non-Manual Work

As noted above, the Report concluded that "[u]nder Plaintiffs' characterization of their job, their primary duty is inspection work involving physical dexterity and safety hazards, which does not include any office or non-manual work." Rep. at 39. Verizon urges the Court to reject this portion of the Report, arguing that "[n]o reasonable jury could conclude that Plaintiffs' visual observations of their technicians – which is at the core of the 'inspection' work that Plaintiffs claim is their primary duty – is manual labor." Obj. at 10. Plaintiffs defend the Report's conclusion by arguing that because their "field inspections [are] highly intertwined with manual activities," no portion of the inspections is truly non-manual in nature. Opp. at 11.

Applying the clear text of the regulation at issue to the specific facts as Plaintiffs have articulated them, the Court concludes as a matter of law that Plaintiffs' inspections include performing office or non-manual work. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) ("The question whether [the employees'] particular activities excluded them

8

from the overtime benefits of the FLSA is a question of law." (quoting *Icicle Seafoods, Inc. v.*

*Worthington*, 475 U.S. 709, 714 (1986))). Section 541.601(d) provides in full:

> This section applies only to employees whose primary duty includes
> performing office or non-manual work. Thus, for example, non-
> management production-line workers and non-management
> employees in maintenance, construction and similar occupations
> such as carpenters, electricians, mechanics, plumbers, iron workers,
> craftsmen, operating engineers, longshoremen, construction
> workers, laborers and other employees who perform work involving
> repetitive operations with their hands, physical skill and energy are
> not exempt under this section no matter how highly paid they might
> be.

29 C.F.R. § 541.601(d).

Not only do Plaintiffs not hold any of the jobs listed as examples in the regulation,[2] but

they are not "employees who perform work involving repetitive operations with their hands,

physical skill and energy." *Id.* Plaintiffs argue their inspections meet this definition because they

"repetitively go[] out into the field and do[] the same types of observations" and "it's impossible

to separate the physical task from the observation because they are completely connected." Oral

Arg. Tr. at 29, 32. The Court disagrees. As Verizon rightly argues, the physical tasks Plaintiffs

perform merely put them "in a position to do the . . . observation[s]." *Id.* at 7. That Plaintiffs may

be "required to climb ladders or lower [themselves] into sub-ground crawl spaces" to conduct

inspections, Hass Aff. ¶ 7; *see also* Rahman Aff. ¶ 6 (similar), is akin to performing tasks that are

"'directly and closely related' to the performance of exempt work," and therefore exempt work

themselves. 29 C.F.R. § 541.703(a). The phrase "directly and closely related" is defined by

---

[2] The same list of jobs included in § 541.601(d) also appears in § 541.3(a), which describes "blue collar" workers who are categorically excluded from all of the FLSA's executive, administrative, and professional capacity exemptions. While Plaintiffs do not fall into any of these categories, Verizon's technicians, who "install the services Verizon provides," do. Rep. at 27; *see Zelenika v. Commonwealth Edison Co.*, No. 09-CV-2946, 2012 WL 3005375, at *12 (N.D. Ill. July 23, 2012) (concluding that plaintiffs qualified for the HCE exemption despite "work[ing] with electricians in the field crews" because they "are not responsible for the physical act of conducting the maintenance or installation of electrical systems").

regulation as "tasks that are related to exempt duties and that contribute to or facilitate performance of exempt work." *Id.* "'Directly and closely related' work may include physical tasks and menial tasks that arise out of exempt duties, and the routine work without which the exempt employee's exempt work cannot be performed properly." *Id.* Thus, if inspecting a work site and completing a checklist is exempt work, the physical activity necessary to facilitate Plaintiffs' inspections would also be exempt.[3]

