```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    WILLIAM HAAS, on behalf of
      himself and all others
 4    similarly situated, et al.,

 5                 Plaintiffs,

 6           v.                             13 Civ. 8130 (RA)

 7    VERIZON NEW YORK, INC. and
      WILLIAM J. DeLEON,

 8
                 Defendants.
 9
      ------------------------------x
10                                          New York, N.Y.
                                            September 24, 2015
11                                          2:20 p.m.

12    Before:

13                         HON. RONNIE ABRAMS,

14                                          District Judge

15                             APPEARANCES

16    WIGDOR LLP
             Attorneys for Plaintiffs
17    BY:   DAVID E. GOTTLIEB
            RENAN F. VARGHESE
18          -and-
      BORRELLI & ASSOCIATES
19    BY:   TODD DICKERSON

20    JONES DAY
             Attorneys for Defendants
21    BY:   MATTHEW W. LAMPE
            TONYA BLOSSER BRAUN

22

23

24

25
```

 1                    (Case called)

 2                    MR. GOTTLIEB:  Good afternoon, your Honor, David

 3     Gottlieb from Wigdor LLP for plaintiffs.  I'm here with Renan

 4     Varghese, and Todd Dickerson from Borrelli & Associates.

 5                    THE COURT:  Good afternoon, all.

 6                    MR. LAMPE:  Good afternoon, your Honor, Matt Lampe

 7     with Jones Day for defendant Verizon with my partner Tonya

 8     Braun from Jones Day.

 9                    THE COURT:  Good afternoon to both of you as well.

10                    Why don't we hear from Verizon first.

11                    MR. LAMPE:  Thank you, your Honor.  Let me start with

12     the issue of the highly compensated employee exemption.  As

13     your Honor knows, there are three elements to this exemption

14     and Judge Cott has concluded that Verizon, as a matter of law,

15     establishes the first two elements, the salary element, and the

16     second element being the customarily and regular performance of

17     an exempt duty.

18                    So the issue that the magistrate judge found, there

19     was a factual dispute around, was the third element, which is

20     whether the primary duty includes the performance of office or

21     nonmanual work.  Judge Cott found a factual dispute about that.

22     We are challenging that ruling.  Our view is that the

23     undisputed evidence and, in particular, the two named

24     plaintiffs' declaration, which is at docket number 103-39 and

25     103-40, their declarations established conclusively that their

F9QMHAAS

1   primary duty does include nonmanual work.  That's all that

2   needs to be established because there is no reasonable genuine

3   dispute about that.  So we should be entitled to summary

4   judgment on that exemption.

5        THE COURT:  Just on that for a moment, we have those

6   affidavits.  But, also, for purposes of your objections to the

7   report, one of your objections essentially said, look, even if

8   you take plaintiffs' account as stated by Judge Cott, we still

9   win under the standard.  On that, are there any factual

10  disputes that you have in the way Judge Cott characterized

11  plaintiffs' position?

12       MR. LAMPE:  Well, since this is our summary judgment

13  motion, we have to accept Judge Cott's characterization of

14  plaintiffs' position.  Our view, your Honor, is that the

15  primary duty of the plaintiffs is management.  We are not

16  arguing that today.  We have to accept the plaintiffs'

17  argument, which is that their primary duty consists of these

18  field inspections.  That's what they say is their primary duty.

19       The declarations that I refer to talk about those

20  field inspections, and they outline very clearly in very

21  straightforward language what they do when they do their field

22  inspections.  There was quite a bit of back and forth, your

23  Honor, about the standard and I would like to start just by

24  addressing that briefly.

25       The regulation requires or states that the third

1    element is established if the employee's primary duty includes

2    nonmanual work.  We argued that the plain meaning should be

3    honored and respected in our summary judgment papers.

4    Plaintiffs disagreed with that.  They said that can't possibly

5    be the standard.  It would make it too easy.  They gave an

6    example of a garbage collector who does some paperwork.  They

7    say that possibly can't be the standard.  It was too lenient.

8         Judge Cott was influenced by that, and his point was

9    that our argument that there is a distinction between the

10   primary duty being nonmanual work and the primary duty

11   including nonmanual work was a novel argument that proved too

12   much and that rendered that element meaningless.

13        I think the point from the plaintiffs' opposition and

14   from Judge Cott's observations is sort of the same.  It is a

15   very easy standard.  The include standard is much less rigorous

16   and demanding and detailed than the is standard.

17        Let me bring us fast forward to today.  In our

18   objections we spent a lot of time going through how there is a

19   distinction between is and includes.  The department of labor

20   is very purposeful when it uses includes, when it uses is.  The

21   department of labor has explained why the standard is includes

22   under the highly compensated employee exemption and how settled

23   canons of construction require that the includes standard be

24   given its plain and ordinary meaning.

25        The development since the summary judgment briefing is

1    that plaintiffs now concede that includes is in fact the

2    standard.  In their response to our objections they do not

3    argue at all that the standard should be is or that the include

4    standard is not legally valid.  As we sit here today, your

5    Honor, the standard is includes.  We have established that.

6    That's undisputed.  And it is what it is.  The primary duty, it

7    doesn't have to consist solely of.  It needs only to include

8    nonmanual work.

