**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
WILLIAM HAAS and AKHLAQUR RAHMAN      :
on behalf of themselves and all others similarly    :
situated,                                                   :        Case No. 13-cv-8130(RA)(JLC)
                                                            :
                        Plaintiffs,                         :
                                                            :
              v.                                            :
                                                            :
VERIZON NEW YORK, INC.,                        :
                                                            :
                        Defendant.                          :
------------------------------------------------------------x


**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO
FILE AN INTERLOCUTORY APPEAL</u>**


**WIGDOR LLP**

Douglas H. Wigdor, Esq.
David E. Gottlieb, Esq.
Renan F. Varghese, Esq.

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845


**BORRELLI & ASSOCIATES, P.L.L.C.**

Michael J. Borrelli
Alexander T. Coleman
Michael Minkoff

1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Telephone:  (516) 248-5550
Facsimile:  (516) 248-6027

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

PROCEDURAL BACKGROUND.............................................................................2

ARGUMENT .............................................................................................................5

    I.      This Matter Should be Certified for an Interlocutory Appeal.................................5

          A.     Standard...............................................................................................5

          B.     The Order Involves Controlling Questions of Law .......................................6

          C.     There Exists Substantial Grounds for a Difference of Opinions on the
Controlling Questions of Law .......................................................................8

                  i.      There Exists Conflicting Authority on Whether Employees
Performing Inspection Work are Exempt under the HCE
Exemption ........................................................................................8

                  ii.     The Issue of Whether Employees Performing Inspection Work are
Exempt Under the HCE Exemption is Particularly Complex .........11

          D.     An Interlocutory Appeal In This Case Would Materially Advance the
Ultimate Termination of This Litigation ....................................................16

    II.      Plaintiff's Motion is Timely...............................................................................17

CONCLUSION.......................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

Arnold v. Ben Kanowsky, Inc.,
    361 U.S. 388 (1960)..................................................................................15

Balintulo v. Daimler AG,
    727 F.3d 174 (2d Cir. 2013).................................................................15, 16

Capitol Records, LLC v. Vimeo, LLC,
    972 F. Supp. 2d 537 (S.D.N.Y. 2013)....................................................8

Century Pac., Inc. v. Hilton Hotels, Corp.,
    574 F. Supp. 2d 369 (S.D.N.Y. 2008)..................................................16, 17

Coal. For Equity & Excellence In Maryland Higher Educ. v. Maryland Higher Educ. Comm'n,
    No. 06 Civ. 2773 CCB, 2015 WL 4040425 (D. Md. June 29, 2015) ...............................18

Glatt v. Fox Searchlight Pictures Inc.,
    No. 11 Civ. 6784 (WHP), 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013) .......................11

In re Air Crash at Georgetown, Guyana on July 30, 2011,
    33 F. Supp. 3d 139 (E.D.N.Y. 2014) ...................................................18

In re Air Crash off Long Island, N.Y. on July 17, 1996,
    27 F. Supp. 2d 431 (S.D.N.Y. 1998)....................................................16

Kanmodi v. Verizon Communications, Inc.,
    No. 15 Civ. 06770 (2015) ...................................................................7

Kuzinski v. Schering Corp.,
    614 F. Supp. 2d 247 (D. Conn. 2009)...................................................16

Martens v. Smith Barney, Inc.,
    238 F. Supp. 2d 596 (S.D.N.Y. 2002)...................................................17

Republic of Colombia v. Diageo N. Am. Inc.,
    619 F. Supp. 2d 7 (E.D.N.Y. 2007) .....................................................13

Richardson Elec. v. Panache Broad.,
    202 F.3d 957 (7th Cir. 2000) ..............................................................17

Rothstein v. Balboa Ins. Co.,
    No. 14 Civ. 1112, 2014 WL 4179879 (2d Cir. June 25, 2014).........................18

Rothstein v. GMAC Mortg., LLC,
     No. 12 Civ. 3412 (AJN), 2014 WL 1329132 (S.D.N.Y. Apr. 3, 2014) ............................18

S.E.C. v. Credit Bancorp, Ltd.,
     103 F. Supp. 2d 223 (S.D.N.Y. 2000) ..................................................................................6

Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth.,
     358 F. Supp. 2d 347 (S.D.N.Y. 2005) ................................................................................16

Weintraub v. Bd. of Educ. of City of New York,
     489 F. Supp. 2d 209 (E.D.N.Y. 2007) ................................................................................7

Yamaha Motor Corp., U.S.A. v. Calhoun,
     516 U.S. 199 (1996) ............................................................................................................6