Even assuming, however, that the inspections are in fact "intertwined" with physical activity because Plaintiffs are performing physical tasks "as they are actually doing the observation and inspection," Oral Arg. Tr. at 28, such inspections, in the Court's view, nevertheless do not constitute manual work for the purposes of § 541.601(d). Among other things, there is simply no indication that the physical tasks Plaintiffs perform involve "physical *skill*." 29 C.F.R. § 541.601(d). The only skill Plaintiffs have identified is "the skill of engaging in physical activity to perform your job." Oral Arg. Tr. at 23. The jobs expressly listed in § 541.601(d), however, all require more. The physical work Plaintiffs perform does not demand the skills necessary in jobs like carpentry, electrical work, plumbing, or engineering. Nor are the physical tasks Plaintiffs perform similar to those performed by laborers, for whom the entirety of their work involves repetitive, physical tasks more demanding than those performed by Plaintiffs. Accordingly, while Plaintiffs may exhibit strength and dexterity when "[lying] on the ground, climb[ing] over obstacles[, . . . and] mov[ing] items on the site[s]," Haas Aff. ¶ 7; *see* Rahman Aff. ¶ 5 (similar), they do not engage in tasks involving "physical skill" when conducting their inspections. As a

---

[3] Furthermore, Plaintiffs do not claim that physical activity is required for every inspection. This is evident from Plaintiffs' own affidavits, in which they assert that during inspections, they "*can* be required" and "*may* need" to perform tasks like lying on the ground, climbing over obstacles, crawling into small spaces, climbing ladders, and lowering themselves into sub-ground crawl spaces. Haas Aff. ¶ 7 (emphasis added); Rahman Aff. ¶ 5 (emphasis added). That Plaintiffs can and evidently do perform some inspections without engaging in these tasks suggests that not every observation Plaintiffs perform is accompanied by physical activity.

result, the inspections Plaintiffs perform, even when intertwined with the physical component involved, constitute "non-manual work" for the purposes of § 541.601(d).

In any event, whether some measure of physical skill is required to conduct some of the inspections or not, no reasonable juror could conclude that Plaintiffs' inspections do not "*include*[]" performing office or non-manual work." 29 C.F.R. § 541.601(d) (emphasis added). Plaintiffs argue that reaching this conclusion "would reduce [the HCE exemption] to an absolute nullity" because "even unquestionably pure manual laborers, such as Verizon's [t]echnicians, 'observe' that their work is done properly as part of their job, as does every employee who performs any task." Opp. at 14. But Plaintiffs ignore the critical fact that the core of their inspections involves reviewing work performed by others, namely Verizon's technicians. The core of the technicians' primary duty, by contrast, is the manual, skilled work anticipated by § 541.601(d). In their affidavits, Plaintiffs assert that during their inspections, they "answer each of the questions posed on" an "extremely" or "highly specific" checklist and report the facts they gather "to the proper individuals or departments at Verizon." Haas Aff. ¶¶ 8–9; Rahman Aff. ¶ 6. As there is no dispute that Plaintiffs' primary duty *included* answering questions on a checklist and reporting back to the company, whatever else they do, it is difficult to see how their primary duty did not "*include*[]" performing office or non-manual work." 29 C.F.R. § 541.601(d) (emphasis added).

The case law cited by the parties analyzing whether inspection work includes office or non-manual work does not alter the Court's conclusion. Plaintiffs rely mainly on *Zubair v. EnTech Engineering P.C.*, 808 F. Supp. 2d 592 (S.D.N.Y. 2011), as did the Report. *See* Opp. at 9–10, 16–17; Rep. at 24, 38. In *Zubair*, the plaintiff, an inspector on various New York State Department of Transportation projects, testified that his job "involved visiting various project sites where, among other things, he coordinated the work of other inspectors and confirmed that the