9            With respect to whether the standard is satisfied

10   here, again, I refer to those two declarations.  We picked

11   those two declarations to make this point because this is the

12   plaintiffs' own words.  It's obviously undisputed for purposes

13   of our motion, and they describe really two things.  They talk

14   about what they characterize as physical activity associated

15   with getting to the point where they can make an observation,

16   so lie on the ground or climbing a ladder or moving around

17   obstacles and things of that nature.  They then describe what

18   they call,their word, their role, their role in the

19   observations.  And they explain what they do is, they view the

20   work of their technicians and their role is to answer a series

21   of questions off of a checklist.  They gather facts and they

22   report those facts to the company.  That's how they

23   characterize their role in these observations.

24           That really brings up, your Honor, I think, two

25   questions.  One is, is their observations and their answering

F9QMHAA6

1    of the checklist questions part of their primary duty.  There

2    is no interpretation other than that, yes, it is.  These

3    declarations describe what they call their primary duty.  It's

4    the field inspection.  There is no dispute about that.

5         The second question is, and the dispositive question

6    then becomes, are these visual observations and answering

7    questions off of a checklist and gathering facts and reporting

8    facts, is that nonmanual?  We respectfully submit that there is

9    no genuine dispute about whether that is nonmanual work.  It is

10   clearly nonmanual.

11        THE COURT:  What about what it requires for them to

12   get there, such that they can do that work?  So in these

13   affidavits they talk about, you know, the conditions about

14   wearing safety equipment, apparel, accessories and lying on the

15   ground and climbing over obstacles and crawling in small spaces

16   and climbing ladders, is that the process of conducting the

17   inspections?  Because what they need to do to be in a position

18   to do that, is that manual?

19        MR. LAMPE:  I actually don't think it meets the

20   definition of manual work under the regulation.  The regulation

21   speaks in terms of repetitive operations of the hands, physical

22   skill, and energy.  That's the definition that you see in

23   541.601(d).  I don't think that climbing a ladder or lying on

24   the ground or moving around an obstacle, I don't think that

25   actually qualifies as manual work under that definition, but it

doesn't matter for purposes of our motion, your Honor, because

of the includes standard.  That's why the includes standard is

so important.  Because even if the Court were to find a factual

dispute about whether climbing ladders and lying on the ground

was manual, there is no dispute that once they do those

things -- and they don't always have to do that, their

declarations are clear.  They may sometimes have to do those

things -- once they do those things, what they do next is

nonmanual because they are not inspecting by doing any sort of

a physical test, they are not running electrical tests with

circuitry.  They are not pulling wires.  They are not doing

testing of concrete samples, like in the Zubair case.

          The way they do their inspections, once they are in a

position to do the inspection, is observation.  They are

evaluating their employees against a checklist of criteria

relating to quality and to safety.  And they fill out the

checklist, they fill out these answers, and they report it

back.  There is no dispute.  No reasonable jury could find that

that is manual work.

          That is not to say that all inspection work is

nonmanual.  I think the point for the Court to understand, of

course, is that inspection work could be manual.  It may not be

manual.  It just depends.  That's a pretty generic term,

inspection work.  You can certainly imagine many fields where

the inspection work to determine whether work is in accordance

 1   with specifications or whether work is done correctly, it could

 2   certainly involve repetitive operations with the hands and

 3   things that would be manual.  For these two named plaintiffs,

 4   based on their own words, it is nonmanual.  That's the end of

 5   the inquiry.  The department of labor has made it very clear

 6   that the highly compensated employee exemption requires not a

 7   detailed analysis of the duties.  And if the employee is

 8   performing regularly and customarily, one of the exempt

 9   functions that Judge Cott found that these two named plaintiffs

10   are, the only thing that remains is to see whether that primary

11   duty includes nonmanual work.  There can be no reasonable

12   dispute about that.  The plaintiffs' arguments, they have a

13   number of arguments that I would like to go through those

14   quickly.

15          They talk about how the inspection work is formulaic,

16   rudimentary, truly elementary, routinized and based on rigid

17   guidelines.  That may or may not be true.  The Court does not

18   need to decide that because that does not equate to manual.

19   That may be pertinent to whether the named plaintiffs exercised

20   discretion and judgment, which is an element that often comes

21   up in these kinds of cases.  We don't need to show discretion

22   and judgment.  Judge Cott has already found we met another one

23   of the inspection duties.  Discretion and judgment is

24   irrelevant.

25          THE COURT:  I think they may have been focusing on the

1    repetitive aspect because of the language in 541.601(d), which

2    provides examples of nonmanagement production line workers and

3    nonmanagement employees.  I am not going to read all the

4    examples.  But then it says:  Other employees who perform work

5    involving repetitive operations with their hands, physical

6    skill, and energy are not exempt under this section, no matter

7    how highly paid they might be.  I assume that's part of why you

8    are getting that repetitive.  I assume you will come back and

9    say that they are not working with their hands.

10          MR. LAMPE:  It's an observation.  It's a visual

11    evaluation and it's answering questions off of a checklist.

12    That is not anything close to manual.  But they do make a point

13    about how it's routinized.  They talk about how there are

14    hazards that they have to encounter.  That does not mean that

15    their visual observations are manual.  The fact that they do

16    their observations in a work area, where there could be dangers

17    and have to wear a helmet and goggles and steel-toed shoes or

18    whatever, to me, does not mean that their observations are

19    manual.  In our view that's off point, whether the work is

20    manual or nonmanual.

21          THE COURT:  If the entirety of their job was dangerous

22    by its nature and potentially unsafe conditions, would that

23    affect your argument in any way?