Zubair v. EnTech Engineering P.C.,
     808 F. Supp. 2d 592 (S.D.N.Y. 2011) ................................................................8, 9, 10, 11

**Other Authorities**

29 C.F.R. § 541.601(d) ...................................................................1, 4, 5, 10, 11, 12, 14

29 C.F.R. § 541.703(a) ................................................................................................15

28 U.S.C. § 1291 ...........................................................................................................5

28 U.S.C. § 1292 .........................................................................................1, 6, 8, 17

29 U.S.C. § 207 ............................................................................................................1

29 U.S.C. § 216 ............................................................................................................2

Fed. R. Civ. P. 5 ......................................................................................................6, 17

Fed. R. Civ. P. 23 ........................................................................................................2

Plaintiffs William Haas and Akhlaqur Rahman (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for leave to file an interlocutory appeal pursuant to 28 U.S.C. §1292.

## PRELIMINARY STATEMENT

On September 30, 2015, this Court entered an order (the "Order") rejecting the portion of Magistrate Judge James L. Cott's Report and Recommendation finding that the Local Managers in the Installation and Maintenance Division (hereinafter "LMs") employed by Defendant Verizon New York (hereinafter "Verizon," "Defendant" or the "Company") were not exempted from overtime compensation under the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a). Specifically, because this Court found that the primary duty of Plaintiffs and other LMs employed by Verizon "includes" office or non-manual work, it dismissed the overtime claims brought by all LMs for those years in which their compensation exceeded $100,000.  In so holding, the Order created a new standard whereby any highly compensated employee who performs *any* office or non-manual work is considered to be exempt.

However, the Order rests on two arguments that Plaintiffs respectfully submit are fundamentally incorrect and therefore warrants immediate review under 28 U.S.C. 1292(b). First, the Court held that "the physical tasks Plaintiffs perform merely put them in a position to do the . . . observations." See Dkt. 187 at 9.  As a result, the Court held that such work was non-manual in nature.  Second, the Court held that because "the core of [the LM's] inspections involves reviewing work performed by others," "no reasonable juror could conclude that Plaintiffs' inspections do not 'include performing office or non-manual work.'" Id. at 11 (quoting 29 C.F.R. §541.601(d)).

Plaintiffs respectfully submit that the Court's reasoning in holding that Plaintiffs do not qualify for the HCE exemption represents a departure from the existing body of case law.  In

1

fact, no other court has widened the scope of the Highly Compensated Employee ("HCE") exemption to this extent.  Accordingly, in reinterpreting the language of the applicable DOL regulations to create a blanket rule prohibiting highly compensated employees that perform inspection work as part of their primary responsibility from having an entitlement to overtime compensation, the Order has essentially eliminated any limitations to the HCE exemption.  This new doctrine of law should be subject to appellate review before it is fully adopted, both by other courts and, in particular, in this case.  Proceeding to discovery on Plaintiffs' New York Labor Law claims, and potentially to a trial in this matter, without first obtaining an appellate ruling as to the validity of the Court's determination that all of the LMs were exempt from federal and state overtime provisions during years in which they made over $100,000 risks years of unnecessary litigation and duplicative effort.  In short, this case presents precisely the types of legal questions that, due to their importance and for the sake of efficiency, should be resolved by an appellate court sooner rather than later.  In order to ensure such expeditious resolution, and in order to assist the Second Circuit by affording it the opportunity to consider the issues in this case before such time as the HCE exemption is expanded far beyond its current precepts would seem to dictate, Plaintiffs respectfully request that the Court grant Section 1292(b) certification.

## PROCEDURAL BACKGROUND

On November 14, 2013, Plaintiffs filed the instant action on behalf of themselves individually, and on behalf of a collective, pursuant to 29 U.S.C. § 216(b), and a class, pursuant to Fed. R. Civ. P. 23.  See Dkt. 1.  Following the close of first phase discovery, Defendant filed a motion for summary judgment which, in relevant part, sought an order finding that Plaintiffs were exempt employees pursuant to the HCE exemption on the grounds that Plaintiffs and other LMs performed work that "includes" some level of office or non-manual work.  See Dkts. 104-

09.  Following full briefing, on August 13, 2015, Judge Cott filed a Report and Recommendation determining that Defendant's motion for summary judgment should be denied with respect to the HCE exemption, holding that "under Plaintiffs' characterization of their job, their primary duty is inspection work involving physical dexterity and safety hazards, which does not include any office or non-manual work."  See Dkt. 177 at 39.  In reaching this conclusion, Judge Cott relied on Plaintiffs' description of the inspection work that they perform "as hazardous and demanding physical dexterity requiring them to utilize safety equipment to protect them from falls, trips, falling objects, things going into their eyes, pieces of glass, pieces of concrete [and] cuts. . . Plaintiffs maintain that they have to lie on the ground, climb over obstacles, and/or crawl into small spaces."  See id. at 5.