11

contractors' work was in accordance with contract specifications." 808 F. Supp. 2d at 600. He also "test[ed] concrete and paint samples and recommend[ed] project improvements to the overall paint systems." *Id.* The court held as a matter of law "that no reasonable juror could find that these duties are the kind associated with an employee who performs office or non-manual work." *Id.* Plaintiffs take *Zubair* to mean that employees do not perform office or non-manual work "if their primary duties involve visiting job sites, performing inspection work in the field, and/or confirming that employees are performing work in accordance with company requirements and policies." Opp. at 9. Verizon distinguishes *Zubair* by pointing out that, unlike the inspections performed by Plaintiffs here, the inspections at issue in *Zubair* were themselves "at least partly manual" because "one of the plaintiff's duties was 'testing concrete and paint samples.'" Opp. at 16 (quoting *Zubair*, 808 F. Supp. 2d at 600).[4]

Verizon, meanwhile, relies mainly on *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349 (5th Cir. 2015). *See* Opp. 13–14. In *Zannikos*, the Fifth Circuit held that "marine superintendents" whose primary duty "included observing oil transfers to verify that performance was accurate, legal, and safe" performed office or non-manual work and qualified for the administrative exemption to the FLSA. 605 F. App'x at 350–54. The court distinguished between plaintiffs' work, which "primarily included supervision, quality control, and ensuring compliance with applicable standards," and the work of those employees who physically "transfer[red] oil, blend[ed] oil, or manufacture[d] or s[old] petroleum products," noting that the plaintiffs "oversaw these functions" but did not participate in them. *Id.* at 353. Verizon argues that, under *Zannikos*, "inspections done for quality control purposes constitute non-manual work." Opp. at 13. Plaintiffs

---

[4] Plaintiffs and the Report also rely on *Switzoor v. SCI Engineering, P.C.*, No. 11-CV-9332, 2013 WL 4838826 (S.D.N.Y. Sept. 11, 2013). *See* Opp. at 9–10, 16–17; Rep. at 24. Although *Switzoor*, a decision of this Court, cites *Zubair*, whether the plaintiff was an employee covered by the FLSA was not in dispute in that case.

12

distinguish *Zannikos* by pointing out that, unlike Plaintiffs here, those in *Zannikos* neither engaged in physical activity when conducting their inspections nor faced any safety hazards on the job. Oral Arg. Tr. at 24; *see Zannikos*, 605 F. App'x at 351 (plaintiffs' duties involved "observing," "monitor[ing]," "report[ing]," "performing quality control functions," "inspecting," "identifying problems," "recommending remedial measures," "overseeing," and "examining").

Neither *Zubair* nor *Zannikos* perfectly captures the nature of Plaintiffs' inspections. It is true that *Zubair* involved inspections that were independently manual, and it is also true that *Zannikos* involved inspections that did not require physical activity. Accordingly, these cases are of limited value in assisting the Court in determining whether the physical activity involved in Plaintiffs' inspections amounts to manual labor under the FLSA.

Ultimately, the Court disagrees with the Report's conclusion that a genuine factual dispute exists regarding whether Plaintiffs' primary duty includes office or non-manual work. Since Verizon has also established that Plaintiffs satisfy the other prongs of the HCE exemption as a matter of law, it is entitled to summary judgment on Plaintiffs' individual FLSA claims.

## II.    Verizon's Other Objections

### A.    Whether Plaintiffs Customarily and Regularly Direct the Work of Two or More Employees

To qualify for the HCE exemption, Plaintiffs must "customarily and regularly perform[] any one or more of the exempt duties or responsibilities of an executive, administrative or professional employee." 29 C.F.R. § 541.601(a). The Report concluded that Verizon satisfied this element because Plaintiffs customarily and regularly perform administrative tasks "that are office or non-manual in nature and relate[] to the management or general business operations of Verizon." Rep. at 40. Verizon does not dispute this conclusion, but nonetheless contends that it has also satisfied this element of the HCE exemption because Plaintiffs perform the executive task

13

of "customarily and regularly direct[ing] the work of two or more other employees," 29 C.F.R. § 541.100(a)(3). *See* Obj. at 17–20. Because Verizon has already prevailed on its Summary Judgment Motion, however, the Court need not consider the merits of Verizon's objection.