24          MR. LAMPE:  No.  That is off point to whether the duty

25    is manual or nonmanual.  Nonmanual duties can be performed in a

1   dangerous environment.  That does not make those duties manual.

2   The definition, again, of manual, repetitive operations of the

3   hands, physical skill and energy, you can operate, you can do

4   that type of work in a dangerous environment, or you can do

5   work that is not that at all in a dangerous environment.  The

6   environment is not pertinent to whether the duties were manual

7   or nonmanual.

8          There may be a rough correlation that people who tend

9   to be in dangerous areas, we may associate them with manual

10  work.  That may be true.  But if you look at a shop foreman in

11  an assembly plant, who is a manager and no one is disputing

12  that they are a manager, they are right there beside their

13  employees who are working on furnaces or assembly lines or all

14  sorts of dangerous things.  They would have a hard hat on, they

15  would have steel-toed shoes, they would have goggles.  They are

16  managing, they are supervising, they are directing.  Nobody

17  would say that their work is manual because they are doing it

18  in a location, environment where there could be dangers.  The

19  company needs to be safe.  And anybody who is in a situation

20  where there could be danger needs to be protected.  That

21  doesn't mean that their work is converted to manual work.

22         The plaintiffs talk about how the visual observations

23  are -- and this is their term -- inextricably intertwined with

24  the manual work, insofar as the climbing and the laying on the

25  ground is inextricably intertwined with the observations.

F9QMHAAC

1          First of all, I think you can draw a clean distinction

2     between the work associated with getting to the vantage point

3     and then the work associated with doing the visual evaluation.

4     Be that as it may, the third element of the highly compensated

5     employee exemption does not state that employees satisfy that

6     element if their primary duty includes nonmanual work, unless

7     nonmanual work is inextricably intertwined with manual work.

8     That last part is not in the regulation.  The only inquiry for

9     the Court is, is the work that's part of the primary duty

10    nonmanual and whether it's inextricably intertwined or not, in

11    our view, is not pertinent to the outcome.

12          The plaintiffs also refer to the fact that their

13    clients, the plaintiffs, are intermediaries between the techs

14    and the true managers, to use their term.  Again, that's not

15    pertinent to whether their activities in their visual

16    observations are manual or not.  That's off point to that.

17          The plaintiff talks about the dexterous acts.  That's

18    just simply saying that they do some work that is manual.  If

19    the Court were to credit that, under the includes standard,

20    which everyone now concedes is a correct standard, does not

21    mean that the standard can't be satisfied.  It's the nonmanual

22    work, if it exists, that is important, not the fact that there

23    may happen to be manual work, also.  That does not preclude the

24    satisfaction of that element.

25          There is a number of arguments, I alluded to them,

1    about kind of taking this standard to the extremes, the garbage

2    collector who does paperwork or Judge Cott used the example of

3    the auto mechanic who orders parts.  What I would say about

4    that is, first of all, it is supposed to be a lenient standard.

5    But what's missing from both those examples and how you cannot

6    conclude that the garbage collector would be exempt is that a

7    garbage collector and an auto mechanic would never be in a

8    position to even get to the issue of there was nonmanual work

9    because neither of those positions would satisfy the second

10   element of the exemption, which is that they customarily and

11   regularly perform an exempt duty.  If you don't customarily and

12   regularly perform an exempt duty, you don't even get to the

13   question of whether the primary duty includes nonmanual work.

14   So I don't think the Court should be discouraged from being

15   faithful to the plain meaning because of a concern about where

16   it could lead.  Those examples, I don't think, are on point.

17        THE COURT:  You keep saying that this is supposed to

18   be a lenient standard, but I'm supposed to construe FLSA

19   essentially narrowly against the employer, correct?

20        MR. LAMPE:  That's what the law says, your Honor.  In

21   order to be exempt, an employee has to plainly and unmistakably

22   meet the requirements of the exemption and that is completely

23   consistent with what we are telling your Honor today, that the

24   only issue is the visual observations.  Their visual

25   observations are plainly and unmistakably nonmanual.  Their

13

1    filling out of a questionnaire is plainly and unmistakably

2    nonmanual.  And so even if the exemptions are construed

3    narrowly, the exemption is clearly satisfied in this case.

4           Let me turn to the Zubair and the Switzoor cases,

5    which are referred to quite a bit in the papers.  Plaintiffs

6    characterize those cases as categorically stating that people

7    who do inspections in the field are doing manual work and that

8    takes those cases way beyond what they actually say.

9           THE COURT:  Let me just say, Switzoor was my opinion.

10   You don't need to address that.  It was in a footnote that this

11   issue was not at issue in the case.  Why don't you address

12   Zubair.

13          MR. LAMPE:  Thank you, your Honor.  Zubair did not in

14   any way categorically state that all inspectors do manual work.

15   And had the Court said that, it would have been improper

16   because the FLSA makes it very clear, and plaintiffs themselves

17   concede this, is that exemptions need to be determined based on

18   all the facts and the circumstances.  And exemptions should

19   never be decided based on labels.  541.2, the very beginning of

20   this part of the regulations, says:  Titles don't determine

21   exempt status.  It's the duties.