Defendant filed its objections to Judge Cott's Report and Recommendations on August 31, 2015, arguing that Judge Cott erred because he failed to find that Plaintiffs' jobs "included" some level of non-manual or office work.  See Dkt. 181, Sect. I.  Plaintiffs filed their response to Defendant's objections on September 17, 2015 and the Court held oral argument on September 24, 2015.

Subsequently, on or about September 30, 2015, the Court issued the Order granting Defendant's motion for summary judgment on the HCE exemption.  The Court first went through the six ostensible components of Plaintiffs' inspection work: (1) travelling to the worksite of Verizon's technicians to conduct the inspections; (2) viewing the work done by the technicians; (3) exposing themselves to safety concerns requiring that the LMs wear safety equipment; (4) lying on the ground, climbing over obstacles and crawling into small spaces; (5) performing the inspections themselves using a checklist; and (6) gathering facts and reporting them to proper individuals at Verizon.  See Dkt. 187 at 7-8.

In reaching its conclusion that Plaintiffs were covered by the HCE exemption, the Court first looked to the language of the applicable regulation promulgated by the DOL which states that:

> This section applies only to employees whose primary duty includes performing office or non-manual work. Thus, for example, non-management production-line workers and non-management employees in maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers, laborers and other employees who perform work involving repetitive operations with their hands, physical skill and energy are not exempt under this section no matter how highly paid they might be.

29 C.F.R. § 541.601(d).

Based on this language, the Order held that Plaintiffs' job duties did not involve the requisite "repetitive operations" or "physical skill and energy" necessary to encompass manual labor under 29 C.F.R. § 541.601(d).  Instead, the Court adopted Verizon's position and found that the physical work done by Plaintiffs and other LMs merely "put them in a position to do the … observations," and was not, as Plaintiffs contended, intertwined with their observations.  Dkt. 187 at 9 (internal quotations omitted).  The Court further held that any physical work Plaintiffs undertook was "akin to performing tasks that are directly and closely related to the performance of exempt work and therefore exempt work themselves."  Id.  (internal citations and quotations omitted).

The Court also considered Plaintiffs' argument that the physical work that they performed as part of their job was indivisible from the observations themselves and found that this argument did not affect its analysis.  Instead, the Court held that "there is simply no indication that the physical tasks Plaintiffs perform involve physical *skill*."  Id. at 10 (internal citations and quotations omitted and emphasis in original).

Finally, the Court rejected Plaintiffs' argument that Verizon's proffered interpretation of the HCE exemption, namely that *any* amount of non-manual work performed as part of an employee's primary duty would make that employee exempt, would reduce the HCE exemption to a nullity.  In doing so, the Court explained that "Plaintiffs ignore the critical fact that the core of their inspections involves reviewing the work performed by others, namely Verizon's technicians. The core of the technicians' primary duty, by contrast, is the manual, skilled work anticipated by §541.601(d)."  Id. at 11.

As a result of the foregoing, the Court found that "as a matter of law [] Plaintiffs' inspections include performing office or non-manual work" and Plaintiffs were therefore exempt employees under the framework of the HCE exemption.  See Dkt. 187 at 8.  Accordingly, the Court reversed Judge Cott's decision and granted summary judgment in favor of Verizon for all employees making over $100,000 during the relevant time period.

## ARGUMENT

### I.      This Matter Should be Certified for an Interlocutory Appeal

#### A. Standard

Under federal law, litigations are generally governed by the so-called "final judgment rule," which prohibits litigants from immediately appealing any decision of a trial court until such time as that court has had the opportunity to enter a judgment that is dispositive of all claims in the matter.  See 28 U.S.C. § 1291 (codifying common law rule).  However, federal law also recognizes the existence of factual circumstances that make such a delay both prejudicial and inefficient and, instead, warrants allowing a party be given the opportunity to immediately file an appeal to the circuit court.  Specifically, section 1292(b) provides for certification of an order for interlocutory appeal when the district court determines: "(1) that such order involves a

controlling question of law (2) as to which there is a substantial ground for difference of opinion and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  In order to certify its order, the court need only identify a single issue that meets this test.  See, e.g., Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 204-05 (1996).  In the instant case, Plaintiffs can satisfy all three of section 1292(b)'s requirements with respect to the Court's Order granting Defendant's summary judgment motion for the HCE exemption.  Plaintiffs therefore respectfully request that the Court "amend its order … to include … permission" to appeal, as the Federal Rules allow.  Fed. R. App. P. 5(a)(3).