## B.  Whether the Certification Motion Is Moot

In its Objections, Verizon argued that the Certification Motion should be denied as moot because "[c]ourts both within and outside the Second Circuit routinely deny conditional and/or class certification motions as moot after granting defendants summary judgment on the plaintiffs' individual claims." Obj. at 21. Plaintiffs argued in their Opposition that should the Court grant Verizon's Summary Judgment Motion, opt-in Plaintiffs who make less than $100,000 would remain in the case and could be "substituted in as Named Plaintiffs" without mooting the Certification Motion. Opp. at 22.

At oral argument, Verizon agreed with Plaintiffs, provided that Plaintiffs amend their complaint and the evidence supporting the Certification Motion is limited to information only from employees who earned less than $100,000 in at least one year in the FLSA claim period. *See* Oral Arg. Tr. at 16–18. Verizon also requested an opportunity to review Plaintiffs' new evidence to determine whether Verizon has a good-faith basis to request that the Certification Motion be re-litigated. *See id.* Plaintiffs' counsel agreed that Verizon's proposal "probably would be amenable" to Plaintiffs. *Id.* at 35.

As the parties believe they can reach an agreement as to how this litigation should proceed, the Court will provide them with an opportunity to do so, as ordered below.

## C.  Whether Verizon Must Produce E-mail Addresses

Finally, Verizon objects to the Report's conclusion that it should produce "work and personal email addresses" of relevant employees. Rep. at 14. The crux of Verizon's argument is

14

that first-class mail is sufficient to provide notice to potential class members and that the "production of e-mail addresses has the potential for abuse." Obj. at 22. Plaintiffs argue that "it is commonplace in this Circuit" for courts to compel the production of e-mail addresses "to provide notice to potential members of a collective action." Opp. at 24. Plaintiffs also contend that, at the very least, issues related to the Certification Motion are subject to clear error review and it was not clearly erroneous for Magistrate Judge Cott to compel the production of e-mail addresses. *See id.* at 24–25.

The Court agrees with Plaintiffs. Courts in this district have routinely ordered that e-mail addresses be produced to facilitate notice to potential class members in FLSA collective actions. *See, e.g.*, *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 129 (S.D.N.Y. 2014) ("Courts routinely order discovery of names, addresses, e-mail addresses, and telephone numbers in FLSA actions."); *Pippins v. KPMG LLP*, No. 11-CV-377, 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the reality of communications today, . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate."). To the extent there remains any debate on this issue, it was not clearly erroneous for Judge Cott to come to the same conclusion that other courts have reached. *See Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 478 (S.D.N.Y. 2007) (magistrate judge did not commit clear error when case law supported both parties' positions). Accordingly, any production Verizon makes that includes the personal information of any current or former local managers must also include those current or former employees' e-mail addresses.

## III.  Remaining Issues

The Court has reviewed for clear error those portions of the Report to which no party objected, finding none. The Court therefore adopts the remainder of the Report. *See, e.g.*,

15

*Chimarev v. TD Waterhouse Investor Servs., Inc.*, 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003) (adopting those portions of a report and recommendation to which no objections had been filed).

**CONCLUSION**

For the reasons stated above, Verizon's Summary Judgment Motion is granted in full. Plaintiffs' Summary Judgment Motion is granted in part and denied in part. Plaintiffs' Certification Motion is denied without prejudice to renew. The Clerk of Court is respectfully directed to close the motions pending at ECF Nos. 98, 100, and 104. The parties are hereby directed to meet and confer as described above to determine how this litigation should proceed and shall submit a joint letter no later than October 16, 2015 outlining their agreed-upon proposal or indicating the areas of disagreement and each party's position. In the event that the parties do not agree, a status conference is scheduled for October 23, 2015 at 11 a.m.

SO ORDERED.

Dated:    September 30, 2015
          New York, New York

                                            _____
                                            Ronnie Abrams
                                            United States District Judge

16