22          And if you just look at the Zubair case, your Honor,

23   there is nothing in that decision that would suggest that the

24   Court there was trying to make some categorical determination

25   about all inspectors.  The Court in that case talked about what

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1     the evidence showed about that particular plaintiff.  The

2     defendant in that case was relying on the highly compensated

3     employee exemption and the only argument it put forward was, as

4     the Court characterizes it, a conclusory argument that because

5     the employee was a professional, the employee met the highly

6     compensated employee exemption.  And the Court went on to look

7     at what the duties were and said that the duties were to make

8     sure contractors are performing according to specifications,

9     and it concluded that the highly compensated employee exemption

10    couldn't be satisfied.

11        But what you don't see in that decision is much

12    analysis, really any analysis, about how the plaintiff confirms

13    that the contractors are doing work according to the

14    specifications.  The how is missing.  There is no discussion of

15    how the plaintiff in that case did that.  So we don't know

16    whether it was through visual observations, we don't know

17    whether it was through manual testing.  We do know that the

18    Court mentioned that that particular plaintiff did do manual

19    testing, testing of paint and concrete samples.

20        But the Court certainly, in our view, should not

21    extrapolate from that Zubair case to say all inspections in the

22    field are manual or that these two plaintiffs in this case work

23    is manual because the facts simply don't line up and there is

24    insufficient analysis in Zubair to allow the Court to make any

25    sort of extrapolation to the facts of this case.

1              To wrap up this point, and I'll move on, a reasonable

2     jury could not find that the visual observations in the

3     answering questions in the manual work, and because of that we

4     are entitled to a finding that we satisfy, as a matter of law,

5     the third element.  All three elements are satisfied.  The two

6     named plaintiffs are exempt under the highly compensated

7     employee exemption.  Their FLSA claims should be dismissed

8     because there are over 100,000 for all the years covered by

9     that claim, and their New York Labor Law claims should be

10    dismissed for the years prior to the FLSA period, their

11    compensation was over 100,000, and it's several years as well

12    there.

13             THE COURT:  What would happen if I were to agree with

14    you about that?  What would happen to the rest of the case?

15             MR. LAMPE:  Let me turn to that, your Honor.  Our

16    argument and our objections is that it was an error for Judge

17    Cott to grant a conditional certification motion.  He was doing

18    so under the belief that the plaintiffs had viable claims.  The

19    plaintiffs do not have viable FLSA claims.  As your Honor

20    knows, conditional certification relates only to the FLSA

21    claims.

22             Because they don't have viable claims, their motion

23    for a conditional certification should not have been granted.

24    The plaintiffs in their response to our objections talk about

25    what should happen if the Court were to conclude that we win on

1   the highly compensated employee exemption and they talk about

2   the Court possibly granting the motion anyway.  I think that

3   would not be correct.  If the named plaintiffs were seeking the

4   relief, have no claim as a matter of law, the Court should not

5   grant their request for that relief.

6          THE COURT:  Can we have an entirely separate suit

7   brought by other plaintiffs who weren't paid that much?

8          MR. LAMPE:  I wouldn't say that, your Honor.  The

9   other suggestion of the plaintiffs was that they be permitted

10  to substitute.  I could see that the Court would find that that

11  might be a reasonable thing to do.  There would be certain

12  stipulations that I think that would be necessary.

13         THE COURT:  And then do the collective certification

14  motion over?  Is that the idea?

15         MR. LAMPE:  Here is what I would say, your Honor.  I

16  would suggest a couple of things.  First of all, there needs to

17  be a substitution so some opt-in will have to agree to be the

18  named plaintiff.  The complaint should be amended to make it

19  clear that the claims are only on behalf of people for time

20  periods in which they were under a hundred thousand dollars.

21  And the request for conditional certification should be

22  narrowed so that the request is only with respect to

23  individuals during time periods when they were under $100,000.

24  Of the 80 some opt-ins in the case right now, those who are

25  over 100,000 for all years in the FLSA period should be

 1    dismissed from the case.

 2         And what I think the Court should do that I think is

 3    sensible is that the Court order the parties to meet and confer

 4    along the following lines, that a lot of the evidence -- let me

 5    explain.  The plaintiffs move for conditional certification and

 6    a lot of evidence that they cited, declarations from opt-ins

 7    and the like, came from people who are over a hundred thousand.

 8    There is a number of people, though, among their group of

 9    opt-ins, they are affiants, who are under 100,000 for the

10    entire time period.  The plaintiffs should assemble the

11    evidence that they have for people who are eligible, the

12    individuals who are under $100,000, the evidence from the

13    individuals who were under $100,000.  And the parties should be

14    required to meet and confer over whether or not this change in

15    the eligible evidence would affect the character of the

16    plaintiffs' presentation of evidence.

17         The defendant should not be permitted to require a

18    do-over if they basically have the same evidence even based on

19    the subset of affiants who would be eligible.  And the parties

20    should be required to ask whether there is any good-faith basis

21    that we would have at all to require them to brief the motion

22    with the subset of evidence.  And, again, if it doesn't change

23    the character of the evidence, we would have no good-faith

24    basis to do that, and the parties should meet and confer over

25    what the notices should say.  I think that would be the best

1    way for the Court to handle the conditional certification,

2    particularly if the Court granted us summary judgment as to the

3    plaintiff's FLSA claims.

4         Let me just briefly address the element about

5    customary and regular performance of the exempt duty of

6    directing two or more employees.  We raised that as part of our

7    summary judgment motion.  Judge Cott found that there was a

8    factual dispute about whether or not the two named plaintiffs

9    customarily and regularly direct the work of two or more

10   technicians.  We ask the Court to look at that fresh.