### B. The Order Involves Controlling Questions of Law

In determining whether a district court's decision implicates a controlling question of law, courts "consider whether: reversal of the district court's opinion could result in dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or; the certified issue has precedential value for a large number of cases."  S.E.C. v. Credit Bancorp, Ltd., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000).  Here, the issue of the applicability of the HCE exception to the LMs employed by Verizon clearly satisfies the last two factors.

First, settling this threshold legal question would materially affect the conduct of the parties, as well as the eventual outcome of the case.  Should Plaintiffs' request for an interlocutory appeal be denied, the parties will have to expend substantial time and resources litigating what is now a class action up through trial under Plaintiffs' NYLL claims, only to then have the opportunity to file an appeal as of right challenging this Court's holding as to the LMs ostensibly covered by the HCE exemption.  Then, should the Second Circuit disagree with the

Court's interpretation of the HCE exemption, the parties would have to perform many of the same tasks—such as taking depositions, briefing summary judgment and briefing a certification motion—that they would have already completed with respect to Plaintiffs' NYLL claims.  Such a course of conduct should be avoided where possible and warrants granting Plaintiffs' request for an interlocutory appeal.  See, e.g., Weintraub v. Bd. of Educ. of City of New York, 489 F. Supp. 2d 209, 222 (E.D.N.Y. 2007) aff'd sub nom. Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York, 593 F.3d 196 (2d Cir. 2010) (in granting leave for plaintiff to file an interlocutory appeal after district court granted partial summary judgment, basing reasoning, in part, on the fact that were the Second Circuit to reverse "the case would need to be retried, resulting in a substantial waste of resources on the part of the Court and the parties to this action").

Additionally, not only would this process be inefficient, it would also substantially affect the rights of potential class members whose claims have currently been dismissed from this case.  Any potential plaintiff who has not received notice of the pendency of this action and have not had the opportunity to opt in, would have the statutory period for which they are entitled to damages materially diminished by having to wait until the resolution of an appeal that would potentially not occur until one trial has already been conducted in this case.  Moreover, given the fact that the Court's holding that individuals who perform visual inspections as *part* of their primary duty are exempt employees under the FLSA, the Order has the potential to affect thousands of employees across a host of industries.  In fact, there is currently a case before Judge Carter styled Kanmodi v. Verizon Communications, Inc., 15-cv-06770 (2015), involving other Local Managers working for Verizon around the country.  Thus, the Court's Order finding that

such LMs cannot, as a matter of law, qualify as non-exempt employees under the HCE

exemption has the potential to affect the rights of thousands of current and potential plaintiffs.

### C. There Exists Substantial Grounds for a Difference of Opinions on the Controlling Questions of Law

In order to demonstrate that the issues implicated by a proposed interlocutory appeal

create a "substantial ground for difference of opinion" pursuant to 1292(b), a party must

demonstrate that "(1) there is conflicting authority on the issue, or (2) the issue is particularly

difficult and of first impression for the Second Circuit."  Capitol Records, LLC v. Vimeo, LLC,

972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).  Notably, this standard does not require a finding that

the district court erred in making its original decision, merely that a legitimate basis exists for a

difference of opinion on the issue such that the general body of jurisprudence would benefit from

further guidance by the Second Circuit.  The novel and complex nature of whether the HCE

exemption applies in cases such as this one, namely where there is any level of non-manual

inspection work inexorably intertwined with the manual portions of an employee's primary

duties, presents such a situation warranting immediate appellate review.