11        And what I would say on that score is for the Court to

12   focus on page 4 of the report and recommendation.  This is

13   where Judge Cott identifies the managerial duties of the two

14   named plaintiffs that are undisputed.  And, in particular,

15   Judge Cott explains that the plaintiffs take attendance.  If

16   plaintiffs see that a technician does not have sufficient work,

17   they coordinate with the dispatch department, which is

18   initially responsible for assigning work.  Other duties of

19   plaintiffs' performance include:  Monitoring the start and end

20   times of technicians' jobs, ensuring the technicians only take

21   an hour lunch break, informing technicians of proper procedures

22   to follow, approving job deviations, coordinating team work

23   among technicians, advising technicians how to handle difficult

24   customers, and attending grievance proceedings.  Judge Cott

25   said on that same page that the plaintiffs agree that those are

1    their duties.

2            Also, on page 34, Judge Cott cites the deposition

3    testimony of plaintiff Haas wherein he indicates that the local

4    managers initiate discipline by bringing a problem to his

5    superior's attention.  If the Court looks only at those

6    managerial duties that are undisputed, we respectfully submit

7    that the Court would find as a matter of law that that work

8    constitutes directing the work of two or more employees.

9            And the plaintiffs in the court both talk about the

10   Lema factors, which are the factors identified in the Lema

11   case, and almost all of those factors are satisfied based

12   solely on the managerial duties that are undisputed,

13   instructing employees.  Judge Cott found, in essence, that they

14   do that.  Training employees, telling them how to do their job,

15   what procedures to follow, how to deal with difficult

16   customers.  That's training.  Reporting poor performance to the

17   superiors.  Plaintiff Haas admitted that he does that.  Setting

18   schedules.  They are involved in setting the schedules and

19   maintaining the schedules.  The last Lema factor is whether the

20   plaintiff pays the employees and we are not claiming that these

21   two named plaintiffs do.  But all of those other factors are

22   satisfied.

23           Our position is that the Court should find as a matter

24   of law that the two plaintiffs do customarily and regularly

25   direct the work of two or more technicians.  And I should point

1    out, your Honor, on this score that this element, that

2    customarily and regularly directed work, does not have to be

3    the plaintiffs' primary duty.  This can be something outside

4    the primary duty.  It just has to be done customarily and

5    regularly.

6         Another element of the executive exemption deals with

7    the primary duty.  We are not asking the Court to make any

8    determination that the primary duty is management.  We think it

9    is.  We are not going to ask the Court to make a determination

10   that there are no factual disputes about that.  But we are

11   asking the Court to make a determination that there are no

12   factual disputes about whether the two named plaintiffs

13   customarily and regularly directed work because based solely on

14   what the Court, Judge Cott, has already found to be undisputed

15   that they do.

16        Unless the Court has questions.

17        THE COURT:  No.  Thank you.

18        MR. GOTTLIEB:  Thank you, your Honor.  I'm happy to

19   run through my outline as well or can answer any direct

20   questions.

21        THE COURT:  I really would love to start with what

22   your position is on includes versus is.  I read your brief

23   frankly the way that defendants articulated it, that you agree

24   that the standard is includes and not is.  I just want to

25   confirm that that's true.

F9QMH2AC

1    MR. GOTTLIEB:  Yes.  Certainly, your Honor.  The

2    regulation uses the word includes.  We can hardly dispute that.

3    THE COURT:  Was Judge Cott wrong in how he analyzed

4    that?

5    MR. GOTTLIEB:  No.  Actually, Judge Cott got it

6    completely correct.  This issue was briefed before Judge Cott.

7    This wasn't a situation where Judge Cott worded a decision and

8    ignored the parties' briefing.  The issue of includes versus is

9    was briefed before Judge Cott and Judge Cott considered the

10   briefing and determined whether you interpret the word includes

11   closer to is or whether you use the word includes either way

12   results in the same outcome because the plaintiffs' primary

13   duty here did not involve nonmanual work.  So in footnote 22 of

14   Judge Cott's decision, your Honor, he said:  Even if the Court

15   were to accept the distinction drawn in Hicks, which is the

16   distinction between includes and is, the question still remains

17   whether plaintiffs' primary duty includes office or nonmanual

18   work.

19   THE COURT:  Is a tougher standard to meet, right?  If

20   I'm interpreting includes to be closer to is, it's a tougher

21   standard.

22   MR. GOTTLIEB:  I would agree with that, yes.  Includes

23   would be a tougher standard for us, certainly, than is.  But,

24   again, what we need to look at here is only the primary duty.

25   THE COURT:  We are all on the same page about that.

F9QMHAAC

 1          MR. GOTTLIEB:  I think not only are we on the same

 2    page, I think Judge Cott was on the same page as well.  I think

 3    to the extent we have any disagreement, it's only over whether

 4    Judge Cott used the include standard, which we believe he did.

 5          THE COURT:  Tell me how, again, looking at the

 6    language that I read earlier about employees who perform work

 7    involving repetitive operations with their hands, physical

 8    skill, and energy are not exempt under the section, no matter

 9    how highly paid they might be.

10          MR. GOTTLIEB:  Again, we need to look at the primary

11    duty.  So the primary duty here for the local managers is field

12    observations.  And during these field observations they are

13    doing physical tasks to conduct a rigid checklist.