### i.   There Exists Conflicting Authority on Whether Employees Performing Inspection Work are Exempt Under the HCE Exemption

As the Order acknowledges, the available cases analyzing whether employees who

perform a mixture of inspection work and manual labor "are of limited value in assisting the

Court in determining whether the physical activity involved in Plaintiffs' inspections amounts to

manual labor under the FLSA."  See Dkt. 187 at 13.  However, the only decision to analyze this

question in the Second Circuit, Zubair v. EnTech Engineering P.C., 808 F. Supp. 2d 592

(S.D.N.Y. 2011) is both on point and is instructive as to the issues in this case.  In Zubair, the

plaintiff was a "senior inspector" who "was responsible for **evaluating and inspecting the work**

**performed by contractors** to determine whether it was satisfactory and in accordance with contract specifications. Zubair also coordinated the work of other inspectors and reviewed their reports to ensure that they accurately reported the work conducted by the contractors." Id. at 595 (emphasis added).  In examining whether the plaintiff was exempt under the HCE exemption the court explained that "Zubair testified that his job as chief inspector involved visiting various project sites where, among other things, he coordinated the work of other inspectors and confirmed that the contractors' work was in accordance with contract specifications." Id. at 600. The court further stated that "Zubair's job responsibilities also included testing concrete and paint samples and recommending project improvements to the overall paint systems." Id. Nevertheless, the court, examining the totality of the circumstances of the plaintiff's job, held that, "no reasonable juror could find that these duties are the kind associated with an employee who performs office or non-manual work required under the highly compensated employee exemption." Id.

Rather than argue that Zubair was wrongly decided, Verizon instead repeatedly distinguished the case on the grounds that "the inspections at issue in Zubair were themselves 'at least partly manual' because 'one of the plaintiff's duties was testing concrete and paint samples.'" Dkt. 187 at 12 (quoting Dkt. 181 at 16).  The Court subsequently adopted Verizon's attempt at distinguishing Zubair, saying that the case "involved inspections that were independently manual." Dkt. 187 at 13.  Defendant's attempt to differentiate Zubair from the instant case should, however, been rejected.  First, the language of the HCE exemption does not stand for the proposition that merely performing *some* manual work in the process of performing otherwise exempt work would make an employee nonexempt under the FLSA or the NYLL as Defendant's interpretation requires.  Indeed, were such the case, then Plaintiffs in the instant case

should have properly been found to be nonexempt as there is no dispute that they performed *some* physical work in the process of completing their jobs. Similarly, while the Court acknowledged that the plaintiff in <u>Zubair</u> performed physical work, under the Court's rationale in this case, such physical *work* would be insufficient to allow an employee to avoid the application of the HCE exemption. Rather, as the Order explains, for an employee to be nonexempt, there must be some "indication that the physical tasks Plaintiffs perform involve 'physical *skill*.'" Dkt. 187 at 10 (quoting 29 C.F.R. §541.601(d) and emphasis in original). Notably, however, the <u>Zubair</u> opinion does not even contend that the testing of concrete and paint samples involves such discrete "skill" as the Court has used the term here.

Moreover, there is nothing in <u>Zubair</u> that supports the idea that testing of concrete and paint samples was part of the plaintiff's *primary duties*, which is the only relevant inquiry for the purposes of the HCE exemption. Instead, the Court specifically states that part of the plaintiffs' "*job responsibilities also included* testing concrete and paint samples." <u>Id.</u> at 600 (emphasis added). However, <u>Zubair</u> tellingly does not indicate that this work was part of the plaintiff's primary responsibility of "evaluating and inspecting the work performed by contractors." <u>Id.</u> at 595. This is no different from claiming that Plaintiffs in this case were not exempt because part of their job duties involved dropping off equipment for the technicians in the field and cleaning the garages, requiring them to perform manual labor in the process. <u>See</u> Dkt. 101 at ¶ 30. Additionally, even if this testing of paint and concrete samples were part of the plaintiff's primary job duties in <u>Zubair</u>, this is exactly analogous to the work that the LMs were required to do to ensure that the cables were properly laid down and that they were transmitting signals. If this fact were sufficient in <u>Zubair</u> to require a finding that the plaintiff was not exempt, an argument that Verizon has repeatedly offered, and that this Court has implicitly adopted, than the

10

Court's findings in this case cannot be reconciled therewith.  In effect, there is nothing in <u>Zubair</u> that distinguishes it materially from the facts attendant to Plaintiffs' job duties in the instant case. Respectfully, the split warrants an ultimate and immediate appellate resolution.  <u>See</u>, <u>e.g.</u>, <u>Glatt v. Fox Searchlight Pictures Inc.</u>, No. 11 CIV. 6784 WHP, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (holding that a case should be certified for interlocutory appeal where, as here, an "intra-district split and decisions from other circuits clearly show a substantial basis exists for difference of opinion").

ii.  The Issue of Whether Employees Performing Inspection Work are Exempt <u>Under the HCE Exemption is Particularly Complex</u>

Even setting aside the conflicting authority in this circuit about whether employees whose primary duty included performing inspections are exempt under the HCE exemption, which, under the law, is sufficient on its own to warrant immediate appellate review, this case should nevertheless be certified for interlocutory appeal. As the reasoning underlying the Order itself amply demonstrates, the question of whether *any* employee who performs *any* non-manual work as part of her primary duty should be classified as exempt is a particularly difficult one that warrants appellate review.