14          THE COURT:  The physical skill is what?

15          MR. GOTTLIEB:  The physical skill is in our brief,

16    your Honor, climbing ladders, going down manholes, contorting

17    their bodies in ways to be able to observe what they need to

18    observe.  There is lying on the ground, there is climbing into

19    and around trucks.  The primary duty, the task of doing field

20    observations, it's a physical task.

21          THE COURT:  Does it require skill to actually do it?

22          MR. GOTTLIEB:  It requires a level of skill.

23          THE COURT:  What level of skill?  Like to get

24    somewhere.  I understand the safety hazard.  But what's the

25    skill involved.

1      MR. GOTTLIEB:  It involves physical dexterity and an

2  ability to conduct -- it would just be the skill of engaging in

3  physical activity to perform your job.  This is not standing

4  somewhere and making an observation.  This is contorting your

5  body in a way so you can get into the right place.  Going down

6  manholes.

7      For that reason, because of these physical tasks that

8  are inherent in this job, field observations, the local

9  managers are required to wear safety equipment because injuries

10  can happen in this job.  So all of these things, your Honor,

11  need to be a factor and are a factor, and Judge Cott correctly

12  found there were factors in determining whether there is an

13  issue of fact here.  There is an issue of fact as to whether

14  these field observations involved nonmanual work.  The

15  nonmanual work that the defendants point to here is

16  observations.  And, your Honor, there is not a single case that

17  defendants have pointed to or that we are aware of exists that

18  said observations, while somebody is performing physical

19  activity --

20      THE COURT:  What about Zannikos?  What about the

21  Zannikos case which is the Fifth Circuit case involving the

22  marine superintendents who observed the oil transfers to verify

23  the performance was accurate, legal, and safe?

24      MR. GOTTLIEB:  Yes.  So Zannikos, your Honor, that was

25  a case involving oil inspectors and they would essentially

1    observe the transfer of oil between trading partners.  That was

2    their job, to inspect that operation.  And the Court there

3    found that they were exempt really because of the fact that

4    they were performing administrative tasks and there was no

5    analysis about whether they were conducting any manual labor,

6    engaging --

7         THE COURT:  What's the manual labor that your clients

8    are conducting?

9         MR. GOTTLIEB:  Again, just to compare it to Zannikos,

10   Zannikos, as I understand it from the decision, literally an

11   inspector standing somewhere watching the way oil is

12   transferred between two trading partners, whereas in our case

13   we have local managers who are going into the field, who are

14   going down manholes, who are contorting their bodies in ways to

15   gain access to areas who are themselves in physical danger and

16   that's why they need to wear safety equipment.  Zannikos, there

17   is no indication that there is any safety hazard or any hazard

18   whatsoever.

19        THE COURT:  Is the standard safety hazard or is the

20   standard involving repetitive operations with their hands,

21   physical skill, and energy.

22        MR. GOTTLIEB:  The standard, your Honor, I think,

23   involves both.  And the repetitive task involving physical

24   skill and dexterity, that's a nonexhaustive description of what

25   nonmanual tasks are.  Judge Cott correctly found that safety

```
 1    and the possibility of getting injured and essentially being on
 2    your hands and knees and lying on your back, those are things
 3    that should be considered in determining whether a duty
 4    involves manual or nonmanual tasks.  In Zannikos there was none
 5    of that.  Zannikos was mere observations from afar.  And the
 6    Zubair case I think is the most on-point case.  And contrary to
 7    what my adversary said, there was a description of the duties
 8    there.  And there you had a senior inspector who was inspecting
 9    New York State Department of Transportation bridges and
10    highways, and there was a detailed description of the
11    plaintiffs' duties there.  And it said that they go out into
12    the field.  Just like our clients, they inspect the work that's
13    done by, in that case, subcontractors; in our case,
14    technicians, and they determine whether the work is being done
15    in accordance with contract specifications.
16              THE COURT:  There they are testing the paints, right?
17    They are actually testing the concrete and paint samples
18    themselves.  They are doing the manual labor.  They are not
19    just watching or looking and filling out a checklist.  They are
20    actually doing.
21              MR. GOTTLIEB:  They did do some sort of paint work.
22    Again, your Honor, the issue here is includes.  If the
23    plaintiffs in Zubair do their inspection work, which is nearly
24    identical to what the plaintiffs were doing here, if that
25    didn't include nonmanual work, then our clients can't either.
```

1    Because our clients were -- again, I hate to be repetitive --

2    they were on their hands and knees doing physical tasks while

3    they were doing these field inspections, which goes far beyond

4    the testing of paint, which is the only specific manual task

5    that was referenced in Zubair.  Our clients were doing far more

6    physically natured tasks in doing their field inspections than

7    what the plaintiffs were doing in Zubair.

8          And in Zubair, your Honor, the Court granted summary

9    judgment in the plaintiffs' favor.  There are certainly issues

10   of fact based on our client's declarations, based on what these

11   field inspections entailed as to whether their primary duty,

12   these field inspections, involved nonmanual duties.

13         THE COURT:  If I take everything in the affidavits you

14   submitted to be true and I agree for purposes of this motion

15   that the inspection duties were the crux of the plaintiffs'

16   job, it's a question of law, not a question of fact, right?

17   It's a question of law as to whether the exemption applies.

18   It's not a question of fact, right?

19         MR. GOTTLIEB:  It's a question of fact whether the

20   tasks that they were engaging in were manual.