First, the crux of the Court's finding that Plaintiffs' primary duty was not manual in nature rests on a reading of the C.F.R. that is, respectfully, faulty.  Specifically, the Court held that because Plaintiffs did not perform work "involving repetitive operations with their hands, physical skill and energy," their work was non-manual as a matter of law.  Thus, under this rationale, even if Plaintiffs could prove that the physical work they performed was an inexorable part of their inspection work, they were still exempt employees because this work did not require the physical *skill* ostensibly required by 29 C.F.R. 541.601(d).  <u>See</u> Dkt. 187 at 10.  However, nowhere in the regulations is there an express requirement that manual labor *must* involve

11

"repetitive operations" or "physical skill."  Rather, these descriptions, as well as the specifically enumerated job titles listed in 29 C.F.R. 541.601(d) are meant to be emblematic of different types of manual labor rather than lay out an exhaustive list, as clearly demonstrated by the use of the introductory phrase "**for example**" in the regulation to set off the list.  Simply, there is nothing in the regulation demonstrating that the physical dexterity Plaintiffs must employ in performing their duties, as well as the hazardous conditions to which they are subjected, is insufficient to constitute manual labor as a matter of law warranting summary judgment.  Thus, by imposing a requirement on Plaintiffs that is not supported by the regulations, Plaintiffs submit that the Order warrants further review by an appellate court to determine whether such a requirement is appropriate.

Second, the Order found that the physical work Plaintiffs performed was not intertwined with their inspection work but instead "merely put them in a position to do the observations" and are "akin to performing tasks that are 'directly and closely related' to the performance of exempt work."  See Dkt. 187 at 9 (quoting 29 C.F.R. §541.703(a)).  However, this finding stems from the manner in which the Court parsed Plaintiffs' inspection work into six discrete actions.  See Dkt. 187 at 7-8.  Respectfully, there is nothing in the record standing for the proposition that either the safety hazards LMs face or the physical tasks they must perform as part of every inspection are in any way separable from the overall inspection process itself.  Instead, the record specifically states that "**during inspections,** I can be required to lie on the ground, climb over obstacles or crawl into small spaces.  I may also be required to climb ladders or lower myself into sub-ground crawl spaces to inspect cables and cable connections. I often have to move items on the site to inspect areas."  See Magnuson Decl. Ex. 19, ¶4 (emphasis added).  See also Magnuson Decl. Ex. 20, ¶5 (similar).  While the physical task of driving to the inspection site

12

can be fairly said to be a discrete action that places an LM "in a position" to perform the inspection work and as being "directly and closely related" to such activities, no such clean distinction can be made for the physical labor and dexterity that an LM must demonstrate once she arrives at the site.   Plaintiffs submit that the record is devoid of any evidence that the physical dangers disappear once LMs are "in a position" to do the underlying inspections (as evidenced by the fact that LMs are not permitted to remove their safety gear once they are "in a position" to perform the inspections), nor is there any evidence that Plaintiffs ceased to do physical work at any point during the inspection process.   By way of example only, an LM who has climbed a ladder to be in a position to perform an inspection of wiring atop a telephone pole must still perform the physical task of holding onto the ladder and balancing while viewing the work done by the technician.   As one supervisor put it, "while they're in this manhole which for people who perform that function, that's their office."   See Magnuson Decl. Ex. 5 at 58-59.

Third, the Court's finding that even if the work performed by Plaintiffs was inexorably intertwined with their inspection responsibilities such work was still exempt because it did not contain the requisite amount of skill and repetitive action cannot, respectfully, be reconciled with the law.   As explained above, the requirement that manual labor necessarily requires physical skill or repetitive action is nowhere to be found in the regulations themselves and has instead been created as a new, stricter standard imposed by the Court.   At the very least, an appellate court should be permitted to weigh in on the propriety of this judicially-created mandate before it becomes controlling precedent potentially affecting the rights of thousands of employees.   See, e.g., Republic of Colombia v. Diageo N. Am. Inc., 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (finding the existence of substantial ground for difference of opinion where the case involved "issues [that] are difficult and of first impression").