21         THE COURT:  You submitted all of your facts.  You

22   completed discovery.  If I take all of your facts to be true so

23   as to avoid a situation where there is a genuine issue of

24   material fact, I take every fact that you submit to be true,

25   then there just a question of law left, right?

1          MR. GOTTLIEB:  That is correct.

2          THE COURT:  And in terms of the way Judge Cott

3    characterized your client's inspections, is there anything that

4    you would change in terms of his characterization, anything you

5    are objecting to in his characterization of the job?

6          MR. GOTTLIEB:  It was a 50-page decision, your Honor.

7    But in terms of that section, the 601(d) section, I would agree

8    with Judge Cott's characterization, yes.

9          THE COURT:  Now, let me ask you a different question.

10   Is the physical activity that you described that your clients

11   performed to get to the place where they do the inspections,

12   right?  That's your point, if I understand correctly, is that

13   the physical activity is really required to get to the place

14   where you can then conduct the inspection, right?  That's like

15   bending down and going up a ladder.  It's so that you can do a

16   proper inspection, right?

17         MR. GOTTLIEB:  It's part of it.

18         THE COURT:  The inspection is looking, but you have to

19   do what you described, which can often be difficult, according

20   to your clients, to get to the place where they can do the

21   inspections, right.  It's not like the inspections require more

22   physical activity during one inspection than the other.  It may

23   just require more to get to the place where you can do the

24   inspection, right?

25         MR. GOTTLIEB:  I think I agree with your Honor.  I am

1   having a hard time with the phrase get to because at the same

2   time that they are doing the observations, they are in these

3   positions.  For instance, a local manager could be in a

4   physically uncomfortable or physically difficult or strenuous

5   position while performing an observation.  That's why I'm

6   having a hard time with the phrase get to.  But I think we are

7   generally on the same page.

8           THE COURT:  Are you saying that there is literally

9   physical skill or energy or use of your hands required in

10  conducting an inspection, or are you saying kind of get to the

11  place where you can conduct the inspection, that requires use

12  of your hands, physical skill?

13          MR. GOTTLIEB:  If I may, your Honor, maybe somewhere

14  in between.  There may be some circumstances, for instance,

15  going down a manhole where, yes, climbing down a ladder is a

16  physical task that helps the local manager get to a place where

17  they can conduct an observation or inspection, but there may be

18  other situations where while they are doing the observation

19  they need to be lying on the ground or in a physical difficult

20  position.  Sometimes it may be getting to the location and

21  other times it may be as they are actually doing the

22  observation and inspection.

23          THE COURT:  I guess what I was getting at is why this

24  physical activity isn't directly and closely related, which is

25  defined to include work that may include physical tasks and

F9QMHAAC

 1   menial tasks that arise out of exempt duties, basically reading

 2   from 29 CFR 541.703.  And I'm asking if that's what this is.

 3   If the activity is something that's directly and closely

 4   related to the inspection as opposed to the inspection itself.

 5   That's my question.

 6          MR. GOTTLIEB:  Again, there is nothing, your Honor.

 7   Even were that to be the case, there is nothing that says that

 8   observations are per se nonmanual work.  There is no per se

 9   rule to that extent.  So I think in this situation it's

10   impossible to separate the physical task from the observation

11   because they are completely connected.

12             In Zannikos, for instance, there you had observations,

13   and that was an out of circuit case, of course.  In Zannikos,

14   you had observations where there was no physical activity

15   whatsoever associated with the observation.  Perhaps that was

16   why the Ninth Circuit went the way they did on that case.  But

17   that's not what we have before the Court.  We have a situation

18   where physical tasks are what the job requires and are what the

19   job completely entails.

20          THE COURT:  Your clients are not doing the same thing

21   as the technicians.  You are not suggesting that.

22          MR. GOTTLIEB:  They are not doing the same exact thing

23   as technicians, no.

24          THE COURT:  The technicians are installing cable boxes

25   essentially.

 1            MR. GOTTLIEB:  Things of that nature.

 2            THE COURT:  Your clients are going to inspect to see

 3   if that was properly done, right?  They are not using their

 4   hands to do it.

 5            MR. GOTTLIEB:  I would say they are going into the

 6   field to inspect whether these things were done in accordance

 7   with company checklists.  They weren't making any determination

 8   independently, was this done the right way.  They are just

 9   going down a checklist.  Again, your Honor --

10            THE COURT:  To report back to headquarters.

11            MR. GOTTLIEB:  Exactly.  Act as intermediaries to give

12   that information back to their manager, the area manager they

13   are called.

14            THE COURT:  If there was an area manager, which is one

15   level above, right, if those were the people, if one day one of

16   the area managers came out and said, I want to do the

17   inspection myself, is that someone who would not qualify for

18   this exemption?

19            MR. GOTTLIEB:  If they did on one day go into the

20   field?  The issue is primary duties.  That's why the area

21   manager would never qualify.

22            THE COURT:  My question is, does it matter how high up

23   the person is who is going to do the inspection or does it

24   matter how much of their job entails doing the inspections?

25            MR. GOTTLIEB:  It would be the latter.  Because the

1    issue is primary duty.  The area managers, or even someone

2    above them, anybody could go into the field and do an

3    observation on a particular day.  But this was our clients, the

4    local managers' primary duty that they did every single day,

5    every single day, put on safety gear.  They went out into the

6    field and they had to put themselves in the hazardous

7    situations to conduct these observations.