13

Finally, Plaintiffs respectfully contend that the Court should not have rejected their argument that finding the "include" language in 29 C.F.R. §541.601(d) to require that <u>any</u> non-manual work done in connection with a highly compensated employee's primary duty would create a grossly overbroad exemption beyond what was intended by the FLSA or the NYLL.  As Plaintiffs explained in their opposition to Defendant's objections, all employees perform some level of non-manual work in the process of completing their duties.  The Order attempted to distinguish this argument in stating:

> But Plaintiffs ignore the critical fact that the **core** of their inspections involves reviewing work performed by others, namely Verizon's technicians.  The **core** of the technicians' primary duty, by contrast, is the manual, skilled[1] work anticipated by §541.601(d).

Dkt. 187 at 11 (emphasis added).  Respectfully, this reasoning proves too much.  There is no allowance in either the language of the FLSA or the regulations promulgated by the Department of Labor for this added distinction between the "core" of the work done by the employees.  Rather, the HCE exemption limits its focus to the "primary duty" of the employee and whether it "includes" non-manual or office work.  In this action, there is no question that the "primary duty" of the technicians requires some level of observational work, if only to ensure that the work is being done properly and in accordance with Verizon's strictly promulgated polices, so that such observations are "included" in their primary duty under the theory advanced by Defendant.  In fact, it is difficult to think of any job that does not "include" some level of observational work – i.e. a carpenter must ensure that he is measuring material to specifications, an electrician must observe that the wiring is properly connected throughout the house, and a

---

[1] Respectfully, the Court's description of the work performed by the technicians as "skilled" is also at odds with the record.  Specifically, while there is no question that the technicians perform physical work, there is no indication that such work requires *physical skill* as opposed to the "skill" that comes with knowing how to properly perform their jobs.  This merely serves to underscore the fact that the Court's finding that all manual labor must involve "physical skill" or "repetitive actions" rather than general physical labor is untenable and creates a potentially dangerous precedent.

construction worker must comply with the plans for a new structure.  Under the rationale proffered by Defendant, and adopted by the Court, the mere fact that any of these individuals made over $100,000 and performs *any* amount of non-office work should be sufficient to support a finding that they are exempt employees, a position that cannot be supported under either the case law or the statutory language.

To afford the HCE exemption such a broad scope would be tantamount to finding that the inverse of 29 C.F.R. § 541.703(a) is equally valid law—namely that even non-manual office work that is "directly and closely related" to nonexempt work would make such work *exempt*. Surely if the DOL had intended for the HCE exemption to be given such an expansive interpretation it would have provided regulation analogous to 29 C.F.R. § 541.703(a).  That it intentionally chose not to do so should alone be sufficient to show that the interpretation advanced by Defendant is nonsensical and at odds with the precedent conclusively establishing that the exemptions in the FLSA are to be "narrowly construed against the employers seeking to assert them and their application limited to those **establishments plainly and unmistakably within their terms and spirit**."  Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960) (emphasis added).  The definition of "includes" for which Verizon advocates would swallow the HCE exception entirely, rendering it meaningless.  Before such a step is taken, it is only appropriate that the Second Circuit be given a chance to adjudicate this issue and weigh in.

As the Second Circuit has explained:

A district court may certify an appeal pursuant to 28 U.S.C. § 1292(b) when it is of the opinion that [the relevant] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation. When a ruling satisfies these criteria and **involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal**.

Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (internal citations and quotations omitted and emphasis added).  Respectfully, the issue in this case presents just such a scenario and should be certified for immediate appellate review.  See, e.g., Kuzinski v. Schering Corp., 614 F. Supp. 2d 247, 249 (D. Conn. 2009) (certifying the issue of the scope of the outside sales exemption of the FLSA for interlocutory appeal because of the importance of FLSA exemptions for industry-wide application).

### D.  An Interlocutory Appeal In This Case Would Materially Advance the Ultimate Termination of This Litigation.

An interlocutory appeal materially advances the ultimate termination of a case where it may "result in the saving of judicial resources or otherwise avoid protracted litigation." Century Pac., Inc. v. Hilton Hotels, Corp., 574 F. Supp. 2d 369, 373 (S.D.N.Y. 2008); see also In re Air Crash off Long Island, N.Y. on July 17, 1996, 27 F. Supp. 2d 431, 434 (S.D.N.Y. 1998) (certification is warranted where early appellate review "might avoid protracted and expensive litigation") (internal quotations omitted). In assessing whether an appeal will save judicial resources, the Court should consider whether an "appeal promises to advance the time for trial or to shorten the time required for trial."  Transp. Workers Union of Am., Local 100, AFL-CIO v. New York City Transit Auth., 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (internal citations omitted).