8           To say that merely because their eyes are opened and

9    they are observing things they are somehow doing nonmanual

10   work, like Judge Cott said, it would reduce this element to the

11   meaningless, because every single job involved people keeping

12   their eyes open and observing what they are doing.  It would

13   really reduce this nonmanual prong of the highly compensated

14   exemption to meaningless, and that's certainly not what we

15   should assume Congress was intending to do when this regulation

16   was promulgated.

17          THE COURT:  Does it matter at all that the purpose of

18   the technician's job, the primary duty, the purpose of their

19   primary duty is to install a cable box as opposed to the

20   purpose of the primary duty of your clients, under your theory,

21   was to report back to headquarters.  Essentially, they fill out

22   a checklist.

23          MR. GOTTLIEB:  Your Honor, I think the regulation

24   would control here.  The regulation would control.  And the

25   only issue is whether the primary duty involves nonmanual work.

F9QMHAAC

1    And it doesn't.  The primary duty was going out into the field

2    and conducting these inspections.  The mere fact that they

3    relay information to their manager does not change the fact

4    that their primary duty is going out into the field.

5         THE COURT:  What's repetitive?  I know you think the

6    forms are repetitive.  Are you saying what they do is much more

7    than fill out forms?  What's repetitive of what they do?

8         MR. GOTTLIEB:  Certainly the forms are a repetitive

9    element to what they do.  They are going out into the field and

10   they have to -- not to answer with a term, but they are

11   repetitively going out into the field and doing the same types

12   of observations.

13        THE COURT:  But you said it is different in every

14   situation, right?

15        MR. GOTTLIEB:  Well, there are certainly some

16   differences.  There could be some situations where they are

17   going down manholes, some situations where they are inside

18   apartments, they are inside businesses doing various things.

19   But these are the same types of tasks that they are doing, the

20   same physical tasks they are doing over and over and over

21   again, every day.  That's why they are wearing the same safety

22   equipment.  And this is what they are doing day in and day out.

23   Is it repetitive in the way an assembly line worker's work is

24   repetitive?  No.  That's taking it to an extreme and I don't

25   think it needs to be repetitive at that level to be considered

F9QMHAAC

```
 1    nonmanual.  Here we have local managers going out into the

 2    field every single day, doing this same type of physical work

 3    in order to do their jobs.

 4           THE COURT:  Physical work, again, is getting to a

 5    place where you can do the inspection.

 6           MR. GOTTLIEB:  Again, I think we have a slight issue

 7    with the getting to.

 8           THE COURT:  When you say physical work, the inspection

 9    is filling out a form.  That's what you are doing.  You are

10    filling out a form which you describe how rote and routine it

11    is and requires very little thought or analysis, as I

12    understand your client's allegations.  That's what they are

13    there to do.  But the physical work is to get to a place where

14    you can fill out that form, is that right?  I'm sorry I keep

15    asking the same question.

16           MR. GOTTLIEB:  I'm sorry to answer it in the same way.

17    But the physical activity, your Honor, is, it can't be easily

18    separated as getting to because very often this is -- part of

19    the observation is that they need to be in a physically

20    demanding and physically strenuous position or circumstance.

21    That's why it can't be separated as, first, I am going to do

22    physical activity to get somewhere and then I am going to do

23    nonphysical activity.  It's all intertwined together.  And

24    that's what their primary duty is.

25           THE COURT:  What's in the record about the physical
```

1    either requirements or tests required to do this job?  Do you

2    require a stress test, notice from a doctor?  Is there anything

3    in the record about sort of a physical test that can qualify

4    you to do this physically strenuous job?

5              MR. GOTTLIEB:  Can I have a moment to speak with my

6    clients?

7              THE COURT:  Sure.

8              MR. GOTTLIEB:  I don't think, your Honor, that there

9    is any sort of test that's used to evaluate physical strength

10   or dexterity or anything of that nature, and I don't think the

11   regulation would require that.  Certainly something like that

12   would further the proposition that the primary duty involved

13   physical activity.  Here all we need to do is look at their

14   declarations, the way they have described their job.  I don't

15   want to keep repeating myself about the physical tasks that

16   they are engaged in.

17             THE COURT:  Thank you so much.  Unless you have

18   anything else.

19             MR. GOTTLIEB:  I'm happy to address the other points

20   regarding conditional certification, if you'd like.

21             THE COURT:  Sure.  Why don't I hear you on that.

22             MR. GOTTLIEB:  I think, actually, my adversary

23   mentioned something different than what was in their brief,

24   which was, to the extent your Honor did grant summary judgment

25   in the defendants' favor, substituting in the new plaintiff and

1   moving forward with conditional cert. under those

2   circumstances, I think that probably would be amenable to us.

3   But I would just need to flesh out exactly the procedure behind

4   it.  But I think that's what we proposed, I believe, in our

5   brief.  And there may be some agreement there.

6            THE COURT:  Thank you very much.

7            Would you like to respond.

8            MR. LAMPE:  I have nothing further, your Honor, unless

9   there are questions.

10           THE COURT:  That's it.  I just want to thank the

11  lawyers for their excellent advocacy and their briefs and

12  today.

13           I will reserve decision.  Thank you.

14                            o0o

15

16

17

18

19

20

21

22

23

24

25