Here, there is no question that an immediate appeal could save judicial resources and avoid otherwise protracted litigation.  If Plaintiffs' request for an interlocutory appeal is denied, then both parties will have to proceed with this case knowing that an appeal is forthcoming, regardless of the outcome.  Thus, even if this case proceeds to trial, irrespective of which side prevails, Plaintiffs will only then file their appeal.  In the event that the Second Circuit grants the appeal, the parties are facing the high probability of additional discovery and briefing as to the

highly compensated employees and potentially a separate trial.  Essentially, the parties will have

to litigate the claims of the LMs twice in succession, the first time for the non-highly

compensated employees whose claims currently survive and the second time for those employees

whose claims were dismissed under the ruling in the Order.  This would undoubtedly cause a

tremendous waste of time and resources that can be avoided if an interlocutory appeal is granted

at this time, allowing the parties to receive a final resolution of this claim as soon as practicable.

## II.   **Plaintiff's Motion is Timely**

Finally, at the Court conference on November 13, 2015, Defendant indicated that it

would oppose Plaintiffs' motion for leave to file an interlocutory appeal partially on the basis

that such a motion is allegedly untimely.  Any such argument would be without merit, as "neither

§ 1292(b) nor Federal Rule of Civil Procedure 5(a), which governs petitions for permission to

appeal, specify a time in which a party must move for the order itself to be certified for

interlocutory appeal." Century Pac., Inc., 574 F. Supp. 2d at 371.  Rather, the law merely

requires that a party seek certification of an order for interlocutory appeal within a reasonable

period of time. Id.  Moreover, a court should consider a motion for leave to file an interlocutory

appeal so long as the motion is not "'inexcusably dilatory.'" See Martens v. Smith Barney, Inc.,

238 F. Supp. 2d 596, 601 (S.D.N.Y. 2002) (quoting Richardson Elec. v. Panache Broad., 202

F.3d 957, 958 (7th Cir. 2000)).

The Court's November 13, 2015 Order stated, "To ensure this order is without prejudice

to the parties, should Defendant raise any argument regarding the timeliness of Plaintiffs'

anticipated motion, the Court will consider such argument only as to the period from September

30, 2015 to November 13, 2015," a period of 44 days.  Dkt. No. 196.  A time period of 44 days is

reasonable, as Plaintiffs were also in the process of searching for a Local Manager who made

17

under $100,000 during the collective action period to substitute as a named Plaintiff.  See Dkt.

Nos. 193, 199.  As a result, it was unclear until recently whether Plaintiffs' appeal of this Order

would be interlocutory or as of right.  See id.; see also Dkt. No. 196.  Further, numerous courts

have granted motions for leave to file an interlocutory appeal filed roughly the same amount of

time after an order, and even motions filed much later, as such delays were reasonable.  See

Rothstein v. GMAC Mortg., LLC, No. 12 Civ. 3412 (AJN), 2014 WL 1329132, at *3 (S.D.N.Y.

Apr. 3, 2014), certificate of appealability granted sub nom., Rothstein v. Balboa Ins. Co., No. 14-

1112, 2014 WL 4179879 (2d Cir. June 25, 2014) (granting motion for leave to file interlocutory

appeal filed 52 days after the order); In re Air Crash at Georgetown, Guyana on July 30, 2011,

33 F. Supp. 3d 139, 154 (E.D.N.Y. 2014) (37 days); Coal. For Equity & Excellence In Maryland

Higher Educ. v. Maryland Higher Educ. Comm'n, No. CIV. CCB-06-2773, 2015 WL 4040425,

at *7 (D. Md. June 29, 2015) (554 days).  Thus, in light of the relevant case law, Plaintiffs'

motion should be deemed timely.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the question of whether the Plaintiffs in this case were exempt employees under the HCE exemption to the Second Circuit for immediate review.

Dated: December 22, 2015
      New York, New York                  Respectfully submitted,

**WIGDOR LLP**

By:  /s/ David E. Gottlieb
        Douglas H. Wigdor
        David E. Gottlieb
        Renan F. Varghese
85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com
rvarghese@wigdorlaw.com


**BORRELLI & ASSOCIATES, P.L.L.C.**

By:  /s/ Michael J. Borrelli
        Michael J. Borrelli
        Alexander T. Coleman
        Michael Minkoff
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Telephone:  (516) 248-5550
Facsimile:  (516) 248-6027
mjb@employmentlawyernewyork.com
atc@employmentlawyernewyork.com
mrm@employmentlawyernewyork.com


*Counsel for Plaintiffs*